UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------x

LOVERN ONFROY,

                      **Index No. 1:22-cv-2314-EK-LB**

                **Plaintiff,**

v.                     **FIRST AMENDED COMPLAINT AND**
                          **JURY DEMAND**

**THE LAW OFFICES OF GEOFFREY T.**
**MOTT, P.C.,**
**GEOFFREY T. MOTT,**
**KENNETH J. DECOTA, SAMUEL MILLER,**
**ARTHUR T. MOTT REAL ESTATE, LLC, and**
**700 MERRICK LLC**

                **Defendants.**

-------------------------------------------------------------x

Plaintiff Lovern Onfroy files suit against Defendant The Law Offices of Geoffrey T. Mott, P.C. ("The P.C."), a collection law firm, the P.C.'s principal Geoffrey T. Mott, a former associate at the P.C. Kenneth J. DeCota, and an associate at the P.C. Samuel Miller (collectively "Attorney Defendants") for their violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et. sec.* (the "FDCPA") and against the Attorney Defendants, Defendants Arthur T. Mott Real Estate, LLC ("ATM"), and 700 Merrick LLC (collectively "The Landlord") for their violations of New York General Business Law § 349 and committing negligence and gross negligence, alleges as follows:

## SUMMARY OF CLAIMS[1]

Ms. Onfroy is the victim of a scheme by Defendants to routinely file duplicative collection lawsuits in Nassau District Court and the Supreme Court, County of Nassau, attempting to obtain two judgments on the same rental arrears. An egregiously deceptive practice against both consumers and the courts in general, this practice was especially pernicious in its

---

[1] This summary is for the convenience of Defendants and the Court. The summary is not intended to limit the basis of Plaintiff's claims as the full factual basis for the claims are laid out in far greater detail in the statement of facts.

implementation by Defendants over the last two years during the COVID-19 pandemic, as filing in the Supreme Court allowed Defendants to sidestep consumers receiving notice of protections set up by the State of New York for the most vulnerable tenants. In some cases, including in the case of Ms. Onfroy, the Defendants simultaneously obtained a default judgment in the Supreme Court for rental arrears during the pendency of an Emergency Rental Assistance Program (ERAP) application for the same or overlapping rental arrears, essentially seeking to as much as double their income by collecting both from consumers and from a government program that is meant to protect consumers, not to illicitly enrich landlords and debt collectors.

Ms. Onfroy typifies the New Yorkers who these programs were most meant to help. She is a formerly homeless, low-income single mother of three. Defendants' deceptive conduct has dragged her into court unnecessarily, which has caused her significant emotional distress. Ms. Onfroy's anxiety is so extreme that she usually gets less than 4 hours of sleep a day and cries every day. The experience has contributed to her being prescribed anti-anxiety and sleep aid medications.

Defendants' practice of filing multiple lawsuits over the same rental arrears is done with either wanton disregard for consumers' rights by failing to perform any meaningful review of their own files prior to filing lawsuits or is done intentionally with the aim to illicitly increase the rental arrears they collect, increase their attorneys' fees, side step consumer protections like the Tenant Safe Harbor Act and ERAP, and limit consumer access to free legal services programs. Defendants have not made any effort to stop their misconduct in the case of Ms. Onfroy or any other identified consumers at the time of filing this lawsuit, despite being put on notice of their misconduct multiple times by Ms. Onfroy and others.  Ms. Onfroy now files suit to hold Defendants accountable for their attempts to fraudulently increase the amount of rent they collect

2

from her and other consumers.

## JURISDICTION AND VENUE

1.      The Court has subject matter jurisdiction over this lawsuit pursuant to 28 U.S.C. § 1331 because the dispute involves predominant issues of federal law under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et. sec.* (the "FDCPA").

2.      The Court has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367 because they are so related to Plaintiff's claims within the Court's original jurisdiction as to form part of the same case or controversy under Article III of the United States Constitution.

3.      Venue is proper because all or a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in Nassau County, New York.

## <u>THE PARTIES</u>

4.      Plaintiff Lovern Onfroy is an individual who resides in Nassau County, New York.

5.      Ms. Onfroy is a consumer as defined by 15 U.S.C. § 1692a(3) because she is alleged to owe a debt to Defendant 700 Merrick, LLC, arising from putative rental arrears for Ms. Onfroy's residence.  Plaintiff's alleged obligation is a "debt" as defined by 15 U.S.C. § 1692a(5) because it was incurred primarily for family, personal, or household purposes.

6.      Defendant 700 Merrick, LLC ("The LLC") is a limited liability company organized under the laws of the State of New York.  The LLC engages in business in New York State and this suit arises out of the LLC's business in New York State.

7.      The LLC was the petitioner in all three collection lawsuits against Ms. Onfroy,

3

and alleged in all three lawsuits that it was the landlord of Ms. Onfroy's residence.

8.      Defendant Arthur T. Mott Real Estate, LLC ("ATM") is a New York limited liability company formed under the laws of the State of New York.

9.      Defendant ATM maintains a process address at 249 West Merrick Road, Freeport, NY – the same address for process maintained by the LLC.

10.     Defendant ATM maintains a principal place of business at 249 West Merrick Road, Freeport, NY – the same principal place of business as the LLC.

11.     Defendant ATM is the owner of the property.

12.     Arthur T. Mott also bought the property at 700 Merrick in 1995, and only transferred ownership to the LLC in 2013.

13.     Defendant ATM operates and manages 31 residential apartment complexes via limited liability companies located in Nassau and Queen Counties, including the LLC.

14.     ATM, the LLC, and the other 30 residential apartment limited liability companies form a single enterprise ("the ATM Enterprise"). The companies within the ATM Enterprise:

   a.   Are interrelated in their operations;

   b.   share centralized control of labor relations;

   c.   are under common management;

   d.   are commonly owned and financially controlled;

   e.   share personnel;

   f.   share electronic links for website apartment listings; and

g.  share offices.

15.     Upon information and belief, the limited liability corporations, including the LLC, are inadequately capitalized to operate independently.

16.     The limited liability corporations, including the LLC, are set up by the ATM Enterprise solely to be used for a corresponding apartment complex – in the case of the LLC, the apartment complex at 700 Merrick Road, Baldwin, NY 11510.

17.     Defendant ATM advertises the 700 Merrick Road apartment complex on its website. **Exhibit A** (ATM Website).[2] Upon information and belief, all marketing of the 700 Merrick Road apartment complex is done through Defendant ATM.

18.     Upon information and belief, the limited liability corporations in the ATM Enterprise, including the LLC, have no independent discretion from ATM, with ATM essentially making all decisions for the corporations.

19.     For example, the ATM Enterprise companies have entered into mortgages for their respective properties jointly rather than entering into separate mortgages independently from one another.

20.     Upon information and belief, the limited liability corporations, including the LLC, are not dealt with by ATM at arms-length in transactions, including but not limited to the collection of rent from residential tenants like Plaintiff.

21.     ATM employee Joseph Nicaj is listed in the collection lawsuits filed by the ATM Enterprise as the managing agent for the limited liability corporations.

22.     Upon information and belief, the LLC is not treated as an independent profit

---

[2] All Exhibits attached to this complaint are incorporated by reference in their entirety.

center – when it makes a profit, so does ATM.

23.     Upon information and belief, ATM may otherwise disregard the corporate formalities of the limited liability corporations including the LLC that are not currently apparent given their internal nature, such as ATM paying or guaranteeing the debts of the limited liability corporations and whether the property of ATM (beyond the shared office already mentioned) is used by the limited liability corporations as if it were their own.

24.     The LLC is not a separate corporation but a mere alter ego of ATM. The LLC was created, along with the other limited liability corporations, to put a level of (illusory) separation between ATM and the affairs of residential tenants, such as the collection of rent. When ATM uses corporations like the LLC to collect on debts, it obfuscates ATM's role in and responsibility for the collection; for most consumers and courts, they never know about this third entity involved, despite that it performs the daily management of the account.

25.     The corporate separateness between ATM and the LLC should be disregarded, and the conduct of the LLC should be treated as the conduct of ATM for the purposes of fact and liability.

26.     Even without disregarding the corporate separateness between ATM and the LLC, because they operate as a joint venture for the collection of rent, ATM and the LLC are jointly and severally liable for their conduct in attempting to collect rent, including the collection lawsuits against Ms. Onfroy.

27.     ATM and the LLC will thus be collectively referred to as "the Landlord."

28.      Defendant The Law Offices of Geoffrey T. Mott, P.C. ("the P.C.") is a debt collection law firm organized under the laws of the State of New York. The P.C. engages in

business in New York State and this suit arises out of the P.C.'s business in New York State.

29.     The P.C.'s principal purpose is the collection of consumer debts alleged to be due to another, and it regularly does so.   Specifically, the P.C. regularly collects or attempts to collect, directly or indirectly, rental arrears and other debts asserted to be due another by filing dozens of collection lawsuits, collecting on putative judgments, and sending hundreds of collection letters.

30.     The P.C. exclusively files collection lawsuits for the ATM Enterprise via representing the limited liability corporations, including the LLC.

31.     Upon information and belief, Defendant ATM is, either in fact or in practice, the client of the P.C. and directs its representation of the ATM Enterprise, including but not limited to Defendant ATM providing the P.C. with the accounts for alleged rental arrears to file lawsuits to attempt to collect.

32.     Defendant Geoffrey T. Mott, a natural person, is the principal of the P.C. and, on information and belief, organizes, manages, oversees, and controls the operation of the P.C. Upon information and belief, Mr. Mott is a resident of the State of New York.

33.     Mr. Mott regularly collects or attempts to collect, directly or indirectly, debts owed and due or asserted to be due another. Many, if not most, of the summons and complaints filed by the P.C., as well as other documents like collection letters, go out under the putative signature of Mr. Mott. Therefore Mr. Mott is a debt collector within the meaning of 15 U.S.C. § 1692a(6).

34.     Defendant Kenneth DeCota was an associate attorney at the P.C. and, on information and belief, is a resident of the State of New York.

35.     On information and belief, Mr. DeCota's employment with the P.C. was recently terminated.

36.     Mr. DeCota regularly collected or attempted to collect, directly or indirectly, debts owed and due or asserted to be due another – namely the putative creditors named as plaintiffs in the collection lawsuits filed by the P.C. For the collection lawsuits filed by the P.C., Mr. DeCota filed motions, executed affirmations in support of motions, appeared at the court hearings on motions, and negotiated with consumers to extract payments, signed stipulations of settlement, or sought to enter judgments. As outlined in the pattern and practice section below, in suits where Mott is double suing for the same rent and the consumer defaults, it was Mr. DeCota who filed the applications for default judgment.  Further, during the time of his employment, he regularly went to court hearings and negotiated wwith tenants at court seeking to collect rent alleged to be due. Therefore Mr. DeCota is a debt collector within the meaning of 15 U.S.C. § 1692a(6).

37.     Defendant Samuel Miller is an associate attorney at the P.C. and, on information and belief, is a resident of the State of New York.

38.     Mr. Miller regularly collects or attempts to collect, directly or indirectly, debts owed and due or asserted to be due another – namely the putative creditors named as plaintiffs in the collection lawsuits filed by the P.C. For the collection lawsuits filed by the P.C., Mr. Miller files motions, executes affirmations in support of motions, appears at the court hearings on motions, and negotiates with consumers to extract payments, sign stipulations of settlement, or seeks to enter judgments. Therefore Mr. Miller is a debt collector within the meaning of 15 U.S.C. § 1692a(6).

**STATEMENT OF FACTS**

8

*Ms. Onfroy's Residence at 700 Merrick and the First Collection Lawsuit*

39.     On or around June 1, 2019, Lovern Onfroy moved into Apartment No. 3F located at 700 Merrick Road, Baldwin, NY 11510 ("the Residence"), owned and managed by the Landlord.

40.     Prior to moving into the Residence, Ms. Onfroy had been homeless, and to the present she still has anxiety about becoming homeless again.

41.     Ms. Onfroy works part time in a hospital as a dietician – she enjoys her work, but between rent and other expenses of being a single mother, her salary was not enough to make ends meet, and she began to fall behind on rent on or around February of 2020.

42.     According to an Affidavit of Service filed by the Defendants, a Five Day Notice (**Exhibit B**) was served on Ms. Onfroy on or around February 12, 2020. **Exhibit C** (AOS for First Five Day Notice).

43.     Notably however the United States Postal Service Certified Mail Tracking Number that appears on the face of the Five Day Notice, 7019 0700 0000 3685 0303, does not show the Notice being successfully delivered to Ms. Onfroy. **Exhibit D** (Tracking for First Five Day Notice).

44.     Ms. Onfroy never received the Five Day Notice.

45.     Nevertheless, on March 5, 2020, the Landlord through the P.C. filed a lawsuit against Ms. Onfroy in Nassau County District Court, First District, captioned *700 Merrick LLC v. Lovern A. Onfroy,* LT-001067-20/NA, seeking $1,875 and Ms. Onfroy's eviction from the residence. **Exhibit E** (First Collection Lawsuit).

46.     The First Collection Lawsuit was signed by Mr. Mott.

47.     The First Collection Lawsuit included a Verified Petition signed by Joseph Nicaj, who is described as the Managing Agent of 700 Merrick, LLC. *Id.*

48.     Soon thereafter, New York courts shut down due to the COVID-19 pandemic, and at an appearance on March 18, 2020, the case was adjourned to June 3, 2020.

49.     On or around June 1, 2020, Ms. Onfroy signed a renewal of the lease for the Residence.

50.     At the June 3, 2020 Hearing, another adjournment was made to July 23, 2020. *Id.*

51.     There were 6 more adjournments until on December 16, 2021, a Default Judgment was entered awarding possession to the LLC. *Id.*

52.     Defendants alleged that service of a "Notice to Tenant of Pending Default Judgment and Notice to Tenant – Tenant's Declaration of Hardship During the COVID-19 Pandemic" was made on November 3, 2021 via certified mail.

53.     However, the tracking for this certified mail, 7021 1970 0000 5902 0973, only shows that the envelope arrived at the post office, and does not show that it was delivered. **Exhibit F** (Tracking for Notice of Default).

54.     However, before this Default Judgment had been entered, Defendants had filed two more collection lawsuits against Ms. Onfroy.

### COVID-19 Protections for Consumers in the Courts

55.     The most obvious benefit to Defendants filing multiple collection lawsuits seeking judgments on the same rental arrears is to fraudulently double the amount owed to them.

56.     And for Attorney Defendants, there is also the opportunity to get two sets of attorney's fees for collecting on the same debt.

57.     However, the choice to file one of the lawsuits in the Supreme Court suggests that Defendants sought another benefit – to simultaneously preserve their ability to evict Ms. Onfroy via the lawsuit in District Court while quickly obtaining a money judgment in Supreme Court by evading protections for consumers available in the District Court.

58.     On June 30, 2020, the State of New York enacted the Tenant Safe Harbor Act, which held that "No court shall issue a warrant of eviction or judgment of possession against a residential tenant or other lawful occupant that has suffered a financial hardship during the COVID-19 covered period for the non-payment of rent that accrues or becomes due during the COVID-19 covered period."

59.     This law is carried out by consumers like Ms. Onfroy filing hardship declarations as part of an affirmative defense invoking the Tenant Safe Harbor Act, and then the petitioner has the opportunity to rebut the presumption of financial hardship but only as to the final judgment – the landlord would not be able to get around the automatic stay until at least May 1, 2021.

60.     On December 27, 2020 the State of New York also enacted an Emergency Rental Assistance Program (ERAP) which provides assistance to those who suffered a financial hardship during the COVID-19 pandemic – up to 12 months of rental arrears payments for rents accrued on or after March 13, 2020 and up to 3 months of additional rental assistance if the household is expected to spend 30 percent or more of their gross monthly income to pay for rent.

61.     Further, the arrears covered cannot be used as the basis for non-payment eviction, and eviction proceedings will be stayed pending a determination of eligibility.

62.     Importantly, payments for rental arrears are paid directly to the landlord – ERAP

is just as much a benefit for landlords as it is for consumers.

63.    To ensure these laws are carried out, the housing courts, including the Nassau District Court, provide consumers with notices enclosing a form hardship declaration and contact information for civil legal services. **Exhibit G** (Notice of COVID Protections).

64.    This Notice is not provided by the Supreme Court. Moreover, the various free legal service programs – such as in Nassau County -- only operate in the civil and housing courts, not in the Supreme Court.

65.    Thus even if a consumer sued in Supreme Court over rental arrears is properly served and has notice of the lawsuit, they will likely not have notice of the protections of the Tenant Safe Harbor Act and ERAP since the consumers will not receive the written notices given the Supreme Court does not send them to consumers like the District Court does.

66.    This aspect of Defendants' practice of filing multiple lawsuits for the same rental arrears, against Ms. Onfroy and other consumers, makes the practice even more egregious because of the evasion of protections set up by New York for the most vulnerable people and the potential to obtain a judgment against a consumer for rental arrears that the state of New York is already paying through the ERAP program.

***Defendants File Two Additional Collection Lawsuits Against Ms. Onfroy, Deceptively Seeking Two Judgments for the Same Rental Arrears.***

67.    On March 1, 2021, just a few months after a hearing in the First Collection Lawsuit, the Landlord, by and through the P.C., filed another collection lawsuit (the "Second Lawsuit") against Ms. Onfroy in the Supreme Court of the State of New York, Nassau County, captioned, *700 Merrick LLC v. Lovern Onfroy,* Index No. 602442/2021. **Exhibit H** (Second Collection Lawsuit).

68.     The Second Lawsuit was based on the Lease Renewal on or around June 1, 2020. *Id.,* ¶ 4.

69.     It alleged that Ms. Onfroy had not paid rent from October 1, 2020 through March 31, 2021, totaling $12,900. *Id.* ¶ 6.

70.     It also sought $5,000 in attorney's fees. *Id.* ¶ 14.

71.     Like the First Lawsuit, the Second Collection Lawsuit was verified by Joseph Nicaj, who was listed as the managing agent for the LLC. *Id.*, p. 7.

72.     Notably, on the same page below the signature of the notary, is text which appears to be part of a file extension reading "litig/2021/Complaints/ATM/complaint lease ATM Onfroy." *Id.* The name of this extension that appears to be for the complaint of the Second Collection corroborates Plaintiff's belief that the client, in fact or in practice, of the P.C. is ATM rather than just the LLC.

73.     According to an Affidavit of Service filed by Defendants in the Second Collection Lawsuit on March 16, 2021, Ms. Onfroy was allegedly served the Second Collection Lawsuit on March 3, 2021. **Exhibit I** (AOS for Second Collection Lawsuit).

74.     However, similar to the certified mail tracking for the First Collection Lawsuit, the tracking number on the Certified Mail Slip enclosed with the Affidavit of Service does not show that the Second Collection Lawsuit was delivered, instead showing a status of "In Transit, Arriving Late." **Exhibit J** (Tracking for Second Collection Lawsuit).

75.     Ms. Onfroy never received the Second Collection Lawsuit.

76.     Accordingly, Ms. Onfroy never filed an Answer to the Second Collection Lawsuit.

77.     However, around the same time, Ms. Onfroy was sent a Five Day Notice, dated March 11, 2021, alleging that she owed $11,400 for rent from October 1, 2020 through March 1, 2021 – the same months that the Second Collection Lawsuit was attempting to collect. **Exhibit K** (Second Five Day Notice).

78.     Like the First Five Day Notice, this Notice was signed by Joseph Nicaj under the title "Managing Agent." *Id.*

79.     Given the similarity between the First and Second Five Day Notice, and particularly the lack of any reference to the LLC and the use of Defendant ATM's letterhead, this Five Day Notice appears to be a form used by the ATM Enterprise generally for the collection of rent. *Id.*

80.     Notably, the enclosed Billing Notice instructed Ms. Onfroy to send the allegedly owed rental arrears to Defendant ATM rather than the LLC, evincing both that ATM directs the LLC's collection of rent and that the LLC is not an independent profit center from ATM. *Id.*

81.     An Affidavit of Service filed by the Defendants on May 3, 2021 alleges this Notice was served on Ms. Onfroy on March 12, 2021. **Exhibit L** (AOS for Second Five Day Notice).

82.     On May 3, 2021, the Landlord, by and through the P.C., filed a Third Collection Lawsuit against Ms. Onfroy in Nassau County District Court, First District, captioned *700 Merrick LLC v. Lovern A. Onfroy,* LT-000425-21/NA, seeking $11,400 plus interest from October 1, 2020 for alleged rent accrued from October 1, 2020 through March 1, 2021. **Exhibit M** (Third Collection Lawsuit).

83.     The Second and Third Collection Lawsuit seek the very same rent – the rent

14

allegedly accrued by Ms. Onfroy from October 1, 2020 through March 1, 2021. *Compare* **Exhibit H** *with* **Exhibit M**.

84.     The Third Collection Lawsuit also seeks attorney's fees in addition to the attorney's fees sought in the Second Collection Lawsuit for the collection of the same rental arrears.

85.     Both Lawsuits were filed by the P.C. and signed by Mr. Mott. *Compare* **Exhibit E** *with* **Exhibit M**.

86.     Mr. Miller signed an Affirmation in support of the Third Collection Lawsuit. **Exhibit N** (Affirmation for Third Collection Lawsuit).

87.     Mr. Mott's signature on the Third Collection Lawsuit and Mr. Miller's signature on the Affirmation were representations to both Ms. Onfroy and the Nassau District Court that they had performed a meaningful attorney review of the Third Collection Lawsuit, including but not limited to the P.C.'s own records on Ms. Onfroy's account, and determined, based on professional attorney judgment, that there was a valid legal basis for the Lawsuit.

88.     If the P.C., Mr. Miller, and Mr. Mott had performed a meaningful attorney review, they would have, at a minimum, reviewed the allegations of the Second Collection Lawsuit and seen that the two lawsuits were seeking judgments on the same rental arrears. Either the P.C., Mr. Miller and Mr. Mott failed to perform a meaningful attorney review – despite their implied representations to the contrary – or they performed a meaningful attorney review, realized the Third Collection Lawsuit sought the same rental arrears, and intentionally filed, served, and litigated the Third Collection Lawsuit, including the adjournments pending Ms. Onfroy's ERAP application, to attempt to obtain a judgment on the same rental arrears that they

were attempting to obtain a judgment on in the Second Collection Lawsuit.

89.     Specifically Mr. Miller represented in the Affirmation that he was "fully familiar with the facts and prior proceedings had herein based upon a review of the records and documents contained in the file regularly maintained by [the P.C.]" *Id.* Either this statement was a misrepresentation by Mr. Miller, and he did not actually review the records as he claimed, or he deceptively filed this Affirmation for the Court to grant a judgment on the same rental arrears sought in the Second Collection Lawsuit.

90.     If the Landlord was able to obtain a judgment in both lawsuits, either on the merits or via a default judgment, it would essentially double its recovery.

91.     Filing a collection lawsuit seeking the same debt as another pending collection lawsuit is deceptive. The filing of a collection lawsuit is an implied representation by the plaintiff that this is their only lawsuit to recover the debt allegedly owed and that there are no other pending lawsuits seeking the same debt.

92.     Despite filing the Third Collection Lawsuit on May 3, 2021, Defendants did not serve it served on Ms. Onfroy until November 23, 2021, as reflected in the Affidavit of Service filed by Defendants on November 29, 2021. **Exhibit O** (AOS for Third Collection Lawsuit).

93.     Under CPLR § 306-b, Defendants were required to serve Ms. Onfroy within 120 days of filing the Collection Lawsuit, or by August 31, 2021.  Instead Defendants waited more than 6 months to serve the complaint.

94.     Defendants delayed the service of the Third Collection Lawsuit intentionally as part of their deceptive attempt to obtain a double recovery – specifically, Defendants did not want to give Ms. Onfroy notice that they were seeking this rent until she had defaulted in the

Second Collection Lawsuit.

95.     Specifically, on September 30, 2021, Defendants filed an Application for Default Judgment in the Second Collection Lawsuit, alleging that Ms. Onfroy had defaulted and seeking a default judgment of $17,900. **Exhibit P** (Application for Default Judgment).

96.     The Application was filed by Defendant Kenneth DeCota, and included an Affidavit in Support executed by him. *Id.,* p. 5.

97.     Mr. DeCota's signature on the Application was a representation to both Ms. Onfroy and the Supreme Court that he had performed a meaningful attorney review of the Application, including but not limited to the P.C.'s own records on Ms. Onfroy's account, and determined, based on professional attorney judgment, that there was a valid legal basis for the Application.

98.     If the P.C. and Mr. DeCota had performed a meaningful attorney review, they would have, at a minimum, reviewed the allegations of the Third Collection Lawsuit and seen that the two lawsuits were seeking judgments on the same rental arrears. Either the P.C. and Mr. DeCota failed to perform a meaningful attorney review – despite their implied representations to the contrary – or they performed a meaningful attorney review, realized the two lawsuits sought the same rental arrears, and intentionally filed, served, and litigated the Application for Default Judgment in the Second Collection Lawsuit to attempt to obtain a judgment on the same rental arrears that they were attempting to obtain a judgment on in the Third Collection Lawsuit.

99.     Specifically Mr. DeCota stated that he was "fully familiar with all of the facts and prior proceedings had herein" (*Id.,* p. 3) and that "Plaintiff is entitled to judgment its favor and against Defendant LOVERN ONFROY, as demanded in the Verified Complaint" (*Id.,* p. 4).

17

Either Mr. DeCota falsely represented that he had performed a meaningful review, or he did perform a meaningful review but nevertheless falsely asserted that Defendants were entitled to a judgment despite seeking the same rental arrears in the Third Collection Lawsuit.

100.    This Application was based on the aforementioned alleged mailing of the Second Collection Lawsuit, which USPS Tracking (**Exhibit J**) shows was never delivered to Ms. Onfroy. **Exhibit P**, p. 18.

101.    Notably, the Mr. DeCota also alleged in his Affirmation that "No prior application has been made for the relief requested herein," despite the Third Collection Lawsuit having been filed on May 3, 2021. **Exhibit P**, p. 5. Either Mr. DeCota had not performed the basic review of the P.C.'s records that would have given him notice of the Third Collection Lawsuit or he did perform such a review and intentionally misrepresented whether there were any other parallel attempts to obtain the same relief by Defendants.

102.    It was only after Defendants applied for a default judgment in the Second Collection Lawsuit and Ms. Onfroy failed to respond (because she had no knowledge of the Second Collection Lawsuit) that they finally served the Third Collection Lawsuit on Ms. Onfroy on or around November 23, 2021.

103.    Since Ms. Onfroy was actually served with the Third Collection Lawsuit, she appeared for the first hearing on December 7, 2021, where the Court adjourned for another hearing on January 10, 2022.

104.    At the January 10, 2022 hearing, Ms. Onfroy was able to get limited scope assistance from the Volunteer Lawyer for the Day program.

105.    A volunteer attorney for the day cannot file a notice of appearance, cannot

represent the consumer other than for a very limited scope that one day at court, cannot represent the consumer generally, and cannot represent the consumer at a trial on the merits.

106.     At this hearing Ms. Onfroy learned about and applied for the Emergency Rental Assistance Program (ERAP).

107.     As such, the Third Collection Lawsuit was, and as of this filing continues to be, adjourned pending that application.

108.     Having been successfully misled into believing that Ms. Onfroy had been served the Second Collection Lawsuit and had not answered, the Supreme Court granted the Application for Default Judgment on January 19, 2022 and a default judgment was entered against Ms. Onfroy on February 18, 2022. **Exhibit Q** (Supreme Court Default Judgment).

109.     The Judgment included not only the rental arrears which were also being sought by the Third Collection Lawsuit, but also attorney's fees of $5,000**.**

110.     Upon information and belief, Mr. DeCota has appeared for the hearings in the Third Collection Lawsuit on behalf of the P.C., and thus has personal knowledge of the Third Collection Lawsuit, but despite this did not make any effort to either discontinue the Third Collection Lawsuit or stipulate to vacate the judgment he improperly obtained in the Second Collection Lawsuit.

111.     Thus, as of this filing, Defendants have both a default judgment and a pending ERAP application for the same rental arrears, creating the possibility of them receiving government funding from the State of New York and then doubling that income by executing on the judgment against Ms. Onfroy.

112.     Or, if the ERAP application is denied, there still remains the possibility that

Defendants obtain a judgment in the Third Collection Lawsuit and then have two judgments for the same rental arrears.

113.    Defendants have not voluntarily vacated this Default Judgment or otherwise put the Supreme Court on notice of the pending ERAP application over the same rental arrears that makes the Default Judgment improper.

114.    Despite having obtained a default judgment for the same rental arrears in the Second Collection Lawsuit, Defendants have not made any effort, as of this filing, to discontinue the Third Collection Lawsuit.

115.    To the contrary, Defendants sought and obtained an adjournment at the next hearing in the Third Collection Lawsuit on March 14, 2022, continuing the case to another hearing on May 17, 2022.

116.    Upon information and belief, it was Mr. DeCota who appeared for Defendants at the March 14 hearing and requested and obtained the adjournment.

117.    Defendants' maintenance of both lawsuits, one with a pending ERAP application and the other with a default judgment, evinces an intent to collect on the same rental arrears twice, either through executing on the default judgment and obtaining payment from the State of New York or through obtaining another judgment if the ERAP application is denied.

118.    Meanwhile, in the First Collection Lawsuit which Ms. Onfroy also had no knowledge of, Defendants were able to obtain a default judgment on December 16, 2021, and on March 3, 2022, the court provided the Sheriff of Nassau County with a warrant of eviction. **Exhibit R** (Warrant of Eviction).

119.    On or around March 15, 2022, Ms. Onfroy received the Warrant of Eviction in the

mail. She was stunned, as the only lawsuit she was aware of against her for the rental arrears was the Third Collection Lawsuit, which had a pending ERAP application and had just been adjourned 4 days before.

120.    The next day, March 16, 2022, Ms. Onfroy appeared and filed an Order to Show Cause in the First Collection Lawsuit. **Exhibit S** (OSC).

121.    In the OSC, Ms. Onfroy stated "I had been served with another case in LT court, LT 425, and was appearing in that case and did not know there was another case pending at same time." *Id.*

122.    She also noted in the OSC that she had "attempted to give the landlord money on numerous occasions but they refused to take what they called a partial payment. I have an ERAP application pending with the Town of Hempstead." *Id.*

123.    Because she had not known about the First Collection Lawsuit, Ms. Onfroy's volunteer lawyer decided to check to see if there were any more lawsuits against her that she was not aware of, and that was how Ms. Onfroy learned for the first time about the Second Collection Lawsuit.

124.    This discovery is reflected in a handwritten note on the bottom of the OSC – "I was just told that Mr. Mott has obtained a default judgment dated 2/23/22 in Supreme Court for $12,900 under index # 602442/2021 for rent." *Id.*

125.    Despite receiving this additional notice that the default judgment had been obtained in Supreme Court with pending actions in the District Court, Defendants did not make any effort to stipulate to vacate the judgment or discontinue either the Second or Third Collection Lawsuit.

126.    On April 7, 2022, the District Court granted Ms. Onfroy's application in the First Collection Lawsuit, vacating the default judgment and warrant of eviction against her. **Exhibit T** (Order Vacating Warrant).

### *Defendants' Pattern and Practice of Filing Multiple Lawsuits Over The Same Rent*

127.    Unfortunately Ms. Onfroy is not the first vulnerable New Yorker targeted by Defendants' practice of filing multiple lawsuits over the same rent.

128.    Reviewing the New York State Electronic Court Filing System, Plaintiff has identified 14 other consumers besides Ms. Onfroy where the ATM Enterprise and the P.C. have filed collection lawsuits against the consumers in both Nassau District Court and Supreme Court.

129.    The plaintiffs in these lawsuits brought by the P.C. are all limited liability corporations that are part of the ATM Enterprise and under the direct control of Defendant ATM.

130.    In all of these cases, Defendants seek overlapping rental arrears in the parallel District Court and Supreme Court collection lawsuits, and with 6 of the 14 identified consumers, the amounts overlapped completely.[3]

131.    And 6 of the 14 identified consumers had default judgments entered against them in Supreme Court like Ms. Onfroy did via motions filed by Defendant Kenneth DeCota.

132.    Mr. DeCota's signature on these applications were representations to both the applicable consumers and the Supreme Court that he had performed a meaningful attorney review of the applications, including but not limited to the P.C.'s own records, and determined,

---

[3] While Collection Lawsuits for rental arrears will name the months and totals for rental arrears sought at the time of filing in the initiating petition, plaintiffs are permitted to add additional months of rental arrears as they accrue during the pendency of the lawsuit, and as such the amounts sought by parallel lawsuits will overlap completely if they have the same starting month regardless of the last month listed. For example, the amounts overlap completely in the parallel lawsuits against Smith Jn Philippe and Joseph Francois because both lawsuits seek rental arrears from April 2020 onward, despite the amount sought on the face of the two complaints being different.

based on professional attorney judgment, that there was a valid legal basis for the applications.

133.    If the P.C. and Mr. DeCota had performed a meaningful attorney review, they would have, at a minimum, seen overlapping lawsuits seeking judgments on the same rental arrears. Either the P.C. and Mr. DeCota failed to perform a meaningful attorney review – despite their implied representations to the contrary – or they performed a meaningful attorney review, realized the lawsuits sought the same rental arrears, and intentionally filed, served, and litigated the applications for default judgments to attempt to obtain a judgment on the same rental arrears that they were attempting to obtain a judgment on in other lawsuits.

134.    Specifically Mr. DeCota stated in these applications, like the application against Ms. Onfroy, that he was "fully familiar with all of the facts and prior proceedings had herein" and that "Plaintiff is entitled to judgment…as demanded in the Verified Complaint." Either Mr. DeCota falsely represented in these applications that he had performed a meaningful review, or he did perform a meaningful review but nevertheless falsely asserted that the creditors were entitled to a judgment despite seeking the same rental arrears in another lawsuit.

135.    Based on Plaintiff's review of the publicly available documents, it appears Defendants have never acknowledged or admitted that they are seeking the same rental arrears in multiple proceedings, and Defendants have never voluntarily discontinued any of the identified collection lawsuits.[4]

*Johanny Tavarez*

136.    On March 5, 2020, Defendants ATM and the P.C., via named plaintiff 30 North Long Beach LLC, brought a collection lawsuit in Nassau District Court against Johanny Tavarez,

---

[4] The court filings referenced as to the tenants listed below are not attached to this complaint because of volume of the documents.  However, the specific court captions and specific filings cited are "integral" to this complaint and incorporated by reference.

seeking rent for February 2020 of $1,795: *30 North Long Beach LLC v. Tavarez,* LT-001063-20/NA.

137.    Similar to Ms. Onfroy, Defendants then filed a second collection lawsuit in Nassau District Court against Johanny Tavarez on October 6, 2020, this time seeking rent From June 2020 through October 2020, totaling $5,385.28: *30 North Long Beach LLC v. Tavarez,* LT-002062-20/NA.

138.    And then, again similar to Ms. Onfroy, Defendants filed a third collection lawsuit in the Supreme Court, County of Nassau, against Johanny Tavarez on March 12, 2021, seeking $10,475.28 in rent from October 2020 through March 2021.*30 North Long Beach LLC v. Tavarez,* Index No. 602998/2021.

139.    On October 1, 2021, Defendants moved for a default judgment in the Third Tavarez Lawsuit.

140.    The Application was filed by Defendant Kenneth DeCota, and included an Affidavit in Support executed by him.

141.    Mr. DeCota's signature on the Application was a representation to both Tavarez and the Supreme Court that he had performed a meaningful attorney review of the Application, including but not limited to the P.C.'s own records on the account, and determined, based on professional attorney judgment, that there was a valid legal basis for the Application.

142.    If the P.C. and Mr. DeCota had performed a meaningful attorney review, they would have, at a minimum, reviewed the allegations of the Third Tavarez Lawsuit and seen that it was seeking judgments on the same rental arrears as the Second Tavarez Lawsuit. Either the P.C. and Mr. DeCota failed to perform a meaningful attorney review – despite their implied

representations to the contrary – or they performed a meaningful attorney review, realized the two lawsuits sought the same rental arrears, and intentionally filed, served, and litigated the Application for Default Judgment in the Third Tavarez Lawsuit to attempt to obtain a judgment on the same rental arrears that they were attempting to obtain a judgment on in the Second Tavarez Lawsuit.

143.    Specifically Mr. DeCota stated that he was "fully familiar with all of the facts and prior proceedings had herein" and that "Plaintiff is entitled to judgment its favor and against Defendant JOHANNY TAVAREZ, as demanded in the Verified Complaint." Either Mr. DeCota falsely represented that he had performed a meaningful review, or he did perform a meaningful review but nevertheless falsely asserted that Defendants were entitled to a judgment despite seeking the same rental arrears in the Second Tavarez Lawsuit.

144.    On February 8, 2022, in the Second Tavarez Lawsuit, the court noted that there was a pending ERAP application.

145.    Despite this pending ERAP application, the P.C. and Mr. DeCota did not discontinue the Third Tavarez Lawsuit. Instead, they obtained a default judgment in the Third Lawsuit, entered on March 2, 2022.

*Joan Remy*

146.    On March 5, 2020, Defendants ATM and the P.C., via named plaintiff 76 South LLC, brought a collection lawsuit against Joan Remy in Nassau District Court, seeking rent for February 2020 totaling $2,250:*76 South LLC v. Remy,* LT-001064-20/NA.

147.    On January 27, 2021, Defendants filed another collection lawsuit against Joan Remy, this time in Supreme Court, seeking rent from June 1, 2020 to January 31, 2021, totaling

$18,060: *76 South LLC v. Remy,* Index No. 601077/2021.

148.    On October 1, 2021, Defendants filed a motion for a default judgment in the Second Remy Lawsuit, seeking $18,060 for rent from June 1, 2020 to January 31, 2021.

149.    The Application was filed by Defendant Kenneth DeCota, and included an Affidavit in Support executed by him.

150.    Mr. DeCota's signature on the Application was a representation to both Remy and the Supreme Court that he had performed a meaningful attorney review of the Application, including but not limited to the P.C.'s own records on the account, and determined, based on professional attorney judgment, that there was a valid legal basis for the Application.

151.    If the P.C. and Mr. DeCota had performed a meaningful attorney review, they would have, at a minimum, reviewed the allegations of the Second Remy Lawsuit and seen that it was seeking judgments on the same rental arrears as the First Remy Lawsuit. Either the P.C. and Mr. DeCota failed to perform a meaningful attorney review – despite their implied representations to the contrary – or they performed a meaningful attorney review, realized the two lawsuits sought the same rental arrears, and intentionally filed, served, and litigated the Application for Default Judgment in the Second Remy Lawsuit to attempt to obtain a judgment on the same rental arrears that they were attempting to obtain a judgment on in the First Remy Lawsuit.

152.    Specifically Mr. DeCota stated that he was "fully familiar with all of the facts and prior proceedings had herein" and that "Plaintiff is entitled to judgment its favor and against Defendant JOAN REMY, as demanded in the Verified Complaint." Either Mr. DeCota falsely represented that he had performed a meaningful review, or he did perform a meaningful review

but nevertheless falsely asserted that Defendants were entitled to a judgment despite seeking the same rental arrears in the First Remy Lawsuit.

153.    Astonishingly, on or around October 26, 2021, the P.C. allegedly sent Ms. Remy a letter giving her notice that they would be applying for a default judgment against her for $39,790.

154.    This figure suggests that the P.C. was seeking to collect 17 months of the $2,250 rent from Ms. Remy in the first lawsuit – from February 2020 to July 2021.

155.    In other words, the P.C. deceptively represented to Ms. Remy that it was entitled to have two judgments for the rent from June 1, 2020 to January 31, 2021 – one judgment in the District Court and one judgment in the Supreme Court.

156.    If Defendants had succeeded in their deception, they would have literally doubled Ms. Remy's alleged obligation for those months from $18,060 to $36,120.

157.    Fortunately, the Supreme Court denied the P.C. and DeCota's application for a default judgment in the second lawsuit because the Defendants failed to establish that Ms. Remy had been properly served. However, it was denied without prejudice, so it is still possible that Defendants could obtain two judgments for the same rental arrears.

*Kenya Andoleo*

158.    On October 6, 2020, Defendants ATM and the P.C., via named plaintiff 77 Terrace LLC, filed a collection lawsuit in the Nassau District Court for rental arrears from June 2020 through October 2020 totaling $4,500.63: *77 Terrace LLC v. Andoleo,* LT-002069-20/NA.

159.    On February 2, 2021, Defendants filed another collection lawsuit in Supreme

Court for rental arrears from July 1, 2020 through February 28, 2021, totaling $13,530: *77 Terrace LLC v. Andoleo,* Index No. 601282/2021.

160.    On October 1, 2021, Defendants moved for a default judgment against Kenya Andoleo in the Supreme Court.

161.    The Application was filed by Defendant Kenneth DeCota, and included an Affidavit in Support executed by him.

162.    Mr. DeCota's signature on the Application was a representation to both Andoleo and the Supreme Court that he had performed a meaningful attorney review of the Application, including but not limited to the P.C.'s own records on the account, and determined, based on professional attorney judgment, that there was a valid legal basis for the Application.

163.    If the P.C. and Mr. DeCota had performed a meaningful attorney review, they would have, at a minimum, reviewed the allegations of the Second Andoleo Lawsuit and seen that it was seeking judgments on the same rental arrears as the First Andoleo Lawsuit. Either the P.C. and Mr. DeCota failed to perform a meaningful attorney review – despite their implied representations to the contrary – or they performed a meaningful attorney review, realized the two lawsuits sought the same rental arrears, and intentionally filed, served, and litigated the Application for Default Judgment in the Second Andoleo Lawsuit to attempt to obtain a judgment on the same rental arrears that they were attempting to obtain a judgment on in the First Andoleo Lawsuit.

164.    Specifically Mr. DeCota stated that he was "fully familiar with all of the facts and prior proceedings had herein" and that "Plaintiff is entitled to judgment its favor and against Defendant KENYA ANDOLEO, as demanded in the Verified Complaint." Either Mr. DeCota

28

falsely represented that he had performed a meaningful review, or he did perform a meaningful review but nevertheless falsely asserted that Defendants were entitled to a judgment despite seeking the same rental arrears in the First Andoleo Lawsuit.

165.    And on March 11, 2022, that motion was granted and a default judgment was entered in the Supreme Court case for $21,353.67.

166.    A hearing was held in the District Court case on April 4, 2022, which was adjourned until May 5, 2022, suggesting that Defendants are continuing to seek a judgment in that case for the same rental arrears over which it secured a default judgment in Supreme Court for $21,353.67.

### Adalgiza Guzman

167.    On October 6, 2020, Defendants ATM and the P.C. via named plaintiff 76 South LLC filed a lawsuit in Nassau District Court seeking rental arrears from July 2020 through October 2020, totaling $5,586: *76 South LLC v. Guzman,* LT-002066-20/NA.

168.    On February 10, 2021, there was a hearing in this lawsuit where it was noted that there was a pending ERAP application.

169.    Despite the Nassau District Court lawsuit and the pending ERAP application, Defendants on March 1, 2021 filed another collection lawsuit in Supreme Court seeking rent from October 1, 2020 through March 31, 2021, totaling $11,450: *76 South LLC v. Guzman,* Index No. 602443/2021.

170.    On October 1, 2021, Defendants moved for a default judgment against Adalgiza Guzman in the Supreme Court.

171.    The Application was filed by Defendant Kenneth DeCota, and included an

Affidavit in Support executed by him.

172.    Mr. DeCota's signature on the Application was a representation to both Guzman and the Supreme Court that he had performed a meaningful attorney review of the Application, including but not limited to the P.C.'s own records on the account, and determined, based on professional attorney judgment, that there was a valid legal basis for the Application.

173.    If the P.C. and Mr. DeCota had performed a meaningful attorney review, they would have, at a minimum, reviewed the allegations of the Second Guzman Lawsuit and seen that it was seeking judgments on the same rental arrears as the First Guzman Lawsuit. Either the P.C. and Mr. DeCota failed to perform a meaningful attorney review – despite their implied representations to the contrary – or they performed a meaningful attorney review, realized the two lawsuits sought the same rental arrears, and intentionally filed, served, and litigated the Application for Default Judgment in the Second Guzman Lawsuit to attempt to obtain a judgment on the same rental arrears that they were attempting to obtain a judgment on in the First Guzman Lawsuit.

174.    Specifically Mr. DeCota stated that he was "fully familiar with all of the facts and prior proceedings had herein" and that "Plaintiff is entitled to judgment its favor and against Defendant ADALGIZA GUZMAN, as demanded in the Verified Complaint." Either Mr. DeCota falsely represented that he had performed a meaningful review, or he did perform a meaningful review but nevertheless falsely asserted that Defendants were entitled to a judgment despite seeking the same rental arrears in the First Guzman Lawsuit.

175.    There was a hearing in the Nassau District Court case on February 24, 2022, which was adjourned to April 25, 2022, suggesting that Defendants do not plan on discontinuing that lawsuit in favor of the Supreme Court case.

176.    On April 5, 2022, a default judgment was entered in the Supreme Court case for $10,950.

*Carlos Ospina-Lopez*

177.    On July 31, 2020, Defendants ATM and the P.C., via named plaintiff 62 Tulip LLC, filed a lawsuit against Carlos Ospina-Lopez in Nassau District Court seeking rental arrears from February 2020 through July 2020, totaling $10,305: *62 Tulip LLC v. Ospina-Lopez,* LT-001447-20/NA.

178.    On January 28, 2021, Defendants then filed another collection lawsuit in Supreme Court seeking rent from July 1, 2020 through January 31, 2021, totaling $14,850: *62 Tulip LLC v. Lopez,* Index No. 601190/2021.

179.    On September 30, 2021, a COVID-19 Hardship Declaration invoking the Tenant Safe Harbor Act was filed in the Nassau District Court case.

180.    On October 1, 2021, the next day, Defendants moved for a default judgment in the Supreme Court case.

181.    The Application was filed by Defendant Kenneth DeCota, and included an Affidavit in Support executed by him.

182.    Mr. DeCota's signature on the Application was a representation to both Ospina-Lopez and the Supreme Court that he had performed a meaningful attorney review of the Application, including but not limited to the P.C.'s own records on the account, and determined, based on professional attorney judgment, that there was a valid legal basis for the Application.

183.    If the P.C. and Mr. DeCota had performed a meaningful attorney review, they would have, at a minimum, reviewed the allegations of the Second Ospina-Lopez Lawsuit and

seen that it was seeking judgments on the same rental arrears as the First Ospina-Lopez Lawsuit. Either the P.C. and Mr. DeCota failed to perform a meaningful attorney review – despite their implied representations to the contrary – or they performed a meaningful attorney review, realized the two lawsuits sought the same rental arrears, and intentionally filed, served, and litigated the Application for Default Judgment in the Second Ospina-Lopez Lawsuit to attempt to obtain a judgment on the same rental arrears that they were attempting to obtain a judgment on in the First Ospina-Lopez Lawsuit.

184.    Specifically Mr. DeCota stated that he was "fully familiar with all of the facts and prior proceedings had herein" and that "Plaintiff is entitled to judgment its favor and against Defendants CARLOS OSPINA LOPEZ and PATRICIA FAJARDO IDROBO, as demanded in the Verified Complaint." Either Mr. DeCota falsely represented that he had performed a meaningful review, or he did perform a meaningful review but nevertheless falsely asserted that Defendants were entitled to a judgment despite seeking the same rental arrears in the First Ospina-Lopez Lawsuit.

185.    However, for reasons not elaborated on the record, Defendants withdrew this Motion on January 6, 2022, though they did not and as of this filing have not discontinued the Supreme Court case.

186.    The Nassau District Court case is set for a bench trial on April 21, 2022. Given that the Supreme Court case has not been discontinued, the possibility remains that two judgments could be procured over the same rental arrears.

*Marie Compere*

187.    On March 12, 2021, Defendants ATM and the P.C., via named plaintiff 66-70

32

Tulip LLC, filed a lawsuit in Supreme Court, County of Nassau against Marie Compere seeking rental arrears from October 2020 through March 2021, totaling $10,290: *66-70 Tulip LLC v. Compere,* Index No. 602999/2021.

188.   On May 3, 2021, Defendants then filed another collection lawsuit against Ms. Compere in Nassau District Court, seeking rent from October 2020 through March 2021, totaling $10,223.30: *66-70 Tulip LLC v. Compere,* LT-000423-21/NA.

189.   On October 12, 2021, the Defendants moved for a Default Judgment in the Supreme Court case.

190.   The Application was filed by Defendant Kenneth DeCota, and included an Affidavit in Support executed by him.

191.   Mr. DeCota's signature on the Application was a representation to both Compere and the Supreme Court that he had performed a meaningful attorney review of the Application, including but not limited to the P.C.'s own records on the account, and determined, based on professional attorney judgment, that there was a valid legal basis for the Application.

192.   If the P.C. and Mr. DeCota had performed a meaningful attorney review, they would have, at a minimum, reviewed the allegations of the First Compere Lawsuit and seen that it was seeking judgments on the same rental arrears as the Second Compere Lawsuit. Either the P.C. and Mr. DeCota failed to perform a meaningful attorney review – despite their implied representations to the contrary – or they performed a meaningful attorney review, realized the two lawsuits sought the same rental arrears, and intentionally filed, served, and litigated the Application for Default Judgment in the First Compere Lawsuit to attempt to obtain a judgment on the same rental arrears that they were attempting to obtain a judgment on in the Second

Compere Lawsuit.

193.    Specifically Mr. DeCota stated that he was "fully familiar with all of the facts and prior proceedings had herein" and that "Plaintiff is entitled to judgment its favor and against Defendants MARIE COMPERE and VANESSA COMPERE, as demanded in the Verified Complaint." Either Mr. DeCota falsely represented that he had performed a meaningful review, or he did perform a meaningful review but nevertheless falsely asserted that Defendants were entitled to a judgment despite seeking the same rental arrears in the Second Compere Lawsuit.

194.    Despite this pending motion, on January 31, 2022, Defendants also made an oral application in the Nassau District Court case for a default judgment, which was granted and a default judgment was entered on February 10, 2022 for $10,243.30.

195.    Fortunately the Supreme Court soon thereafter denied the P.C. and DeCota's application for a default judgment due to the lack of "due diligence" by the process server in serving the Summons and Complaint in the Supreme Court case. However, it was denied without prejudice, so it is still possible that Defendants could obtain two judgments for the same rental arrears.

196.    And on April 4, 2022, an order to show cause was filed in the Nassau District Court case, noting a pending application for ERAP, which the District Court granted on April 13, 2022, vacating the default judgment and adjourning proceedings pending the ERAP application.

*Smith Jn Philippe and Joseph Francois*

197.    On October 6, 2020, the Defendants ATM and the P.C., via named plaintiff 555 Front Street LLC, filed a collection lawsuit against Smith Jn Philippe and Joseph Francois in

34

Nassau District Court, seeking $10,770 for rental arrears from April 2020 through October 2020: *555 Front Street LLC v. Philippe, et al.,* LT-002073-20/NA.

198.    On January 26, 2021, the Defendants then filed another collection lawsuit in Supreme Court, seeking rent from April 2020 through January 2021, totaling $19,510: *555 Front LLC v. Philippe, et al.,* Index No. 601007/2021.

199.    On February 11, 2021, Joseph Francois filed a COVID-19 Hardship Declaration invoking the Tenant Safe Harbor Act in the District Court case.

200.    And on March 29, 2021, the District Court noted that Mr. Francois had filed an ERAP application.

201.    Despite the pending ERAP application, Defendants moved for a default judgment in the Supreme Court case on September 30, 2021.

202.    The Application was filed by Defendant Kenneth DeCota, and included an Affidavit in Support executed by him.

203.    Mr. DeCota's signature on the Application was a representation to both the consumers and the Supreme Court that he had performed a meaningful attorney review of the Application, including but not limited to the P.C.'s own records on the account, and determined, based on professional attorney judgment, that there was a valid legal basis for the Application.

204.    If the P.C. and Mr. DeCota had performed a meaningful attorney review, they would have, at a minimum, reviewed the allegations of the Second Philippe Lawsuit and seen that it was seeking judgments on the same rental arrears as the First Philippe Lawsuit. Either the P.C. and Mr. DeCota failed to perform a meaningful attorney review – despite their implied representations to the contrary – or they performed a meaningful attorney review, realized the

two lawsuits sought the same rental arrears, and intentionally filed, served, and litigated the Application for Default Judgment in the Second Philippe Lawsuit to attempt to obtain a judgment on the same rental arrears that they were attempting to obtain a judgment on in the First Philippe Lawsuit.

205.    Specifically Mr. DeCota stated that he was "fully familiar with all of the facts and prior proceedings had herein" and that "Plaintiff is entitled to judgment its favor and against Defendants SMITH JN PHILIPPE and JOSEPH FRANCOIS, as demanded in the Verified Complaint." Either Mr. DeCota falsely represented that he had performed a meaningful review, or he did perform a meaningful review but nevertheless falsely asserted that Defendants were entitled to a judgment despite seeking the same rental arrears in the First Philippe Lawsuit.

206.    Fortunately, this motion was denied because the process served failed to exercise "due diligence" in serving the Summons and Complaint for the Supreme Court lawsuit. However, it was denied without prejudice, so it is still possible that Defendants could obtain two judgments for the same rental arrears.

*Jamie Salas*

207.    On October 8, 2020, Defendants ATM and the P.C., via named plaintiff ATM Two, LLC, filed a lawsuit in Nassau District Court against Jamie Salas seeking rental arrears from May 2020 through October 2020, totaling $3,629.80: *ATM Two, LLC v. Salas,* LT-002106-20/NA.

208.    On March 19, 2021, Defendants then filed another collection lawsuit in Supreme Court seeking rental arrears from May 2020 through March 2021, totaling $7,929.80: *ATM One, LLC v. Salas,* Index No. 603392/2021.

209. On October 1, 2021, Defendants moved for a default judgment in the Supreme Court Case.

210. The Application was filed by Defendant Kenneth DeCota, and included an Affidavit in Support executed by him.

211. Mr. DeCota's signature on the Application was a representation to both Salas and the Supreme Court that he had performed a meaningful attorney review of the Application, including but not limited to the P.C.'s own records on the account, and determined, based on professional attorney judgment, that there was a valid legal basis for the Application.

212. If the P.C. and Mr. DeCota had performed a meaningful attorney review, they would have, at a minimum, reviewed the allegations of the Second Salas Lawsuit and seen that it was seeking judgments on the same rental arrears as the First Salas Lawsuit. Either the P.C. and Mr. DeCota failed to perform a meaningful attorney review – despite their implied representations to the contrary – or they performed a meaningful attorney review, realized the two lawsuits sought the same rental arrears, and intentionally filed, served, and litigated the Application for Default Judgment in the Second Salas Lawsuit to attempt to obtain a judgment on the same rental arrears that they were attempting to obtain a judgment on in the First Salas Lawsuit.

213. Specifically Mr. DeCota stated that he was "fully familiar with all of the facts and prior proceedings had herein" and that "Plaintiff is entitled to judgment its favor and against Defendant JAMIE SALAS, as demanded in the Verified Complaint." Either Mr. DeCota falsely represented that he had performed a meaningful review, or he did perform a meaningful review but nevertheless falsely asserted that Defendants were entitled to a judgment despite seeking the same rental arrears in the First Salas Lawsuit.

214.     On February 16, 2022, the Supreme Court denied this Motion based on the process server not exercising "due diligence" in serving the Summons and Complaint for the Supreme Court case. However, it was denied without prejudice, so it is still possible that Defendants could obtain two judgments for the same rental arrears.

215.     On March 15, 2022, the Nassau District Court noted that there was a pending ERAP application.

*Johana Leiva*

216.     On October 8, 2020, Defendants ATM and the P.C., via named plaintiff 35 North LLC, filed a collection lawsuit in Nassau District Court against Johana Leiva for rental arrears from August 2020 through October 2020, totaling $3,840: *35 North LLC v. Leiva,* LT-002111-20/NA.

217.     On February 8, 2021, Defendants then filed another collection lawsuit in Supreme Court, seeking rental arrears from August 2020 through February 2021, totaling $11,700: *35 North LLC v. Leiva,* Index No. 601472/2021.

218.     On October 1, 2021, Defendants moved for a default judgment in the Supreme Court case.

219.     The Application was filed by Defendant Kenneth DeCota, and included an Affidavit in Support executed by him.

220.     Mr. DeCota's signature on the Application was a representation to both Leiva and the Supreme Court that he had performed a meaningful attorney review of the Application, including but not limited to the P.C.'s own records on the account, and determined, based on professional attorney judgment, that there was a valid legal basis for the Application.

221.     If the P.C. and Mr. DeCota had performed a meaningful attorney review, they would have, at a minimum, reviewed the allegations of the Second Leiva Lawsuit and seen that it was seeking judgments on the same rental arrears as the First Leiva Lawsuit. Either the P.C. and Mr. DeCota failed to perform a meaningful attorney review – despite their implied representations to the contrary – or they performed a meaningful attorney review, realized the two lawsuits sought the same rental arrears, and intentionally filed, served, and litigated the Application for Default Judgment in the Second Leiva Lawsuit to attempt to obtain a judgment on the same rental arrears that they were attempting to obtain a judgment on in the First Salas Lawsuit.

222.     Specifically Mr. DeCota stated that he was "fully familiar with all of the facts and prior proceedings had herein" and that "Plaintiff is entitled to judgment its favor and against Defendants JOHANA LEIVA and ANTHONY CARRASQUEL, as demanded in the Verified Complaint." Either Mr. DeCota falsely represented that he had performed a meaningful review, or he did perform a meaningful review but nevertheless falsely asserted that Defendants were entitled to a judgment despite seeking the same rental arrears in the First Leiva Lawsuit.

223.     On December 10, 2021, a COVID-19 Hardship Declaration invoking the Tenant Safe Harbor Act was filed in the Nassau District Court case.

224.     A bench trial date has been set in the Nassau District Court case for August 8, 2022, and the motion for default judgment is still pending in the Supreme Court case.

*Gwendolyn and Ronald Waters*

225.     On October 2, 2020, Defendants ATM and the P.C., via named plaintiff 95 Jerusalem LLC, filed a collection lawsuit against Gwendolyn and Ronald Waters, seeking rental

arrears from September 2020 through October 2020, totaling $3,500: *95 Jerusalem LLC v. Waters, et al.,* LT-002118-20/NA.

226.    On February 8, 2021, Defendants then filed another collection lawsuit in Supreme Court, seeking rental arrears from September 2020 through February 2021, totaling $10,250: *95 Jerusalem LLC v. Waters, et al.,* Index No. 601471/2021.

227.    On April 30, 2021, Ronald Waters filed a COVID-19 Hardship Declaration invoking the Tenant Safe Harbor Act in the District Court case.

228.    Despite the filing of this Declaration, Defendants nevertheless moved for a default judgment in the Supreme Court case on October 1, 2021.

229.    The Application was filed by Defendant Kenneth DeCota, and included an Affidavit in Support executed by him.

230.    Mr. DeCota's signature on the Application was a representation to both Waters and the Supreme Court that he had performed a meaningful attorney review of the Application, including but not limited to the P.C.'s own records on the account, and determined, based on professional attorney judgment, that there was a valid legal basis for the Application.

231.    If the P.C. and Mr. DeCota had performed a meaningful attorney review, they would have, at a minimum, reviewed the allegations of the Second Waters Lawsuit and seen that it was seeking judgments on the same rental arrears as the First Waters Lawsuit. Either the P.C. and Mr. DeCota failed to perform a meaningful attorney review – despite their implied representations to the contrary – or they performed a meaningful attorney review, realized the two lawsuits sought the same rental arrears, and intentionally filed, served, and litigated the Application for Default Judgment in the Second Waters Lawsuit to attempt to obtain a judgment

on the same rental arrears that they were attempting to obtain a judgment on in the First Waters Lawsuit.

232.    Specifically Mr. DeCota stated that he was "fully familiar with all of the facts and prior proceedings had herein" and that "Plaintiff is entitled to judgment its favor and against Defendants GWENDOLYN WATERS and RONALD WATERS, as demanded in the Complaint." Either Mr. DeCota falsely represented that he had performed a meaningful review, or he did perform a meaningful review but nevertheless falsely asserted that Defendants were entitled to a judgment despite seeking the same rental arrears in the First Waters Lawsuit.

233.    The Defendants' deception against Mr. Waters and the court appears to have been successful – the Supreme Court granted the motion and entered a default judgment on March 18, 2022.

*Silvia Rivera*

234.    On October 8, 2020, Defendants ATM and the P.C., via named plaintiff 655 Nassau LLC, filed a collection lawsuit in Nassau District Court against Silvia Rivera for rental arrears from September 2020 through October 2020: *655 Nassau LLC v. Rivera,* LT-002127-20/NA.

235.    On February 11, 2021, Defendants then filed another collection lawsuit in Supreme Court, seeking rental arrears from September 2020 through February 2021, totaling $10,220: *655 Nassau LLC v. Rivera*, Index No. 601653/2021.

236.    On October 1, 2021, Defendants moved for a default judgment in the Supreme Court.

237.    The Application was filed by Defendant Kenneth DeCota, and included an

41

Affidavit in Support executed by him.

238. Mr. DeCota's signature on the Application was a representation to both Rivera and the Supreme Court that he had performed a meaningful attorney review of the Application, including but not limited to the P.C.'s own records on the account, and determined, based on professional attorney judgment, that there was a valid legal basis for the Application.

239. If the P.C. and Mr. DeCota had performed a meaningful attorney review, they would have, at a minimum, reviewed the allegations of the Second Rivera Lawsuit and seen that it was seeking judgments on the same rental arrears as the First Rivera Lawsuit. Either the P.C. and Mr. DeCota failed to perform a meaningful attorney review – despite their implied representations to the contrary – or they performed a meaningful attorney review, realized the two lawsuits sought the same rental arrears, and intentionally filed, served, and litigated the Application for Default Judgment in the Second Rivera Lawsuit to attempt to obtain a judgment on the same rental arrears that they were attempting to obtain a judgment on in the First Rivera Lawsuit.

240. Specifically Mr. DeCota stated that he was "fully familiar with all of the facts and prior proceedings had herein" and that "Plaintiff is entitled to judgment its favor and against Defendants SILVIA RIVERA and JOSE ALDANA MARTINEZ, as demanded in the Verified Complaint." Either Mr. DeCota falsely represented that he had performed a meaningful review, or he did perform a meaningful review but nevertheless falsely asserted that Defendants were entitled to a judgment despite seeking the same rental arrears in the First Rivera Lawsuit.

241. On December 29, 2021, there was a hearing in the District Court case, but despite the pending application for default judgment in the Supreme Court case, it does not appear any effort was made to discontinue the District Court case for seeking the same rental arrears.

242.     On March 2, 2022, the Supreme Court granted Defendants' Motion and a default judgment was entered.

243.     On March 7, 2022, the District Court case noted that an ERAP application had been submitted.

### Defendants' Deceptive Scheme To Attempt To Collect The Same Rent Twice Forced Ms. Onfroy To Come To Duplicative Court Hearings And Caused Her Emotional Distress

244.     Ms. Onfroy has suffered emotional distress, embarrassment, and humiliation as a result of the Defendants' unlawful attempts to obtain duplicative judgments on the same rental arrears, particularly for having to appear at court hearings in a case that she learned was duplicative of two other cases against her.

245.     The biggest thing that bothers her about having to go into court is that it is always when she's working – she has to figure out how to take the time off of work without disclosing embarrassing information.

246.     She suspects that her coworkers are wondering why she has been coming in late.

247.     Sitting in the court for hours waiting is very frustrating – she feels nervous and will pray, wondering what will happen next and what the debt collector is going to say.

248.     Her eldest daughter will text her asking if things are okay. She is the only person who Ms. Onfroy has talked to about the lawsuits in detail.

249.     She cries every day about it. She will sit in her car over an hour after coming home from work, just thinking or crying.

250.     She's afraid of getting evicted, especially because of her experience being homeless prior to moving into the Residence. Her and her children did not have anywhere to live,

and she does not want that to happen again.

251.    She has been taking sleep medications because she has not been able to get any sleep at night due to anxiety. At first she was self-medicating with Tylenol PM, but she was afraid she was becoming dependent on it so she asked her doctor for help, who prescribed her two medications, one for anxiety and one for sleeping.

252.    The medication makes her nauseous so she does not like taking it and will try to not take it, but her doctor insists that she does because otherwise she will not get at least 5 hours of sleep per day and might hurt herself.

253.    It is typical for her to not be able to fall asleep until 3:00 AM and wake up at 6:00 AM, being unable to fall back asleep because she is thinking about the Residence and how she is tired of going to court.

254.    If she does not take the sleep aid she was prescribed she cannot sleep.

255.    The sleeplessness is worst prior to court hearings – for example, one night before a court hearing, she was in the bathroom for an hour, came back to her room and looked at all the court papers, prayed, but could not sleep. It was torturous.

256.    She feels lucky when she has 2 nights per week of good sleep. Sleeping has become her enemy.

257.    People at her work have noticed that she has not been sleeping and they have asked her "Are you okay? You look like you haven't slept."

258.    Her son has also asked her about her lack of sleep – he recently asked her if she was okay and it hurt her so much, tore her up inside that her son was worried about her.

259.    She doesn't want him to be stressed, he is just 14 years old so she feels like he

should not have to be trying to protect his mom.

260.     While her friends are not aware of everything going on with the lawsuits, they do know about her problems with sleep and they are worried about her.

261.     Her doctor told her she has high blood pressure and she needs to take it easy.

262.     She felt so overwhelmed at one point that she thought about committing herself.

263.     Sometimes she will go into her room and close the door and just cry, trying to figure out how to get through tomorrow.

264.     Ms. Onfroy is afraid to open the door to her apartment because she is worried the super will see her and she feels ashamed about her situation.

265.     If she avoids him, she won't get any more papers from him, so if she sees him she will sit in her car and wait until he's gone.

266.     While the Landlord has filed three collection lawsuits against her, the Landlord has not done basic maintenance to make the apartment habitable.

267.     There was a leak in her apartment that she called the Landlord about for months – when the Landlord failed to fix it, she even emailed Mr. Mott on February 7, 2022 about the problem. **Exhibit U** (Email to Mott).



*Figure 1 - Water damage in the Residence*

268.    The water damage caused black mold throughout the apartment which got into her clothes and smelled. She has had to throw out some of her clothes because of the mold on them.

269.    She worries that the mold may be making her and her son sick – her son had a cough for two weeks and the doctor could not figure out what was causing it. He took numerous tests, including for COVID-19, and none explained the cough.

270.    Ms. Onfroy believes it is the mold because there is a lot near her son's bed.

271.     While sections of the wall were cut out and patched up, Ms. Onfroy can still smell the mold and is now resorting to buying a dehumidifier.

272.     She tried to make partial payments so her rental arrears wouldn't keep accruing, but the Landlord refused to accept it.

273.     When she has spoken to the Landlord, they will abruptly hang up on her or yell at her like she is an animal.

274.     When she learned about the Second Collection Lawsuit she was nervous, she did not understand why she would be going there and it seemed huge, like she was going to get into a lot of trouble. It was especially distressing because she learned that there were no volunteer lawyers in the Supreme Court.

275.     As a mother, Ms. Onfroy is her kids' protector, especially her youngest son who is 14 years old. She avoids telling him anything about court because he will worry and not be able to focus in school.

276.     He was very anxious and scared when they got the eviction notice.

277.     Ms. Onfroy knows it probably is not good for her to keep her feelings bottled up but she feels like it is her burden to carry. She feels like a horrible mother.

278.     In addition to the emotional injury, Ms. Onfroy has also incurred monetary costs due to the court hearings, namely paying for parking meters and copying, as well as lost time and having to take off from work for multiple court settings.

## CLAIMS

### FIRST COUNT

**Violations of the Fair Debt Collection Practices Act (as to the Attorney Defendants)**

279.     Plaintiff repeats and realleges each and every allegation set forth above as if reasserted and realleged herein.

280.     The purpose of the FDCPA is "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e); see also *Hamilton v. United Healthcare of La., Inc.*, 310 F.3d 385, 392 (5th Cir. 2002) ("Congress, through the FDCPA, has legislatively expressed a strong public policy disfavoring dishonest, abusive, and unfair consumer debt collection practices, and clearly intended the FDCPA to have a broad remedial scope.").

281.     Congress designed the FDCPA to be enforced primarily through private parties – such as plaintiff – acting as "private attorneys general." *See* S. Rep. No. 382, 95th Con., 1st Sess. 5, ("[t]he committee views this legislation as primarily self-enforcing; consumers who have been subject to debt collection abuses will be enforcing compliance"); and *Jacobson v. Healthcare Fin. Servs.*, 516 F.3d 85, 91 (2d Cir. 2008) ("[i]n this way, the FDCPA enlists the efforts of sophisticated consumers like [plaintiff] as 'private attorneys general' to aid their less sophisticated counterparts, who are unlikely themselves to bring suit under the Act, but who are assumed by the Act to benefit from the deterrent effect of civil  actions brought by others.").

282.     The obligation alleged to be owed by Plaintiff is a "debt" as defined by 15 U.S.C. § 1692a(5) because the rental arrears were incurred for a residential apartment.

283.     Plaintiff is a "consumer" as defined by 15 U.S.C. § 1692a(3) because Plaintiff was alleged to owe a "debt" as defined by 15 U.S.C. § 1692a(5).

284.    For the reasons set forth in the "Parties" section of this Complaint, the Attorney Defendants are each a "debt collector" as defined in 15 U.S.C. § 1692a(6).

285.    Attorney Defendants violated the following sections of the FDCPA: 15 U.S.C. §§ 1692e and 1692f.  By way of example and not limitation, Defendants violated the FDCPA by taking the following actions in an attempt to collect a debt or in connection with an attempt to collect a debt: using false, deceptive or misleading representations or means; misrepresenting the character, amount, or legal status of the debt; misrepresenting the compensation which may be lawfully received; the false representation or implication that any individual is an attorney or that any communication is from an attorney; threatening to take and actually taking an action prohibited by law, or threatening to take an act not intended to be taken; communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed; using any false representations or deceptive means; using unfair or unconscionable means; and collecting or seeking to collect any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.

286.    As a direct and proximate result of the Attorney Defendants' violations, Plaintiff has suffered damages, including, *inter alia*, significant emotional distress, embarrassment, and humiliation.

287.    The injuries inflicted on Plaintiff by Attorney Defendants are concrete and particular, and these injuries have a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts.

288.    Ms. Onfroy suffered economic injuries that historically has provided a basis for

49

lawsuits in American courts, including but not limited to out of pocket expenses for making copies and for parking.

289.    Ms. Onfroy's injuries are analogous to, *inter alia*, the following common law claims: negligence and abuse of process.

290.    Attorney Defendants had a duty to exercise reasonable care in the collection of debts, including in the selection of companies to attempt to collect the debt, in ensuring that a debt is not linked to the wrong party, and in furnishing agents with accurate information when those agents rely on and use that information in attempting to collect debts.

## SECOND COUNT

**Deceptive Acts or Practices in Violation of New York General Business Law § 349 (as to all Defendants)**

291.    Plaintiff repeats and realleges each and every allegation set forth above as if reasserted and realleged herein.

292.    New York General Business Law § 349(a) prohibits "deceptive acts or practices in the conduct of any business, trade, or commerce, or in the furnishing of any service in this state."  An individual "injured by reason of any violation of this section may bring an action in his own name to enjoin such unlawful act or practice, an action to recover his actual damages or fifty dollars, whichever is greater, or both such action." N.Y. Gen. Bus. § 349(h).

293.    As enumerated above, Defendants violated N.Y. Gen. Bus. § 349 *et seq.* by using deceptive acts and practices in the conduct of their businesses. These acts were done by Defendants systematically and, as such, have had a broad impact on consumers at large.

294.    Defendants committed the above described acts willfully and/or knowingly.

295.    Defendants' wrongful and deceptive acts have caused injury and damages to Plaintiff and unless enjoined will cause further irreparable injury.

296.    As a direct and proximate result of those violations of N.Y. Gen. Bus. § 349 *et seq,* Plaintiff has suffered compensable harm and is entitled to preliminary and permanent injunctive relief, and to recover actual, treble, exemplary, and damages, together with costs and attorney's fees

297.    Defendants falsely, deceptively, and misleadingly represented to Ms. Onfroy that they had the right to obtain two judgments in two different courts for the same rental arrears.

298.    The Defendants' deceptive conduct towards Ms. Onfroy is the type of conduct that has a broad impact on consumers at large.

299.    Defendants knew or should have known—based on publically available Internet records, information in the court file, their own records, and finally Ms. Onfroy's OSC—that they were attempting to collect on the same rental arrears in two different lawsuits.

300.    That the relevant steps may be taken in a matter of minutes shows a high degree of moral culpability.  Defendants' violations were willful and knowing, or, at minimum, evidence a conscious and reckless disregard for basic fairness and for the law. Defendants' wrongful and deceptive acts caused injury and damages to Plaintiff.

301.    As a direct and proximate result of Defendants' violations, Plaintiff has suffered damages, including, *inter alia*, significant emotional distress, embarrassment, and humiliation.

302.    The injuries inflicted on Plaintiff by Defendants are concrete and particular, and these injuries have a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts.

303.    Ms. Onfroy suffered economic injuries that historically has provided a basis for lawsuits in American courts, including but not limited to out of pocket expenses for making copies and for parking.

304.    Ms. Onfroy's injuries are analogous to, *inter alia*, the following common law claims: negligence and abuse of process.

305.    Defendants had a duty to exercise reasonable care in the collection of debts, including in the selection of companies to attempt to collect the debt, in ensuring that a debt is not linked to the wrong party, and in furnishing agents with accurate information when those agents rely on and use that information in attempting to collect debts.

## THIRD COUNT

### Negligence (as to all Defendants)

306.    Plaintiff repeats and realleges each and every allegation set forth above as if reasserted and realleged herein.

307.    Defendants owed Plaintiff a reasonable duty of care to not engage in deceptive acts and unlawful practices in the conduct of their business.

308.    The P.C. had a duty to exercise reasonable care in the collection of debts, including in the selection of companies to attempt to collect the debt, in ensuring that a debt is not linked to the wrong party, and in furnishing agents with accurate information when those agents rely on and use that information in attempting to collect debts.

309.    Further, the Landlord owed Plaintiff a reasonable duty of care in the upkeep of the habitability of the Residence.

310.    Defendants breached these duties, including by misrepresenting entitlement to two separate judgments for the same rental arrears, failing to make repairs in the apartment, and engaging in deceptive acts and unlawful practices as described above.

311.    As a direct and proximate result of Defendant's breach of these duties, Ms. Onfroy suffered compensable harm, including actual damages and emotional distress.

## FOURTH COUNT

### Gross Negligence (as to all Defendants)

312.    Plaintiff repeats and realleges each and every allegation set forth above as if reasserted and realleged herein.

313.    Defendants' failure to exercise even slight care or diligence amounts to gross negligence.

314.    Moreover, had Defendants exercised even slight diligence they would have known their conduct was unlawful.

315.    Defendants' actions evince a reckless disregard for the rights of Ms. Onfroy and others. The actions have the appearance of intentional wrongdoing. Defendants' conduct was part of a broader pattern of misconduct aimed at the public in general.

316.    Defendants' conduct demonstrates a high degree of moral culpability and willful or wanton negligence or recklessness. As a result, Ms. Onfroy is entitled to a punitive damage award.

## JURY DEMAND

317.    Please take notice that Plaintiff demands a trial by jury.


## PRAYER FOR RELIEF

318.    Wherefore, Plaintiff requests the following relief:

    a. A declaration that Defendants have committed the violations of law alleged in this action;

    b. An order enjoining and directing Defendants to cease violating New York G.B.L. § 349;

  c. Actual damages

  d. Punitive damages;

  e. Statutory damages under 15 U.S.C. § 1692k and G.B.L. § 349;

  f. An order awarding disbursements, costs, and attorney fees under 15 U.S.C. §
   1692k and G.B.L. § 349;

  g. Pre-judgment and post-judgment interest as permitted by law;

  h. All other and further relief that the Court deems just and proper.

Dated: August 26, 2022

          /s/ *Ahmad Keshavarz*
          _____
          Ahmad Keshavarz
          Emma Caterine
          The Law Office of Ahmad Keshavarz
          16 Court St., 26th Floor
          Brooklyn, NY 11241
          Tel: (718) 522-7900
          Fax: (877) 496-7809
          Email: ahmad@NewYorkConsumerAttorney.com

          /s/ *Jonathan A. Schwartz*
          _____
          Nassau Suffolk Law Services Committee, Inc.
          By: Jonathan A. Schwartz, of Counsel
          1 Helen Keller Way, 5th Floor,
          Hempstead, NY 11550
          Phone: (516) 292-8100
          Fax: (516) 292-6529
          Email: jschwartz@nsls.legal

cc: All counsel (via ECF)