UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------x

LOVERN ONFROY,

                                   Index No. 1:22-cv-2314-EK-LB

                Plaintiff,

v.

THE LAW OFFICES OF GEOFFREY T.
MOTT, P.C.,
GEOFFREY T. MOTT,
KENNETH J. DECOTA, SAMUEL MILLER,
ARTHUR T. MOTT REAL ESTATE, LLC, and
700 MERRICK LLC

                Defendants.

-------------------------------------------------------------x

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO MOTT DEFENDANTS' MOTION TO DISMISS

The Law Office of Ahmad Keshavarz
16 Court Street, 26th Floor,
Brooklyn, NY 11241-1026
(718) 522-7900
*Counsel for Plaintiff Lovern Onfroy*

**TABLE OF CONTENTS**

I.      PRELIMINARY STATEMENT ............................................................................... 1

II.     STANDARD OF REVIEW .................................................................................... 1

III.    SUMMARY OF RELEVANT FACTUAL ALLEGATIONS ............................................. 2

IV.     ARGUMENTS AS TO THE DECOTA MTD ................................................... 16

   A.   KENNETH DECOTA, A DEBT COLLECTOR, VIOLATED THE FDCPA BY
   DECEPTIVELY AND UNFAIRLY SEEKING A DEFAULT JUDGMENT AGAINST MS.
   ONFROY .................................................................................................................... 16

        1.   Kenneth DeCota Regularly Collects Debts Owed or Due Another. .............................. 16

        2.   Kenneth DeCota Violated 1692e by Deceptively Representing Entitlement to a
        Judgment on Rental Arrears Already Sought in Another Collection Lawsuit ..................... 19

        3.   Kenneth DeCota Violated 1692f by Unfairly Seeking and Obtaining a Default
        Judgment on Rental Arrears Already Sought in Another Collection Lawsuit ..................... 23

   B.   KENNETH DECOTA'S DECEPTIVE APPLICATION FOR A DEFAULT JUDGMENT
   AGAINST MS. ONFROY WAS PART OF A DECEPTIVE PRACTICE VIOLATING GBL §
   349.24

   C.   KENNETH DECOTA'S DECEPTIVE APPLICATION FOR A DEFAULT JUDGMENT
   AGAINST MS. ONFROY WAS NEGLIGENT AND GROSSLY NEGLIGENT ................. 27

V.      ARGUMENTS AS TO MOTT DEFENDANTS' MOTION TO DISMISS ......................... 28

   D.   MS. ONFROY HAS ARTICLE III STANDING ............................................... 28

   E.   MOTT DEFENDANTS' ARGUMENT OF "AVOID[ING] NON-PAYMENT OF RENT
   IN FEDERAL COURT" IS NONSENSICAL ...................................................................... 31

   F.   THIS IS NOT A CLASS ACTION LAWSUIT AND THIS COURT HAS
   SUPPLEMENTAL JURISDICTION OVER PLAINTIFF'S GBL § 349 CLAIMS. ............... 34

        1.   This Court has jurisdiction over Plaintiff's GBL § 349 claims via supplemental
        jurisdiction. ........................................................................................................... 34

        2.   Mott Defendants' conduct was consumer-oriented based on clear factual allegations.. 35

        3.   Individual conduct of Mott Defendants was clearly specified, and moreover Plaintiff
        alleged that Mott Defendants function as a single enterprise committing violations in
        concert. ............................................................................................................... 36

VI.     CONCLUSION ............................................................................................... 40

## TABLE OF AUTHORITIES

*Cases*

*23 Realty Assoc. v. Teigman*, 213 AD2d 306, 308 (1st Dept 1995) .............................................. 26

*384 Hotel Corp. v. Café Comedy*, 6/4/92 N.Y.L.J. 24, col. 2 (Civ Ct. N.Y. County) .................. 32

*390 West End Associates v. Raiff*, 166 Misc. 2d 730 (App. Term 1st Dep't. 1995) .................... 33

*610 W. 142nd St. Owners Corp. v. Braxton*, 140 Misc.2d 826, 827 (App. Term, 1st Dept. 1988) ............................................................................................................................................................ 33

*99 Realty Co. v. Wall Street Transcript Corp.*, 165 Misc.2d 454 (App. Term 1st Dep't. 1995).. 33

*Aghaeepour v. N. Leasing Sys., Inc.*, No. 14 CV 5449 (NSR), 2015 WL 7758894, at *15 (S.D.N.Y. Dec. 1, 2015) ......................................................................................................................... 24

*Aguaiza v. Vantage Properties, LLC*, 69 A.D.3d 422 (App. Div. 1st Dep't 2010) ...................... 26

*American Protein Corp. v. AB Volvo*, 844 F.2d 56, 60 (2d Cir. 1988) ........................................ 38

*Arias v. Gutman, Mintz, Baker & Sonnenfeldt LLP*, 875 F.3d 128, 135-136 (2d Cir. 2017) ..23-24

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ................................................................................... 2

*Cameron v. LR Credit 22*, LLC, 998 F. Supp. 2d 293, 300 (S.D.N.Y. 2014) .............................. 19

*Campbell v. MBI Assocs., Inc.,* 98 F. Supp. 3d 568, 588 (E.D.N.Y. 2015) ........................... 25, 35

*Capmark Fin. Grp. Inc. v. Goldman Sachs Credit Partners L.P.*, 491 B.R. 335, 349–50 (S.D.N.Y. 2013) ................................................................................................................................. 38

*Carter v. HealthPort Techs., LLC,* 822 F.3d 47, 55 (2d Cir. 2016) .............................................. 29

*Clomon v. Jackson,* 988 F.2d 1314, 1318 (2d Cir.1993) ............................................................... 19

*Collazo v. Netherland Prop. Assets LLC*, 35 N.Y.3d 987, 149 N.E.3d 30 (2020) ...................... 27

*Colo. Capital v. Owens,* 227 F.R.D. 181, 191 (E.D.N.Y.2005).............................................. 27, 30

*Colorado River Water Conservation Dist. v. U. S.*, 424 U.S. 800, 813, 817 (1976) ................... 32

*Cook v. Sheldon,* 41 F.3d 73, 80 (2d Cir.1994) ............................................................................ 30

*Coronet Properties Co. v. Lederer*, N.Y.L.J., 2/21/86, p. 12, col. 2 (App. Term 1st Dep't.) ....... 33

*Czyzewski v. Jevic Holding Corp.*, 137 S. Ct. 973, 983 (2017) .................................................... 29

*D&Z Holding Corp. v. Boulart*, 4/18/90 NYLJ 24 col. 6  (Civ. Ct. Kings County).................... 33

*Diaz v. Portfolio Recovery Assocs., LLC*, No. 10 CV 3920 MKB CLP, 2012 WL 1882976, at *5 (E.D.N.Y. May 24, 2012) ....................................................................................................... 19, 24

*Easterling v. Collecto, Inc.*, 692 F.3d 229, 233 (2d Cir. 2012) .............................................. 19-20

*Elacqua v. Physicians' Reciprocal Insurers*, 52 A.D.3d 886, 888 (3rd Dept. 2008) ............. 25-26

*Fritz v. Resurgent Capital Servs., LP*, 955 F.Supp.2d 163, 175 (E.D.N.Y. 2013) ...................... 32

*Gabriele v. American Home Mortgage Servicing, Inc.*, 503 F. App'x 89, 95 (2d Cir. 2012)....... 22

*Goldstein v. Hutton, Ingrain, Yuzek, Gainen, Carroll & Bertolotti*, 374 F.3d 56, 62 (2d Cir. 2004) ............................................................................................................................................................. 17

iii

*Hawkins-El v. First Am. Funding, LLC*, 891 F. Supp. 2d 402, 412 (E.D.N.Y. 2012), *aff'd*, 529 F. App'x 45 (2d Cir. 2013) ................................................................................................ 27, 30

*Hemmingsen v. Messerli & Kramer, P.A.*, 674 F.3d 814, 818 (8th Cir. 2012)............................ 22

*Himmelstein, McConnell, Gribben, Donoghue & Joseph, LLP v. Matthew Bender & Co.*, 37 NY3d 169, 177 (2021) ............................................................................................................. 25

*Hunter v. Palisades Acquisition XVI, LLC*, No. 16 CIV. 8779 (ER), 2017 WL 5513636, at *9 (S.D.N.Y. Nov. 16, 2017) ...................................................................................................... 37

*Isaac v. NRA Grp.*, LLC, 377 F. Supp. 3d 211, 215-216 (E.D.N.Y. 2019), *aff'd*, 798 F. App'x 693 (2d Cir. 2020)................................................................................................................... 36

*Johnson v. Rowley*, 569 F.3d 40, 43-44 (2d Cir. 2009) ............................................................... 1

*Kirno Hill Corp. v. Holt*, 618 F.2d 982, 985 (2d Cir.1980)........................................................ 37

*Krapf v. Prof'l Collection Servs., Inc.*, 525 F. Supp. 324, 327 (E.D.N.Y. 2007).................... 36

*Lautman v 2800 Coyle St. Owners Corp.*, No. 14-CV-1868 (ARR) (VVP), 2014 WL 4843947 (EDNY Sep. 26, 2014)............................................................................................................. 22

*Lindor v. Palisades Collection, LLC*, 30 Misc. 3d 754, 762-763, 914 N.Y.S.2d 867, 874 (Sup. Ct. 2010) ...................................................................................................................................... 27

*Losch v. Nationstar Mortg. LLC*, 995 F.3d 937 (11th Cir. 2021) ............................................... 31

*Lozano v. Grunberg*, 195 A.D.2d 308 (App. Div. 1st Dept. 1993) ..................................... 26, 34

*Makhnevich v. Bougopoulos*, No. 18CV285KAMVMS, 2022 WL 939409, at *5 (E.D.N.Y. Mar. 29, 2022) ............................................................................................................................. 30-31

*Mar. Ventures Int'l, Inc. v. Caribbean Trading & Fid., Ltd.*, 689 F. Supp. 1340, 1348 (S.D.N.Y. 1988) ................................................................................................................................... 37-39

*Marine Midland Bank v Russo Produce Co.*, 50 NY2d 31, 44 (N.Y. 1980) ............................... 36

*Mayfield v. Asta Funding, Inc.*, 95 F. Supp. 3d 685, 700 (S.D.N.Y. 2015)................................. 24

*McCrobie v. Palisades Acquisition XVI, LLC*, 359 F. Supp. 3d 239, 255 (W.D.N.Y. 2019) 25, 32, 35, 36

*McGowan v. Maryland*, 366 U.S. 420, 430-431, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961) ............. 29

*Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 301 (2d Cir.2003)................................... 21

*Morales v. Kavulich & Assocs., P.C.*, 294 F. Supp. 3d 193, 197, 198 (S.D.N.Y. 2018)............. 24

*Musah v. Houslanger & Assocs., PLLC*, 962 F.Supp.2d 636, 641 (S.D.N.Y. 2013) ................... 21

*Myerson v. Prime Realty Services, LLC*, 7 Misc.3d 911, 921 (Sup. Ct. NY Co. 2005) .............. 26

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 647 N.E.2d 741,745 (N.Y. 1995)............................................................................................................................. 25

*Page v. Forster & Garbus, LLP*, No. 18CV3611SJFARL, 2019 WL 5696108, at *4 (E.D.N.Y. June 17, 2019)......................................................................................................................... 32

*Polonetsky v. Better Homes Depot*, 97 N.Y.2d 46 (N.Y. 2001) ........................................... 36-37

*Quinn v. Parkoff Operating Corporation*, 59 Misc. 3d 1202(A) (N.Y. Sup. Ct. 2018) .............. 26

*Rozier v. Fin. Recovery Sys., Inc.*, No. 10-CV-3273 DLI JO, 2011 WL 2295116, at *5 (E.D.N.Y. June 7, 2011)............................................................................................................................. 25

*Rutty v. Melvin R. Kirmko,* 789 F. App'x 916 (2d Cir. 2020)...................................................... 18

*Samms v. Abrams, Fensterman, Fensterman, Eisman, Formato, Ferrara & Wolf, LLP*, 163 F. Supp. 3d 109, 116 (S.D.N.Y. 2016)............................................................................ 20, 24, 35

*Sanchez v. Ehrlich*, No. 16-CV-8677 (LAP), 2018 WL 2084147, at *7 (S.D.N.Y. Mar. 29, 2018) .................................................................................................................................................. 28

*Savino v. City of New York*, 331 F.3d 63, 76 (2d Cir. 2003) ....................................................... 30

*Shantou Real Lingerie Mfg. Co. v. Native Grp. Int'l, Ltd.*, 401 F. Supp. 3d 433, 440 (S.D.N.Y. 2018) ......................................................................................................................................... 39

*Sigmon v. Goldman Sachs Mortgage Company,* No. 1:12-cv-3367 (ALC) (S.D.N.Y. July 22, 2016) ......................................................................................................................................... 34

*Simmons v. Roundup Funding, LLC*, 622 F.3d 93, 96 (2d Cir. 2010) .......................................... 21

*Small v. Lorillard Tobacco Co.*, Inc. 94 N.Y.2d 43 at 55 (1999) .......................................... 26, 29

*Sykes v. Mel Harris & Associates, LLC,* 757 F.Supp.2d 413, 428 (S.D.N.Y. 2010).................... 24

*Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 n.1 (2002)......................................................... 2

*Toste v. Beach Club at Fontainebleau Park Condo. Ass'n, Inc.*, 2022 WL 4091738 at * 4 (11th Cir. Sept. 7, 2022) ..................................................................................................................... 28

*Transunion LLC v. Ramirez,* 141 S.Ct. 2190 (2021) ............................................................. 28-30

*Viernes v. DNF Assocs., LLC*, 582 F. Supp. 3d 738, 749-750 (D. Haw. 2022).......................... 30

*Villalba v. Houslanger & Assocs., PLLC*, No. 19CV4270PKCRLM, 2022 WL 900538 (E.D.N.Y. Mar. 28, 2022)...................................................................................................................... 22, 24

*Vincent v. The Money Store,* 736 F.3d 88, 101 (2d Cir. 2013) ................................................... 18

*Warrin c. Haverty*, 149 A.D. 564 (1912) .................................................................................... 32

*White v. Goodman,* 200 F.3d 1016 (7th Cir. 2000)..................................................................... 18

*White v. Simonson & Cohen P.C.,* 23 F. Supp. 2d 273 (E.D.N.Y. 1998) ............................... 18-19

*Winslow v. Forster & Garbus, LLP*, No. CV 15-2996 (AYS), 2017 WL 6375744, at *9 (E.D.N.Y. Dec. 13, 2017) ........................................................................................................ 32

*Wm. Passalacqua Builders, Inc. v. Resnick Developers S., Inc.*, 933 F.2d 131, 139 (2d Cir. 1991) .................................................................................................................................................. 38

*Woodford v. Cmty. Action Agency of Greene County, Inc.*, 239 F.3d 517, 522 (2d Cir. 2001).... 32

**Statutes**

Fed. R. Civ. P. 12(b)(6)................................................................................................................. 2

15 U.S.C. § 1692, *et. seq.*................................................................................................... *passim*

N.Y. Gen. Bus. Law § 349................................................................................................... 24-37

## I.    PRELIMINARY STATEMENT

Defendant Kenneth DeCota's Motion to Dismiss is the usual litany of well-tread unsuccessful arguments against the Fair Debt Collection Practices Act (FDCPA) and GBL § 349, punctuated by pleas for this Court to have mercy on Mr. DeCota based on his age and inexperience.

The three-pronged Motion to Dismiss assembled by Defendants The Law Offices of Geoffrey T. Mott, P.C., Geoffrey T. Mott, Samuel Miller, Arthur T. Mott Real Estate, LLC, and 700 Merrick, LLC (collectively "the Mott Defendants") is a jumbled collection of attacks against the Plaintiff and, occasionally, legal arguments. The callous regard for Plaintiff in this Motion is exactly what animated Mott Defendants' conduct: a belief that, once a tenant has failed to pay rent, Defendants can go after that tenant in whatever manner they see fit. Mott Defendants' arguments are repeated in different sections, such as their arguments as to Article III standing (*see* Mott Defendants' Memorandum of Law to the Motion To Dismiss (hence "Mott MOL"), pp. 8, 11, 13, 15-16). Rather than following this chaotic structure, Plaintiff will proceed by subject as follows: (1) Article III standing, (2) interrelation between this case and the state court proceedings, (3) jurisdiction over the state law claims, (4) "consumer-oriented" under GBL § 349, and (5) direct and vicarious liability of each Defendant.

## II.    STANDARD OF REVIEW

All Defendants move to dismiss pursuant to Rule 12(b)(6) for failure to state a claim. To survive the motion to dismiss the Plaintiff must plead "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Johnson v. Rowley*, 569 F.3d 40, 43-44 (2d Cir. 2009) (internal citation and quotation marks omitted). A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

1

defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court must draw all reasonable inferences in favor of the plaintiff. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 n.1 (2002).

Oddly, the Mott Defendants also move for a judgment on the pleadings pursuant to Rule 12(c). However it is only applicable "[a]fter the pleadings are closed," which is not the case here as no Defendant has answered. Equally perplexing is the cite to Rule 12(b)(1), which governs "lack of subject-matter jurisdiction."  Subject-matter jurisdiction "defines 'a court's competence to adjudicate a particular category of cases.'" *Platinum-Montaur Life Scis., LLC v. Navidea Biopharmaceuticals, Inc.*, 943 F.3d 613, 617 (2d Cir. 2019) *quoting Wachovia Bank v. Schmidt*, 546 U.S. 303, 305, 126 S.Ct. 941, 163 L.Ed.2d 797 (2006). It is unclear why Mott Defendants cite to Rule 12(b)(1) as their brief does not address federal question jurisdiction or 28 U.S.C. § 1331, Plaintiff's basis for subject-matter jurisdiction. *See* **Exhibit 1 to Keshavarz Declaration** (First Amended Complaint) at ¶ 1 (hence "FAC"). The argument which they make in their section titled "Rule 12(b)(1)" just appears to be their argument as to Article III injury under Rule 12(c). *Compare* Mott MOL p. 5 ("Plaintiff evidences no actual injury") to Mott MOL p. 7 ("Plaintiff, a non-paying tenant, was not somehow injured because of, *inter alia,* her violation of a rental lease").

## III.    SUMMARY OF RELEVANT FACTUAL ALLEGATIONS

Plaintiff Lovern Onfroy is an individual who resides in Nassau County, New York. *Id.* ¶ 4. Defendant 700 Merrick, LLC ("the LLC") is a New York limited liability company. *Id.* ¶ 6. The LLC was the petitioner in all three collection lawsuits against Ms. Onfroy, and alleged in all three lawsuits that it was the landlord of Ms. Onfroy's residence. *Id.* ¶ 7. Defendant Arthur T. Mott Real Estate, LLC ("ATM") is a New York limited liability. *Id.* ¶ 8. Defendant ATM

maintains a process address at 249 West Merrick Road, Freeport, NY – the same address for process maintained by the LLC. *Id.* ¶ 9. Defendant ATM maintains a principal place of business at 249 West Merrick Road, Freeport, NY, a property which it owns and is the same principal place of business as the LLC. *Id.* ¶¶ 10-11.

ATM bought the property at 700 Merrick in 1995, and only transferred ownership to the LLC in 2013. *Id.* ¶ 12. Defendant ATM operates and manages 31 residential apartment complexes via limited liability companies located in Nassau and Queen Counties, including the LLC. *Id.* ¶ 13. ATM, the LLC, and the other 30 residential apartment limited liability companies form a single enterprise ("the ATM Enterprise"), and the companies within the ATM Enterprise: (1) are interrelated in their operations; (2) share centralized control of labor relations; (3) are under common management; (4) are commonly owned and financially controlled; (5) share personnel; (6) share electronic links for website apartment listings; and (7) share offices. *Id.* ¶ 14. Upon information and belief, the limited liability corporations, including the LLC, are inadequately capitalized to operate independently because the limited liability corporations, including the LLC, are set up by the ATM Enterprise solely to be used for a corresponding apartment complex – in the case of the LLC, the apartment complex at 700 Merrick Road, Baldwin, NY 11510. *Id.* ¶¶ 15-16.

Defendant ATM advertises the 700 Merrick Road apartment complex on its website, and upon information and belief, all marketing of the 700 Merrick Road apartment complex is done through Defendant ATM. *Id.* ¶ 17 *citing* **Exhibit A** (ATM Website). Upon information and belief, the limited liability corporations in the ATM Enterprise, including the LLC, have no independent discretion from ATM, with ATM essentially making all decisions for the corporations. FAC ¶ 18. For example, the ATM Enterprise companies have entered into

3

mortgages for their respective properties jointly rather than entering into separate mortgages independently from one another. *Id.* ¶ 19.

Since ATM employee Joseph Nicaj is listed in the collection lawsuits filed by the ATM Enterprise as the managing agent for the limited liability corporations, upon information and belief, the limited liability corporations, including the LLC, are not dealt with by ATM at arms-length in transactions, including but not limited to the collection of rent from residential tenants like Plaintiff. *Id.* ¶¶ 20-21. Upon information and belief, the LLC is not treated as an independent profit center – when it makes a profit, so does ATM. *Id.* ¶ 22. Upon information and belief, ATM may otherwise disregard the corporate formalities of the limited liability corporations including the LLC that are not currently apparent given their internal nature, such as ATM paying or guaranteeing the debts of the limited liability corporations and whether the property of ATM (beyond the shared office already mentioned) is used by the limited liability corporations as if it were their own. *Id.* ¶ 23. The LLC is not a separate corporation but a mere alter ego of ATM; the LLC was created, along with the other limited liability corporations, to put a level of (illusory) separation between ATM and the affairs of residential tenants, such as the collection of rent. *Id.* ¶ 24. When ATM uses corporations like the LLC to collect on debts, it obfuscates ATM's role in and responsibility for the collection; for most consumers and courts, they never know about this third entity involved, despite that it performs the daily management of the account. *Id.* The corporate separateness between ATM and the LLC should be disregarded, and the conduct of the LLC should be treated as the conduct of ATM for the purposes of fact and liability. *Id.* ¶ 25.

Even without disregarding the corporate separateness between ATM and the LLC, because they operate as a joint venture for the collection of rent, ATM and the LLC are jointly and severally liable for their conduct in attempting to collect rent, including the collection

4

lawsuits against Ms. Onfroy. *Id.* ¶ 26. ATM and the LLC will thus be collectively referred to as "the Landlord." *Id.* ¶ 27. Defendant The Law Offices of Geoffrey T. Mott, P.C. ("the P.C.") is a debt collection law firm organized under the laws of the State of New York which engages in business in New York State, and this suit arises out of the P.C.'s business in New York State. *Id.* ¶ 28. The P.C.'s principal purpose is the collection of consumer debts alleged to be due to another, and it regularly does so. *Id.* ¶ 29. Specifically, the P.C. regularly collects or attempts to collect, directly or indirectly, rental arrears and other debts asserted to be due another by filing dozens of collection lawsuits, collecting on putative judgments, and sending hundreds of collection letters. *Id.* The P.C. exclusively files collection lawsuits for the ATM Enterprise via representing the limited liability corporations, including the LLC. *Id.* ¶ 30. Upon information and belief, Defendant ATM is, either in fact or in practice, the client of the P.C. and directs its representation of the ATM Enterprise, including but not limited to Defendant ATM providing the P.C. with the accounts for alleged rental arrears to file lawsuits to attempt to collect. *Id.* ¶ 31.

Defendant Geoffrey T. Mott, a natural person and resident of New York, is the principal of the P.C. and, on information and belief, organizes, manages, oversees, and controls the operation of the P.C. *Id.* ¶ 32. Mr. Mott regularly collects or attempts to collect, directly or indirectly, debts owed and due or asserted to be due another. Many, if not most, of the summons and complaints filed by the P.C., as well as other documents like collection letters, go out under the putative signature of Mr. Mott. *Id.* ¶ 33. Defendant Kenneth DeCota was an associate attorney at the P.C. and, on information and belief, is a resident of the State of New York. *Id.* ¶ 34. On information and belief, Mr. DeCota's employment with the P.C. was recently terminated. *Id.* ¶ 35. Mr. DeCota regularly collected or attempted to collect, directly or indirectly, debts owed and due or asserted to be due another – namely the putative creditors named as plaintiffs in the

5

collection lawsuits filed by the P.C. *Id.* ¶ 36. For the collection lawsuits filed by the P.C., Mr. DeCota filed motions, executed affirmations in support of motions, appeared at the court hearings on motions, and negotiated with consumers to extract payments, signed stipulations of settlement, or sought to enter judgments. *Id.* In suits where Mott is double suing for the same rent and the consumer defaults, it was Mr. DeCota who filed the applications for default judgment. *Id.* Further, during the time of his employment, he regularly went to court hearings and negotiated with tenants at court seeking to collect rent alleged to be due. *Id.*

Defendant Samuel Miller is an associate attorney at the P.C. and, on information and belief, is a resident of the State of New York. *Id.* ¶ 37. For the collection lawsuits filed by the P.C., Mr. Miller files motions, executes affirmations in support of motions, appears at the court hearings on motions, and negotiates with consumers to extract payments, sign stipulations of settlement, or seeks to enter judgments. *Id.*

On or around June 1, 2019, Lovern Onfroy moved into Apartment No. 3F located at 700 Merrick Road, Baldwin, NY 11510 ("the Residence"), owned and managed by the Landlord. *Id.* ¶ 39. Prior to moving into the Residence, Ms. Onfroy had been homeless, and to the present she still has anxiety about becoming homeless again. *Id.* ¶ 40. Ms. Onfroy works part time in a hospital as a dietician – her salary was not enough to make ends meet, and she began to fall behind on rent on or around February of 2020. *Id.* ¶ 41.

On March 5, 2020, the Landlord through the P.C. filed a lawsuit against Ms. Onfroy in Nassau County District Court, First District, captioned *700 Merrick LLC v. Lovern A. Onfroy*, LT-001067-20/NA, seeking $1,875 and Ms. Onfroy's eviction from the residence. FAC ¶ 45 *citing* **Exhibit E** (First Collection Lawsuit). The First Collection Lawsuit was signed by Mr. Mott and included a Verified Petition signed by Joseph Nicaj, who is described as the Managing

6

Agent of 700 Merrick, LLC. FAC ¶¶ 46-47. Soon thereafter, New York courts shut down due to the COVID-19 pandemic and at an appearance on March 18, 2020, the case was adjourned to June 3, 2020. *Id.* ¶ 48. On or around June 1, 2020, Ms. Onfroy signed a renewal of the lease for the Residence. *Id.* ¶ 49. At the June 3, 2020 Hearing, another adjournment was made to July 23, 2020. *Id.* ¶ 50. There were 6 more adjournments until on December 16, 2021, a Default Judgment was entered awarding possession to the LLC. *Id.* ¶ 51. Defendants alleged that service of a "Notice to Tenant of Pending Default Judgment and Notice to Tenant – Tenant's Declaration of Hardship During the COVID-19 Pandemic" was made on November 3, 2021 via certified mail but tracking does not show delivery. *Id.* ¶¶ 52-53 *citing* **Exhibit F** (Tracking for Notice of Default).

On June 30, 2020, the State of New York enacted the Tenant Safe Harbor Act, which stayed warrants of eviction and judgments of possession for those suffering hardship because of COVID-19. *Id.* ¶ 58. This law is carried out by consumers like Ms. Onfroy filing hardship declarations as part of an affirmative defense, and the automatic stay would last until at least May 1, 2021. *Id.* ¶ 59. On December 27, 2020 the State of New York also enacted an Emergency Rental Assistance Program (ERAP) which provides up to 12 months of rental arrears payments for rents accrued on or after March 13, 2020 and up to 3 months of additional rental assistance if the household is expected to spend 30 percent or more of their gross monthly income to pay for rent. *Id.* ¶ 60. Further, the arrears covered cannot be used as the basis for non-payment eviction, and eviction proceedings will be stayed pending a determination of eligibility. *Id.* ¶ 61. Importantly, payments for rental arrears are paid directly to the landlord – ERAP is just as much a benefit for landlords as it is for consumers. *Id.* ¶ 62. The housing courts, including the Nassau District Court, provide consumers with notices enclosing a form hardship declaration and contact

information for civil legal services. FAC ¶ 63 *citing* **Exhibit G** (Notice of COVID Protections). This Notice is not provided by the Supreme Court. FAC ¶ 64. Moreover, the various free legal service programs – such as in Nassau County -- only operate in the civil and housing courts, not in the Supreme Court. *Id.* Thus a consumer sued in Supreme Court will likely not have notice of the protections of the Tenant Safe Harbor Act and ERAP. *Id.* ¶ 65.

On March 1, 2021, just a few months after a hearing in the First Collection Lawsuit, the Landlord, by and through the P.C., filed another collection lawsuit (the "Second Lawsuit") against Ms. Onfroy in the Supreme Court of the State of New York, Nassau County, captioned, *700 Merrick LLC v. Lovern Onfroy*, Index No. 602442/2021. FAC ¶ 67 *citing* **Exhibit H** (Second Collection Lawsuit). The Second Lawsuit was based on the Lease Renewal on or around June 1, 2020. FAC ¶ 68. It alleged that Ms. Onfroy had not paid rent from October 1, 2020 through March 31, 2021, totaling $12,900. *Id.* ¶ 69. It also sought $5,000 in attorney's fees. *Id.* ¶ 70. Like the First Lawsuit, the Second Collection Lawsuit was verified by Joseph Nicaj, who was listed as the managing agent for the LLC. *Id.* ¶ 71. Notably, on the same page below the signature of the notary, is "litig/2021/Complaints/ATM/complaint lease ATM Onfroy." *Id.* ¶ 72. This corroborates Plaintiff's belief that the client of the P.C. is, in fact or in practice, ATM rather than just the LLC. *Id.*

The most obvious benefit to Defendants filing multiple collection lawsuits seeking judgments on the same rental arrears is to fraudulently double the amount owed to them. FAC ¶ 55. And for Attorney Defendants, there is also the opportunity to get two sets of attorney's fees for collecting on the same debt. *Id.* ¶ 56. However, the choice to file one of the lawsuits in the Supreme Court suggests that Defendants sought another benefit – to simultaneously preserve their ability to evict Ms. Onfroy via the lawsuit in District Court while quickly obtaining a

money judgment in Supreme Court by evading protections for consumers available in the District Court. *Id.* ¶ 57.

Ms. Onfroy was sent a Five Day Notice, dated March 11, 2021, alleging that she owed $11,400 for rent from October 1, 2020 through March 1, 2021 – the same months that the Second Collection Lawsuit was attempting to collect. FAC ¶ 77 *citing* **Exhibit K** (Second Five Day Notice). Like the First Five Day Notice, this Notice was signed by Joseph Nicaj under the title "Managing Agent." FAC ¶ 78. Given the similarity between the First and Second Five Day Notice, and particularly the lack of any reference to the LLC and the use of Defendant ATM's letterhead, this Five Day Notice appears to be a form used by the ATM Enterprise generally for the collection of rent. *Id.* ¶ 79. Notably, the enclosed Billing Notice instructed Ms. Onfroy to send the allegedly owed rental arrears to Defendant ATM rather than the LLC, evincing both that ATM directs the LLC's collection of rent and that the LLC is not an independent profit center from ATM. *Id.* ¶ 80.

On May 3, 2021, the Landlord, by and through the P.C., filed a Third Collection Lawsuit against Ms. Onfroy in Nassau County District Court, First District, captioned *700 Merrick LLC v. Lovern A. Onfroy*, LT-000425-21/NA, seeking $11,400 plus interest from October 1, 2020 for alleged rent accrued from October 1, 2020 through March 1, 2021. FAC ¶ 82 *citing* **Exhibit M** (Third Collection Lawsuit). The Second and Third Collection Lawsuit seek the very same rent – the rent allegedly accrued by Ms. Onfroy from October 1, 2020 through March 1, 2021. FAC ¶ 83 *compare* **Exhibit H** *with* **Exhibit M**. The Third Collection Lawsuit also seeks attorney's fees in addition to the attorney's fees sought in the Second Collection Lawsuit for the collection of the same rental arrears. FAC ¶ 84. Both Lawsuits were filed by the P.C. and signed by Mr. Mott. FAC ¶ 85 *compare* **Exhibit E** *with* **Exhibit M**. Mr. Miller signed an Affirmation in support of

the Third Collection Lawsuit. FAC ¶ 86 *citing* **Exhibit N** (Affirmation for Third Collection Lawsuit).

Mr. Mott's signature on the Third Collection Lawsuit and Mr. Miller's signature on the Affirmation were representations to both Ms. Onfroy and the Nassau District Court that they had performed a meaningful attorney review of the Third Collection Lawsuit, including but not limited to the P.C.'s own records on Ms. Onfroy's account, and determined, based on professional attorney judgment, that there was a valid legal basis for the Lawsuit. FAC ¶ 87. If the P.C., Mr. Miller, and Mr. Mott had performed a meaningful attorney review, they would have, at a minimum, reviewed the allegations of the Second Collection Lawsuit and seen that the two lawsuits were seeking judgments on the same rental arrears. *Id.* ¶ 88. Either the P.C., Mr. Miller and Mr. Mott failed to perform a meaningful attorney review – despite their implied representations to the contrary – or they performed a meaningful attorney review, realized the Third Collection Lawsuit sought the same rental arrears, and intentionally filed, served, and litigated the Third Collection Lawsuit to attempt to obtain a judgment on the same rental arrears that they were attempting to obtain a judgment on in the Second Collection Lawsuit. *Id.* Specifically Mr. Miller represented in the Affirmation that he was "fully familiar with the facts and prior proceedings had herein based upon a review of the records and documents contained in the file regularly maintained by [the P.C.]" FAC ¶ 89. Either this statement was a misrepresentation by Mr. Miller, and he did not actually review the records as he claimed, or he deceptively filed this Affirmation for the Court to grant a judgment on the same rental arrears sought in the Second Collection Lawsuit. *Id.* If the Landlord was able to obtain a judgment in both lawsuits, either on the merits or via a default judgment, it would essentially double its recovery. *Id.* ¶ 90.

Despite filing the Third Collection Lawsuit on May 3, 2021, Defendants did not serve it on Ms. Onfroy until November 23, 2021, as reflected in the Affidavit of Service filed by Defendants on November 29, 2021. FAC ¶ 92 *citing* **Exhibit O** (AOS for Third Collection Lawsuit). On September 30, 2021, Defendants filed an Application for Default Judgment in the Second Collection Lawsuit, alleging that Ms. Onfroy had defaulted and seeking a default judgment of $17,900. FAC ¶ 95 *citing* **Exhibit P** (Application for Default Judgment). The Application was filed by Defendant Kenneth DeCota, and included an Affidavit in Support executed by him. FAC ¶ 96. Mr. DeCota's signature on the Application was a representation to both Ms. Onfroy and the Supreme Court that he had performed a meaningful attorney review of the Application, including but not limited to the P.C.'s own records on Ms. Onfroy's account, and determined, based on professional attorney judgment, that there was a valid legal basis for the Application. *Id.* ¶ 97. If the P.C. and Mr. DeCota had performed a meaningful attorney review, they would have, at a minimum, reviewed the allegations of the Third Collection Lawsuit and seen that the two lawsuits were seeking judgments on the same rental arrears. *Id.* ¶ 98. Either the P.C. and Mr. DeCota failed to perform a meaningful attorney review – despite their implied representations to the contrary – or they performed a meaningful attorney review, realized the two lawsuits sought the same rental arrears, and intentionally filed, served, and litigated the Application for Default Judgment in the Second Collection Lawsuit to attempt to obtain a judgment on the same rental arrears that they were attempting to obtain a judgment on in the Third Collection Lawsuit. *Id.* Specifically Mr. DeCota stated that he was "fully familiar with all of the facts and prior proceedings had herein" and that "Plaintiff is entitled to judgment its favor and against Defendant LOVERN ONFROY, as demanded in the Verified Complaint." *Id.* ¶ 99. Either Mr. DeCota falsely represented that he had performed a meaningful review, or he did

11

perform a meaningful review but nevertheless falsely asserted that Defendants were entitled to a judgment despite seeking the same rental arrears in the Third Collection Lawsuit. *Id.* Mr. DeCota also alleged in his Affirmation that "No prior application has been made for the relief requested herein," despite the Third Collection Lawsuit having been filed on May 3, 2021. FAC ¶ 101 *citing* **Exhibit P**, p. 5. Either Mr. DeCota had not performed the basic review of the P.C.'s records that would have given him notice of the Third Collection Lawsuit or he did perform such a review and intentionally misrepresented whether there were any other parallel attempts to obtain the same relief by Defendants. FAC ¶ 101.

Having been successfully misled into believing that Ms. Onfroy had been served the Second Collection Lawsuit and had not answered, the Supreme Court granted the Application for Default Judgment on January 19, 2022 and a default judgment was entered against Ms. Onfroy on February 18, 2022. FAC ¶ 108 *citing* **Exhibit Q** (Supreme Court Default Judgment). The Judgment included not only the rental arrears which were also being sought by the Third Collection Lawsuit, but also attorney's fees of $5,000. FAC ¶ 109. Upon information and belief, Mr. DeCota has appeared for the hearings in the Third Collection Lawsuit on behalf of the P.C., and thus has personal knowledge of the Third Collection Lawsuit, but despite this did not make any effort to either discontinue the Third Collection Lawsuit or stipulate to vacate the judgment he improperly obtained in the Second Collection Lawsuit. *Id.* ¶ 110. Defendants had both a default judgment and a pending ERAP application for the same rental arrears, creating the possibility of them receiving government funding from the State of New York and then doubling that income by executing on the judgment against Ms. Onfroy, or obtaining a judgment in the Third Collection Lawsuit and then having two judgments for the same rental arrears. *Id.* ¶¶ 111-112. Defendants' maintenance of both lawsuits, one with a pending ERAP application and the

other with a default judgment, evinces an intent to collect on the same rental arrears twice, either through executing on the default judgment and obtaining payment from the State of New York or through obtaining another judgment if the ERAP application is denied. *Id.* ¶ 117.

Ms. Onfory learned of the First Collection Lawsuit on or around March 15, 2022, when she received a Warrant of Eviction in the mail. FAC ¶¶ 118-119. She was stunned, as the only lawsuit she was aware of against her for the rental arrears was the Third Collection Lawsuit, which had a pending ERAP application and had just been adjourned 4 days before. *Id.* The next day, March 16, 2022, Ms. Onfroy appeared and filed an Order to Show Cause in the First Collection Lawsuit. FAC ¶ 120 *citing* **Exhibit S** (OSC). In the OSC, Ms. Onfroy stated "I had been served with another case in LT court, LT 425, and was appearing in that case and did not know there was another case pending at same time." FAC ¶ 121. She also noted in the OSC that she had "attempted to give the landlord money on numerous occasions but they refused to take what they called a partial payment. I have an ERAP application pending with the Town of Hempstead." FAC ¶ 122.

Because she had not known about the First Collection Lawsuit, Ms. Onfroy's volunteer lawyer decided to check to see if there were any more lawsuits against her that she was not aware of, and that was how Ms. Onfroy learned for the first time about the Second Collection Lawsuit. FAC ¶ 123. This discovery is reflected in a handwritten note on the bottom of the OSC – "I was just told that Mr. Mott has obtained a default judgment dated 2/23/22 in Supreme Court for $12,900 under index # 602442/2021 for rent." *Id.* ¶ 124. Despite receiving this additional notice that the default judgment had been obtained in Supreme Court with pending actions in the District Court, Defendants did not make any effort to stipulate to vacate the judgment or discontinue either the Second or Third Collection Lawsuit. *Id.* ¶ 125. On April 7, 2022, the

13

District Court granted Ms. Onfroy's application in the First Collection Lawsuit, vacating the default judgment and warrant of eviction against her. FAC ¶ 126 *citing* **Exhibit T** (Order Vacating Warrant).

Unfortunately Ms. Onfroy is not the first vulnerable New Yorker targeted by Defendants' practice of filing multiple lawsuits over the same rent. FAC ¶ 127. Reviewing the New York State Electronic Court Filing System, Plaintiff has identified 14 other consumers besides Ms. Onfroy where the ATM Enterprise and the P.C. have filed collection lawsuits against the consumers in both Nassau District Court and Supreme Court. *Id.* ¶ 128. The plaintiffs in these lawsuits brought by the P.C. are all limited liability corporations that are part of the ATM Enterprise and under the direct control of Defendant ATM. *Id.* ¶ 129. In all of these cases, Defendants seek overlapping rental arrears in the parallel District Court and Supreme Court collection lawsuits, and with 6 of the 14 identified consumers, the amounts overlapped completely. *Id.* ¶ 130. And 6 of the 14 identified consumers had default judgments entered against them in Supreme Court like Ms. Onfroy did via motions filed by Defendant Kenneth DeCota. *Id.* ¶ 131. Mr. DeCota's signature on these applications were representations to both the applicable consumers and the Supreme Court that he had performed a meaningful attorney review of the applications, including but not limited to the P.C.'s own records, and determined, based on professional attorney judgment, that there was a valid legal basis for the applications. *Id.* ¶ 132. If the P.C. and Mr. DeCota had performed a meaningful attorney review, they would have, at a minimum, seen overlapping lawsuits seeking judgments on the same rental arrears. *Id.* ¶ 133. Either the P.C. and Mr. DeCota failed to perform a meaningful attorney review – despite their implied representations to the contrary – or they performed a meaningful attorney review, realized the lawsuits sought the same rental arrears, and intentionally filed, served, and litigated

14

the applications for default judgments to attempt to obtain a judgment on the same rental arrears that they were attempting to obtain a judgment on in other lawsuits. *Id.* Specifically Mr. DeCota stated in these applications, like the application against Ms. Onfroy, that he was "fully familiar with all of the facts and prior proceedings had herein" and that "Plaintiff is entitled to judgment…as demanded in the Verified Complaint." *Id.* ¶ 134. Either Mr. DeCota falsely represented in these applications that he had performed a meaningful review, or he did perform a meaningful review but nevertheless falsely asserted that the creditors were entitled to a judgment despite seeking the same rental arrears in another lawsuit. *Id.* Based on Plaintiff's review of the publicly available documents, it appears Defendants have never acknowledged or admitted that they are seeking the same rental arrears in multiple proceedings, and Defendants have never voluntarily discontinued any of the identified collection lawsuits. *Id.* ¶ 135. The FAC provides the details of each of these instances of Defendants' deceptive practice. *Id.* ¶¶ 136-243.

Ms. Onfroy has suffered emotional distress, embarrassment, and humiliation as a result of the Defendants' unlawful attempts to obtain duplicative judgments on the same rental arrears, particularly for having to appear at court hearings in a case that she learned was duplicative of two other cases against her. *Id.* ¶ 244. Sitting in the court for hours waiting is very frustrating – she feels nervous and will pray, wondering what will happen next and what the debt collector is going to say. *Id.* ¶ 247. She cries every day about it. *Id.* ¶ 249. She will sit in her car over an hour after coming home from work, just thinking or crying. *Id.* She's afraid of getting evicted, especially because of her experience being homeless prior to moving into the Residence. *Id.* ¶ 250. Her and her children did not have anywhere to live, and she does not want that to happen again. *Id.* She has been taking sleep medications because she has not been able to get any sleep at night due to anxiety. *Id.* ¶ 251. People at her work have noticed that she has not been sleeping

15

and they have asked her "Are you okay? You look like you haven't slept." *Id.* ¶ 257. Her son has also asked her about her lack of sleep – he recently asked her if she was okay and it hurt her so much, tore her up inside that her son was worried about her. *Id.* ¶ 258. Her doctor told her she has high blood pressure and she needs to take it easy. *Id.* ¶ 261.

She tried to make partial payments so her rental arrears wouldn't keep accruing, but the Landlord refused to accept it. *Id.* ¶ 272. When she learned about the Second Collection Lawsuit she was nervous, she did not understand why she would be going there and it seemed huge, like she was going to get into a lot of trouble. *Id.* ¶ 274. It was especially distressing because she learned that there were no volunteer lawyers in the Supreme Court. *Id.* In addition to the emotional injury, Ms. Onfroy has also incurred monetary costs due to the court hearings, namely paying for parking meters and copying, as well as lost time and having to take off from work for multiple court settings. *Id.* ¶ 278.

## IV.   ARGUMENTS AS TO THE DECOTA MTD

### A.   KENNETH DECOTA, A DEBT COLLECTOR, VIOLATED THE FDCPA BY DECEPTIVELY AND UNFAIRLY SEEKING A DEFAULT JUDGMENT AGAINST MS. ONFROY

#### 1.   Kenneth DeCota Regularly Collects Debts Owed or Due Another.

DeCota argues he is not a debt collector because his conduct was limited to the filing of a motion for default judgment against Plaintiff and six other similar motions in "unrelated landlord tenant cases over a several month period of time," plus that DeCota was "recently graduated and newly hired" and "asked by his managing attorney" to commit the deceptive conduct. DeCota MOL, pp. 12-14.

Neither DeCota being a novice attorney nor that he was following orders from a managing attorney are relevant to whether he is a debt collector under 15 U.S.C. § 1692a(6).

"[W]hether a lawyer or law firm 'regularly' engages in debt collection activity within the meaning of section 1692a(6) of the FDCPA must be assessed on a case-by-case basis in light of factors bearing on the issue of regularity." *Goldstein v. Hutton, Ingrain, Yuzek, Gainen, Carroll & Bertolotti,* 374 F.3d 56, 62 (2d Cir. 2004). The factors listed by the Court in *Goldstein* were "(1) the absolute number of debt collection communications issued, and/or collection-related litigation matters pursued, over the relevant period(s), (2) the frequency of such communications and/or litigation activity, including whether any patterns of such activity are discernable, (3) whether the entity has personnel specifically assigned to work on debt collection activity, (4) whether the entity has systems or contractors in place to facilitate such activity, and (5) whether the activity is undertaken in connection with ongoing client relationships with entities that have retained the lawyer or firm to assist in the collection of outstanding consumer debt obligations." *Id.* at 62-63. *Goldstein* thus concluded that 145 rent demand notices over a period of three years was "regularly" engaging in debt collection even though those activities only generated 0.05% of the firm's revenue. *Id.*

In suits where Mott was double-suing for the same rent and the consumer defaulted, it was always Mr. DeCota who filed the applications for default. FAC, ¶¶ 36, 96-99, 131-134, 140-143, 149-152, 161-164, 171-174, 181-184, 190-193, 202-205, 210-213, 219-222, 229-232, 237-240. While Mr. DeCota only succeeded in obtaining 6 default judgments, it was not for lack of trying, given that he applied for default judgments against 12 of the 14 consumers where there overlapping rental arrears. *Id.* All of these lawsuits, and thus all of Mr. DeCota's deceptive applications for default judgments, were done on behalf of the various entities in the ATM enterprise for alleged rental arrears. FAC ¶¶ 30-31. The P.C.'s principal purpose is the collection of consumer debts, something Mr. DeCota was undoubtedly aware of when he joined the firm.

17

FAC ¶ 29.

DeCota attempts to equate himself with the debt collectors in *Rutty v. Melvin R. Kirmko,* 789 F. App'x 916 (2d Cir. 2020), *Vincent v. The Money Store,* 736 F.3d 88, 101 (2d Cir. 2013), *White v. Goodman,* 200 F.3d 1016 (7th Cir. 2000), and *White v. Simonson & Cohen P.C.,* 23 F. Supp. 2d 273 (E.D.N.Y. 1998). *Rutty* is inapposite. "[T]he only factual allegation Rutty raised against the attorney defendants was that they filed false documents in the foreclosure action against Rutty; he did not allege any facts showing that they regularly engaged in debt collecting activities." *Rutty,* 789 F. App'x at 918. Plaintiff's allegations go far her; DeCota regularly filed deceptive applications for default judgments. *See* FAC ¶¶ 131-134, 140-143, 149-152, 161-164, 171-174, 181-184, 190-193, 202-205, 210-213, 219-222, 229-232, 237-240.

DeCota next cites to *Vincent,* 736 F.3d at 101 and *White,* 200 F.3d 1016, for the proposition that "law firms generating and mailing breach letters is not sufficient to render an attorney a debt collector." DeCota MOL p. 13. But DeCota is not accused of generating and mailing breach letters – he litigated debt collection lawsuits against Ms. Onfroy and other consumers, filing deceptive applications for default judgment. FAC, ¶¶ 36, 96-99, 131-134, 140-143, 149-152, 161-164, 171-174, 181-184, 190-193, 202-205, 210-213, 219-222, 229-232, 237-240. Those default judgments provide post-judgment relief under Article 52 of the C.P.L.R.: a crucial part of debt collection, not merely providing notice of breach.

Lastly, DeCota cites to *White v Simonson*, but there a firm was found not to regularly be collecting debts "by sending out one mailing of thirty-five collection letters in nearly four decades of practice." 23 F Supp 2d at 278. As DeCota admits, the dozens of applications for default judgments and other debt collection activity he did was over "a several month period of time" (DeCota MOL, p. 13), not four decades of practice. *White v. Simonson* demonstrates just

how rare debt collection must be to avoid FDCPA liability – less than one collection letter on average per year. 23 F. Supp. 2d at 278. DeCota was an attorney at a firm that principally does debt collection where he engaged in debt collection, such as filing applications for default judgments. FAC, ¶¶ 36, 96-99, 131-134, 140-143, 149-152, 161-164, 171-174, 181-184, 190-193, 202-205, 210-213, 219-222, 229-232, 237-240.

**2.** Kenneth DeCota Violated 1692e by Deceptively Representing Entitlement to a Judgment on Rental Arrears Already Sought in Another Collection Lawsuit

DeCota's arguments against Plaintiff's 1692e claims are essentially as follows: (1) DeCota made no materially false representations to Ms. Onfroy, (2) the representations were made in a state court proceeding and thus Ms. Onfroy was protected by the court system, and (3) Ms. Onfroy already has obtained relief because the Third Collection Lawsuit was discontinued. DeCota MOL pp. 14-19.

*a. DeCota falsely represented entitlement to a judgment and a meaningful attorney review.*

Whether a communication is "'false, deceptive, or misleading' under the FDCPA is determined from the perspective of the objective 'least sophisticated consumer.'" *Easterling v. Collecto, Inc.,* 692 F.3d 229, 233 (2d Cir. 2012) *quoting Clomon v. Jackson,* 988 F.2d 1314, 1318 (2d Cir.1993). A clear analogue to Plaintiff's 1692e claims is filing time-barred lawsuits: "a lawsuit which the debt collector knows or should know is unavailable or unwinnable by reason of a legal bar such as the statute of limitations is the kind of abusive practice the FDCPA was intended to eliminate." *Cameron v. LR Credit 22*, LLC, 998 F. Supp. 2d 293, 300 (S.D.N.Y. 2014); *see also Diaz v. Portfolio Recovery Assocs., LLC,* No. 10 CV 3920 MKB CLP, 2012 WL 1882976, at *5 (E.D.N.Y. May 24, 2012). Here, DeCota filed an application for a default judgment in the Second Collection Lawsuit on the same rental arrears being demanded in the

19

Third Collection Lawsuit. FAC ¶¶ 95-101. The violations here are not mere procedural error –
DeCota made express and facially inaccurate representations to the Court and to Ms. Onfroy,
specifically "Plaintiff is entitled to judgment [sic] its favor against Defendant LOVERN
ONFROY" (FAC ¶ 99) and "No prior application has been made for the relief requested herein"
(FAC ¶ 101).

DeCota only addresses whether the latter is deceptive, failing to refute that the
representation of entitlement to judgment was deceptive. The representation that Defendants
were entitled to judgment in the Second Collection Lawsuit was materially deceptive because the
least sophisticated consumer could be misled into believing a judgment could be obtained in both
the Second and Third Collection Lawsuit, and thus be coerced into paying the judgment for fear
of incurring double the liability for the debt. *See e.g. Samms v. Abrams, Fensterman,
Fensterman, Eisman, Formato, Ferrara & Wolf, LLP*, 163 F. Supp. 3d 109, 116 (S.D.N.Y.
2016).

And the least sophisticated consumer could be misled by "No prior application has been
made for the relief requested herein" (FAC ¶ 101) into believing that the Second Collection
Lawsuit sought different relief than the Third Collection Lawsuit, and thus that she could legally
have judgments entered against her in both lawsuits. Whether Ms. Onfroy was actually deceived
is irrelevant. The Second Circuit criticized a district court for "placing considerable – if not
dispositive – weight on the facts and circumstances surrounding Easterling's background,
seemingly in an effort to establish that she was not, in fact, deceived by the Collection Letter."
*Easterling v. Collecto, Inc.*, 692 F.3d at 234. "Instead, the operative inquiry in this case is
whether the hypothetical least sophisticated consumer could reasonably interpret the Collection
Letter's statement [...] as representing, incorrectly, that the debtor is completely foreclosed from

seeking bankruptcy discharge of the debt in question." *Id.* Whether Ms. Onfroy was deceived is not material – the question is whether the hypothetical least sophisticated consumer could be misled into believing that she could legally have judgments entered against her in both lawsuits. Plaintiff also alleges that DeCota failed to perform a meaningful attorney review of the Application for Default Judgment. FAC ¶¶ 98-99. The Application stated that Mr. DeCota was "fully familiar with all of the facts **and prior proceedings had** herein." FAC ¶ 99 [emphasis added]. The FDCPA expressly prohibits "[t]he false representation or implication that any individual is an attorney or that any communication from an attorney." 15 U.S.C. § 1692e(3). A communication purporting to be made by an attorney will violate this section if there has not been "some degree of attorney involvement." *Musah v. Houslanger & Assocs.*, PLLC, 962 F. Supp. 2d 636, 640 (S.D.N.Y. 2013) *quoting Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 301 (2d Cir.2003). Whether there has been "some degree" is determined by "whether the attorney's examination of the case file was adequate to permit determination of 'whether [the debtor] *was or was not obligated to pay the debt*.'" *Id.* at 641 *quoting Miller,* 321 F.3d at 305 [emphasis added]. DeCota either falsely represented that he had performed a meaningful review, or he performed a meaningful review but nevertheless falsely asserted that Defendants were entitled to a judgment despite seeking the same rental arrears in the Third Collection Lawsuit. FAC ¶¶ 98-99.

### b. *DeCota cannot be insulated from liability by the legal system he abused.*

DeCota relies on a number of decisions stemming from *Simmons v. Roundup Funding, LLC*, 622 F.3d 93, 96 (2d Cir. 2010), a case where it was determined that "There is no need to protect debtors who are already under the protection of the **bankruptcy** court" [emphasis added]. The Second Circuit itself confirmed this limitation to bankruptcy, not civil court collection

lawsuits. *Arias v. Gutman, Mintz, Baker & Sonnenfeldt LLP*, 875 F.3d 128, 137 (2d Cir. 2017).

And while *Arias* does not directly overturn *Lautman v 2800 Coyle St. Owners Corp.*, No. 14-CV-1868 (ARR) (VVP), 2014 WL 4843947 (EDNY Sep. 26, 2014), it is unclear what persuasive power *Lautman* has left when the Second Circuit expressly held "where court filings 'routinely come to the consumer's attention and may affect his or her defense of a collection claim,' debt collectors do not have immunity from FDCPA liability for their litigation conduct." *Arias,* 875 F.3d at 137 *quoting Hemmingsen v. Messerli & Kramer, P.A.*, 674 F.3d 814, 818 (8th Cir. 2012). In the case at bar, the misrepresentations in the court filings indeed came to the attention of Ms. Onfroy. See e.g., FAC ¶ 124 (learning of entry of default judgement on Second Lawsuit) and ¶ 244 (having to go to court for Third Lawsuit after learning it sought the same rent that was included in the judgment in the Second Lawsuit). "Further, the FDCPA is designed to prevent debt collectors from engaging in abusive debt-collection practices; it does not license debt collectors to engage in such practices simply because an alleged debtor may seek the protection of a state court." *Villalba v. Houslanger & Assocs., PLLC*, No. 19CV4270PKCRLM, 2022 WL 900538, at *10 (E.D.N.Y. Mar. 28, 2022).

*Gabriele v. American Home Mortgage Servicing, Inc.*, 503 F. App'x 89, 95 (2d Cir. 2012) is also distinguishable for the reasons laid out in *Villalba*: "The allegedly false statements [in *Gabriele*] had nothing to do with the validity of the underlying debt; rather, the 'alleged misstatements in court filings amounted to mere technical falsehoods that misled no one' and 'were not misleading or deceptive as to the nature or legal status of [the plaintiff's] debt.'" *Villalba,* 2022 WL 900538, at *18 *quoting Gabriele,* 503 F.App'x at 95. Representing to Ms. Onfroy that Defendants could obtain judgments in multiple proceedings against her for the same rental arrears is not a "mere technical falsehood," but a serious misrepresentation of the legal

status of the alleged debt.

> *c.   Discontinuance of the Third Collection Lawsuit was not sought here.*

The last argument made by DeCota against the 1692e claims is that the relief sought by this case is moot because the Third Collection Lawsuit was discontinued.[1] This lawsuit did not seek discontinuance of the Third Collection Lawsuit – it seeks damages for the costs and emotional distress of having to attend multiple court proceedings over the same rental arrears. The discontinuance of the Third Collection Lawsuit is only relevant as to the extent of Plaintiff's actual damages – how long this duplicative lawsuit was hanging over her head causing her anxiety, how many costs she incurred appearing for hearings in the Third Collection Lawsuit, and so forth.

**3.** <u>Kenneth DeCota Violated 1692f by Unfairly Seeking and Obtaining a Default Judgment on Rental Arrears Already Sought in Another Collection Lawsuit</u>

DeCota argues that Plaintiff's 1692f claim must be dismissed because it is based on the same conduct as her 1692e claims. DeCota MOL p. 19. However the Second Circuit rejected that argument: "GMBS argues that sections 1692e and 1692f are mutually exclusive and that the same conduct by a debt collector cannot violate both sections at once. We disagree." *Arias,* 875 F.3d at 135.

The 1692f violation in *Arias* is similar to the one in this case. In *Arias,* the defendant debt

---

[1] DeCota also argues in a footnote (DeCota MOL, p. 17, fn. 6) that "Plaintiff is precluded from challenging the validity of the Default Judgment…under the doctrine of judicial estoppel" because the Third Collection Lawsuit was challenged by Plaintiff on the basis of the Default Judgment. First, Plaintiff does not seek relief from the Default Judgment in this lawsuit – the 1692e claim is based on DeCota's representations in the application for the Default Judgment. Second, DeCota tellingly tries to have his cake and eat it to by trying to characterize the Third Collection Lawsuit as both dismissed by Plaintiff based on the Default Judgment but also somehow "voluntarily" discontinued with prejudice. These allegations are all outside the four corners of this complaint and have no bearing on determining whether DeCota's misrepresentations would have misled the least sophisticated consumer. Further, nothing in the dismissal with prejudice order indicates it was "voluntary." In fact, Mott Defendants obtained an adjournment so they could file an opposition to the motion to dismiss and, while ultimately not filing a formal Opposition, vigorously orally argued against dismissal.

collector had filed an objection against the plaintiff consumer's claim that his frozen bank funds were Social Security, and the Court held that the debt collector violated 1692f by forcing "a hearing that GMBS knew was frivolous and that was intended primarily to harass Arias, frustrate his exemption claim, and erect procedural and substantive challenges that Arias, pro se, was ill-equipped to handle." *Arias,* 875 F.3d at 138. Here, DeCota's unfair application for default judgment was part of an unfair scheme by Defendants to "erect procedural and substantive challenges" for Ms. Onfroy by seeking the same rental arrears in multiple court proceedings, allowing the Defendants to evade consumer protections and potentially obtain multiple judgments for the same alleged debt.

**B.** KENNETH DECOTA'S DECEPTIVE APPLICATION FOR A DEFAULT JUDGMENT AGAINST MS. ONFROY WAS PART OF A DECEPTIVE PRACTICE VIOLATING GBL § 349.

Plaintiff's claims under GBL § 349 would be deceptive to the reasonable consumer for the same reason they would be deceptive to the least sophisticated consumer. *Samms*, 163 F. Supp. at 115-116 (collecting cases). Debt collection conduct found to be deceptive under the FDCPA is generally also held deceptive under GBL § 349. *Diaz v. Portfolio Recovery Assocs., LLC,* No. 10 CV 3920 MKB CLP, 2012 WL 1882976, at *5 (E.D.N.Y. May 24, 2012) (filing time-barred lawsuits); *Villalba,* 2022 WL 900538, at *17 (collecting on invalid judgments). *Morales v. Kavulich & Assocs., P.C.*, 294 F. Supp. 3d 193, 197, 198 (S.D.N.Y. 2018) (enforcing non-existent judgments for rent); *Aghaeepour v. N. Leasing Sys., Inc.*, No. 14 CV 5449 (NSR), 2015 WL 7758894, at *15 (S.D.N.Y. Dec. 1, 2015) (routinely filing fraudulent lawsuits); *Sykes v. Mel Harris and Assoc, LLC*, 757 F.Supp.2d 413 (S.D.N.Y 2010) (false affidavits of merit ); *Mayfield v. Asta Funding, Inc.*, 95 F. Supp. 3d 685, 700 (S.D.N.Y. 2015) (filing suit without sufficient proof of debt and using false affidavits).

24

DeCota argues that Plaintiff has failed to allege that their conduct was consumer-oriented as required to state a claim for GBL § 349, specifically because it was "predic[a]ted on [a] landlord-tenant transaction." DeCota MTD pp. 16-17. To state a claim under GBL § 349, an individual must demonstrate that the conduct at issue was consumer-oriented. *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 25 (Ct. of Appeals 1995). Defendants are correct that the case law dictates that GBL § 349 does not apply to "[p]rivate contract disputes, unique to the parties" (*Himmelstein, McConnell, Gribben, Donoghue & Joseph, LLP v. Matthew Bender & Co.,* 37 NY3d 169, 177 (2021)), but their understanding of this doctrine as a categorical exclusion of landlord-tenant transactions is wrong.

Consumer-oriented means "an act having the potential to affect the public at large, as distinguished from merely a private contractual dispute." *Elacqua v. Physicians' Reciprocal Insurers*, 52 A.D.3d 886, 888 (3rd Dept. 2008) *citing Oswego*, 86 N.Y. 2d 20. The Court of Appeals noted that this holding was consistent with the legislative intent of GBL § 349 to stop consumer frauds at their initial stages rather than waiting for more persistent frauds to develop. *Id.* at 25.Creditors attempting to collect amounts they are not entitled to has repeatedly been found to be consumer-oriented. *See McCrobie v. Palisades Acquisition XVI, LLC,* 359 F. Supp. 3d 239, 255 (W.D.N.Y. 2019) (systematically collecting debts they "did not in fact have the legal right to collect that debt"); *Rozier v. Fin. Recovery Sys., Inc.*, No. 10-CV-3273 DLI JO, 2011 WL 2295116, at *5 (E.D.N.Y. June 7, 2011); *Campbell,* 98 F. Supp. 3d  at 588;. Plaintiff's claims are not litigating rent control statutes, warranty of habitability, or other such specifically landlord-tenant issues. Filing multiple lawsuits to collect the same debt is deceptive debt collection, and could easily arise with other creditors and debt collectors.

But even if the claims here were landlord-tenant specific, there is no categorical

exclusion of landlord-tenant issues from the scope of GBL § 349. GBL § 349-c, which provides heightened penalties for deceptive conduct directed at the elderly, includes "[w]hether the defendant's conduct caused an elderly person or persons to suffer severe loss or encumbrance of a primary residence." GBL § 349-c(b)(2). The argument that deceptive landlord conduct is not covered is directly contradicted by that statutory language. DeCota also ignores clear case law applying GBL § 349 to consumer-oriented conduct involving a residential lease. *23 Realty Assoc. v. Teigman*, 213 AD2d 306, 308 (1st Dept 1995) ("An apartment dweller is today viewed, functionally, as a consumer of housing services—as much a consumer as the purchaser of any other goods or services"); *Lozano v. Grunberg,* 195 A.D.2d 308 (App. Div. 1st Dept. 1993) (GBL § 349 claims for landlord's repeated issuances of deceptive notices); *Myerson v. Prime Realty Services, LLC,* 7 Misc.3d 911, 921 (Sup. Ct. NY Co. 2005) (GBL § 349 claims for false demand to tenants to disclose social security number); *Quinn v. Parkoff Operating Corporation*, 59 Misc. 3d 1202(A) (N.Y. Sup. Ct. 2018) ("generally [] a landlord-tenant claim may fall within General Business Law § 349").

Defendants' argument relies primarily on *Aguaiza v. Vantage Properties, LLC,* 69 A.D.3d 422 (App. Div. 1st Dep't 2010). But *Aguaiza* is not controlling law, does not apply to the facts here, and was incorrectly decided. The *Aguaiza* court's ruling was based on its finding that the allegations involved private disputes between tenants and their landlords and did not constitute consumer-oriented conduct aimed at consumers at large. *Id*. This misstates the consumer-oriented requirement. The relevant inquiry is not whether the conduct at issue involves two parties, but whether the activity has the *potential* to affect consumers more broadly. *E.g. Elacqua*, 52 A.D.3d at 888. The consumer's status as an individual does not mean GBL § 349 does not apply. *See e.g., Small v. Lorillard Tobacco Co.*, Inc. 94 N.Y.2d 43 at 55 (1999). GBL §

349 is a consumer-protection statue, and consumers interact with the marketplace through individual contractual dealings.

Lastly, DeCota misrepresents the Court of Appeals decision on *Collazo v. Netherland Prop. Assets LLC*, 35 N.Y.3d 987, 149 N.E.3d 30 (2020). Contrary to DeCota's insinuation, *Collazo* did not affirm a ruling that GBL § 349 does not apply to landlord-tenant transactions; to the contrary, it expressly assumed (without deciding) that "a claim may lie under General Business Law § 349 based upon a landlord's alleged misrepresentation to the public that an apartment was exempt from rent regulation following deregulation in violation of the Rent Stabilization Law." *Id.* at 990-991. Dismissal was affirmed on the basis that the plaintiffs failed to allege "any affirmative conduct that would tend to deceive consumers." *Id.* at 991.

## C. KENNETH DECOTA'S DECEPTIVE APPLICATION FOR A DEFAULT JUDGMENT AGAINST MS. ONFROY WAS NEGLIGENT AND GROSSLY NEGLIGENT

DeCota cites to no authority for his claim that "acting adversely to the plaintiff in litigation" precludes him from "ow[ing] any cognizable duty of care to her." DeCota MOL, p. 23. "Creditors and debt collectors owe debtors 'a duty of reasonable care' in the collection of their debts." *Hawkins-El v. First Am. Funding, LLC*, 891 F. Supp. 2d 402, 412 (E.D.N.Y. 2012), *aff'd,* 529 F. App'x 45 (2d Cir. 2013) *quoting Colo. Capital v. Owens,* 227 F.R.D. 181, 191 (E.D.N.Y.2005). "Defendants owe a duty to take reasonable steps in performing their work, and to take reasonable steps to ensure they do not link a debt to the wrong party…[and] a duty to make a reasonable effort to get the information right, to avoid the harm to innocent, similarly named parties" *Lindor v. Palisades Collection, LLC*, 30 Misc. 3d 754, 762-763, 914 N.Y.S.2d 867, 874 (Sup. Ct. 2010). Here, DeCota had a duty of reasonable care as a debt collector to "get the information right" and not file multiple lawsuits to collect on the same debt which would risk

obtaining two judgments on the same debt. He breached that duty by applying for and obtaining a default judgment against Ms. Onfroy during the pendency of another collection lawsuit seeking to collect the same debt.

DeCota also owed Plaintiff a duty of reasonable care statutorily through the FDCPA and GBL § 349. *Sanchez v. Ehrlich*, No. 16-CV-8677 (LAP), 2018 WL 2084147, at *7 (S.D.N.Y. Mar. 29, 2018) ("N.Y. G.B.L. § 349 sets a standard of care by prohibiting specific practices," including filing lawsuits on debts not owed). Because DeCota violated the FDCPA and GBL § 349 for the reasons stated above, DeCota breached that duty of reasonable care.

## V.   ARGUMENTS AS TO MOTT DEFENDANTS' MOTION TO DISMISS
### D.   MS. ONFROY HAS ARTICLE III STANDING

Mott Defendants spill a lot of ink over Ms. Onfroy not making certain rent payments – a fact that is not in dispute and is not relevant to Article III injury.

The Supreme Court recently clarified the law as to standing in *Transunion LLC v. Ramirez,* 141 S.Ct. 2190 (2021), which is conveniently and concisely summarized as follows:

> "No concrete harm, no standing. Central to assessing concreteness is whether the asserted harm has a "close relationship" to a harm traditionally recognized as providing a basis for a lawsuit in American courts—such as physical harm, monetary harm, or various intangible harms including (as relevant here) reputational harm." *Id.* at 2200.

Ms. Onfroy has suffered two types of harm. First, Ms. Onfroy suffered monetary harm – "a harm traditionally recognized as providing a basis for a lawsuit in American court." She incurred monetary costs due to the court hearings in the Third Collection Lawsuit, namely paying for parking meters and copying, as well as lost time and having to take off from work for multiple court settings. FAC ¶ 278 These are concrete harms sufficient for Article III standing. "Time or money spent in defending against a[n improper] legal action taken by a debt collector against the debtor" is a concrete injury. *Toste v. Beach Club at Fontainebleau Park Condo.*

28

*Ass'n, Inc.*, 2022 WL 4091738 at * 4 (11th Cir. Sept. 7, 2022).  While out of pocket costs for parking and copying are not large sums, "[f]or standing purposes, a loss of even a small amount of money is ordinarily an "injury." *Czyzewski v. Jevic Holding Corp.*, 137 S. Ct. 973, 983 (2017) *citing to McGowan v. Maryland*, 366 U.S. 420, 430-431, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961) (finding that appellants fined $5 plus costs had standing to assert an Establishment Clause challenge). S*ee also Carter v. HealthPort Techs., LLC,* 822 F.3d 47, 55 (2d Cir. 2016) ("Any monetary loss suffered by the plaintiff satisfies this element").

Second, Ms. Onfroy suffered "intangible harms," emotional distress in particular. Under *TransUnion*, "[v]arious intangible harms can also be concrete." *Transunion* at 2204.  "Chief among them [intangible harm] are injuries with a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts." *Id*. Consequently, in order to have concrete injury for "intangible harms" the inquiry is "whether plaintiffs have identified a close historical or common-law analogue for their asserted injury." *Id*.

In *Transunion,* the "analogue" was defamation, and the Court held that those class members who had their credit reports published to third parties had established concrete injury (hence "the published class") and those class members who did not have their credit reports published to third parties had failed to establish concrete injury ("the unpublished class"). *Id.* at 2208-2211. For the published class, the Court noted that the misleading information being technically true was not material because the publication of misleading information was sufficiently analogous to common-law defamation's publication of false information. *Id.* at 2209 ("we do not require an exact duplicate [of the common-law analogue]"). However, the Court more strictly enforced the publication element of common-law defamation, and thus held the unpublished class lacked standing, because "publication is generally presumed **to cause** a harm."

29

*Id.* at 2211 [emphasis added]. The analogue need not meet all the elements but must meet any element necessary to the cause of the alleged injury. *Id.*

Ms. Onfroy's intangible injuries are also sufficiently concrete to confer Article III standing under *Transunion*. The injuries have two analogues to traditional actions in American courts: negligence and abuse of process. As publication causes injury for defamation (*see Transunion,* at 2209-2211), so breach of duty causes injury with negligence. "Creditors and debt collectors owe debtors 'a duty of reasonable care' in the collection of their debts." *Hawkins-El v. First American Funding, LLC,* 891 F.Supp.2d 402, 419 (E.D.N.Y. 2012) *quoting Colo. Capital v. Owens,* 227 F.R.D. 181, 191 (E.D.N.Y. 2005). Mott Defendants, creditors and debt collectors respectively, breached their duty of reasonable care to Ms. Onfroy by filing multiple collection lawsuits against her seeking multiple judgments on the same rental arrears.

"In New York, 'a malicious abuse-of-process claim lies against a defendant who (1) employs regularly issued legal process to compel performance or forbearance of some act (2) with intent to do harm without excuse of justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process.'" *Savino v. City of New York*, 331 F.3d 63, 76 (2d Cir. 2003) *quoting Cook v. Sheldon,* 41 F.3d 73, 80 (2d Cir.1994). As publication causes injury for defamation (*see Transunion,* at 2209-2211), so does the legal process compelling performance or forbearance of some act cause injury for abuse of process. "Because the vast majority of Plaintiff's claims concern Defendants' alleged misconduct during the Civil Court action, Plaintiff's claims share 'a close relationship [with] harms traditionally recognized as providing a basis for lawsuits in American courts.'" *Makhnevich v. Bougopoulos*, No. 18CV285KAMVMS, 2022 WL 939409, at *5 (E.D.N.Y. Mar. 29, 2022) *citing Viernes v. DNF Assocs., LLC*, 582 F. Supp. 3d 738, 749-750 (D. Haw. 2022) (finding a close relationship with

the tort of "wrongful use of civil proceedings"). Here, Defendants successfully obtained a default judgment against Ms. Onfory in the Second Collection Lawsuit, as they did against 6 out of 14 other identified consumers subjected to this deceptive practice by Defendants – that clearly is an injury similar to "wrongful use of civil proceedings" that is a traditional basis for lawsuits in American courts.

Defendants' misconduct has inflicted substantial emotional distress on Ms. Onfroy.  *See* FAC ¶ ¶ 244, 237, 249, 251, 257, 258, 261. Ms. Onfroy cries every day, has been taking sleep medications because she has not been able to get any sleep at night due to anxiety, has felt ashamed at having her children and coworkers she her in a daze, and has had increased blood pressure. Id. ¶ ¶ 249, 251, 257, 258, 261.  This level of emotional distress easily exceeds the injury threshold other courts have found adequate for Article III standing. *Losch v. Nationstar Mortg. LLC*, 995 F.3d 937 (11th Cir. 2021) ("suffered... from stress, anxiety, and lack of sleep"); *Makhnevich*, *supra*, 2022 WL 939409, at fn. 7 ("severe headaches and stomach aches, among other things").

**E.** MOTT DEFENDANTS' ARGUMENT OF "AVOID[ING] NON-PAYMENT OF RENT IN FEDERAL COURT" IS NONSENSICAL

Mott Defendants next construct a Frankenstein's monster, stitching federal court jurisdiction and abstention together to argue that this Court should dismiss under Fed. R. Civ. P. 12(b)(1) because "Plaintiff wishes to avoid non-payment [sic] of rent in federal court," Mott MOL, p. 11 (presumably the Mott meant "payment" as opposed "non-payment"). Plaintiff does not seek any kind of injunctive relief or other relief which would avoid her alleged rental arrear obligations. Nor does Plaintiff seek any kind of ruling on any issues currently pending in New York state court proceedings. Plaintiff solely seeks damages caused to her by the Defendants'

violations of the FDCPA and related state law. FAC, ¶¶ 286-290, 296-305, 311, 316, 318.

Abstention is "an extraordinary and narrow exception" to "the virtually unflagging obligation of the federal courts to exercise the jurisdiction given them." *Colorado River Water Conservation Dist. v. U. S.*, 424 U.S. 800, 813, 817 (1976); s*ee also Woodford v. Cmty. Action Agency of Greene County, Inc.*, 239 F.3d 517, 522 (2d Cir. 2001). "Generally, as between state and federal courts, the rule is that the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction." *Colorado River*, 424 U.S. at 817, 96 S.Ct. 1236. Courts in this Circuit have generally found abstention does not apply to a federal lawsuit for the FDCPA where there is a pending collection lawsuit in state court. *McCrobie*359 F. Supp. 3d at 248; *Page v. Forster & Garbus, LLP*, No. 18CV3611SJFARL, 2019 WL 5696108, at *4 (E.D.N.Y. June 17, 2019); *Winslow v. Forster & Garbus, LLP*, No. CV 15-2996 (AYS), 2017 WL 6375744, at *9 (E.D.N.Y. Dec. 13, 2017); *Fritz v. Resurgent Capital Servs., LP*, 955 F.Supp.2d 163, 175 (E.D.N.Y. 2013).

Nonpayment actions are special proceedings brought pursuant to Article 7 of New York Real Property Actions and Proceedings Law ("R.P.A.P.L.") and governed by the procedural and jurisdictional limitations set out in R.P.A.P.L. § 7 and C.P.L.R. § 400 et. seq. Discovery does not occur absent permission of the judge and that permission is only given in limited circumstances, cases move on an expedited schedule, the tenant must be in possession of the apartment, and the ability to assert counterclaims is limited and must be "inextricably intertwined" with the proceeding. R.P.A.P.L. §735; C.P.L.R. § 408; *Warrin c. Haverty*, 149 A.D. 564 (1912); *384 Hotel Corp. v. Café Comedy*, 6/4/92 N.Y.L.J. 24, col. 2 (Civ Ct. N.Y. County). In sum, nonpayment proceedings in Housing Court are concerned with and designed to quickly deal with questions of possession; they are not meant to be a forum for other issues between the landlord

and the tenant. To this end, the "inextricably intertwined" requirement is a strict one: the counterclaim and the claim for rent must significantly affect each other. *Id*. Examples of this are counterclaims based on the warranty of habitability.

The Housing Court is generally unwilling to entertain counterclaims sounding in negligence or tort because these claims are not inextricably intertwined with a claim for rent. *610 W. 142nd St. Owners Corp. v. Braxton*, 140 Misc.2d 826, 827 (App. Term, 1st Dept. 1988); *390 West End Associates v. Raiff*, 166 Misc. 2d 730 (App. Term 1st Dep't. 1995) ("To the extent that tenant also seeks damages traditionally within the scope of tort liability … those property damage claims are more appropriately tried outside the limited sphere of landlord-tenant proceedings"). The Housing Court has also been explicit in rejecting counterclaims with punitive and emotional distress damages components as too attenuated to the possessory claim. *Coronet Properties Co. v. Lederer*, N.Y.L.J., 2/21/86, p. 12, col. 2 (App. Term 1st Dep't.).

Housing Court did not have jurisdiction to hear the majority of the claims in this case because they are not inextricably intertwined with the Landlord's claims for rent in the First, Second, or Third Collection Lawsuits. *See 99 Realty Co. v. Wall Street Transcript Corp.*, 165 Misc.2d 454 (App. Term 1st Dep't. 1995). Ms. Onfroy's allegations regarding the Mott Defendants' deceptive scheme are grounded in tort, encompassing far more than the Landlord's claim for rent against Ms. Onfroy (specifically attempting to double the amount owed by obtaining two judgments in two separate lawsuits), and the Housing Court would not have had jurisdiction over them. *D&Z Holding Corp. v. Boulart*, 4/18/90 NYLJ 24 col. 6  (Civ. Ct. Kings County) (severing claims under GBL 349, the FDCPA, and common law, *inter alia*, because claims were not related to the landlord's claim for rent and the purpose of summary proceedings is the speedy inexpensive determination of landlord tenant controversies).

33

The Housing Court would additionally not have had jurisdiction over the GBL 349 claim because that claim seeks injunctive relief, which the Housing Court does not have the ability to grant and would have resulted in her claim being severed. *Lozano v. Grunberg*, 195 AD2d 308 (App. Div. 1st Dep't. 1993). In addition, only one of the parties in this case was a party to the housing court proceeding – the LLC – and for the same reason that Ms. Onfroy could not assert tort claims, she also could not bring in third parties (all the other Defendants) to assert claims against them not related to the question of rent owed. Therefore, Ms. Onfroy could not have brought the claims in this FDCPA lawsuit in the First, Second, or Third Collection Lawsuit and thus there is no basis for this Court to abstain from exercising jurisdiction based on pending state court litigation.

**F.** THIS IS NOT A CLASS ACTION LAWSUIT AND THIS COURT HAS SUPPLEMENTAL JURISDICTION OVER PLAINTIFF'S GBL § 349 CLAIMS.

Simply put, this is not a class action lawsuit, so Mott Defendants' arguments referencing failure "to allege a class of persons" (Mott MOL p. 12) are a red herring that should be disregarded by the Court. Mott Defendants' arguments as to GBL § 349 appear to be that (1) this Court does not have jurisdiction over Plaintiff's GBL § 349 claims as they are state law claims (Mott MOL p. 13, ("Without federal jurisdiction, this Honorable Court, see *infra* Point III, should not exercise jurisdiction over the state law claims")); (2) the allegations that the conduct was "consumer-oriented" as required under GBL § 349 are "spurious" and "legal conclusions masquerading as factual allegations" (Mott MOL p. 14 *citing Sigmon v. Goldman Sachs Mortgage Company,* No. 1:12-cv-3367 (ALC) (S.D.N.Y. July 22, 2016)); and (3) the pleadings fail to sufficiently link factual allegations to each Defendant.

**1.** This Court has jurisdiction over Plaintiff's GBL § 349 claims via supplemental jurisdiction.

While questioning this Court's jurisdiction over Plaintiff's GBL § 349 claims as state law claims, Mott Defendants totally fail to address Plaintiff's allegations of this Court's supplemental jurisdiction. *See* FAC ¶ 2. The facts supporting the Mott Defendants' GBL § 349 liability are the same supporting  FDCPA liability – the filing of multiple lawsuits attempting to collect the same rental arrears and the failure to perform a meaningful attorney review of lawsuits and applications for default judgment therein which seek a judgment on rental arrears already sought by another lawsuit. Mott Defendants fail to identify any basis for why this Court should not exercise supplemental jurisdiction over the state law claims based on the common nucleus of operative fact with the FDCPA claims.

**2.** Mott Defendants' conduct was consumer-oriented based on clear factual allegations.

Mott Defendants argue that Plaintiff has failed to allege that their conduct was consumer-oriented as required to state a claim for GBL § 349. Mott MTD pp. 16-17. The consumer-oriented-standard was outlined *supra* as to the GBL 349 claims against Defendant DeCota.

Attempts by creditors to collect money that was not owed or misstate the amount owed has repeatedly been found to be consumer oriented. *See McCrobie,* 359 F. Supp. 3d at 255 (systematically collecting debts that Defendant "did not in fact have the legal right to collect that debt" was consumer-oriented); *Campbell,* 98 F. Supp. 3d at 588 ("sending form collection letters" that are deceptive can be consumer-oriented as opposed to letter sent particularly to one consumer by mistake); and *Samms*, 163 F. Supp. 3d at 116 (regularly filing suit with false representation of availability of attorney's fees).

The filing of multiple lawsuits attempting to collect the same rental arrears and the failure to perform a meaningful attorney review of lawsuits and applications for default judgment therein which seek a judgment on rental arrears already sought by another lawsuit is no different

than the other instances found by the courts of consumer-oriented debt collection where the creditor "did not in fact have the legal right to collect that debt." *McCrobie,* 359 F. Supp. 3d at 255. This conduct can and has affected similarly situated consumers, specifically the 14 other consumers besides Ms. Onfroy where the ATM Enterprise and the P.C. have filed collection lawsuits against the consumers in both Nassau District Court and Supreme Court. FAC ¶¶ 128-243.

**3.** <u>Individual conduct of Mott Defendants was clearly specified, and moreover Plaintiff alleged that Mott Defendants function as a single enterprise committing violations in concert.</u>

"While the Second Circuit has yet to rule explicitly on the issue of individual FDCPA liability, many courts, including courts within this district, have recognized that individual liability may be imposed where the defendant sought to be held liable personally engaged in the prohibited conduct." *Krapf v. Prof'l Collection Servs., Inc.*, 525 F. Supp. 2d 324, 327 (E.D.N.Y. 2007) (collecting cases). To be held personally liable, the individual defendant must have "engaged in some affirmative action with respect to the debt collection." *Isaac v. NRA Grp.*, LLC, 377 F. Supp. 3d 211, 215-216 (E.D.N.Y. 2019), *aff'd*, 798 F. App'x 693 (2d Cir. 2020) (collecting cases).

Similarly for GBL § 349, "corporate officers and directors may be held individually liable if they participated in or had knowledge of the fraud, even if they did not stand to gain personally." *Polonetsky v. Better Homes Depot*, 97 N.Y.2d 46 (N.Y. 2001) *citing Marine Midland Bank v Russo Produce Co.*, 50 NY2d 31, 44 (N.Y. 1980). In *Polonetsky*, the Court of Appeals found that the New York City Dept. of Consumer Affairs had stated a claim against the president of Defendant Better Homes Depot for personal liability because he "participate[d] in [Better Homes'] operations on a day-to-day basis and [was] actively involved in its marketing

and sales activities." *Polonetsky*, 97 N.Y.2d at 51. Creditors can be held vicariously liable for the debt collection conduct of their attorneys. *Hunter v. Palisades Acquisition XVI, LLC*, No. 16 CIV. 8779 (ER), 2017 WL 5513636, at *9 (S.D.N.Y. Nov. 16, 2017).

The Third Collection Lawsuit, seeking the same rental arrears as the Second Collection Lawsuit, was filed by the P.C., on behalf of the LLC, and signed by Mr. Mott. FAC ¶ 85. The LLC is vicariously liable for the actions by the P.C. and Mr. Mott[2] and directly liable under GBL § 349, as a corporation can only take actions in a New York court through an attorney. Mr. Miller also has individual liability for this violation as he signed an Affirmation in support of the Third Collection Lawsuit. FAC ¶ 86. And Defendant ATM, particularly through its employee Joseph Nicaj, was in fact directing the debt collection activities by the P.C. and the individual attorneys. FAC ¶¶ 20-21, 46-47, 71-72, 78-80.

Moreover, Plaintiff alleges that the Mott Defendants function as a collective enterprise, and thus the corporate form separating them should be disregarded for purposes of liability. FAC ¶ 14. When the corporate form is used "to perpetrate a fraud, or so dominate and disregard the corporate form that the corporation primarily transacts their personal business, the Court may pierce the corporate veil and impose liability directly." *Mar. Ventures Int'l, Inc. v. Caribbean Trading & Fid., Ltd.*, 689 F. Supp. 1340, 1348 (S.D.N.Y. 1988) *citing Kirno Hill Corp. v. Holt,* 618 F.2d 982, 985 (2d Cir.1980). A number of factors determine whether a corporation is merely an "alter ego" of another corporation and thus that all of the entities are essentially "one whole entity": "(1) the absence of the formalities and paraphernalia that are part and parcel of the corporate existence, i.e., issuance of stock, election of directors, keeping of

---

[2] For GBL § 349 – Plaintiff does not bring any claims under the FDCPA against the Landlord Defendants, as they are not debt collectors under 15 U.S.C. § 1692a(6).

37

corporate records and the like, (2) inadequate capitalization, (3) whether funds are put in and taken out of the corporation for personal rather than corporate purposes, (4) overlap in ownership, officers, directors, and personnel, (5) common office space, address and telephone numbers of corporate entities, (6) the amount of business discretion displayed by the allegedly dominated corporation, (7) whether the related corporations deal with the dominated corporation at arms-length, (8) whether the corporations are treated as independent profit centers, (9) the payment or guarantee of debts of the dominated corporation by other corporations in the group, and (10) whether the corporation in question had property that was used by other of the corporations as if it were its own." *Wm. Passalacqua Builders, Inc. v. Resnick Developers S., Inc.*, 933 F.2d 131, 139 (2d Cir. 1991). "[D]isregarding corporate separateness is a remedy that 'differs with the circumstances of each case.'" *Id. quoting American Protein Corp. v. AB Volvo*, 844 F.2d 56, 60 (2d Cir. 1988). The question that is ultimately put before the jury is a balancing test of whether "the policy behind the presumption of corporate independence and limited shareholder liability—encouragement of business development—is outweighed by the policy justifying disregarding the corporate form—the need to protect those who deal with the corporation." *Wm. Passalacqua Builders, Inc.,* 933 F.2d at 139. An extensive review of the factual record is needed to make a determination of whether the corporate form should be disregarded (*see e.g. Id.* at 139-140), so at the stage of a motion to dismiss, the Plaintiff must only allege facts "beyond relationships 'typical of a majority shareholder or parent corporation.'" *Capmark Fin. Grp. Inc. v. Goldman Sachs Credit Partners L.P.*, 491 B.R. 335, 349–50 (S.D.N.Y. 2013) *quoting Fletcher,* 68 F.3d at 1459-160; *see also American Protein*, 844 F.2d at 59 ("the issue of corporate disregard is generally submitted to the jury"). In *Maritime Ventures Intern., Inc.,* the Plaintiff sufficiently pled a *prima facie* case for piercing the corporate veil

38

where there was evidence that the corporation was "a personal business opportunity," that there was not evidence of the corporation compensating the other corporation for transferring a right, that there was disregard for corporate formalities, and that the corporation was inadequately capitalized. *Mar. Ventures Int'l, Inc.*, 689 F. Supp. at 1348-1349. "Courts are not required to find that every factor is present, and no one factor is dispositive." *Shantou Real Lingerie Mfg. Co. v. Native Grp. Int'l, Ltd.*, 401 F. Supp. 3d 433, 440 (S.D.N.Y. 2018).

ATM, the LLC, and the other 30 residential apartment limited liability companies form a single enterprise, and the companies within the ATM Enterprise: (1) are interrelated in their operations; (2) share centralized control of labor relations; (3) are under common management; (4) are commonly owned and financially controlled; (5) share personnel; (6) share electronic links for website apartment listings; and (7) share offices. *Id.* ¶ 14. Upon information and belief, the limited liability corporations, including the LLC, are inadequately capitalized to operate independently because the limited liability corporations, including the LLC, are set up by the ATM Enterprise solely to be used for a corresponding apartment complex – in the case of the LLC, the apartment complex at 700 Merrick Road, Baldwin, NY 11510. *Id.* ¶¶ 15-16.

Defendant ATM advertises the 700 Merrick Road apartment complex on its website, and upon information and belief, all marketing of the 700 Merrick Road apartment complex is done through Defendant ATM. *Id.* ¶ 17 *citing* **Exhibit A** (ATM Website). Upon information and belief, the limited liability corporations in the ATM Enterprise, including the LLC, have no independent discretion from ATM, with ATM essentially making all decisions for the corporations. FAC ¶ 18. For example, the ATM Enterprise companies have entered into mortgages for their respective properties jointly rather than entering into separate mortgages independently from one another. *Id.* ¶ 19.

Since ATM employee Joseph Nicaj is listed in the collection lawsuits filed by the ATM Enterprise as the managing agent for the limited liability corporations, upon information and belief, the limited liability corporations, including the LLC, are not dealt with by ATM at arms-length in transactions, including but not limited to the collection of rent from residential tenants like Plaintiff. *Id.* ¶¶ 20-21. When ATM uses corporations like the LLC to collect on debts, it obfuscates ATM's role in and responsibility for the collection; for most consumers and courts, they never know about this third entity involved, despite that it performs the daily management of the account. *Id.*

The Five Day Notices appear to be a form used by the ATM Enterprise generally for the collection of rent. *Id.* ¶ 79. Notably, the enclosed Billing Notice instructed Ms. Onfroy to send the allegedly owed rental arrears to ATM rather than the LLC, evincing both that ATM directs the LLC's collection of rent and that the LLC is not an independent profit center from ATM. *Id.* ¶ 80. And below the signature of the notary on the Second Collection Lawsuit is "litig/2021/Complaints/ATM/complaint lease ATM Onfroy." *Id.* ¶ 72. This corroborates Plaintiff's belief that the client of the P.C. is, in fact or in practice, ATM rather than just the LLC. *Id.*

Even without disregarding the corporate separateness between ATM and the LLC, because they operate as a joint venture for the collection of rent, ATM and the LLC are jointly and severally liable for their conduct in attempting to collect rent, including the collection lawsuits against Ms. Onfroy. *Id.* ¶ 26.

## VI.   CONCLUSION

Plaintiff prays this Court deny the Motions to Dismiss of DeCota and the Mott Defendants.

40

Dated: Brooklyn, New York
        December 16, 2022

                                                    /s/ *Ahmad Keshavarz*
                                        _____
                                        Ahmad Keshavarz
                                        Emma Caterine
                                        The Law Office of Ahmad Keshavarz
                                        16 Court St., 26th Floor
                                        Brooklyn, NY 11241
                                        Tel: (718) 522-7900
                                        Fax: (877) 496-7809
                                        Email: ahmad@NewYorkConsumerAttorney.com


                                                    /s/ *Jonathan A. Schwartz*
                                        _____
                                        Nassau Suffolk Law Services Committee, Inc.
                                        By: Jonathan A. Schwartz, of Counsel
                                        1 Helen Keller Way, 5th Floor,
                                        Hempstead, NY 11550
                                        Phone: (516) 292-8100
                                        Fax:    (516) 292-6529
                                        Email: jschwartz@nsls.legal


                                **CERTIFICATE OF SERVICE**

I hereby certify that on this date I emailed the foregoing to the following pursuant to the
Individual Rules of Judge Komitee:

        For Defendant Kenneth J. Decota
        John D. D'Ercole
        Leech Tishman Robinson Brog PLLC appeared:
        S.D.N.Y Bar No. LH4371
        875 Third Avenue
        New York, NY 10022
        Direct Telephone: (212) 603-6368
        General Telephone: (212) 603-6300
        Facsimile: (212) 956-2164
        jdercole@leechtishman.com

        For Defendants The Law Offices of Geoffry T. Mott, P.C., Geoffrey T. Mott, Samuel
        Miller, Arthur T. Mott Real Estate, LLC, 700 Merrick LLC
        David Pretter

                                        41

Law Office of Alan J. Sasson, P.C.
2102 Avenue Z, Suite 201
Brooklyn, NY 11235
david@sassonlaw.com


Date:  December 16, 2022
Brooklyn, NY
/s/
Emma Caterine