

## Lawyers Professional Liability Policy
## Declarations

| Agency:<br>740558 | Branch:<br>912 | Policy Number:<br>425164316 | Insurance is provided by Continental Casualty Company,<br>151 North Franklin Street Chicago IL 60606<br>A Stock Insurance Company. |
|---|---|---|---|

**NOTICE:**

THIS IS A **CLAIMS** MADE POLICY.  EXCEPT TO SUCH EXTENT AS MAY BE PROVIDED HEREIN, THIS POLICY IS LIMITED TO LIABILITY FOR THOSE **CLAIMS** THAT ARE FIRST MADE AGAINST THE **INSURED** DURING THE **POLICY PERIOD**  OR ANY **EXTENDED REPORTING PERIOD** OR ANY SUBSEQUENT RENEWAL.  NO COVERAGE EXISTS FOR CLAIMS FIRST MADE UPON TERMINATION OF COVERAGE UNLESS, AND TO THE EXTENT, THE **EXTENDED REPORTING PERIOD** APPLIES .  PLEASE REVIEW THE POLICY CAREFULLY AND DISCUSS WITH YOUR INSURANCE AGENT OR BROKER.

IF SECTION 6 BELOW INDICATES THAT ENDORSEMENT G-118015-A31 IS ATTACHED, THEN **CLAIM EXPENSES** SHALL BE APPLIED TO, AND ACT AS A REDUCTION OF UP TO 100% OF THE LIMITS OF LIABILITY.

IF SECTION 6 BELOW INDICATES THAT ENDORSEMENT G-118016-A31 or G-118020-A31 IS ATTACHED, THEN **CLAIM EXPENSES** SHALL BE APPLIED TO, AND ACT AS A REDUCTION OF UP TO 100% OF THE APPLICABLE DEDUCTIBLE.

IF SECTION 6 BELOW INDICATES THAT ENDORSEMENT G-118017-A31 IS ATTACHED, THEN **CLAIM EXPENSES** SHALL BE APPLIED TO, AND ACT AS A REDUCTION OF, UP TO 100% OF THE LIMITS OF LIABILITY.

IF SECTION 6 BELOW INDICATES THAT ENDORSEMENT G-118081-A31 or GSL-10552-NY IS ATTACHED, THEN **CLAIM EXPENSES** SHALL BE APPLIED TO, AND ACT AS A REDUCTION OF, UP TO 50% OF THE APPLICABLE DEDUCTIBLE.

**1.   NAMED INSURED AND MAILING ADDRESS:**
Samuel W. Miller
7600 Jericho Turnpike, Suite 105
Woodbury, NY  11797

**2.   POLICY PERIOD:**

Inception: 09/10/2020                          Expiration: 09/10/2021
*at 12:01 A.M. Standard Time at the address shown above*

| **3.   LIMITS OF LIABILITY:** | Each Claim: $1,000,000 | Aggregate: $1,000,000 |
|---|---|---|
| Death or Disability and Non-Practicing<br>Extended Reporting Period Limit of Liability: | Each Claim: $1,000,000 | Aggregate: $1,000,000 |

| **4.   DEDUCTIBLES:** | Each Claim: $5,000 | Aggregate: $5,000 |
|---|---|---|

**5.   POLICY PREMIUM:**

| **NY State Bar Association Membership Credit:** | $-202 |
|---|---|
| **Annual Premium:** | $3,842.00 |

G-118012-A31 (c)  (Ed.4/10)



**Total Amount Due:**                                                     $3,842.00

*Includes Net Protect Premium, see coverage endorsement if applicable*

*The premium for any Extended Claim Reporting Period requested as specified in this policy will be:*
*75% of the annual premium for one year; 175% of the annual premium for 3 years; 225% of the annual premium for 6 years*
*or 250% of the annual premium for an unlimited number of years.*

---

**6.   FORMS AND ENDORSEMENTS ATTACHED AT INCEPTION:**
G-118011-A31 (Ed. 12/2009), G-118012-A31 (c) (Ed. 04/2010), CNA-77115-NY (Ed. 11/2013), G-118017-A31 (Ed. 01/2010), G-118024-A (Ed. 04/2008), G-118029-A (Ed. 04/2008), G-118047-A31 (Ed. 04/2010), G-145184-A (Ed. 06/2003), GSL-10552-NY (Ed. 01/2010), GSL-12439-XX (Ed. 03/2009)

---

**7.   WHO TO CONTACT:**                    To report a claim:
                                           CNA – Claims Reporting
                                           P.O. Box 8317
                                           Chicago, IL 60680-8317
                                           Fax: 866-773-7504 / Online: www.cna.com/claims
                                           Email: SpecialtyProNewLoss@cna.com
                                           Lawyers Claim Reporting Questions: 800-540-0762

*Michael Mooney*
                                                                        08/18/2020

| **Countersignature** | **Date** | **Authorized Representative** | **Date** |




**Continental Casualty Company**
**151 North Franklin Street**
**Chicago, IL -60606**

### LAWYERS PROFESSIONAL LIABILITY POLICY

### ATTORNEY SCHEDULE

**Policy Number:**         425164316

**Name of Each Lawyer**
Samuel Miller

**CNA**

### NEW YORK LAWYERS PROFESSIONAL LIABILITY POLICY

**THIS POLICY APPLIES ONLY TO ANY CLAIM FIRST MADE AGAINST THE INSURED DURING THE POLICY PERIOD. CLAIMS MUST BE REPORTED TO THE COMPANY DURING THE POLICY PERIOD, ANY SUBSEQUENT RENEWAL, OR ANY EXTENDED REPORTING PERIOD. CLAIM EXPENSES ARE IN ADDITION TO THE LIMITS OF LIABILITY. PLEASE REVIEW THIS POLICY CAREFULLY AND DISCUSS THIS COVERAGE WITH YOUR INSURANCE AGENT OR BROKER.**

I.    INSURING AGREEMENT

    A.    Coverage

        The **Company** agrees to pay on behalf of the **Insured** all sums in excess of the deductible that the **Insured** shall become legally obligated to pay as **damages** because of a **claim** that is first made against the **Insured** during the **policy period** and reported to the **Company** during the **policy period**, any subsequent renewal, or any **extended reporting period** by reason of an act or omission in the performance of **legal services** by the **Insured** or by any person for whom the **Insured** is legally liable, provided that:

        1.    no **Insured** gave notice to a **prior insurer** of such **claim** or a **related claim**;

        2.    no **Insured** gave notice to a **prior insurer** of any such act or omission or **related act or omission**;

        3.    prior to the date an **Insured** first becomes an **Insured** under this Policy or became an **Insured** under the first policy issued by the **Company** (or its subsidiary or affiliated insurers) to the **Named Insured** or any **predecessor firm**, whichever is earlier, of which this Policy is a renewal or replacement, no such **Insured** had a basis to believe that any such act or omission, or **related act or omission**, might reasonably be expected to be the basis of such **claim**, except that such insurance as would otherwise be afforded under this Policy shall apply with respect to any natural person **Insured** who did not personally have a basis for such a belief;

        4.    there is no other policy, whether primary, contributory, excess, contingent or otherwise, which provides insurance to any **Insured** for the **claim** based on or arising out of an act or omission in the performance of **legal services** by such **Insured** or by any person for whom such **Insured** is legally liable while "affiliated" with a firm other than the **Named Insured**. As used herein, "affiliated" includes acting as Of Counsel for a firm other than the **Named Insured**.

        The **Company** shall also pay **claim expenses** in connection with such **claim**. **Claim expenses** are in addition to the limits of liability.

    B.    Defense

        The **Company** shall have the right and duty to defend in the **Insured's** name and on the **Insured's** behalf a **claim** covered by this Policy even if any of the allegations of the **claim** are groundless, false or fraudulent. The **Company** shall have the right to appoint counsel and to make such investigation and defense of a **claim** as is deemed necessary by the **Company**. If a **claim** shall be subject to arbitration or mediation, the **Company** shall be entitled to exercise all of the **Insured's** rights in the choice of arbitrators or mediators and in the conduct of an arbitration or mediation proceeding.

    C.    Settlement

        The **Company** shall not settle a **claim** without the written consent of the **Named Insured**. If the **Named Insured** unreasonably refuses to consent to a settlement or compromise recommended by the **Company** and acceptable to the claimant, then the **Company's** limit of liability under this Policy shall be reduced to the amount for which the **claim** could have been settled plus all **claim expenses** incurred up to the time the **Company** made its recommendation, which amount shall not exceed the remainder of the limit of liability specified in Section II.A.

    D.    Exhaustion of limits

        The **Company** is not obligated to investigate, defend, pay or settle, or continue to investigate, defend, pay or settle a **claim** after the applicable limit of the **Company's** liability has been exhausted by payment of **damages** or after the **Company** has deposited the remaining available limits of liability into a court of

© CNA All Rights Reserved.



competent jurisdiction in satisfaction of a judgment or settlement. In such case, the **Company** shall have the right to withdraw from the further investigation, defense, payment or settlement of such **claim** by tendering control of said investigation, defense or settlement of the **claim** to the **Insured**. The **Company** will initiate and cooperate in the transfer of control to the **Named Insured** of any **claims** which were reported to it prior to the exhaustion of such limit. The **Named Insured** must cooperate in the transfer of control of such **claims**. The **Company** agrees to take the necessary steps, as it deems appropriate, to avoid a default in such **claims** until such transfer has been completed, provided the **Named Insured** is cooperating in completing such transfer. The **Named Insured** must reimburse the **Company** for expenses it incurs in taking those steps it deems appropriate to avoid a default.

II.    LIMITS OF LIABILITY AND DEDUCTIBLE

A.    Limit of liability - each **claim**

Subject to paragraph B. below, the limit of liability of the **Company** for **damages for** each **claim** shall not exceed the amount stated in the Declarations for each **claim.**

B.    Limit of liability - in the aggregate

The limit of liability of the **Company** for **damages for** all **claims** shall not exceed the amount stated in the Declarations as the aggregate.

C.    Deductible

The deductible amount stated in the Declarations is the total amount of the **Insured's** liability for all **claims** and applies to the payment of **damages only**. The deductible shall be paid by the **Named Insured**. The limits of liability set forth in the Declarations are in addition to and in excess of the deductible.

D.    Multiple **Insureds**, **claims** and claimants

The limits of liability shown in the Declarations and subject to the provisions of this Policy is the amount the **Company** will pay as **damages** regardless of the number of **Insureds, claims** made or persons or entities making **claims**. If **related claims** are subsequently made against the **Insured** and reported to the **Company** during the **policy period**, any subsequent renewal, or any applicable **extended reporting period**, all such **related claims**, whenever made, shall be considered a single **claim** first made and reported to the **Company** within the **policy period** in which the earliest of the **related claims** was first made and reported to the **Company**.

E.    Supplementary payments

Payments made under paragraphs 1 and 2 below will not be subject to the deductible. Such payments are in addition to the limits of liability.

1.    Loss of Earnings

The **Company** will pay each **Insured** up to $500.00 for loss of earnings for each day or part of a day of such **Insured's** attendance, at the **Company's** written request, at a trial, hearing or other alternative dispute resolution proceeding, including arbitration proceeding or mediation, involving a **claim** against such **Insured**, but in no event shall the amount payable hereunder exceed $50,000.00 per **Insured** despite the number of days an **Insured** is in attendance, or the number of trials, hearings or arbitration proceedings that an **Insured** is required to attend. In no event shall the amount payable per **policy period** exceed $50,000.00 despite the number of **Insureds** hereunder or the number of such proceedings.

2.    **Disciplinary Proceedings**

The **Company** will pay the **Named Insured** up to $50,000. for each **Insured** and all **Insureds** in the aggregate, for attorney fees and other reasonable costs, expenses or fees (the "Disciplinary Fees") paid to third parties (other than an **Insured**) resulting from any one **Disciplinary Proceeding** incurred as the result of a notice of such **Disciplinary Proceeding** both first received by the **Insured** during the **policy period** and reported in writing to the **Company** during the **policy period**, any subsequent renewal, or any **extended reporting period**, arising out of an act or omission in the rendering of **legal services** by such **Insured**. The amount payable hereunder shall not exceed $100,000, despite the number of such proceedings except that:

© CNA  All Rights Reserved.

**CNA**

a.   the above coverage shall not apply to **claims** involving entitlement to non-employment related benefits, provided either directly or indirectly, from any government, governmental agency or political subdivision pursuant to any entitlement program;

b.   this Policy shall not provide coverage for an **Insured** that institutes or initiates the proceeding or litigation where the insured is: (i) a public entity, as that term is defined by New York law: (ii) a quasi-public entity specifically created by statute; or (iii) a large commercial insured, as is defined by New York law, except that, in regard to a large commercial insured, the policy may provide coverage for an appellate proceeding;

c.   this Policy shall not provide for the indemnification of any penalty or other similar monetary amount that the **Insured** may become obligated for as the result of such proceeding.

In the event of a determination of **No Liability** of the **Insured** against whom the **Disciplinary Proceeding** has been brought, the **Company** shall pay such **Insured** for Disciplinary Fees, including those in excess of the $50,000 cap set forth above, up to $100,000. In no event shall the amount payable hereunder exceed $100,000 despite the number of **Insureds** hereunder or the number of such proceedings.

3.   Supplemental Claim Benefit

In the event the aggregate limit of liability stated in Section II.B. above is exhausted by payment of **damages** under this policy and there remain any unresolved or outstanding **claims**, the **Company** agrees to reimburse the **Insured** for an amount equal to 10 percent of the limit of liability stated in Section II.A. above, up to a maximum amount of $100,000 for **claim expenses** incurred by the Insured in handling the defense of such unresolved or outstanding **claims**. This supplemental benefit applies only to **claims** that were reported to the **Company** prior to the exhaustion of limits.

F.   Risk Management Incentives

1.   Mediation

If mediation of a **claim** takes place either without institution of arbitration proceeding or service of suit or within 180 days of the institution of such proceedings or service of suit, and such **claim** is ultimately resolved for an amount acceptable to the **Insured** and the **Company** by the process of mediation, the **Insured's** deductible, applying to the **claim**, will be waived.

2.   Subpoena Assistance

In the event the **Insured** receives a subpoena for documents or testimony arising out of **legal services** or **non-profit services** rendered by the **Insured** and the **Insured** would like the **Company's** assistance in responding to the subpoena, the **Insured** may provide the **Company** with a copy of the subpoena and the **Company** will retain an attorney to provide advice regarding the production of documents, to prepare the **Insured** for sworn testimony, and to represent the **Insured** at the **Insured's** depositions, provided that:

a.   the subpoena arises out of a lawsuit to which the **Insured** is not a party; and

b.   the **Insured** has not been engaged to provide advice or testimony in connection with the lawsuit, nor has the **Insured** provided such advice or testimony in the past.

The **Company** will pay such attorney's legal fees excluding any disbursements. Such fees incurred under this provision are in addition to the limits of liability and are not subject to the deductible. Any notice the **Insured** gives the **Company** of such subpoena shall be deemed notification of a potential **claim** under Section V.A. of this Policy.

G.   Pre-**claims** Assistance

Until the date a **claim** is made, the **Company** may pay for all costs or expenses it incurs, at its sole discretion, as a result of investigating a potential **claim** that the **Insured** reports in accordance with Section V. CONDITIONS, Paragraph A, Notice, subparagraph 2, Notice of Potential **Claim**. Such payments are in addition to the limits of liability and not subject to the deductible.

© CNA  All Rights Reserved.

**CNA**

H.     Additional Coverage Grant - **Non-Profit Services**

The Company agrees to pay on behalf of the **Insured** all sums in excess of the deductible that the **Insured** shall become legally obligated to pay as **damages** and **claim expenses** because of a **claim** that is first made against the **Insured** during the **claims-made relationship** or any **extended reporting period** by reason of an act or omission in the performance of **non-profit services** by the **Insured** in his or her capacity as a **non-profit entity director** except and to the extent the **non-profit entity** has actually indemnified him or her for such **damages** or **claim expenses** and provided that:

1.    the **Insured** did not give notice to a **prior insurer** of such **claim** or a **related claim**; and

2.    the **Insured** did not give notice to a **prior insurer** of any such act or omission or **related act or omission**; and

3.    with respect to **non-profit services** only, any insurance available under this Policy to the **Insured** while acting as a **non-profit entity director** shall be specifically excess of any insurance available to such **non-profit entity director** from the **non-profit entity**.

III.    DEFINITIONS

The following defined words shall have the same meaning throughout this **Policy**, whether expressed in the singular or the plural. Wherever appearing in bold print in this Policy:

**"Bodily injury"** means injury to the body, sickness or disease sustained by any person, including death resulting from such injuries; or mental injury, mental anguish, mental tension, emotional distress, pain or suffering or shock sustained by any person whether or not resulting from injury to the body, sickness, disease or death of any person.

**"Claim"** means a demand, including the service of suit or the institution of any alternative dispute resolution proceeding, received by the **Insured** for money arising out of an act or omission, including **personal injury**, in the rendering of or failure to render **legal services**.

**"Claim expenses"** mean:

A.    fees charged by attorneys designated by the **Company** or by the **Insured** with the **Company's** written consent; and

B.    all other reasonable and necessary fees, costs and expenses resulting from the investigation, adjustment, defense and appeal of a **claim** if incurred by the **Company**, or by the **Insured** with the written consent of the **Company**, including, but not limited to, premiums for any appeal bond, attachment bond or similar bond but without any obligation of the **Company** to apply for or furnish any such bond;

C.    all costs taxed against an **Insured** in defense of a **claim**; and

D.    all interest on the entire amount of any judgment which accrues after entry of the judgment and before the **Company** has paid that part of the judgment which does not exceed the limits of liability stated in Section II A. above.

**Claim expenses** do not include fees, costs or expenses of employees or officers of the **Company**. Nor shall **claim expenses** include salaries, loss of earnings or other remuneration by or to any **Insured**.

**Claims-made relationship** means that period of time between the effective date of the first claims-made policy between the **Company** and the **Named Insured** and the cancellation or nonrenewal of the last consecutive claims-made policy between the **Company** and the **Named Insured**, where there has been no gap in coverage, but does not include any period covered by **extended reporting period** coverage

**"Company"** means the insurance company named in the Declarations.

**"Damages"** mean judgments, awards and settlements (including pre-judgment interest), provided any settlements negotiated with the assistance and approval of the **Company**. **Damages** do not include:

A.    legal fees, costs and expenses paid or incurred or charged by any **Insured**, no matter whether claimed as restitution of specific funds, forfeiture, financial loss, set-off or otherwise, and injuries that are a consequence of any of the foregoing;

B.    civil or criminal fines, sanctions, penalties or forfeitures, whether pursuant to law, statute, regulation or court rule, including but not limited to awards under 18 U.S.C. §1961, et. seq., Federal Rules of Civil

G118011A31 (12-09)
Page 4

© CNA  All Rights Reserved.

**CNA**

Procedure 11 or 28 U.S.C. §1927 and state statutes, regulations, rules or law so providing, and injuries that are a consequence of any of the foregoing;

C.    punitive or exemplary amounts;

D.    the multiplied portion of multiplied awards;

E.    injunctive or declaratory relief;

F.    any amount for which an **Insured** is absolved from payment by reason of any covenant, agreement or court order.

"**Disciplinary Proceeding**" means any pending matter, including an initial inquiry, before a state or federal licensing board or a peer review committee to investigate charges alleging a violation of any rule of professional conduct in the performance of **legal services**.

"**Insured**" means the **Named Insured**, **predecessor firm** and the persons or entities described below:

A.    any lawyer, partnership, professional corporation, professional association, limited liability company or limited liability partnership who is or becomes a partner, officer, director, stockholder-employee, associate, manager, member or **employee** of the **Named Insured** during the **policy period** shown in the Declarations;

B.    any lawyer previously affiliated with the **Named Insured** or a **predecessor firm** as a partner, officer, director, stockholder-employee, associate, manager, member but only for **legal services** performed on behalf of the **Named Insured** or a **predecessor firm** at the time of such affiliation. The term "previously affiliated" as used herein does not include a lawyer who, during the **policy period** and while affiliated with the **Named Insured**: a) voluntarily ceases, permanently and totally, the private practice of law; or b) dies or becomes **totally and permanently disabled.** Such a lawyer will be deemed to be an **Insured** under paragraph A. above;

C.    any lawyer, law firm, partnership, professional corporation, professional association, limited liability company or limited liability partnership who acts as Of Counsel to the **Named Insured** or any non-employee independent contractor attorney to the **Named Insured**, but only for **legal services** rendered on behalf of the **Named Insured** and only if a fee inured or, in the event of a contingency fee, would have inured, to the **Named Insured**. No fee need inure to the **Named Insured where** eleemosynary (pro bono) **legal services** are rendered by such Of Counsel **Insured** where at the time of retention, there was approval by the appropriate committee or lawyer within the **Named Insured** that the matter would be handled without compensation. Any lawyer, law firm, partnership, professional corporation, professional association, limited liability company or limited liability partnership who previously qualified as an **Insured** under paragraph A. above, but gave up the position of partner, officer, director, stockholder-employee, associate, manager, member or **employee** to act exclusively as Of Counsel to the **Named Insured**, will be deemed to be an **Insured** under paragraph A. above;

D.    any person who is a former or current employee, other than an employed lawyer, of the **Named Insured** or any **predecessor firm**, but solely for services performed by such person within the course and scope of their employment by the **Named Insured** or any **predecessor firm** and provided that the services in dispute are **legal services** of the **Named Insured** or any **predecessor firm**;

E.    the estate, heirs, executors, administrators, assigns and legal representatives of an **Insured** in the event of such **Insured's** death, incapacity, insolvency or bankruptcy, but only to the extent that such **Insured** would have been provided coverage under this Policy;

F.    a **non-profit entity director**.

"**Legal services**" mean:

A.    those services, including pro bono services, performed by an **Insured** for others as a lawyer, arbitrator, mediator, title agent or other neutral fact finder or as a notary public. Any title agency or company, on whose behalf the **Insured** acts as title agent or designated issuing attorney, is not an **Insured** under this Policy;

B.    those services performed by an **Insured** as an administrator, conservator, receiver, executor, guardian, trustee or in any other fiduciary capacity and any investment advice given in connection with such services;

G118011A31 (12-09)
Page 5

© CNA  All Rights Reserved.

**CNA**

C.      those services performed by an **Insured** in the capacity as a member, director or officer of any professional legal association, including any Bar Association and any similar organization or association, its governing board or any of its committees;

D.      those services as an author or publisher of legal research papers or legal materials or the presenter of legal seminars or materials, but only where such services are performed without compensation or compensation attributable per publication, presentation or seminar is less than $25,000.

**"Named Insured"** means the persons and entities designated in the Declarations.

**"No Liability"** means that with respect to an **Insured** who is the subject of a **Disciplinary Proceeding**, there is a:

A.      final determination of no liability;

B.      a determination of no further action; or

C.      the matter is abandoned by the disciplinary authority.

In no event shall the term "**No Liability"** apply to a **Disciplinary Proceeding** for which a settlement has occurred.

**"Non-profit entity"** means any non-profit corporation, community chest, fund, foundation, and any other similar entity or institution, that is exempt from federal income tax as an organization described in Section 501 (C)(3) of the Internal Revenue Code of 1986, and its amendments.

**"Non-profit entity director"** means any natural person who is or was a partner, officer, director, stockholder-employee, associate, manager, member or employee of the **Named Insured** and who is or was serving as a director, officer or trustee of a **non-profit entity** other than a professional legal association.

**"Non-profit services"** mean those services and activities, including pro-bono services and activities, performed by a **non-profit entity director** in his or her capacity as such.

**"Personal injury"** means an injury arising out of: false arrest, detention, or imprisonment; wrongful entry, or eviction, or other invasion of the right of private occupancy; libel, slander, or other disparaging or defamatory materials; a writing or saying in violation of an individual's right to privacy; malicious prosecution or abuse of process.

**"Policy period"** means the period of time between the inception date and time shown in the Declarations and the date and time of termination, expiration or cancellation of this Policy.

**"Predecessor firm"** means any sole proprietorship, partnership, professional corporation, professional association, limited liability corporation or limited liability partnership engaged in **legal services** and         to whose financial assets and liabilities the firm listed as the **Named Insured** in the Declarations is the majority successor in interest.

**"Prior insurer"** means an insurer, including the **Company** and any subsidiary or affiliate of the **Company**, who has issued a lawyers professional liability insurance policy that is applicable to a **claim**, such policy having an inception date prior to the **policy period**.

**"Related acts or omissions"** mean all acts or omissions in the rendering of **legal services** or **non-profit services** that are temporally, logically or causally connected by any common fact, circumstance, situation, transaction, event, advice or decision.

**"Related claims"** mean all **claims** arising out of a single act or omission or arising out of **related acts or omissions** in the rendering of **legal services** or **non-profit services**.

**Termination of Coverage"** means, whether made by the **Company** or the **Named Insured** at any time:

A.      Cancellation or nonrenewal of this Policy; or

B.      Decrease in limits, reduction of coverage, increased deductible or self-insured retention, new exclusion, or any other change in coverage less favorable to the **Named Insured**.

**"Totally and permanently disabled"** means that an **Insured** is so disabled as to be wholly prevented from rendering **legal services** provided that such disability:

A.      has existed continuously for not less than six (6) months; and

B.      is reasonably expected to be continuous and permanent.

© CNA  All Rights Reserved.



IV.    EXCLUSIONS

This Policy does not apply:

A.    Intentional Acts

to any **claim** based on or arising out of any dishonest, fraudulent, criminal or malicious act or omission or intentional wrongdoing by an **Insured** except that:

1.    the **Company** shall provide the **Insured** with a defense of such **claim** unless or until the dishonest, fraudulent, criminal, malicious act or omission or intentional wrongdoing has been determined by any trial verdict, court ruling, regulatory ruling or legal admission, whether appealed or not.  Such defense will not waive any of the **Company's** rights under this Policy. Criminal proceedings are not covered under this Policy regardless of the allegations made against any **Insured**;

2.    this exclusion will not apply to any **Insured** who is not found to have personally committed the dishonest, fraudulent, criminal, malicious act or omission or intentional wrongdoing by any trial verdict, court ruling, or regulatory ruling.

B.    **Bodily Injury**/Property Damage

to any **claim** for **bodily injury**, or injury to, or destruction of, any tangible property, including the loss of use resulting therefrom except that this exclusion of **bodily injury** does not apply to mental injury, mental anguish, mental stress, humiliation or emotional distress caused by **personal injury**;

C.    Status as Beneficiary or Distributee

to any loss sustained by an **Insured** or **claim** made against an **Insured** as beneficiary or distributee of any trust or estate;

D.    Contractual Liability

to any **claim** based on or arising out of an **Insured's** alleged liability under any oral or written contract or agreement, unless such liability would have attached to any **Insured** in the absence of such agreement;

E.    **Insured** vs. **Insured**

to any **claim** by or on behalf of an **Insured** under this Policy against any other **Insured** hereunder unless such **claim** arises out of **legal services** by an **Insured** rendered to such other **Insured** as a client;

F.    Capacity as Director, Officer, Fiduciary

to any **claim** based on or arising out of an **Insured's** capacity as:

1.    a former, existing or prospective officer, director, shareholder, partner, manager or member (or any equivalent position) of any entity, if such entity is not named in the Declarations; or

2.    a trustee of a pension, welfare, profit-sharing, mutual or investment fund or investment trust; or

3.    a fiduciary under the Employee Retirement Income Security Act of 1974 and its amendments or any regulation or order issued pursuant thereto or any other similar state or local law;

except that this exclusion does not apply to a **claim** based on or arising out of an **Insured's** capacity as a **non-profit entity director** of any **non-profit entity** or as a member, director or officer of any professional legal association, including any Bar Association and any similar organization or association, its governing board or any of its committees.

G.    Capacity as Public Official

to any **claim** based on or arising out of an **Insured's** capacity as a public official or an employee or representative of a governmental body, subdivision or agency unless such **Insured** is deemed as a matter of law to be a public official or employee or representative of such entity solely by virtue of rendering **legal services** to it;

H.    Owned Entity

to any **claim** based on or arising out of **legal services** performed, directly or indirectly,  for any entity not named in the Declarations, if at the time of the act or omission giving rise to the **claim**, the percentage of

© CNA  All Rights Reserved.



ownership interest, direct or indirect, in such entity by any **Insured,** or an accumulation of **Insureds,** exceeded 10%;

I.    Insurance Policies or Bonds

to any **claim** based on or arising out of the failure to obtain or maintain insurance policies or bonds for or on behalf of a **non-profit entity**.

## V.    CONDITIONS

A.    Notice

1.    Notice of **Claims**

The **Insured**, as a condition precedent to the obligations of the **Company** under this Policy, shall as soon as reasonably practical after learning of a **claim**, give written notice during the **policy period**, any subsequent renewal, or any **extended reporting period,** of such **claim** to the **Company** or the **Company's** licensed agent.  Failure to give such notice as soon as reasonably practical shall not invalidate coverage of such **claim**, unless the failure to provide timely notice has prejudiced the **Company** or unless the notice is provided after the expiration of the policy period, any renewal policy period and any extended reporting period.  However, failure to give any notice required to be given by this Policy within the time prescribed therein shall not invalidate any **claim** made by the **Insured** or by any other claimant if it shall be shown not to have been reasonably possible to give such notice within the prescribed time and that notice was given as soon as was reasonably possible thereafter.

2.    Notice of Potential **Claims**

If during the **policy period** the **Insured** becomes aware of any act or omission that may reasonably be expected to be the basis of a **claim** against the **Insured**, and if the **Insured** gives written notice during the **policy period**, or any subsequent renewal, to the **Company** or the **Company's** licensed agent of such act or omission and the reasons for anticipating a **claim**, with full particulars, including but not limited to:

a.    the specific act or omission;

b.    the dates and persons involved;

c.    the identity of anticipated or possible claimants;

d.    the circumstances by which the **Insured** first became aware of the possible **claim**,

then any such **claim** that arises out of such reported act or omission and that is subsequently made against the **Insured** shall be deemed to have been made at the time such written notice was given to the **Company** or the **Company's** licensed agent.

B.    Reimbursement of the **Company**

Subject always to the **Insured's** right to consent to settlement, as set forth in Section I. INSURING AGREEMENT, paragraph C, Settlement, if the **Company**, in the exercise of its discretion and without any obligation to do so, pays any amount within the amount of the deductible, the **Named Insured** shall be liable to the **Company** for any and all such amounts and, upon demand, shall pay such amounts to the **Company**.

C.    Territory

This Policy applies to an act or omission taking place, **claims** made, or suits brought anywhere in the world.

D.    Other insurance

If there is other insurance that applies to the **claim**, this insurance shall be excess over such other valid and collectible insurance whether such insurance is stated to be primary, contributory, excess, contingent or otherwise.  When there is such other insurance, the **Company** will pay only its share of the amount of any **damages** and **claim expenses**, if any, that exceed the sum of:

1.    the total amount that all such other insurance would pay for with respect to such **Claim** in the absence of this insurance; and

G118011A31 (12-09)
Page 8

© CNA  All Rights Reserved.

2.     the total of all deductible and self-insured amounts under all that other insurance.

This paragraph does not apply to any other insurance that was bought specifically to apply in excess of the Limits of Liability shown in the Declarations of this Policy.

When this insurance is excess, the **Company** will have no duty under this Policy to defend the **Insured** against any **claim** if any other insurer has a duty to defend the **Insured** against that **claim**. If no other insurer defends, the **Company** will undertake to do so, but it will be entitled to the **Insured's** rights against all those other insurers.

E.     Assistance and cooperation of the **Insured**

   1.     The **Insured** shall cooperate with the **Company** and, upon the **Company's** request, shall attend hearings and trials and shall assist in effecting settlements, securing and giving of evidence, obtaining the attendance of witnesses, and the conduct of suits and proceedings in connection with a **claim**.

   2.     The **Insured** shall assist in the enforcement of any right of contribution or indemnity against any person or organization who or which may be liable to any **Insured** in connection with a **claim**.

   3.     The **Insured** shall not, except at its own cost, voluntarily make any payment, assume or admit any liability or incur any expense without the consent of the **Company**.

F.     Action against the **Company**

No action shall lie against the **Company** by any third party, unless, as a condition precedent thereto:

   1.     there shall have been full compliance with all the terms of this Policy; and

   2.     the **Insured's** obligation to pay shall have been finally determined either by judgment against the **Insured** or by written agreement of the **Insured**, the claimant and the **Company**.

Any person or organization or the legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this Policy to the extent of the insurance afforded by this Policy. No person or organization shall have any right under this Policy to join the **Company** as a party to any action against an **Insured**, nor shall the **Company** be impleaded by the **Insured** or his legal representative.

G.     Bankruptcy or Insolvency

Bankruptcy or insolvency of the **Insured** or of the **Insured's** estate shall not relieve the **Company** of any of its obligations hereunder.

H.     Subrogation

In the event of any payment under this Policy, the **Company** shall be subrogated to all the **Insured's** rights of recovery thereof against any person or organization. The **Insured** shall execute and deliver instruments and papers and do whatever else is necessary to secure and collect upon such rights. The **Insured** shall do nothing to prejudice such rights.

I.     Changes

None of the provisions of this Policy will be waived, changed or modified except by written endorsement, signed by the **Company**, issued to form a part of this Policy.

J.     Assignment

No assignment of interest of the **Insured** under this Policy shall be valid, unless the written consent of the **Company** is endorsed hereon.

K.     Cancellation

   1.     This Policy may be canceled by the **Named Insured** by surrendering it to the **Company** or any of its authorized agents. The **Named Insured** may also cancel this Policy by written notice to the **Company** or the **Company's** licensed agent stating at what future date cancellation is to be effective.

   2.     If this Policy has been in effect for sixty (60) days or less, this Policy may be canceled by the **Company** by mailing or delivering to the **Named Insured** written notice stating the reason for

© CNA  All Rights Reserved.



cancellation at the mailing address shown on the Declarations, and to its authorized agent or broker at least:

a.    twenty (20) days before the effective date of cancellation if this Policy is canceled for any reason not included in paragraph b. below;

b.    fifteen (15) days before the effective date of cancellation if this Policy is canceled for any of the following reasons:

(1)    Non-payment of premium provided; however, a notice of cancellation on this ground shall inform the **Insured** of the amount due;

(2)    conviction of a crime arising out of acts increasing the hazard insured against;

(3)    any discovery of fraud or material misrepresentation in the obtaining of this Policy or in the presentation of a **claim**;

(4)    after issuance of this Policy or after the last renewal date, discovery of an act or omission, or a violation of any policy condition, that substantially and materially increases the hazard insured against, and which occurred subsequent to inception of the current **policy period**;

(5)    material change in the nature or extent of the risk, occurring after issuance or last annual renewal anniversary date of this Policy, which causes the risk of loss to be substantially and materially increased beyond that contemplated at the time this Policy was issued or last renewed;

(6)    a determination by the New York State Superintendent of Insurance that continuation of the present premium volume of the **Company** would jeopardize the **Company's** solvency or be hazardous to the interest of the **Company's** policyholders, creditors or the public;

(7)    a determination by such Superintendent that the continuation of this Policy would violate, or would place the **Company** in violation of, any provision of the New York Insurance Code; or

(8)    revocation or suspension of the **Insured's** license to practice law.

3.    If this Policy has been in effect for more than sixty (60) days, or if this Policy is a renewal or continuation of a policy issued by the **Company**, this Policy may be canceled by the **Company** only for any reasons listed in paragraph 2.b. above provided a written notice stating the reason for cancellation is mailed or delivered to the **Named Insured** at the address shown in the Declarations, and its authorized agent or broker at least fifteen (15) days before the effective date of cancellation.

4.    Notice of cancellation will state the effective date of cancellation. The **policy period** will end on this date. If notice is mailed, proof of mailing will be sufficient proof of notice.

5.    If the **Named Insured** cancels, earned premium will be computed in accordance with the customary short rate table and procedure. If the **Company** cancels, earned premium shall be computed pro rata.    However, when the premium is advanced under a premium finance agreement, the cancellation refund will be pro rata.  Under such financed policies, the **Company** will be entitled to retain a minimum earned premium of 10% of the total policy premium or $60, whichever is greater.  Premium adjustment may be made either at the time cancellation is effected or as soon as practicable after cancellation becomes effective, but payment or tender of unearned premium is not a condition of cancellation.

6.    If one of the reasons for cancellation set forth in Paragraph L.2.b. exists, we may cancel this entire Policy, even if the reason for cancellation pertains only to a new coverage or endorsement initially effective subsequent to the original issuance of this Policy.

L.    Nonrenewal/Conditional Renewal

1.    If the **Company** elects not to renew this Policy, the **Company** shall send notice as provided in paragraph 3. below along with the reason for nonrenewal.

2.    If the **Company** conditions renewal of this Policy upon:

© CNA  All Rights Reserved.



    a.    change of limits;

    b.    change in type of coverage;

    c.    reduction of coverage;

    d.    increased deductible;

    e.    addition of exclusion;

    f.    increased premiums in excess of 10%, exclusive of any premium increased due to and commensurate with insured value added or increased exposure units; or as a result of experience rating, loss rating, retrospective rating or audit; the **Company** shall send notice as provided in paragraph 3.b. below.

3.    Notice of nonrenewal and conditional renewal will be provided as follows:

    a.    If the **Company** decides not to renew this Policy or to conditionally renew this Policy as provided in paragraphs 1 and 2, above, the **Company** shall mail or deliver written notice to the **Named Insured** at least sixty (60) days but not more than one hundred twenty (120) days before:

        (1)    the expiration date; or

        (2)    the anniversary date if this is a continuous policy.

    b.    Notice will be mailed or delivered to the **Named Insured** at the address shown in the Declarations and its authorized agent or broker. If notice is mailed, proof of mailing will be sufficient proof of notice.

    c.    The **Company** will not send the **Named Insured** notice of non-renewal or conditional renewal if the **Named Insured** or its authorized agent or broker or another insurer of the **Named Insured** mails or delivers notice that this Policy has been replaced or no longer desired.

4.    If the **Company** violates any of the provisions of this subsection by sending the **Named Insured** an incomplete or late conditional notice:

    a.    Coverage will remain in effect at the same terms and conditions of this Policy at the lower of the current rates or the prior period's rates until sixty (60) days after such notice is mailed or delivered, unless the **Named Insured**, during this sixty (60) day period, has replaced the coverage or elects to cancel.

    b.    On or after the expiration date of this Policy, coverage will remain in effect at the same terms and conditions of this Policy for another policy period, at the lower of the current rates or the prior period's rates, unless the **Named Insured,** during the additional policy period, has replaced the coverage or elects to cancel.

M.    Entire contract

By acceptance of this Policy the **Insured** agrees that:

1.    all of the information and statements provided to the **Company** by the **Insured** are true, accurate and complete and shall be deemed to constitute material representations made by all of the **Insureds**;

2.    this Policy is issued in reliance upon the **Insured's** representations; and

3.    this Policy, endorsements thereto, together with the completed and signed application and any and all supplementary information and statements provided by the **Insured** to the **Company** (all of which are deemed to be incorporated herein) embody all of the agreements existing between the **Insured** and the **Company** and shall constitute the entire contract between the **Insured** and the **Company**; and

4.    the misrepresentation of any material matter by the **Insured** or the **Insured's** agent, which if known by the **Company** would have led to the refusal by the **Company** to make this contract or provide coverage for a **claim** hereunder and will render this Policy null and void and relieve the **Company** from all liability herein.

© CNA  All Rights Reserved.



N.    **Named Insured** sole agent

The **Named Insured** shall be the sole agent of all **Insureds** hereunder for the purpose of effecting or accepting any notices hereunder, any amendments to or cancellation of this Policy, for the completing of any applications and the making of any statements, representations and warranties, for the payment of any premium and the receipt of any return premium that may become due under this Policy, and the exercising or declining to exercise any right under this Policy.

O.    Liberalization

If the **Company** adopts any revision that would broaden coverage under this policy form G-118011-A without additional premium at any time during the **policy period**, the broadened coverage will immediately apply to this Policy except that it will not apply to **claims** that were first made against the **Insured** prior to the effective date of such revision.

P.    Notices

Any notices required to be given by an **Insured** shall be submitted in writing to the **Company** or its authorized representative. If mailed, the date of mailing of such notice shall be deemed to be the date such notice was given and proof of mailing shall be sufficient proof of notice.

Q.    Trade and Economic Embargoes

This policy does not provide coverage for **Insureds**, transactions or that part of **damages** or **claims expenses** that is uninsurable under the laws or regulations of the United States concerning trade or economic sanctions.

VI.    **EXTENDED REPORTING PERIODS**

As used herein, **"extended reporting period"** means the period of time after the end of the **policy period** for reporting **claims** that are made against the **Insured** during the applicable **extended reporting period** by reason of an act or omission that occurred prior to the end of the **policy period** and is otherwise covered by this Policy.

A.    The provisions of the **extended reporting period** coverage will not apply, except for the sixty (60) day automatic extended reporting period if the claims- **made relationship** has been less than one year and this Policy has been terminated for nonpayment of premium or fraud.

B.    In the event of **termination of coverage**, or if this Policy is renewed under terms and conditions less favorable to the **Named Insured** than those contained in the preceding policy, a sixty (60) day automatic **extended reporting period** will be granted to the **Named Insured** at no charge in which any **claim** reported will be considered as having been made before the termination date of this Policy Upon **termination of coverage**, the aggregate limit of liability for this automatic **extended reporting period** shall be equal to the amount remaining in this Policy's annual aggregate liability limit.

C.    Within thirty (30) days after termination, the **Company** will notify the **Named Insured**, in writing, of the automatic sixty (60) day **extended reporting period**. The **Company** will also notify the **Named Insured** of the availability of, the premium for, and the importance of purchasing an additional **extended reporting period**. If the **claims-made relationship** has been in effect for one year or more, and if this Policy has been terminated for nonpayment of premium or fraud, the **Company** shall not be required to provide a premium quotation unless requested by the **Insured**.

D.    The **Named Insured** shall have the greater of sixty (60) days from the effective date of **termination of coverage** or thirty (30) days from the date of mailing or delivery of the advice of the availability to purchase additional **extended reporting period** coverage, to submit written acceptance of the **extended reporting period** coverage. The premium for such additional **extended reporting period** must be paid promptly when due. The premium shall be fully earned at the inception of this endorsement.

E.    If the **Named Insured** has been placed in receivership, liquidation or bankruptcy, or permanently ceases operations, then any one qualifying as an **Insured** has the right to an **extended reporting period** coverage issued in the name of the **Named Insured** for the benefit of all **Insureds**. The request for such **extended reporting period** coverage must be made within one hundred and twenty (120) days of the **termination of coverage**.

© CNA  All Rights Reserved.

**CNA**

F.  Only one such **extended reporting period** coverage endorsement shall be issued and the **extended reporting period** for such coverage shall be one year, three years, six years or unlimited. This period includes the automatic sixty (60) day period specified in Item C. above.

G.  The additional premium for the additional **extended reporting period** shall be based upon the rates for such coverage in effect on the date this Policy was issued or last renewed and shall be for one (1) year at 75% of such premium; three (3) years at 175% of such premium; six (6) years at 225% of such premium; or, for an unlimited period at 250% of such premium.

H.  Upon **termination of coverage**:

1.  any return premium due the **Named Insured** shall be credited toward the premium for the additional **extended reporting period** coverage if the **Named Insured** elects such coverage.

2.  where premium is due to the **Company** for coverage during the **claims-made relationship**, any monies received by the **Company** from the **Named Insured** as payment for the **extended reporting period** coverage shall first be applied to such premium owing for this Policy.

I.  Limits of liability for such additional **extended reporting period** shall be:

1.  at least equal to 100 percent of the policy's annual aggregate limit where a **claims-made relationship** has continued for three years or more; or

2.  if the **claims-made relationship** has continued for less than three years, the limit of liability shall be at least equal to the greater of:

a.  the amount of coverage remaining in such policy's annual aggregate liability limit, or

b.  50 percent of such policy's annual aggregate liability limit.

J.  If an **Insured** dies or becomes **totally and permanently disabled** during the **policy period**, then upon the latter of the expiration of: the **policy period**; any renewal or successive renewal of this Policy; or any automatic or optional **extended reporting period**, the **Insured** shall be provided with a death or disability **extended reporting period** as provided below.

1.  In the event of death, the estate, heirs, executors or administrators of such **Insured** must, provide the **Company** with written proof of the date of death. This **extended reporting period** is provided to the estate, heirs, executors and administrators of such **Insured** until the executor or administrator of the estate of such **Insured** is discharged.

2.  If an **Insured** becomes **totally and permanently disabled**, such **Insured** or **Insured's** legal guardian must provide the **Company** with written proof that such **Insured** is **totally and permanently disabled**, including the date the disability commenced, certified by the **Insured's** physician. The **Company** retains the right to contest the certification made by the **Insured's** physician, and it is a condition precedent to this coverage that such **Insured** agree to submit to medical examinations by any physician designated by the **Company** at the **Company's** expense. This **extended reporting period** is provided until such **Insured** shall no longer be **totally or permanently disabled** or until the death of such **Insured** in which case subparagraph a. hereof shall apply.

3.  No additional premium will be charged for any death or disability **extended reporting period**.

K.  If an **Insured** retires or otherwise voluntarily ceases, permanently and totally, the "private practice of law" during the **policy period** and has been continuously insured by any lawyers professional liability carrier for at least three consecutive years, then such **Insured** shall be provided with an **extended reporting period** commencing upon the latter of the expiration of: the **policy period**; any renewal or successive renewal of this Policy; or any automatic or optional **extended reporting period**.

This **extended reporting period** is provided until such **Insured** shall resume the "private practice of law" or until the death of such **Insured** in which case subparagraph J.1. hereof shall apply.

No additional premium will be charged for any non-practicing **extended reporting period**.

As used herein, the "private practice of law" means the practice of law performed by an **Insured** for a fee, including hourly, contingent or lump sum, as a sole practitioner or as a partner, officer, director, stockholder-employee, associate, manager, member or employee, of a law firm, or any agreement to act

G118011A31 (12-09)
Page 13

© CNA  All Rights Reserved.

**CNA**

as an independent contractor or "Of Counsel" to a law firm. Private practice of law does not include the practice of law by an **Insured** on a pro bono basis.

L.  Separate limits of liability for death or disability and non-practicing extended **reporting periods** shall apply as follows:

1.  Limit of Liability - Each "**Claim**"

Subject to paragraph 2. below, the **Company's** limit of liability for each **claim** first made against the Insured, and reported to the **Company** during the death or disability **extended reporting period** or non-practicing **extended reporting period**, shall not exceed the amount stated in the declarations as the "Each **Claim** Death or Disability and Non-Practicing **extended reporting period** limit of liability".

2.  Limit of Liability - In the Aggregate

The limit of liability of the **Company** for all **claims** first made against the **Insured**, and reported to the **Company** during the death or disability **extended reporting period** or non-practicing **extended reporting period**, shall not exceed the amount stated in the Declarations as the "Aggregate Death or Disability and Non-Practicing **extended reporting period** limit of liability".

VII.  HEADINGS

The descriptions in the headings of this Policy are solely for convenience, and form no part of the terms and conditions of coverage.

IN WITNESS WHEREOF, the **Company** has caused this Policy to be executed by its Chairman and Secretary, but this Policy shall not be binding upon us unless completed by the attachment of the Declarations.

Chairman                                    Secretary

G118011A31 (12-09)
Page 14

© CNA. All Rights Reserved.

**CNA**

### LAWYERS PROFESSIONAL LIABILITY POLICY

### AMENDATORY ENDORSEMENT - NEW YORK

It is understood and agreed that:

1.    Section I. INSURING AGREEMENT, Paragraph C. Settlement is deleted in its entirety and replaced as follows:

Settlement

The **Company** shall not settle a **claim** without the written consent of the **Named Insured**.

2.    Section II. LIMITS OF LIABILITY AND DEDUCTIBLE, Paragraph E. Supplementary Payments, is amended to include the following:

Payments made under paragraph 2. of this endorsement will not be subject to the deductible. Such payments are in addition to the limits of liability.

- **Public Relations Event**

    The **Company** will pay the **Named Insured** for **public relations event expenses** up to $25,000 for each **public relations event** and $50,000 in the aggregate for all **public relations events**, provided:
    a.    such public relations event occurs during the **Policy Period**; and
    b.    such amounts are incurred within twelve months of the date that the **Named Insured** reports the **public relations event** to the Insurer.

- **Privacy Event Response**

    The **Company** will pay the **Named Insured** for **privacy event expenses** up to $15,000 per **privacy event** $30,000 in the aggregate for all **privacy events** provided that such **privacy event** occurs during the **policy period** and is reported to the **Company** within three (3) calendar days of the **privacy event**.

If there is more than one **disciplinary proceedings**, **privacy event, public relations event** or **regulatory inquiry** involving the same act, error or omission or acts, errors or omissions that are logically or causally connected by any common fact, circumstance, situation, transaction, event, advice or decision, then each such **disciplinary proceedings**, **privacy event, public relations event** or **regulatory inquiry** shall be subject to the **disciplinary proceedings**, **privacy event, public relations event** or **regulatory inquiry** limit applicable to the earliest such **disciplinary proceedings**, **privacy event, public relations event** or **regulatory inquiry** reported to the **Company** under this Policy or under any prior policy.

3.    Section III. DEFINITIONS, is amended to include the following:

**"Privacy Event"** means any act, error or omission which, in the reasonable opinion of an owner, manager of any limited liability entity, member of the Management Committee, Managing Partner, Operating Partner, Senior Partner (or any equivalent position) or Risk Manager (or any equivalent position) did cause or is reasonably likely to result in the unauthorized disclosure or the unauthorized use of **non-public personal information**. However, **privacy event** does not include a **public relations event.**

**"Privacy Event Expenses"** means all reasonable and necessary fees, costs and expenses incurred by the **Named Insured** and consented to by the Insurer:

1.    to directly effect compliance with a **security breach notice law** including notification to individuals or entities who are required to be notified;

2.    to provide voluntary notification to individuals or entities whose non-public personal information may have been subject to a privacy event;

---

CNA77115NY (11-13)                                          Policy No:    425164316
Page 1                                                      Endorsement No:    1
Continental Casualty Company                                Effective Date:    09/10/2020
Insured Name: Samuel W. Miller

© CNA  All Rights Reserved.

**CNA**

3.      to hire a computer forensics firm to investigate the existence and cause of a privacy event and to determine the extent such non-public personal information has been or may have been disclosed;

4.      to hire an attorney or expert to determine the applicability of and the actions necessary to comply with security breach notice law;

5.      to minimize harm to the **Named Insured's** reputation from a privacy event, including but not limited to the costs to set up a call center or provide a credit monitoring service for those impacted by a privacy event.

However, **privacy event expenses** do not include a. the costs, fees and expenses necessary to remediate any deficiencies that gave rise to the **privacy event**.

**"Public Relations Event"** means a situation which in the reasonable opinion of the **Named Insured** did cause or is reasonably likely to result in significant harm to the reputation of the **Named Insured**.

**"Public Relations Event Expenses"** are those reasonable and necessary expenses incurred by the **Named Insured** to minimize harm to the **Named Insured's** reputation from a **public relations event**.

4.      Section IV. EXCLUSIONS, Paragraph H. Owned Entity is deleted in its entirety and replaced as follows:

to any **claim** based on or arising out of **legal services** performed, directly or indirectly, for any entity not named in the Declarations, if at the time of the act or omission giving rise to the **claim**, the percentage of ownership interest, direct or indirect, in such entity by any **Insured,** or an accumulation of **Insureds,** exceeded 15%

All other terms and conditions of the Policy remain unchanged.

This endorsement, which forms a part of and is for attachment to the Policy issued by the designated Insurers, takes effect on the effective date of said Policy at the hour stated in said Policy, unless another effective date is shown below, and expires concurrently with said Policy.

CNA77115NY (11-13)
Page 2
Continental Casualty Company
Insured Name: Samuel W. Miller

Policy No:   425164316
Endorsement No:   1
Effective Date:   09/10/2020

© CNA  All Rights Reserved.

**CNA**

### STATE OF NEW YORK
### FIFTY PERCENT OFFSET CLAIMS EXPENSES ENDORSEMENT

---

**THE ATTACHMENT OF THIS ENDORSEMENT TO YOUR POLICY MAKES IT A CLAIM EXPENSES WITHIN THE LIMITS POLICY.**

ANY CLAIM EXPENSES SHALL BE APPLIED TO, AND ACT AS A REDUCTION OF, UP TO 50% OF THE LIMITS OF LIABILITY. THIS COULD THEN RESULT IN SUCH LIMIT OF LIABILITY BECOMING PARTIALLY EXHAUSTED BY THE PAYMENT OF CLAIM EXPENSES THUS REDUCING THE AMOUNT AVAILABLE TO PAY DAMAGES. PLEASE DISCUSS WITH YOUR AGENT.

---

1.  It is agreed that Section I, INSURING AGREEMENT, Paragraph A and D are amended as follow:

    A.  The first sentence of Paragraph A, Coverage is amended to add the following words after the word "**damages**" and before the words "because of a **claim**"

        "and **claim expenses** (to the extent **claim expenses** are permitted to be included within the limits of liability as set forth in this endorsement)"

    B.  The first sentence of Paragraph D, Exhaustion of Limits is amended to add the following words after the words "by payment of **damages"** and before the words:" after the **Company** has deposited the remaining available limits of liability":

        "or **claim expenses** or by any combination thereof (to the extent **claim expenses** are permitted to be included within the limits of liability as set forth in this endorsement),"

2.  Section II, LIMITS OF LIABILITY Paragraphs A, B, and D are deleted and replaced by the following:

    A.          Limit of liability - each **claim**

        Subject to paragraph B. below, the limit of liability of the **Company** for **damages** and for **claim expenses** (to the extent **claim expenses** are permitted to be included within the limits of liability as set forth below) for each **claim** shall not exceed the amount stated in the Declarations for each **claim**.

    B.  Limit of liability - in the aggregate

        The limit of liability of the **Company** for **damages** and for **claim expenses** (to the extent **claim expenses** are permitted to be included within the limits of liability as set forth below), for all **claims** shall not exceed the amount stated in the Declarations as the aggregate.

    With respect to paragraphs A and B above, **claim expenses** are subject to and included in the limits of liability of this Policy, up to a maximum of 50% of such limits of liability. All **claim expenses** in excess of 50% of the limits of liability of this Policy are not subject to such limits of liability.

    D.  Multiple **Insureds**, **claims** and claimants

        The limits of liability shown in the Declarations and subject to the provisions of this Policy is the amount the **Company** will pay as **damages** and **claim expenses** (to the extent **claim expenses** are permitted to be included within the limits of liability as set forth in this Endorsement) regardless of the number of **Insureds**, **claims** made or persons or entities making **claims**. If **related claims** are subsequently made against the **Insured** and reported to the **Company**, all such **related claims**, whenever made, shall be considered a single **claim** first made and reported to the **Company** within the **policy period** in which the earliest of the **related claims** was first made and reported to the **Company**.

---

G118017A31 (1-10)                                                    Policy No:          425164316
Page 1                                                               Endorsement No:     2
Continental Casualty Company                                         Effective Date:     09/10/2020
Insured Name: Samuel W. Miller

© CNA  All Rights Reserved.

**CNA**

All other terms and conditions of the Policy remain unchanged.

This endorsement, which forms a part of and is for attachment to the Policy issued by the designated Insurers, takes effect on the effective date of said Policy at the hour stated in said Policy, unless another effective date is shown below, and expires concurrently with said Policy.

G118017A31 (1-10)
Page 2
Continental Casualty Company
Insured Name: Samuel W. Miller

Policy No:          425164316
Endorsement No:   2
Effective Date:     09/10/2020

© CNA  All Rights Reserved.



## NAMED INDIVIDUAL RETROACTIVE DATE ENDORSEMENT

It is understood and agreed that no coverage is afforded under this Policy for any **claims** by reason of an act or omission committed by any person listed below that occurred prior to date listed opposite such person .

Person | Date
Samuel Miller | 09/10/1993

All other terms and conditions of the Policy remain unchanged.

This endorsement, which forms a part of and is for attachment to the Policy issued by the designated Insurers, takes effect on the effective date of said Policy at the hour stated in said Policy and expires concurrently with said Policy unless another effective date is shown below.

*Michael Nueme*

By Authorized Representative _____
(No signature is required if issued with the Policy or if it is effective on the Policy Effective Date)

G-118024-A (4-08)
Page 1
Continental Casualty Company
Insured Name: Samuel W. Miller

Policy No:    425164316
Endorsement No:   3
Effective Date:   09/10/2020

© CNA  All Rights Reserved.

**CNA**

## RETROACTIVE EXCLUSION CLAUSE ENDORSEMENT

It is understood and agreed that Section I, Insuring Agreement, Paragraph A., Coverage, is amended to include a new subparagraph as follows:

- The act or omission occurred on or after 09/10/1993.

All other terms and conditions of the Policy remain unchanged.

This endorsement, which forms a part of and is for attachment to the Policy issued by the designated Insurers, takes effect on the effective date of said Policy at the hour stated in said Policy and expires concurrently with said Policy unless another effective date is shown below.

By Authorized Representative _____
(No signature is required if issued with the Policy or if it is effective on the Policy Effective Date)

G118029A (4-08)                                                   Policy No:        425164316
Page 1                                                           Endorsement No:   4
Continental Casualty Company                                     Effective Date:   09/10/2020
Insured Name: Samuel W. Miller

© CNA All Rights Reserved.

**CNA**

**LAWYERS PROFESSIONAL LIABILITY POLICY**
**ADDENDUM TO THE APPLICATION AND DECLARATIONS**
**POLICYHOLDER NOTICE**

THIS POLICY PROVIDES NO COVERAGE FOR CLAIMS ARISING OUT OF INCIDENTS, SITUATIONS OR ACTS OR OMISSIONS WHICH TOOK PLACE PRIOR TO THE PRIOR ACTS DATE, IF ANY, STATED IN THE POLICY.

THIS POLICY COVERS ONLY CLAIMS ACTUALLY MADE AGAINST AN INSURED UNDER THE POLICY WHILE THE POLICY REMAINS IN EFFECT OR WHILE THE AUTOMATIC EXTENDED REPORTING PERIOD OR ANY ADDITIONAL REPORTING PERIOD THE NAMED INSURED MAY PURCHASE IS IN EFFECT.

DURING THE FIRST SEVERAL YEARS OF THE CLAIMS-MADE RELATIONSHIP, CLAIMS-MADE RATES ARE COMPARATIVELY LOWER THAN OCCURRENCE RATES. SUBSTANTIAL ANNUAL PREMIUM INCREASES CAN BE EXPECTED, INDEPENDENT OF OVERALL RATE LEVEL INCREASES, UNTIL THE CLAIMS-MADE RELATIONSHIP REACHES MATURITY.

UPON TERMINATION OF COVERAGE FOR ANY REASON, A 60 DAY AUTOMATIC EXTENDED REPORTING PERIOD WILL BE GRANTED AT NO ADDITIONAL CHARGE. THE NAMED INSURED WILL BE ABLE TO PURCHASE AN ADDITIONAL EXTENDED REPORTING PERIOD, UNLESS DURING THE FIRST YEAR OF COVERAGE, THIS POLICY IS TERMINATED FOR NON-PAYMENT OF PREMIUM OR FRAUD. WITHIN 30 DAYS AFTER TERMINATION OF COVERAGE, THE COMPANY WILL GIVE WRITTEN NOTIFICATION TO THE NAMED INSURED THAT THE AUTOMATIC EXTENDED REPORTING PERIOD APPLIES, WHICH NOTICE WILL STATE THE IMPORTANCE OF PURCHASING AN ADDITIONAL EXTENDED REPORTING PERIOD AND THE PREMIUM FOR SUCH ADDITIONAL COVERAGE. NO SUCH NOTICE WILL BE SENT IF THIS POLICY HAS BEEN IN EFFECT FOR ONE YEAR OR MORE AND HAS BEEN TERMINATED FOR NONPAYMENT OF PREMIUM OR FRAUD UNLESS REQUESTED BY THE INSURED.

THE NAMED INSURED SHALL HAVE THE GREATER OF SIXTY DAYS FROM THE EFFECTIVE DATE OF TERMINATION OF COVERAGE OR THIRTY DAYS FROM THE DATE OF MAILING OR DELIVERY OF THE NOTICE MENTIONED ABOVE TO SUBMIT WRITTEN ACCEPTANCE OF THE EXTENDED REPORTING PERIOD.

THIS POLICY PROVIDES FOR A 60 DAY AUTOMATIC EXTENDED REPORTING PERIOD. IN ADDITION, THE NAMED INSURED MAY SELECT A ONE YEAR EXTENDED REPORTING PERIOD AT 75% OF THE EXPIRING PREMIUM, THREE YEAR EXTENDED REPORTING PERIOD AT 175% OF THE EXPIRING PREMIUM, SIX YEAR EXTENDED REPORTING PERIOD AT 225% OR AN UNLIMITED EXTENDED REPORTING PERIOD AT 250% OF THE EXPIRING PREMIUM.

G-118047-A31 (4-10)
Page 1
Continental Casualty Company
Insured Name: Samuel W. Miller

Policy No:   425164316
Endorsement No:   5
Effective Date:   09/10/2020

© CNA  All Rights Reserved.

**CNA**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

### ECONOMIC AND TRADE SANCTIONS CONDITION

The following condition is added to the Policy:

### ECONOMIC AND TRADE SANCTIONS CONDITION

In accordance with laws and regulations of the United States concerning economic and trade embargoes, this policy is void from its inception with respect to any term or condition of this policy that violates any laws or regulations of the United States concerning economic and trade embargoes including, but not limited to the following:

1.    Any insured under this Policy, or any person or entity claiming the benefits of such insured, who is or becomes a Specially Designated National or Blocked Person or who is otherwise subject to U.S. economic or trade sanctions;

2.    Any claim or suit that is brought in a Sanctioned Country or by a Sanctioned Country Government, where any action in connection with such claim or suit is prohibited by U.S. economic or trade sanctions;

3.    Any claim or suit that is brought by any Specially Designated National or Blocked Person or any person or entity who is otherwise subject to U.S. economic or trade sanctions;

4.    Property that is located in a Sanctioned Country or that is owned by, rented to or in the care, custody or control of a Sanctioned Country Government, where any activities related to such property are prohibited by U.S. economic or trade sanctions; or

5.    Property that is owned by, rented to or in the care, custody or control of a Specially Designated National or Blocked Person, or any person or entity who is otherwise subject to U.S. economic or trade sanctions.

As used in this endorsement a Specially Designated National or Blocked Person is any person or entity that is on the list of Specially Designated Nationals and Blocked Persons issued by the U.S. Treasury Department's Office of Foreign Asset Control (O.F.A.C.) as it may be from time to time amended.

As used in this endorsement a Sanctioned Country is any country that is the subject of trade or economic embargoes imposed by the laws or regulations of the United States of America.

ENDORSEMENT NUMBER: 6
POLICY NUMBER: 425164316
ISSUED TO: Samuel W. Miller
EFFECTIVE DATE OF ENDORSEMENT: 09/10/2020

This endorsement, which forms a part of and is for attachment to the Policy issued by the designated Insurers, takes effect on the effective date of said Policy at the hour stated in said Policy and expires concurrently with said Policy unless another effective date is shown above.

By Authorized Representative _____
(No signature is required if this endorsement is issued with the Policy or if it is effective on the Policy Effective Date)

G-145184-A (Ed. 6/03)
Page 1 of 1

**CNA**

### FIFTY PERCENT OFFSET DEDUCTIBLE ENDORSEMENT - EACH CLAIM

### THE ATTACHMENT OF THIS ENDORSEMENT TO YOUR POLICY MAKES IT A CLAIM EXPENSES WITHIN THE DEDUCTIBLE POLICY.

---

**ANY CLAIM EXPENSES SHALL BE APPLIED TO, AND ACT AS A REDUCTION OF, UP TO A MAXIMUM OF 50% OF THE DEDUCTIBLE.**

---

It is understood and agreed that Section II, LIMITS OF LIABILITY AND DEDUCTIBLE, paragraph C, is deleted and replaced by the following:

C.    Deductible

The deductible amount stated in the Declarations for "each **claim**" applies to each and every **claim** and applies to the payment of **damages** and **claim expenses**. However, only up to 50% of the deductible will be reduced by **claim expenses** and, in such event, the **Company** shall be liable for **claim expenses** (except for those due to any offset against liability limits) exceeding this percentage. The deductible shall be paid by the **Named Insured**. The limits of liability set forth in the Declarations are in addition to and in excess of the deductible.

All other terms and conditions of the Policy remain unchanged.

---

This endorsement, which forms a part of and is for attachment to the Policy issued by the designated Insurers, takes effect on the effective date of said Policy at the hour stated in said Policy, unless another effective date is shown below, and expires concurrently with said Policy.

---

GSL10552NY (1-10)
Page 1
Continental Casualty Company
Insured Name: Samuel W. Miller

Policy No:              425164316
Endorsement No:      7
Effective Date:       09/10/2020

© CNA  All Rights Reserved.

**CNA**

## NETWORK RISK AND PRIVACY CLAIM ENDORSEMENT

In consideration of the premium paid for this Policy, it is understood and agreed that the Policy is amended as follows:

1.    Section **III. DEFINITIONS,** the definition of **Claim** is amended to include the following:

**"Claim"** also includes:
a)    **privacy claims**, and
b)    **client network damage claims**.

2.    Solely with respect to the coverage provided by this endorsement, Section **III. DEFINITIONS** is amended to add the following terms:

**"Client network damage claim"** means a demand, including the service of suit or the institution of any alternative dispute resolution proceeding, received by the **Insured** for money or services alleging that a **security breach** or **electronic infection** caused **network damage** to a client's **network** in the rendering of **legal services.**

**"Computer virus"** means unauthorized computer code that is designed and intended to transmit, infect and propagate itself over one or more **networks**, and cause:
1.    a computer code or programs to perform in an unintended manner;
2.    the deletion or corruption of electronic data or software; or
3.    the disruption or suspension of a **network**.

**"Confidential Commercial Information"** means information that has been provided to the **Insured** by another, or created by the **Insured** for another where such information is subject to the terms of a confidentiality agreement or equivalent obligating the **Insured** to protect such information on behalf of another.

**"Denial of service attack"** means an attack executed over one or more **networks** or the **Internet** that is specifically designed and intended to disrupt the operation of a **network** and render a **network** inaccessible to authorized users.

**"Electronic infection"** means the transmission of a **computer virus** to a **network**, including without limitation, such transmission to or from the **Named Insured's network**.

**"Electronic information damage"** means the destruction, deletion or alteration of any information residing on the **network** of any third party.

**"Internet"** means the worldwide public **network** of computers as it currently exists or may be manifested in the future, but **Internet** does not include the **Named Insured's network**.

**"Network"** means a party's local or wide area **network** owned or operated by or on behalf of or for the benefit of that party; provided, however, **network** shall not include the **Internet**, telephone company **networks**, or other public infrastructure **network**.

**"Network Damage"** means:
1.    the unscheduled and unplanned inability of an authorized user to gain access to a **network**;
2.    **electronic information damage**; or
3.    the suspension or interruption of any **network**;

GSL12439XX (3-09)                                                       Policy No:    425164316
Page 1                                                                  Endorsement No:    8
Continental Casualty Company                                            Effective Date:    09/10/2020
Insured Name: Samuel W. Miller

© CNA All Rights Reserved.

**CNA**

"**Non-public personal information**" means personal information not available to the general public from which an individual may be identified, including without limitation, an individual's name, address, telephone number, social security number, account relationships, account numbers, account balances, and account histories.

"**Privacy claim**" means a demand, including the service of suit or the institution of any alternative dispute resolution proceeding, received by the **Insured** for money or services and alleging **privacy injury and identity theft** that occurred in the rendering of **legal services.**

"**Privacy injury and identity theft**" means:

a.    any unauthorized disclosure of, inability to access, or inaccuracy with respect to, **non-public personal information** in violation of:
    1.    the **Named Insured's** privacy policy; or
    2.    any federal, state, foreign or other law, statute or regulation governing the confidentiality, integrity or accessibility of **non-public personal information**, including but not limited, to the Health Insurance Portability and Accountability Act of 1996, Gramm-Leach-Bliley Act, Children's Online Privacy Protection Act, or the EU Data Protection Act.
b.    the **Insured's** failure to prevent **unauthorized access** to **confidential commercial information**;

"**Privacy policy**" means the **Named Insured's** policies in written or electronic form that:
1.    govern the collection, dissemination, confidentiality, integrity, accuracy or availability of **non-public personal information**; and
2.    the **Insured** provides to its clients, customers, employees or others who provide the **Insured** with **non-public personal information.**

"**Security breach**" means the failure of the **Named Insured's network** hardware, software, firmware, the function or purpose of which is to:
1.    identify and authenticate parties prior to accessing the **Named Insured's network**;
2.    control access to the **Named Insured's network** and monitor and audit such access;
3.    protect against **computer viruses**;
4.    defend against **denial of service attacks** upon the **Insured** or unauthorized use of the **Insured's network** to perpetrate a **denial of service attack**; or,
5.    ensure confidentiality, integrity and authenticity of information on the **Insured's network**.

**Privacy breach notice law** means any statute or regulation that requires an entity who is the custodian of **non-public personal information** to provide notice to individuals of any actual or potential privacy breach with respect to such **non-public personal information**. **Privacy breach notice laws** include Sections 1798.29 and 1798.82- 1798.84 of the California Civil Code (formerly S.B. 1386) and other similar laws in any jurisdiction.

**Unauthorized access** means any accessing of information in the **Insured's** care, custody or control by unauthorized persons or by authorized persons accessing or using such information in an unauthorized manner. **Unauthorized access** also includes:
1.    theft from the **Insured** of any information storage device used by the **Insured** to:
    A.    store and retrieve information on the **Insured's network**; or
    B.    transport information between the **Insured** and authorized recipients;
2.    any unauthorized use by the **Insured** of information in the **Insured's** clients' care, custody or control if accessed by the **Insured** in the course of rendering **legal services**.

3. The following new Section is added to the Policy:

*    **Supplementary Payments: Regulatory Inquiry**

---

GSL12439XX (3-09)                                              Policy No:    425164316
Page  2                                            Endorsement No:   8
Continental Casualty Company                          Effective Date:   09/10/2020
Insured Name: Samuel W. Miller

© CNA  All Rights Reserved.

**CNA**

If, during the **policy period**, a state licensing board, self regulatory body, public oversight board or a governmental agency with the authority to regulate the **Insured's legal services** or any entity acting on behalf of such entities initiates an investigation of **the Insured** arising from an actual or alleged violation of a **privacy breach notice law** or any law referenced under the definition of **privacy injury and identity theft** that occurred in the rendering of **legal services** and which the **Insured** reports to the **Company** in accordance with Section V.A. of this Policy, the **Company** agrees to pay attorney fees, attorney costs and court costs (excluding such attorney fees and costs incurred as a result of services performed by the **Insured**) incurred in responding to the investigation. The maximum amount the **Company** will pay for such attorney fees and costs is $20,000 regardless of the number of investigations or the number of **Insureds** who are subject to such investigations.

This endorsement shall not be construed as to increase the Limits of Liability of this Policy.

All other terms and conditions of the Policy remain unchanged.

This endorsement, which forms a part of and is for attachment to the Policy issued by the designated Insurers, takes effect on the effective date of said Policy at the hour stated in said Policy and expires concurrently with said Policy unless another effective date is shown below.

By Authorized Representative _____
(No signature is required if issued with the Policy or if it is effective on the Policy Effective Date)

GSL12439XX (3-09)                                    Policy No:  425164316
Page 3                                               Endorsement No:  8
Continental Casualty Company                         Effective Date:  09/10/2020
Insured Name: Samuel W. Miller

© CNA  All Rights Reserved.