UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK


LOVERN ONFROY,                    *    Case No. 22-CV-02314(EK)
                                  *
            Plaintiff,            *    Brooklyn, New York
                                  *    August 16, 2023
      v.                          *
                                  *
THE LAW OFFICES OF                *
 GEOFFREY T. MOTT, P.C.           *
 et al.,                          *
            Defendants.           *
                                  *
*  *  *  *  *  *  *  *  *  *  *  *  *  *

          TRANSCRIPT OF CIVIL CAUSE FOR ORAL ARGUMENT
            BEFORE THE HONORABLE ERIC R. KOMITEE
               UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Plaintiff:              AHMAD KESHAVARZ, ESQ.
                                The Law Office of
                                 Ahmad Keshavarz
                                16 Court Street, #2600
                                Brooklyn, NY  11241

                                JONATHAN A. SCHWARTZ, ESQ.
                                Nassau/Suffolk Law Services
                                1 Helen Keller Way, 5th Floor
                                Hempstead, NY  11550




Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

**Fiore Reporting and Transcription Service, Inc.**
**4 Research Drive, Suite 402**
**Shelton, CT 06484 (203)929-9992**

```
APPEARANCES: (Cont'd)

For the Defendant DeCota:      JOHN D. D'ERCOLE, ESQ.
                              Leech Tishman Robinson
                               Brog, PLLC
                              875 Third Avenue, 9th Floor
                              New York, NY  10022

For Mott Defendants:          DAVID J. PRETTER, ESQ.
                              Law Office of
                               Alan J. Sasson, P.C.
                              2102 Avenue Z, Suite 201
                              Brooklyn, NY  11235
```

3

1      (Proceedings commenced at 2:46 p.m.)

2            THE CLERK:  Civil Cause for oral argument, Onfroy

3      versus The Law Offices of Geoffrey T. Mott, P.C., et al,

4      Docket No. 22-CV-02314.

5            Would you please state your appearances for the

6      record starting with the plaintiff.

7            MR. KESHAVARZ:  Ahmad Keshavarz, The Law Office of

8      Ahmad Keshavarz.  Good afternoon, Your Honor.

9            THE COURT:  Good afternoon.

10           MR. SCHWARTZ:  Jonathan Schwartz, Nassau/Suffolk Law

11     Services.

12           MR. D'ERCOLE:  John D'Ercole with the law firm of

13     Leech Fishman Robinson Brog on behalf of the defendant Kenneth

14     DeCota.  Good afternoon, Your Honor.

15           THE COURT:  Good afternoon.

16           MR. PRETTER:  David Pretter for the I guess we'll

17     call them the Mott defendants, all other defendants, from the

18     Law Office of Alan J. Sasson.  Good afternoon.

19           THE COURT:  You're here for not the Mott defendants,

20     but all --

21           MR. PRETTER:  Only Mott defendants.

22           THE COURT:  Okay.

23           MR. PRETTER:  Sorry.

24           THE COURT:  Okay.  All right.  We're here, as you

25     all know, in connection with the defendants' motion to dismiss

4

1    on both jurisdictional grounds and for failure to state a

2    claim.  We'll begin with defense counsel today.

3              MR. PRETTER:  I guess, if you don't mind, I'll

4    start, Your Honor, regarding the jurisdictional grounds.

5              Our motion was based upon the *TransUnion* decision by

6    the Supreme Court that in order to establish standing, for

7    Article 3 standing, there has to be injury, in fact, that is

8    concrete, particularized, and actual imminent.

9              In this instance, we feel that there has been no

10   concrete harm on behalf of the plaintiff.

11             THE COURT:  Why isn't the expenditure of court costs

12   concrete harm?

13             MR. PRETTER:  She put down in her pleadings that she

14   had paid for parking meters, copying, as having time taken off

15   for work, and multiple court settings.

16             Her court costs are free covered by the Legal

17   Services from Nassau.  The parking meters and copying, parking

18   meters, there's ample free parking over there at the Nassau

19   County courthouses.  Copying also was done in regard to her

20   Legal Services.  And all those costs will be --

21             THE COURT:  Sorry.  You're disputing the fact?

22             She says, she alleges, I paid for copying --

23             MR. PRETTER:  Right.  And maybe there's --

24             THE COURT:  -- out of pocket, and you're saying you

25   don't believe it?

5

1          MR. PRETTER:  Well, her legal fees are free legal

2     fees.  In any event, those fees would be incurred as a result

3     of any proceedings that would have to be taken place for any

4     eviction.  She agrees that she is not paying any rent and

5     she's living there.

6          THE COURT:  I think you're -- I think you may be not

7     focusing on what I see as the main question here.

8          She alleges -- the fraudulent conduct she alleges

9     under the FDCPA is the filing of duplicative lawsuits for the

10    same relief.  Right?

11         Where she, I think, acknowledges, or at least

12    doesn't contest that she hasn't paid rent, that's surely not

13    the issue here.

14         The issue is whether or not the defendants have

15    engaged in the conduct that the statute is intended to reach.

16         And while the conversation, I assume at some point

17    later, about whether filing two lawsuits for the same relief,

18    and I think it's alleged stating to the Court in at least one

19    of those lawsuits that no other action for the same relief is

20    pending, a blatantly false statement as alleged, we'll talk

21    about whether that is conduct that the statute reaches or not.

22         But right now I'm talking simply about whether she's

23    alleged concrete injury for *TransUnion* purposes.

24         And I would have thought the statement that I paid

25    money out of pocket for copying satisfies that.  Or at least

6

1    if you're saying it doesn't, that you would have a case on

2    that particular issue, legal fees and costs, under the FDCPA

3    to bring to my attention on the standing issue.

4           MR. PRETTER:  Yes, Your Honor.

5           THE COURT:  But aren't we assuming, before we even

6    get to that question, aren't we even assuming for today's

7    purposes that indeed she is out of pocket some money for

8    copying since she alleges that?

9           Where just -- can I just pause and ask the

10    plaintiffs what paragraph, remind me, am I looking in the

11    amended complaint to see the statement of her out-of-pocket

12    court costs?

13           MR. KESHAVARZ:  One moment, please.  One upside of

14    having a lengthy complaint, it gives them a factual basis for

15    the claims.  And one downside is --

16           THE COURT:  The complaint --

17           MR. KESHAVARZ:  -- it's difficult to find the

18    specific paragraph.

19           THE COURT:  Speaking of which, the complaint is

20    surely substantially lengthier than it needed to be.  There's

21    a massive recitation of the entire procedural history in state

22    court that I think we could have at least mostly done without,

23    if not entirely, and we'll talk about that later as well.  But

24    I digress.

25           MR. KESHAVARZ:  Page 47, paragraph 278.  In addition

1    to her emotional injury, Ms. Onfroy has also incurred monetary

2    costs due to court hearings, namely paying for parking meters

3    and copying, as well as lost time in having to take off work

4    for multiple court settings.

5            THE COURT:  So I'm focused on copying.  And this

6    says Ms. Onfroy has incurred monetary costs for copying.  You

7    obviously stand by that allegation?

8            MR. KESHAVARZ:  Yes.

9            THE COURT:  Okay.  So we're obligated to assume the

10   truth of her allegations at this stage, right?  And one of her

11   allegations is that she, Ms. Onfroy, herself, is out of pocket

12   for court costs, including copying.

13           Is that or is that not a concrete injury for

14   purposes of standing?

15           MR. PRETTER:  No.  I would say -- that's not for --

16   on two bases, Your Honor.  And the first base is that --

17           THE COURT:  Point me to a case.

18           MR. PRETTER:  -- that these costs would be incurred

19   in any sort of --

20           THE COURT:  Point me to a case.  This is not the

21   first time somebody has litigated the question of whether

22   court costs are concrete injury or not and everybody should

23   have a case for or against that proposition.

24           MR. PRETTER:  I'm sorry.  I don't have that in front

25   of me.  I did see --

8

1          THE COURT:  Take your time.  I assume it's in your

2     brief?

3          MR. PRETTER:  Yeah.  I'm sorry, Your Honor, for not

4     having it in front of me here, but I believe it's from the

5     *TransUnion* matter which had that the concrete harm is still

6     not enough that any fees involved in the litigation.

7          THE COURT:  Let's look at *TransUnion* for a second.

8     I have that in front of me right now.  *TransUnion* holds, so

9     *TransUnion* was about people whose credit files with credit

10    reporting agencies were alleged to have included false or

11    misleading information.  And the Supreme Court says the risk

12    of future harm to consumers as a result of misleading alerts

13    in their credit files which had not yet been disseminated to

14    any third-party business did not supply a basis for Article 3

15    standing to seek damages.

16          So that doesn't help you.  Right?  This is not a

17    case where somebody is saying, oh, there's something in my

18    file that's misleading and that could hurt me in the future.

19    She's saying I've been hurt already.  I had to pay out-of-

20    pocket court costs.

21          So I see Judge Ross citing a case called *Steel Co.*

22    *v. Citizens for a Better Environment* that says reimbursement,

23    sorry, this is a Supreme Court case from 1998, Judge Ross is

24    citing it in *Cavazzini*, C-A-V-A-Z-Z-I-N-I, *vs. MRS Associates*,

25    Eastern District 2021, for the proposition that reimbursement

1    of the costs of litigation cannot alone support standing.

2           But that may relate to -- she's not saying her

3    injury is the fees she's paying her lawyers for this case,

4    which I think is the analog that we're seeing in this

5    *Cavazzini* situation, she's saying they sued me in a way that

6    was misleading and violates the FDCPA.  In state court I

7    incurred actual fees digging myself out from that fraudulent

8    course of conduct and those are the fees I'm seeking to

9    vindicate here, not my instant legal fees.

10           MR. PRETTER:  Even in that instance, Your Honor, she

11   was represented by free legal counsel.  Even in the court for

12   state court proceedings for her eviction.

13           THE COURT:  Right.  That's why she's not asking for

14   legal fees.

15           MR. PRETTER:  She's asking for copying, which she

16   doesn't say what the copying is for.

17           THE COURT:  You're saying she hasn't been specific

18   or particularized enough about --

19           MR. PRETTER:  Correct.  Right.  And so that even to

20   show a standing, if the concrete and particularized is per

21   *TransUnion,* to show what your harm would be.

22           And besides for the emotional distress, that's

23   several case law that emotional stress doesn't even bring the

24   right for a standing in Article 3 here.

25           THE COURT:  Yeah.  I'm not so focused on the

10

1   emotional distress here.  I think a bunch of judges have

2   opined on that in a way that's favorable to you.  I'm not sure

3   that's dispositive, but that's something I've seen.

4          Okay.  I think we might need supplemental briefing

5   on the question of whether -- unless the plaintiffs are going

6   to tell me that they have a case to the contrary.

7          Is there a case that you cite on the standing issue

8   that makes clear that incurring court costs and responding to

9   FDCPA violating litigation suffices for *TransUnion* purposes?

10          MR. KESHAVARZ:  I believe so.  That's the *Tost* case.

11   I believe the Fourth Circuit.  Let me tell you exactly where

12   it is in our brief.

13          THE COURT:  The Fourth Circuit is not that helpful

14   because we're not in the Fourth Circuit, but it might be a

15   start.

16          MR. KESHAVARZ:  One moment.  Let me give you the

17   cite.  We cite that on page 28 of our opposition, docket entry

18   35, page 28.  Last two lines.  Time spent -- "Time or money

19   spent in defending against an improper legal action taken by a

20   debt collector, taken by a debt collector against the" debtor

21   is concrete injury.  The quote goes from the beginning up

22   until the word debtor.

23          THE COURT:  What year is that case?

24          MR. KESHAVARZ:  September 7th, 2022.

25          THE COURT:  Okay.

11

1          MR. KESHAVARZ:  And then the subsequent cases, two

2     Supreme Court cases and the Second Circuit case, say even a

3     very small amount of monetary harm is enough for standing.

4     One is for $5 plus costs.  And the Second Circuit says any

5     monetary loss suffered by a plaintiff suffers -- satisfies

6     this element.

7          THE COURT:  Okay.  All right.  Let's move on to the

8     merits then.

9          Does filing two different lawsuits seeking the same

10    recovery and allegedly representing to at least one of those

11    courts that no other action is pending for the same relief?

12         MR. D'ERCOLE:  Let me address that, Your Honor.  I

13    represent the defendant, Mr. DeCota, who made the application

14    for default judgment as a newly minted attorney.

15         Now, I take issue with your statement where you said

16    that the statement in the affidavit, the generic statement,

17    usually made in this type of application in most New York

18    courts is a blatant misstatement.  The actual words --

19         THE COURT:  Sorry.  Most New York courts what, what

20    was that last part?

21         MR. D'ERCOLE:  In most New York courts, when you

22    make an application for a default judgment where seek an order

23    to show cause, you say that no prior application for the I

24    believe sought herein has been -- has been made.

25         THE COURT:  Let me stop you there.

1          MR. D'ERCOLE:  Yeah.  Sure.

2          THE COURT:  Does it matter if the statement is true?

3          MR. D'ERCOLE:  Well, the statement is --

4          THE COURT:  Or do you just say --

5          MR. D'ERCOLE:  Well, the statement is true here.

6    Let's look at the words, right?  Let's look at the words.

7          THE COURT:  Which part, remind me --

8          MR. D'ERCOLE:  It's Exhibit P of the complaint.

9          THE COURT:  Well, which paragraph of the complaint

10   just to --

11         MR. D'ERCOLE:  And it's paragraph -- well, I'm

12   referring you to the exhibit, which is the actual affirmation,

13   which is Exhibit P of the complaint.

14         THE COURT:  Can the plaintiffs remind me what

15   paragraph in the complaint we're talking about here?

16         MR. KESHAVARZ:  One moment.

17         THE COURT:  I'll be to Exhibit P in a minute.

18         MR. D'ERCOLE:  And I can read it, you know, into the

19   record and --

20         THE COURT:  Hold on.  Hold on.

21         MR. D'ERCOLE:  Sure.

22         MR. KESHAVARZ:  Paragraph 99, page 17, and

23   continuing, and also paragraph 101.  They're two separate

24   misrepresentations.

25         THE COURT:  Paragraph 99, I don't see the part about

13

1    no other action for the same relief.  Oh, paragraph 101.

2              MR. D'ERCOLE:  It doesn't say action, Your Honor.

3    It says application.

4              THE COURT:  Okay.  No prior application has been

5    made for the relief requested herein despite the third

6    collection lawsuit having been previously filed.  And you say

7    that nevertheless remains true?

8              MR. D'ERCOLE:  Well, an application in my view is

9    not a pleading, right?  And there's law that under the --

10             THE COURT:  What does application mean?

11             MR. D'ERCOLE:  Well, I think it's a motion.  And for

12   the relief requested herein, that was a default judgment.  And

13   so I think you cannot say that this is blatantly false because

14   it's at least ambiguous.  When you say no prior application

15   for the relief requested herein is reasonably interpreted to

16   mean I haven't made a motion for a default judgment in the

17   second action to date, that's a reasonable interpretation of

18   that language.  And for you to say it was blatantly false, I

19   take issue with that.

20             THE COURT:  I think your --

21             MR. D'ERCOLE:  And if an application was a pleading

22   --

23             THE COURT:  Sir.  Sir.

24             MR. D'ERCOLE:  Sorry.

25             THE COURT:  If I'm in the middle of sentence, you've

14

1    got to let me finish.

2              MR. D'ERCOLE:  I'm sorry.

3              THE COURT:  Thank you.

4              MR. D'ERCOLE:  Apologize.

5              THE COURT:  Mr. DeCota also alleged in his

6    affirmation that, quote, "No prior application has been made

7    for the relief requested herein."  And you are reading the

8    word application I think you said alternatively to mean A) a

9    motion, or B) and application for default judgment?

10             MR. D'ERCOLE:  Well, the relief requested herein is

11   specific to the request for a default judgment be entered

12   against the plaintiff for not appearing in the action.  And so

13   I think that's the most cogent interpretation of that

14   sentence.

15             And as I said, when you practice in New York courts

16   and you make this type of motion, that's a generic statement

17   that courts look at and require in your application.  And it

18   is in my view perfectly true because it does not include the

19   requirement to inform the court that another action is pending

20   in another court that was never served.

21             Because even if you had that action that was pending

22   in another court that you didn't serve, that doesn't preclude

23   you from making a motion for a default judgment in the second

24   action.  Your hands are not handcuffed, right, in the second

25   action.

15

1      Because there's a third action pending, you can't do

2    anything in the second action.  Obviously you could.  There

3    was a complaint that was filed, that was served, there was no

4    answer.  And every attorney in New York, right, pretty much,

5    practically every attorney would file a motion for a default

6    judgment under like facts in this case.

7      And my client made of plain vanilla, as plain

8    vanilla as you can, motion for a default judgment.

9      THE COURT:  I think you're -- you're making two

10    arguments here.

11      MR. D'ERCOLE:  Okay.

12      THE COURT:  I think one of them is very important

13    and you should make it as assiduously as you can.

14      MR. D'ERCOLE:  Okay.

15      THE COURT:  And that is this statement was not

16    false.

17      MR. D'ERCOLE:  Was not false.

18      THE COURT:  We'll put that aside for a second.

19      MR. D'ERCOLE:  And not materially false.  But I'll

20    get to that.

21      THE COURT:  The other one, the other thing you seem

22    to be saying, which I don't understand, is that this is just

23    generic, it's required, it's boilerplate.

24      MR. D'ERCOLE:  It is.

25      THE COURT:  I think you're barking up the wrong tree

16

1    there.  Because if it's required, whether it's generic and

2    boilerplate or not, it needs to be true if it's going to be

3    stated in an attorney's affirmation to a court, full stop.

4    And if it's false, I'm not saying it's false, but I'm saying

5    if it's false, the idea that it's just generic and boilerplate

6    is never going to save your client.

7              MR. D'ERCOLE:  I don't disagree with you.  I don't

8    disagree with Your Honor.  But I'm telling it's a generic

9    statement that is made all the time.

10             THE COURT:  I'm telling you that doesn't matter.

11             MR. D'ERCOLE:  I understand that.  But it's not

12   false because application in my -- in my view is not a

13   pleading.

14             And there is a section of the Fair Debt Collection

15   Act, I think I don't have it, but I saw it along in my

16   research, that says if you make a misstatement in a pleading

17   it's not actionable in a pleading right?

18             And I would have cited that, but in my view an

19   application is not a pleading.  An application for relief,

20   especially in this case, was for a default judgment.

21             And the other thing I think you could focus on --

22             THE COURT:  Can you pull Black's Law Dictionary's

23   definition of application please and print it.

24             MR. D'ERCOLE:  Yeah.  Sure.  That's fine.

25             THE COURT:  We're going to look for the definition

17

1   of the word application in a law dictionary.

2            MR. D'ERCOLE:  I don't have Black's in front of me.

3            THE COURT:  We'll have it in a moment.

4            MR. D'ERCOLE:  Okay.

5            THE COURT:  I don't think -- I think you're defining

6   the word application artificially narrowly.

7            MR. D'ERCOLE: So you might --

8            THE COURT:  It seems to me that in the phrase

9   application for relief, when you file a complaint with the

10  court and you say the relief we want is to be paid X, that's

11  an application for relief at least from a plain English

12  common-sense perspective.  We'll see what the dictionaries

13  have to say as well, but --

14           MR. D'ERCOLE:  And the other point I would make is

15  that there was a materiality requirement, you know, in

16  connection --

17           THE COURT:  In the FDCPA?

18           MR. D'ERCOLE:  Yeah.  And that's under the *Cohen*

19  case, which is the Second Circuit case decided.  And numerous

20  cases come to the conclusion -- and this is the hallmark of

21  current Fair Debt Collection Act litigation -- any statement

22  that you claim is a misrepresentation must be material.  And

23  what that means is that, very specifically, is that it has to

24  A) misrepresent the nature of the debt or frustrate the

25  ability of the consumer to --

18

1          THE COURT:  Right.

2          MR. D'ERCOLE:  -- respond to the complaint.

3          Now, I also cited the *Gabriel* case --

4          THE COURT:  So can I just pause there for a second.

5          MR. D'ERCOLE:  Yeah.

6          THE COURT:  The top level misstatement that's been

7    alleged here is the bringing of, well, let me pull up the

8    statute.

9          MR. D'ERCOLE:  My client wasn't involved in bringing

10   any of the actions.  I just want make -- state that for the

11   record.  He joined the firm after each of these three actions

12   were commenced.

13         You might say filing a third action, a duplication

14   action, and I think that's even wrong, I don't think you can

15   come to the conclusion that filing a duplicate action violates

16   the Fair Debt Collection Act, especially in landlord-tenant

17   world.

18         THE COURT:  That's the question.

19         MR. D'ERCOLE:  Especially in landlord-tenant world.

20   Why?  Because in landlord-tenant world, you could, you have

21   the option of suing for money damages in the Supreme Court and

22   suing -- and you can't get a warrant of eviction in Supreme

23   Court, you have to go to housing court to get a warrant of

24   eviction -- so it's customary in landlord-tenant court to have

25   duplicative actions.

1          Now, what you have here --

2          THE COURT:  But that's not -- you're not saying --

3          MR. D'ERCOLE:  The third action is not a duplicative

4     action.

5          THE COURT:  Sir, I'm in the middle of a sentence

6     here.

7          MR. D'ERCOLE:  Yeah.

8          THE COURT:  You're not saying that there was no

9     overlap in the relief sought?

10         MR. D'ERCOLE:  There's clearly a duplicative cause

11    of action in the third action.  But the third action also

12    sought a warrant of eviction which could only be brought in

13    landlord-tenant court.

14         There clearly was a duplicate cause of action.  The

15    same cause of action for monetary damages was the basis of the

16    second action as well.

17         THE COURT:  Right.  So I'm going to hear from the --

18         MR. D'ERCOLE:  Obviously I can see that.

19         THE COURT:  I'm going to hear from the plaintiffs in

20    a few moments that what was misleading about this course of

21    conduct by your --

22         MR. D'ERCOLE:  I mean, think --

23         THE COURT:  Sir.

24         MR. D'ERCOLE:  I'm sorry.

25         THE COURT:  -- what was false, deceptive and

1    misleading about your client's cause of conduct here is the

2    suggestion that they owed the same money in two cases.  That

3    may or may not be true.  It's certainly not going to be true

4    at the end of the day, I wouldn't think, that the plaintiffs

5    in state court are going to collect twice for the same unpaid

6    rent from the same tenant.  But that's not the question here.

7         The question is could a least-sophisticated consumer

8    be misled to believe that she owed this money twice.  The same

9    way it's not a legal defense, you know, when you sue somebody

10   to collect a debt that's outside the statute of limitations

11   that can be an FDCPA problem, right, even though ultimately a

12   legal debt that's outside the statute of limitations is not

13   legally collectible, why wouldn't it be with citations to case

14   law the case that suing twice for the same relief can suggest

15   misleadingly that you owe that money twice?

16        MR. D'ERCOLE:  It's a duplicate cause of action.  If

17   you took action to -- once you got a judgment, if you took

18   action to get another judgment that's identical, that would be

19   harm.  That would be something that the Fair Debt Collection

20   Act would prescribe, right?  Not if you filed a duplicative

21   cause of action.

22        THE COURT:  Why?

23        MR. D'ERCOLE:  Why?  Because, number one, in this

24   case, my client didn't file it, right?  My client didn't file

25   it, so he's not responsible for there being a duplicate cause

1        of action.

2                Number two, at the time the motion for default

3        judgment was made, the third action hadn't even been served.

4                THE COURT:  Should I be talking to a different

5        lawyer about this?

6                Somebody, some defendant here, maintained more than

7        one action simultaneously, right, unless you're both saying --

8                MR. D'ERCOLE:  My client is an associate attorney

9        who joined the firm --

10               THE COURT:  I asked a different question --

11               MR. D'ERCOLE:  -- after the third action was filed.

12               THE COURT:  -- about whether I should be talking to

13       a different lawyer here?

14               Is there any defendant, thank you, in this case who

15       was responsible for maintaining more than one action at a

16       time?  And which lawyer, between the two of you, should be

17       speaking on that defendant's behalf?

18               MR. D'ERCOLE:  Well, the Mott -- Mr. Mott signed the

19       complaints I think in each of the three actions.

20               THE COURT:  Who represents him?

21               MR. PRETTER:  That's our office, Your Honor.

22               THE COURT:  Thank you.  All right.  Yes.

23               MR. PRETTER:  So for the purposes of our motion to

24       dismiss, we based our motion to dismiss upon the *TransUnion*,

25       that even if there was duplicative action, there was still no

22

1    concrete harm that was particularized by the plaintiff in

2    order to have standing in the -- in front of this court.

3           THE COURT:  Okay.  We're passed the standing issue

4    now.  I'm onto the substantive 1692e question.

5           So Section 1692e says that no debt collector may use

6    a false, deceptive or misleading representation, or means,

7    representation or means, in connection with the collection of

8    any debt.  And without limiting the general application of the

9    following, the following of the foregoing, sorry, the

10   following conduct is a violation of this section.  And, one,

11   one section is the false representation relating to the

12   character amount or legal status of any debt.

13          And I think what I understand the plaintiffs to be

14   arguing is that filing two cases seeking the same relief

15   misleadingly or falsely suggests that that debt may be

16   collectible twice.

17          And I'm not talking to you right now, so please just

18   hold it.  Thank you.

19          You were responding with the section about how or

20   with the suggestion about how your client might have been in

21   one of the lawsuits but not the other, that misses the point

22   that I'm trying to get at here, which is the more fundamental

23   question of whether that course of conduct, assuming there's

24   one person on both sides, violates the statute or not, so.

25          MR. PRETTER:  No.  No.  I mean, it's our

23

1    understanding and our belief that it's still -- even if it

2    violated the statute that's not enough to cause the concrete

3    harm.

4             THE COURT:  Sir, you just changed the subject back

5    to standing.

6             So you concede that the statute reaches that conduct

7    assuming there's concrete injury?  Or you want to be heard on

8    the merits also?

9             MR. PRETTER:  I don't believe our papers discussed

10   that, that aspect what Your Honor is talking about.

11            THE COURT:  So no defendant is arguing here that the

12   statute doesn't reach the filing of duplicative lawsuits?  Is

13   anybody arguing that?

14            MR. D'ERCOLE:  Absolutely not.  I'm a defendant and

15   I'm saying as clear as day filing of a duplicative action is

16   not actionable under the Fair Debt Collection Act.

17            THE COURT:  Thank you.  Why?  What case?

18            So let me start with a strawman here, and you can --

19            MR. D'ERCOLE:  I'll tell you my reasoning.

20            THE COURT:  Let --

21            MR. D'ERCOLE:  Sorry.

22            THE COURT:  If you file a lawsuit to collect a debt

23   that is outside the statute of limitations, I think we all

24   agree that the FDCPA can reach that conduct, no?

25            MR. D'ERCOLE:  I haven't seen a case, but I would --

24

1    I haven't seen a case like that, but --

2            THE COURT:  Assume that that's the case --

3            MR. D'ERCOLE:  -- I'll assume that's the case.

4            THE COURT:  -- why wouldn't filing two actions to

5    collect the same debt be similarly an action to collect that

6    which is not legally collectible?

7            MR. D'ERCOLE:  In that case, you would be suing on a

8    case -- on a debt that was potentially no longer due.

9            Whereas, what you're saying is that I filed the

10   second --

11           THE COURT:  Can you cite me a case?

12           MR. D'ERCOLE:  Hmm?

13           THE COURT:  What is the best case I should look at

14   in the Second Circuit to answer the question --

15           MR. D'ERCOLE:  *Gabriel*.

16           THE COURT:  -- I just posed?

17           MR. D'ERCOLE:  *Gabriel*, the Second Circuit case

18   involving a default judgment, right?  And in that situation,

19   the Court -- in that situation, the plaintiff did not bring to

20   the attention of the Court the fact that the defendant served

21   an answer, but maybe it -- but didn't file it correctly, and

22   the Court said that's a technical irregularity.  It's not

23   material.  And the FD -- Fair Debt Collection Act claims were

24   dismissed on that basis.  That's the *Gabriel* claim.

25           There's also another default judgment claim in the

25

1    Western District of New York that came to a similar conclusion

2    with respect to default judgments.  There are multiple cases

3    involving default judgments where courts have concluded that,

4    you know, a mere technical irregularity is not material.

5            Here, what is the Court saying?  Is that in the

6    second action, because of the existence of the third action

7    the landlord could not move for a default judgment in the

8    second action?  That would be wrong in my view.

9            THE COURT:  What if -- what if venue lies in

10   multiple federal districts for a debt collection effort for

11   whatever reason and a plaintiff sues in five separate

12   districts and falsely misrepresents to each district that

13   that's the only litigation pending for that relief, you don't

14   think that could be deemed a deceptive course of action?

15           MR. D'ERCOLE:  You'd have to fit it into materiality

16   mold, which I'm not sure if you could.  You'd have to say that

17   the defendant consumer was prevented from fairly responding to

18   the -- those actions by making a motion for another action

19   pending or whatever motion he could reasonably make in all of

20   those actions around duplicative actions.

21           Let me say here, in this action, the third action,

22   right, the plaintiff's counsel used the default judgment in

23   the third action to move to dismiss the third action, right?

24   And ultimately the third was discontinued with prejudice,

25   right?  So I'm not sure if you're aware of that, but I wanted

1    to bring that to your attention.  The third action was

2    discontinued with prejudice.  And the motion was made by the

3    plaintiff's counsel that they made a motion on that basis.

4    The motion wasn't decided, Your Honor.  But the motion that's

5    in our papers, they utilized the default judgment in the

6    second action as the predicate for the motion to dismiss the

7    third action.  And the third action is gone and discontinued

8    with prejudice.

9              So you can't adopt the judgment, right, and then use

10   it to your benefit, get rid of the third action, and now come

11   here and complain that, you know, there was a misstatement

12   made that was material in the second action.  Because what

13   you're saying here at the end of the day, looking at this at a

14   high level, is you're saying that because of the existence of

15   the third action, you couldn't do anything in the second

16   action.  And you might say the cause of the existence of the

17   second action, you can't do anything in the third action.

18   That would be wrong.

19             THE COURT:  Let's pause there.

20             MR. D'ERCOLE:  That would be wrong.

21             THE COURT:  Let's pause there.  All right.  Thank

22   you.

23             Let's hear from plaintiff's counsel.

24             So you've heard citation to *Gabriel*.  Hold on one

25   second.

27

1    MR. D'ERCOLE:  Do you want the citation, Your Honor?

2    THE COURT:  I was looking at the *Gabriel* case a

3    moment ago.  Hold on.

4    MR. D'ERCOLE:  And that was much more egregious with

5    the defendant there.

6    THE COURT:  It's misstatements in --

7    MR. D'ERCOLE:  The plaintiff.  It misrepresented

8    that there was an answer.  It didn't tell the Court that an

9    answer had, in fact, been filed.

10   THE COURT:  All right.  Turning to the plaintiff, do

11   you want to put in a supplemental briefing the fees and costs

12   issue so we can see what the Second Circuit has to say about

13   that subject, if anything, and the Supreme Court?

14   MR. KESHAVARZ:  I would be glad to.  If Your Honor

15   thinks it would be helpful, I'd be glad to do that.

16   THE COURT:  Yeah.  I think you may have an uphill

17   battle on the notion that the anxiety is a concrete harm.  I

18   say that not meaning to diminish anybody's anxiety, but I

19   think your winningest argument in my estimation so far on the

20   standing point is the actual out-of-pocket expenditure of

21   money.  And to the extent you only have a Fourth Circuit case

22   rather than Second Circuit cases, I think it would behoove us

23   to drill down on that one level deeper.

24   MR. KESHAVARZ:  I'd be glad to do that.  When would

25   you like that?  Two weeks?

28

1                    THE COURT:  A week from Friday let's say.

2                    MR. D'ERCOLE:  I'm sorry --

3                    MR. KESHAVARZ:  Can I get one more week?  I have a

4      depositions lined up --

5                    THE COURT:  Yes.

6                    MR. KESHAVARZ:  -- for the next --

7                    THE COURT:  All right.  Two weeks from Friday is

8      fine.

9                    MR. KESHAVARZ:  Two weeks from Friday.  Thank you.

10                   MR. PRETTER:  That for defendants as well, Your

11     Honor?

12                   THE COURT:  Yes.

13                   MR. PRETTER:  I would just ask, sorry, I'm looking

14     at a calendar, that would be September 1st?

15                   THE CLERK:  Yes.

16                   THE COURT:  September 1st for everybody.  Okay.

17                   MR. PRETTER:  And if, Your Honor, if we could -- if

18     we could bring in that brief regarding the actual plaintiff

19     who's actually paying for those costs or those costs are

20     incurred by her counsel that --

21                   THE COURT:  Yeah.  So there's always the ability to

22     submit affidavits and other more specific information when

23     you're talking about jurisdiction rather than failure to state

24     a claim.  And if you would like to say something more, for

25     example, about the amount of copying costs incurred, I would

29

1    welcome an affidavit to that effect.

2            MR. KESHAVARZ:  How long will I make -- will I be

3    able to make that letter?

4            THE COURT:  Let's say no longer than five pages.

5            MR. KESHAVARZ:  Thank you.

6            THE COURT:  And feel free to write it shorter if you

7    can.  I actually don't think this is a five-page issue.  I

8    think you should -- you could be able to do it in three with

9    relative ease.

10           All right.  So turning to the merits --

11           MR. PRETTER:  And I guess that will be e-filed,

12   correct, or sent to the Court?

13           THE COURT:  Everything is e-filed.

14           MR. PRETTER:  Okay.

15           THE COURT:  Turning to the merits, why does --

16   assuming -- let's assume this is abusive conduct, that if I

17   was a New York State Supreme Court Justice I would be deeply

18   unhappy about it because there are all these different cases

19   pending, and allegedly the courts in each case are not being

20   told about what's going on in the other cases, and it may be

21   that they're being told something at best misleading and at

22   worst false -- I have the definition of application from

23   Black's Law Dictionary in front of me now and application is

24   defined simply to mean a request or petition, full stop,

25   that's definition one, definition two is motion, so saying

30

1    you've made no other application for this relief seems at

2    least to me like something that a lawyer would want to be more

3    careful in respect of and at worst something that had the

4    effect of potentially misleading the Court even if that was

5    not intended, but that -- be that as it may, why is this a

6    federal case under the FDCPA?

7              MR. KESHAVARZ:  I would be glad to say that.

8              But if I could -- you said one sentence before that

9    I want to add one -- two sentences back if I could?

10             THE COURT:  Sure.

11             MR. KESHAVARZ:  You talked about cases that say

12   emotional distress is not concrete harm.  I think the

13   important aspect is if you're making the claim for economic

14   damage or if you're making a claim for a common law analog, I

15   think that's a big distinction.  And I can go into it a little

16   more later, but I just wanted to touch on the issue of

17   emotional distress being a concrete harm.  That's not in the

18   context I don't believe in if you get to the point of common

19   law analog.  So I just wanted to put that aside.  And now I

20   can answer your question.

21             Okay.  So to answer your question, the

22   representation is false in a couple of different ways.  One,

23   you talk about the plain meaning, but the issue is, I think

24   you hit it on the head about the time-barred lawsuits, which

25   is *Cameron v. LR Credit* in the Southern District of New York.

1          The issue is -- this is a means and also

2     communication to the judge, and also to the consumer.  How is

3     that representation made to the consumer?

4          It's made to the consumer in two ways.  One, is that

5     a client found out about the application for default judgment.

6     That is in our papers, at the first hearing.  The hearing for

7     the first lawsuit, says, hey, I just found out that they're --

8     I think she said they got a judgment from me in the Supreme

9     Court case, so she found out at that point that this is a

10    Supreme Court case seeking a judgment.  Okay?

11         So under *Arias*, communication filings in court

12    oftentimes come to the attention of the consumer.  That's one

13    reason why it's actionable.  That's *Arias*.  So that's one

14    misrepresentation to the -- and as to -- also to Ms. Onfroy.

15         The other misrepresentation is when she is served

16    with a third lawsuit saying we are entitled to a judgment for

17    the same rank, and by the way, for attorneys fees.

18         Both seek attorneys fees for the same thing.  And

19    they got attorneys fees for $5,000 in the Supreme Court case

20    and now they want another 5,000 in the district court.

21         But the point is this.  The misrepresentation is

22    doing both of those things at the same time.

23         THE COURT:  Is the litigation to collect something

24    that's out of the limitations period the best analog you have?

25         MR. KESHAVARZ:  Two analogs, that and *Arias*.  *Arias*

32

1    held many different things.  One of the things it held was a

2    consumer living on social security disability, the debt

3    collection law firm, Gutman Mintz, restrains his exempt money.

4    Under state law, he has a right to file what's called an

5    objection claim form saying, hey, all my money is exempt.  He

6    did that.  He attached bank statements.

7         And Gutman's might say, great, I also have a legal

8    right, which is true, to file an objection to the exemption

9    claim form and have a state court judge make a determination

10   whether, in fact, the money is exempt.

11        The Second Circuit says while you may have that

12   legal, technical legal right, it is deceptive to the least-

13   sophisticated consumer to suggest that you have a lawful right

14   to object to the exemption claim form when, in fact, you have

15   all of the evidence to show that it was exempt, that is both

16   deceptive to the consumer, even though he has a legal right to

17   do it, because there's no basis for it.  And also unfair and

18   unconscionable.  That's what the Court said in two regards.

19        So that is --

20        THE COURT:  So that -- so *Arias* is that case.  And

21   then the statute of limitations case you said is what?

22        MR. KESHAVARZ:  *Cameron vs. LR Credit*.  And to

23   expound upon why you argue correctly that that is similar

24   here, a debt collector has a legal right to file a time-barred

25   suit.  There's nothing illegal about doing that.  And you --

33

1    THE COURT:  Well, you may have a Rule 11 problem or

2  whatever the state equivalent is.  But you may have that here

3  too.

4    MR. KESHAVARZ:  But what debt collectors say is the

5  -- in the early litigation on this issue, the debt collection

6  law firm would say, well, the consumer can waive that

7  affirmative defense, which is also technically true, but the

8  point, the reason why *Cameron*, and every other court that I

9  know of, has considered that has said, while you have a

10  technical legal right to file this suit, it is deceptive to

11  the least-sophisticated consumer, and also under GBL 349, to

12  say you have a legal right to obtain the judgment when you

13  don't have a legal right to do it because it's barred.

14    THE COURT:  Yeah.  It's a -- so I understand

15  everything you're saying, and I understand the appeal of it,

16  is it a little different here in the sense that when you sue

17  to collect a debt that has expired under the applicable

18  statute of limitations, there's something inherently

19  misleading about that.

20    Whereas when you sue to collect a debt that really

21  is collectible, and you just sue to collect it in two

22  different forums, it may not be as inherently misleading.

23   There's no affirmative suggestion that by the way, even

24  if we win in lawsuit A, we're still going to try to collect in

25  lawsuit B.  It may just be two means to the same end.

34

1          Why is it inherently -- I mean, walk me through the

2     logic of like why would the least-sophisticated consumer

3     believe that he or she is obligated to pay twice?

4          MR. KESHAVARZ:  That's an excellent question, and

5     there are -- let me unpack that in a few different ways.

6          First, it misrepresents the nature of the debt.

7     Opposing counsel indicated materiality.  He defined

8     materiality in two different ways as a misrepresentation to

9     the least-sophisticated consumer of the nature of the debt.

10         And two, there's a --

11         THE COURT:  But how?  So in the statute of

12    limitations example, you're misrepresenting the nature of the

13    debt as collectible when, in fact, it's uncollectible.

14         You're misrepresenting the nature of the debt here

15    how?

16         MR. KESHAVARZ:  You're misrepresenting it in total

17    because the two suits together --

18         THE COURT:  It's the implication that the person

19    owes 2X what they really owe?

20         MR. KESHAVARZ:  That's what the least-sophisticated

21    consumer would see it as.  And that's one of the reasons why a

22    line of cases on liability go to what's called meaningful

23    attorney review.  A signature on a complaint by a lawyer is a

24    representation, an implied representation, to the least-

25    sophisticated consumer that the attorney has made an

35

1    independent legal determination that their client has a right

2    to the relief sought.  And to do that at the same time, to

3    make that representation to the consumer that our client has a

4    right to a judgment in this case, and a judgment in this case

5    and $5,000 both is misleading.

6           The least-sophisticated consumer would be going, oh,

7    what am I going to do?  How am I going to fight this?  That's

8    why it's unfair.  Should I pay it?  Not that you have to pay

9    it, but it puts pressure on the consumer to do that.

10          THE COURT:  Well, it's certainly pressure.  I agree

11   with that.  That's a time-honored and not always honorable

12   legal strategy, that, oh, we'll try to make our opponents

13   fight on multiple fronts and that will just wear them out, but

14   being oppressive and being misleading are potentially two

15   different things.

16          MR. KESHAVARZ:  Well, the issue would be -- well,

17   the standard for the least-sophisticated consumer is very low.

18   You know, would they -- would they be unclear about what their

19   rights are?  Under this set, among many other things, or are

20   they misrepresenting the amount that they can get?

21          THE COURT:  Yeah.

22          MR. KESHAVARZ:  If they're saying that we can get

23   two judgments, I mean, I can't see the least-sophisticated

24   consumer, sophisticated consumer, any consumer, saying --

25   understanding that to mean something other than what it says.

36

1          The other case that's analogous is *Villalba*, in the

2     Eastern District.  That said --

3          THE COURT:  Why does *Gabriel*, how do you square

4     *Gabriel* with the statute of limitations and the analogous

5     cases we're talking about?

6          MR. KESHAVARZ:  That's a very good point, because

7     *Gabriel* was about the issue of materiality.  That was about

8     whether someone had filed something when they didn't.

9          The Second Circuit says that has nothing to do with

10    collections.  If it's true, it doesn't affect your rights.  If

11    it's untrue, it doesn't affect your rights.  It's not

12    material.  The fact that it happened in a court litigation is

13    not the point.  The point is so what?  And the Court said this

14    has nothing to do with collection regardless if it's true or

15    not.

16         THE COURT:  What was the series of

17    misrepresentations at issue there?

18         MR. KESHAVARZ:  It's been a while since I read it,

19    but my recollection is that there was a filing by the debt

20    collector that falsely said that the person had filed

21    something, had not filed something when they did.  And the

22    Second Circuit was that filing doesn't have to do with the

23    collection of the debt.  It doesn't -- it doesn't make it

24    harder for you to challenge the debt.

25         Here, in contrast, it definitely makes it harder.

37

1    You have to fight on two fronts, right?  You have to go to

2    court in the third case even after there was a judgment in the

3    -- in the second case.  Actually, that's something that I

4    think is very important to make absolutely clear --

5                THE CLERK:  Counsel, I (inaudible).

6                THE COURT:  So Krug is the lawyer in *Gabriel*.  Krug

7    affirmed in the state complaint that it would serve copies of

8    exhibits on Gabriel.  That's alleged to be false.  And Krug

9    filed a notice of compliance with that requirement when, in

10   fact, they had not complied.  Krug also filed two motions for

11   default when Gabriel was allegedly not in default and

12   prematurely filed a motion for judgment of strict foreclosure

13   in violation of a procedural rule.

14               So not every misstatement in a landlord-tenant

15   collection action or eviction action is an FDCPA violation.

16               MR. KESHAVARZ:  It has to matter in some regard.

17   And the best case synthesizing *Gabriel* for state court

18   litigation is the most recent one, just came out several

19   months ago, and that's *Villalba vs. Houslanger & Associates*,

20   2022 Westlaw 900538, and that synthesizes everything.

21               THE COURT:  That's *Villalba versus whom?  Sorry.*

22               MR. KESHAVARZ:  *Houslanger & Associates.*  Now, in

23   that sense -- that's actually an excellent case.  In *Villalba*,

24   the consumer was never served with a collection lawsuit.  The

25   debt collector filed a false affirmation of service that he

38

1    was served when he wasn't.  The client gets a default

2    judgment.  Ten, 15 years later, his bank gets garnished.  He

3    files an order to show cause saying I was never served with

4    this suit.  And they made him come back multiple times to

5    oppose it.  Ultimately the case was discontinued.

6              The debt collector there tried to say, well, those

7    misrepresentations were not material because the consumer, in

8    fact, knows that they were never served so how could you be

9    deceived?

10             And Judge Chen said, no, the case law post *Gabriel*

11   is the least-sophisticated consumer getting a document signed

12   by a lawyer saying that we have a right to do this, a consumer

13   would still think, okay, a lawyer's telling me this, there

14   must be some sort of basis for it even though there wasn't.

15             And the other thing that's similar to here, and also

16   in *Arias*, is multiple adjournments of the third suit.  And

17   this is very important because there was a judgment entered, a

18   judgment actually entered in Supreme Court, and they made this

19   poor woman come back to court over and over again.

20             THE COURT:  Why don't you have a remedy for that in

21   the state court --

22             MR. KESHAVARZ:  Because --

23             THE COURT:  -- for the request for attorneys fees or

24   otherwise?  I mean that sounds like an abuse of the litigation

25   process, but not necessarily, necessarily an FDCPA violation?

39

1          MR. KESHAVARZ:  There are many answers to that.  The

2     easiest answer in housing court is that you don't have -- it's

3     a court of limited jurisdiction.  You can't implead a new

4     party in an FDCPA case if that party -- that person is not a

5     party.  You can't bring counterclaims not related to the

6     underlying housing.  You can't bring --

7          THE COURT:  But then you don't have the same party

8     suing you in both cases, no?

9          MR. KESHAVARZ:  No.  You can't sue the law firm I

10    mean.  You can't sue a law firm in their own key case because

11    they're not a party.

12         THE COURT:  Yeah.  But why can't -- they're not a

13    party, but why can't you get attorneys fees for abuse of the

14    state court litigation process?

15         MR. KESHAVARZ:  Because issues -- and this is in our

16    papers and expanded in more detail -- but things that are

17    related to tort actions, tort type issues, the court doesn't

18    have jurisdiction.  The housing court has limited

19    jurisdiction.  You cannot bring those type of actions in

20    housing court.  You just can't.

21         THE COURT:  Can I -- I'm going to ask a basic

22    question, which is probably remedial and possibly embarrassing

23    from my perspective, but it's the -- it is the case all the

24    time that venue would lie in a given case in both the Eastern

25    and Southern Districts of New York, which as you know are very

40

1    close to each other.

2            Imagine that a plaintiff just routinely, you know,

3    files in the Eastern and Southern District of New York and

4    never tells the other district about the case, the other case,

5    what problem does that lawyer have under the Rules of Civil

6    Procedure in federal court or otherwise?  Like is it obvious

7    to you that that's not allowed?  And if it's not allowed, why?

8            MR. KESHAVARZ:  A couple of things.

9            One, it would have to be for a collection of a

10   consumer debt, you're assuming the least-sophisticated

11   consumer --

12           THE COURT:  Oh, I don't mean the FDCPA.  Like it

13   could be anything.  Let's say it's a breach of contract action

14   and it's just being brought in diversity and venue lies in

15   both Eastern and Southern, but you file here and you file

16   there and you just don't tell anybody that you're filing in

17   both courts, presumably that lawyer would have a problem, but

18   I'm not sure I understand, as I sit here, what problem exactly

19   that would be.

20           MR. KESHAVARZ:  Well, if they get two judgments in

21   two districts for the same cause of action, then they --

22           THE COURT:  The judges would be very upset.  This is

23   a waste of judicial resources.  It's inefficient.  It's all

24   kinds of other things, but I'm trying to understand what rule

25   it violates?

41

1          MR. KESHAVARZ:  Rule of procedure, like a Rule 11?

2     I don't know what statute that it --

3          THE COURT:  Rule 11, the local rules of the Eastern

4     and Southern Districts of New York, the principles of

5     collateral estoppel, I mean, or, you know, some duty of candor

6     to the court.  I don't know what it is.

7          MR. D'ERCOLE:  May I comment on that?

8          THE COURT:  In a minute, sure.  But hold on for the

9     moment.

10          MR. KESHAVARZ:  I'm not sure.  But that raises a

11     related point, and then I'll try to get back to your question.

12          That is why you have the FDCPA, is because remedies,

13     traditional state court remedies, are not sufficient to deter

14     this kind of practice.  So you could file a Rule 11, for

15     example, in the two state court actions by saying your

16     signature's a representation that there's a good-faith basis

17     for that.  You're implying to the judge and to the party that

18     you have a right to get that relief in this court.  And he's

19     doing the same thing in the other court --

20          THE COURT:  Well, you have a right to get relief in

21     either court in my hypo, until you get relief in whatever

22     court comes first with the relief, and then, then you have no

23     more right to relief in the other court.  But at the moment

24     you file both cases, you have a theoretical right in each.

25          MR. KESHAVARZ:  Right.

42

1              THE COURT:  All right.  We'll leave it there.

2         I think I do need to understand, from your

3    perspective, first and foremost, a little better why you

4    believe these successive actions in the state court were

5    clearly duplicative.  Right?

6              We heard a little bit from defense counsel about how

7    different courts in the constellation of the New York State

8    Court System can issue different relief that others can't.

9              Were these -- were these cases truly duplicative or

10   were there sufficient enough differences among them to

11   overcome your suggestion that the only reason for filing

12   multiple cases could be the benefits of misrepresentation?

13             MR. KESHAVARZ:  The amounts sought was for the exact

14   same months of rent.  The landlord-tenant action also sought

15   possession.  Now, if they just filed a suit for possession and

16   didn't try to get a judgment for the same money in Supreme

17   Court, well, then you wouldn't have a misrepresentation as to

18   the amount of the -- you're able to getting a double judgment.

19   That's not what they did.

20             They tried to get a double judgment or at least they

21   represented they had a right to do that.

22             And the last point on that, I keep saying the last

23   point, and it's never the last point, but there's no greater

24   sound for a trial lawyer than the sound of his own voice, so,

25   it was DeCota that both signed the affirmation to enter

43

1    default judgment in Supreme Court and went to the hearing in

2    the third action after that and said, no, I want to keep this

3    case going.  I want to keep on resetting the hearing and

4    resetting the hearing and resetting the hearing after we've

5    already gotten a judgment.

6            They didn't say, judge, we have to discontinue our

7    -- at least our claim for the money.  No, we want to keep this

8    case going.

9            Ultimately, after Mr. DeCota left, Mott continued.

10   And the clock -- they wouldn't dismiss the case.

11           THE COURT:  So the default judgment comes in the

12   Supreme Court action?

13           MR. KESHAVARZ:  That's right.  Right.  And then Mott

14   would not dismiss the case after bringing my client to court

15   over and over again.  She had to get a legal service attorney

16   to file a motion to dismiss.  And you know what they did?

17   They said, no, I want you to come back again so we can file an

18   opposition.  We got a judgment from the Supreme Court, but we

19   should still be able to proceed to that.  We want to be able

20   to file an opposition.

21           And then at the next hearing, they vigorously, Mott

22   vigorously sought to obtain -- to let the third case continue

23   to be able to get the same judgment.

24           THE COURT:  What is the third case?  We're talking

25   about the Supreme Court action, the housing court action, and

44

1   a third case?

2          MR. KESHAVARZ:  I call it the third case.  The two

3   cases at real issue in this case, it's the second case and the

4   third case.  The second case is the Supreme Court action.  The

5   third case is the LMT action for the same debt.  There is a

6   prior LMT that's really just kind of collateral, but just to

7   keep the lawsuits straight, that's why I'm calling it the

8   third case.

9          THE COURT:  Sorry.  So what's the first case?

10          MR. KESHAVARZ:  The first case is kind of

11   tangential.  It was to try to collect one month's of rent.

12          THE COURT:  Oh, I see.

13          MR. KESHAVARZ:  And the reason we put it in there is

14   because the corporate structures for the landlord signed the

15   actual papers, so they're actually directly involved in the

16   collection action.  And that also says that's when the client

17   found out about the Supreme Court case.  And she put it in her

18   papers.  So that's why we referenced the first case.

19          THE COURT:  Okay.  You wanted to be heard on the

20   question of duplicative litigation?

21          MR. D'ERCOLE:  On a few things, Your Honor.

22          Number one, my client never made any such statements

23   to any court.  And plaintiff's counsel is paraphrasing.

24          The third action got adjourned several times.  And

25   if you look at the front file folder, which is in the papers,

45

1    the plaintiff made a knee-wrap application, which is an

2    emergency relief application, to get money from the state or

3    federal government to pay the outstanding rent.  And it's

4    referenced in the front file folder because this application

5    was pending, which would have paid the judgment.  The case was

6    adjourned, you know, several times.  Right?

7             My client, to the extent, and it's not clear that he

8    even appeared at a calendar call, if you go to a calendar call

9    and the case is adjourned, that's not a basis for relief

10   against my client for anything.

11            But let me -- let me just -- you have to separate my

12   client.  I represent one defendant.  I don't represent the

13   Mott defendants.  I represent Kenneth DeCota.

14            To the extent you find there's something wrong about

15   filing the third action, my client had nothing to do with it

16   than sign the complaint, then file the complaint, then

17   prosecute the complaint.  All he did was, as a second -- as an

18   attorney admitted to the bar in 2020, his first -- this was

19   his first job, he's given a file folder, go make an

20   application for a default judgment.  And in that case, it was

21   perfectly correct that the landlord could sue for that money

22   and obtain a default judgment.

23            To the extent the landlord did anything inconsistent

24   to get a third judgment, then maybe you could find fault with

25   that.  Right?

1          But my client didn't file a complaint and didn't --

2          THE COURT:  He filed an affirmation that said no

3   other application for the same relief was --

4          MR. PRETTER:  Which was absolutely correct.  And you

5   just read it.  It's a motion, right?  And you all said --

6          THE COURT:  I read definition two as a --

7          MR. PRETTER:  -- you might say it's vague, might say

8   it's vague, but you can't say it's false, and it's not

9   material.

10          THE COURT:  The first definition of application is a

11   request.  This is Bryan Garner, Black's Law Dictionary, 11th

12   Edition.

13          MR. D'ERCOLE:  Okay.

14          THE COURT:  So substitute the word request for

15   application, is that statement still true?

16          MR. D'ERCOLE:  Yeah.

17          THE COURT:  Really?

18          MR. D'ERCOLE:  I'm sorry.  I was distracted.  I was

19   thinking about the definition of pleading under Black's Law

20   Dictionary.

21          THE COURT:  A request?

22          MR. D'ERCOLE:  A request is a -- application is a

23   request.  yes.

24          THE COURT:  All right.  So if we substitute the word

25   request, is the statement still true?  No other request for

1    this relief is pending?  Of course not.

2              MR. D'ERCOLE:  No other request for a default

3    judgment is pending, correct.  For a default judgment.  You

4    can't -- you can't --

5              THE COURT:  You're slicing that a little thinly

6    also.

7              MR. D'ERCOLE:  You can't -- you can't

8    (indiscernible).  I mean, talk about your hypothetical, right?

9    Your hypothetical, all the time parties race to the

10   courthouse, they run and they race to the courthouse.  And one

11   party may file an action here, and an adverse party might file

12   here that has duplication.

13             THE COURT:  Yeah.  That's a different hypo.

14             MR. D'ERCOLE:  I understand that.

15             THE COURT:  We're talking about the same party

16   filing.

17             MR. D'ERCOLE:  Right.  By the same party.  What your

18   -- your hypothetical is not reasonable because --

19             THE COURT:  Why?

20             MR. D'ERCOLE:  -- because it would have to be in

21   secret, right?  If you had two actions involving the same

22   parties, one party would make a motion to dismiss it based on

23   another action pending.  It would have that relief, right?

24             To the extent that an action was filed in the

25   Southern district and then a plaintiff filed the same action

1    in the --

2             THE COURT:  Why isn't that this case?  That's the

3    question.

4             MR. D'ERCOLE:  It's not this case.

5             THE COURT:  Why?

6             MR. D'ERCOLE:  Because number one, it's not a

7    duplicative action because you can't -- you couldn't get

8    possession, you couldn't get a warrant of eviction in the

9    Supreme Court, you had to file the third action.  You had to

10   file it.

11            THE COURT:  Why didn't you just file the third

12   action and not the second action?

13            MR. D'ERCOLE:  Why?  Because he had -- the landlord

14   had that option to do it.  It's not against the law.  It's not

15   a violation of the Fair Debt Collection Act to go -- it's an

16   option that parties have.

17            THE COURT:  Well, it is if it's misleading.  I mean,

18   that's what we're here to decide --

19            MR. D'ERCOLE:  Again, now you're talking about --

20            THE COURT:  -- I mean, you're assuming --

21            MR. PRETTER:  -- now you're not separating it.

22   You're not separating it again.  You're talking about the

23   existence of filing three complaints, right?  You find fault

24   with having -- forget about the first complaint, the two

25   complaints that are duplicative, you find that as problematic.

49

1    Well, my client didn't file it.  My client wasn't part of the

2    decision-making process to file those two complaints or to

3    prosecute them.  He made a plain vanilla application for a

4    default judgment and nothing he said in that was material,

5    materially false.  The landlord --

6              THE COURT:  Okay.  Again, again, I'm hearing from

7    the wrong --

8              MR. D'ERCOLE:  The landlord --

9              THE COURT:  Sir, when I start talking, you stop

10   talking.  It's really that simple.

11             I'm hearing from the wrong lawyer on this issue

12   again because I have a higher level question than the one

13   you're answering, which is simply the merits question of

14   whether this course of conduct, assuming there are one or more

15   defendants who are responsible for the whole thing, is conduct

16   the FDCPA reaches?

17             And you're making a much more narrow point about

18   your individual client's involvement in both cases.  I know

19   the facts on this.  I don't want to hear that argument again

20   because we've heard it a bunch of times now.

21             And we will now, thank you for your arguments here,

22   be adjourned.

23             Let's just make sure we have clarity on the time

24   line for the deliverables, which is I think that both sides

25   are going to submit letters on September 1st regarding the

50

1    fees and costs issue for standing purposes.

2                Anything else from the plaintiff's side before we

3    adjourn today?

4                MR. KESHAVARZ:  No.  Thank you very much, Your

5    Honor.

6                THE COURT:  All right.

7                MR. PRETTER:  Just if we could make comment

8    regarding Your Honor's hypothetical before the filing in

9    different venues.

10               Maybe even the different states or different

11   jurisdictions, it could even be -- it could rise even to, I

12   guess, a legal malpractice if an attorney doesn't file in the

13   appropriate venue.  That's why an attorney might file in

14   multiple venues in order to make sure to cover his client's

15   interests, which I think might be comparable here where you

16   have the state court, the Supreme Court action, and a

17   (indiscernible) action to make sure the client's interests are

18   covered in all bases for either the right of eviction or for

19   right of arrears.

20               THE COURT:  So your point is it may not -- it may

21   not even just be permissible to file in multiple forums, it

22   may be required --

23               MR. PRETTER:  Right.

24               THE COURT:  -- of the lawyer?  I understand the

25   point.

51

1          All right.  Thank you all.  We will endeavor to get

2     an answer out to you as quickly as we can.

3          ALL COUNSEL:  Thank you, Your Honor.

4          (Proceedings concluded at 3:58 p.m.)

5               I, CHRISTINE FIORE, court-approved transcriber

6     and certified electronic reporter and transcriber, certify

7     that the foregoing is a correct transcript from the official

8     electronic sound recording of the proceedings in the above-

9     entitled matter.

10

11          *Christine Fiore*

12     _____          August 24, 2023

13        Christine Fiore, CERT

14          Transcriber

15

16

17

18

19

20

21

22

23