# AHMAD KESHAVARZ
*Attorney at Law*

16 Court St., 26th Floor  
Brooklyn, NY 11241-1026  
www.NewYorkConsumerAttorney.com  
E-mail: ahmad@NewYorkConsumerAttorney.com  
Telephone: (718) 522-7900  
Fax: (877) 496-7900

August 31, 2023

Hon. Judge Eric R. Komitee  
United States District Court  
Eastern District of New York  
225 Cadman Plaza East  
Brooklyn, NY 11201

Re: Plaintiff's Supplemental Briefing in Opposition to Motions to Dismiss [Dkt. Nos. 28 and 37].  
*Onfroy v. The Law Office of Geoffrey T. Mott, P.C., et al.,* No. 1:22-cv-02314-EK-LB

Dear Judge Komitee:

This firm, along with Nassau Suffolk Law Services Committee, Inc., represents Plaintiff Lovern Onfroy in the above-entitled action regarding violations of the Fair Debt Collection Practices Act ("FDCPA"), N.Y. General Business Law § 349, and for gross negligence.

Pursuant to the Court's Order [Dkt. No. 44], Plaintiff provides this five page supplemental briefing in opposition to Defendants' Motions to Dismiss [Dkt. Nos. 28 and 37] to address case law in the Second Circuit finding Article III standing for the monetary injuries alleged in the First Amended Complaint (FAC) [Dkt. No. 21] ¶ 278: "In addition to the emotional injury, Ms. Onfroy has also incurred monetary costs due to the court hearings, namely paying for parking meters and copying, as well as lost time and having to take off from work for multiple court settings."

## I. ARGUMENT

As a general matter, the following arguments should be considered with the direction of the Second Circuit, that "cautioned against arguments that would essentially collapse the standing inquiry into the merits...[and] conflate the threshold question of the plaintiff's standing under Article III with the question of whether he has a valid claim on the merits." *SM Kids, LLC v. Google LLC*, 963 F.3d 206, 212 (2d Cir. 2020). At the stage of a motion to dismiss the focus must be on "the threshold question" rather than the veracity of the pleadings or contentions made by Defendants' counsel.

Regardless, Plaintiff attaches as **Exhibit A** an affidavit from the Plaintiff Lovern Onfroy attesting in detail to the injuries plead in the First Amended Complaint.

### A. PARKING METERS AND COPYING FOR COURT HEARINGS

**1.** <u>Costs incurred by improper lawsuits.</u>

It is important to distinguish the costs incurred by an improper lawsuit, which does confer standing, from the cost incurred by investigating violations and filing a lawsuit, which does not confer standing. *Pollak v. Portfolio Recovery Associates, LLC,* 2022 WL 580946, at *1 (E.D.N.Y. Feb. 24, 2022) ("the burdens of bringing a lawsuit cannot be the sole basis for standing"). As the *Pollak* court noted, the distinguishing factor is causation – the "burdens of bringing a lawsuit" are not an injury "resulting directly from Defendant's alleged statutory

1

violations." *Id.* While *Pollak* itself did not find standing for its plaintiff, it cited to various cases where similar injuries would be sufficient to establish standing. *Pollak,* 2022 WL 580946, at *1 *citing In re Equifax Inc. Customer Data Sec. Breach Litig.,* 999 F.3d 1247, 1262 (11th Cir. 2021) ("[W]hen a plaintiff faces a sufficient risk of harm, the time, money, and effort spent mitigating that risk are also concrete injuries."*, cert. denied sub nom. Huang v. Spector,* 142 S. Ct. 43 (2021); *Reed v. IC Sys.,* 15-CV-279 (KRG), 2017 WL 89047, at *4 (W.D. Pa. Jan. 10, 2017) ("Plaintiff, as the object of [125] phone calls from Defendant which caused her wasted time and annoyance, has suffered injury in precisely the form the FDCPA was intended to guard against," an injury "sufficiently concrete to confer standing." (internal quotation marks, citation, and brackets omitted)); *Stromberg v. Ocwen Loan Serv'g, LLC,* No. 15-CV-4719 (JST), 2017 WL 2686540, at *1, 6 (N.D. Cal. June 22, 2017) (recognizing as concrete injuries "expenditures of time and money" in ensuring that a mortgage was recorded).

And while admittedly not quite on point, as it dealt with organizational standing rather than the standing of an individual person, the Second Circuit's finding that the New York Taxi Workers Alliance (NYTWA) had standing based on costs of assisting its members with suspension proceedings is analogous enough to suggest a similar ruling as to individual plaintiffs like Ms. Onfroy. *Nnebe v. Daus*, 644 F.3d 147, 157 (2d Cir. 2011). In particular, the Second Circuit was careful to distinguish the standing for NYTWA from cases where "litigation expenses alone do not constitute damage sufficient to support standing." *Id. quoting Fair Hous. Council of Suburban Phila. v. Montgomery Newspapers,* 141 F.3d 71, 78–79 (3d Cir.1998). As the Court pointed out, the NYTWA "far from trolling for grounds to litigate, has allocated resources to assist drivers only when another party—the City—has initiated proceedings against one of its members." *Nnebe,* 644 F.3d at 157-158; *see also Harty v. West Point Realty*, 28 F.4th 435 (2d Cir. 2022). While the language "trolling for grounds to litigate" evokes the idea of bad faith, such self-inflicted injuries need not be bad faith to be insufficient for an Article III injury through self-infliction. For example, the costs of hiring an attorney to research if an FDCPA claim would be viable, while perhaps motivated solely by a desire to know one's rights, would be insufficient to confer standing as it would not be caused by the alleged wrongdoer.

But here, Ms. Onfroy's parking costs and copying costs (FAC ¶ 278; **Exhibit A**, ¶¶ 2-5) were not her "trolling for grounds to litigate," but rather expending money "when another party" – the Defendants – "initiated proceedings against" her. *Id.* Ms. Onfroy is not seeking the parking costs and copying costs for consulting with attorneys to file a FDCPA lawsuit against Defendants; she is seeking the parking costs and copying costs necessitated by a Third Collection Lawsuit on a debt already reduced to a judgment in the Second Collection Lawsuit. *See* **Exhibit A**, ¶¶ 2 ("I paid for parking **when I went to the Court** [emphasis added"); 3 ("I did not see free parking when I went to the Courthouse nor am I aware of any"); 5 ("I have no knowledge of having been able to make those photocopies for free at the Courthouse"). Because the Third Collection Lawsuit and the application for a default judgment in the Second Collection Lawsuit after the filing of the Third Collection Lawsuit were deceptive communications in violation of 15 U.S.C. § 1692e, these injuries confer Article III standing.

    **2.** <u>Costs incurred to mitigate risk of second judgment.</u>

"[T]he mere risk of future harm, standing alone, cannot qualify as a concrete harm—at least unless the exposure to the risk of future harm itself causes a *separate* concrete harm." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2210–11, 210 L. Ed. 2d 568 (2021) [original

emphasis]. Similarly, the court in *Pollak* held that mitigation of risk was not a concrete injury in that case because there was not "a sufficient risk of harm that [Plaintiff] allegedly spent time and money to mitigate." *Pollak,* 2022 WL 580946, at *1.

However, this case is most similar to *Bohnak v. Marsh & McLennan Companies, Inc.*, No. 22-319, 2023 WL 5437558 (2d Cir. Aug. 24, 2023). In *Bohnak*, the Plaintiff established an Article III injury by alleging "she incurred 'out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft' and 'lost time' and other 'opportunity costs' associated with attempting to mitigate the consequences of the data breach." *Id.* at *7. She could recover these costs because they "foreseeably ar[ose] from the exposure of Bohnak's [personal identifying information] to a malign outside actor, giving rise to a material risk of future harm." *Id.*; *see also In re USAA Data Sec. Litig.,* 621 F. Supp. 3d 454 (S.D.N.Y. 2022).

Here, Plaintiff spent time and money to mitigate the risk of a second judgment being entered against her over the same alleged rental arrears from the Third Collection Lawsuit, specifically the costs of copying and parking and the time spent at hearings in the Third Collection Lawsuit. FAC ¶ 278; **Exhibit A**, ¶¶ 2-5. The exposure to the risk of future harm, a second judgment over the same debt, caused *separate* concrete harms: the cost of parking and the cost of copying. The harm here is in fact even more concrete and particular than the harm in *Bohnak*, as the harm in *Bohnak* arose from the fallout of the alleged breach by the defendant's duty to safeguard private information, whereas in this case the Defendants directly and intentionally created the risk of a second judgment being entered by filing the Third Collection Lawsuit and filing the motion to enter default judgment in the Second Collection Lawsuit after the Third Collection Lawsuit had been filed.

This risk analysis also helps to distinguish the present case from a case like *Harty v. West Point Realty*, 28 F.4th 435 (2d Cir. 2022). In essence, the plaintiff in *Harty* was a "tester" of whether websites complied with the Americans with Disabilities Act (ADA), and was not in fact a "prospective traveler seeking a wheelchair-accessible hotel." *Id.* at 439. In other words, any injuries suffered by the plaintiff were intentionally self-inflicted rather than caused by the violation. While Defendants here, without factual basis, claim that Plaintiff's injuries were self-inflicted, the reality is that Ms. Onfroy did not incur these parking costs and copying costs out of some ancillary activity to create a lawsuit, but rather to prevent a second judgment being entered against her on the same debt. *See* **Exhibit A**, ¶¶ 2 ("I paid for parking **when I went to the Court** [emphasis added"); 3 ("I did not see free parking when I went to the Courthouse nor am I aware of any"); 5 ("I have no knowledge of having been able to make those photocopies for free at the Courthouse").

**B.** LOST TIME.

There are courts in the Second Circuit that have held, even after *Ramirez*, that "wasted time and expense is a traditional monetary harm" sufficient to confer Article III standing. *Hines v. Equifax Info. Servs.*, LLC, No. 19CV6701RPKRER, 2022 WL 2841909, at *8 (E.D.N.Y. July 16, 2022). Courts in the Second Circuit have widely recognized that even a delay in receiving wages incurs an injury due to the loss of the "time value" of that money. *See e.g. Macchiavello v. ABB/CON-CISE Optical Group LLC*, 2023 WL 4625009, at *3 (S.D.N.Y. Jul. 19, 2023). "That injury is especially acute for those workers who are generally dependent upon their wages for sustenance." *Jones v. Nike Retail Servs., Inc.*, 2022 WL 4007056, at *1 (E.D.N.Y. Aug. 30,

2022). And courts in the Second Circuit have held that there is no need to specify what the delayed or lost funds would have been spent on. *Macchiavello,* 2023 WL 4625009, at *3 *citing Gillett v. Zara USA, Inc.,* 2022 WL 3285275, at *7 (S.D.N.Y. Aug. 10, 2022). Here, the filing of the Third Collection Lawsuit and the application for default judgment in the Second Collection Lawsuit forced Ms. Onfroy to take time off work. FAC ¶¶ 245, 278; **Exhibit A**, ¶¶ 6-7.

And while the majority of the above cases concerned labor law claims, a Second Circuit FDCPA case shows they are applicable here – *Arias v. Gutman, Mintz, Baker & Sonnenfeldt LLP*, 875 F.3d 128, 138 (2d Cir. 2017). "Attending a hearing can be expensive, forcing consumers to take unpaid leave from work, incur additional dependent care expenses, and so on." *Id.* While this statement was in the context of explaining how a debt collector violates 15 U.S.C. § 1692f when it "in bad faith unduly prolongs legal proceedings or requires a consumer to appear at an unnecessary hearing," stating that this conduct "can be expensive" and illustrating that expense with the example of "forcing consumers to take unpaid leave from work" shows that loss of wages can be caused by requiring a consumer to appear at an unnecessary hearing, as Defendants did to Ms. Onfroy when they filed the Third Collection Lawsuit and the application for default judgment in the Second Collection Lawsuit. **Exhibit A**, ¶¶ 7a ("I took personal or sick days, for which I have a limited number") and 7b ("On one or more occasions I was late for work because I had to go to Court and was not paid for the time I was late").

### C. COMMON LAW ANALOGUE

One injury that confers Article III standing that Plaintiff only addressed briefly in oral arguments (**Exhibit B**, Trans. 30:11-19) was an injury analogous to "harms traditionally recognized as providing a basis for lawsuits in American courts." Pl. MOL, pp. 29-31 *citing Transunion LLC v. Ramirez,* 141 S.Ct. 2190, 2204 (2021). The intangible harm caused by Defendants' filing of the Third Collection Lawsuit and filing of the application for default judgment in the Second Collection Lawsuit is analogous to the traditional common law injuries from negligence and abuse of process. "In New York, 'a malicious abuse-of-process claim lies against a defendant who (1) employs regularly issued legal process to compel performance or forbearance of some act (2) with intent to do harm without excuse of justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process.'" *Savino v. City of New York*, 331 F.3d 63, 76 (2d Cir. 2003) *quoting Cook v. Sheldon,* 41 F.3d 73, 80 (2d Cir.1994). As publication causes injury for defamation (*see Transunion,* at 2209-2211), so does the legal process compelling performance or forbearance of some act cause injury for abuse of process. "Because the vast majority of Plaintiff's claims concern Defendants' alleged misconduct during the Civil Court action, Plaintiff's claims share 'a close relationship [with] harms traditionally recognized as providing a basis for lawsuits in American courts.'" *Makhnevich v. Bougopoulos*, No. 18CV285KAMVMS, 2022 WL 939409, at *5 (E.D.N.Y. Mar. 29, 2022) *citing Viernes v. DNF Assocs., LLC*, 582 F. Supp. 3d 738, 749-750 (D. Haw. 2022) (finding a close relationship with the tort of "wrongful use of civil proceedings").

### D. EMOTIONAL DISTRESS.

In regards to emotional distress as an Article III injury, Your Honor stated the following: "I think a bunch of judges have opined on that in a way that's favorable to you [Defendants]. I'm not sure that's dispositive, but that's something I've seen." **Exhibit B**, Trans. 10:01-03. Indeed, the case law on whether emotional distress can amount to an Article III injury is split, and

4

unfortunately the Supreme Court's *Ramirez* decision expressly declined to rule on that issue. *Ramirez*, 141 S. Ct. at 2211, fn. 7 ("We take no position on whether or how such an emotional or psychological harm could suffice for Article III purposes"). However, Plaintiff believes that the authority cited below provides a persuasive case that, where emotional distress is concrete and particularized, it should be considered an Article III injury.

In *Hart v. Simon's Agency, Inc.*, 2022 WL 4619863, at *4 (N.D.N.Y. Sept. 30, 2022), the Northern District of New York found that emotional distress claims supported by some evidence "could also amount to concrete harm." As *Ramirez* reaffirmed, physical harms "readily qualify as concrete injuries under Article III." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2197, 210 L. Ed. 2d 568 (2021). Accordingly, where the emotional distress being caused by Defendants' violations of the FDCPA is so acute as to result in physical corollaries like loss of sleep (FAC ¶ 255) and high blood pressure (FAC ¶ 261), it should be considered an Article III injury. Even those Circuit decisions which have held emotional distress was insufficient to be an Article III injury did so in the context of emotional distress that lacked physical manifestation. *Pennell v. Glob. Tr. Mgmt., LLC*, 990 F.3d 1041, 1045 (7th Cir. 2021) (holding stress and confusion-without accompanying physical manifestation-do not suffice for standing); *Wadsworth v. Kross, Lieberman & Stone, Inc.*, 12 F.4th 665, 668 (7th Cir. 2021) (rejecting "stress," "anxiety, " and "uncertainty" as bases for FDCPA standing); *Garland v. Orlans, PC*, 999 F.3d 432, 440 (6th Cir. 2021) (finding the plaintiff's injuries cannot create standing "[b]ecause bare allegations of confusion and anxiety do not qualify as injuries in fact") *cf. Toste v. Beach Club at Fontainebleau Park Condo. Ass'n, Inc.,* No. 21-14348, 2022 WL 4091738, at *1 (11th Cir. Sept. 7, 2022) ("emotional distress manifesting in loss of sleep—can be sufficiently concrete to confer Article III standing").

The emotional distress experienced by Ms. Onfroy clearly falls into the kind of concrete harms discussed in *Hart* and *Toste* rather than the vague and non-physical distress in *Pennell, Wadsworth,* and *Garland.* "It is typical for [the Plaintiff] to not be able to fall asleep until 3:00 AM and wake up at 6:00 AM, being unable to fall back asleep because she is thinking about the Residence and **how she is tired of going to court**." FAC ¶ 253 [emphasis added]. This sleeplessness was caused by the unnecessary multiplication of court proceedings against Ms. Onfroy: "The sleeplessness is worst prior to court hearings – for example, one night before a court hearing, she was in the bathroom for an hour, came back to her room and looked at all the court papers, prayed, but could not sleep." *Id.* ¶ 255. In addition to sleeplessness, the anxiety from Defendants' conduct led to her having high blood pressure. FAC ¶ 261.

Defendants will undoubtedly dispute the facts here as they have with Plaintiff's other pleadings of injury, such as by claiming that this distress is the typical distress resulting from facing eviction. But emotional distress is not easily compartmentalized – it is experienced by a person as a sum total, and where the Plaintiff states that the sleeplessness was worsened by each court hearing, and Defendants' illegal conduct unnecessarily multiplied those hearings, there is a credible allegation of a concrete and particularized emotional distress injury sufficient to confer Article III standing.

## II.  CONCLUSION

Plaintiff prays this Court deny the Motions to Dismiss of DeCota and the Mott Defendants.

Dated: Brooklyn, New York
August 31, 2023

/s/ *Ahmad Keshavarz*
_____

Ahmad Keshavarz
Emma Caterine
The Law Office of Ahmad Keshavarz
16 Court St., 26th Floor
Brooklyn, NY 11241
Tel: (718) 522-7900
Fax: (877) 496-7809
Email: ahmad@NewYorkConsumerAttorney.com

*/s/ Jonathan A. Schwartz*
_____

Nassau Suffolk Law Services Committee, Inc.
By: Jonathan A. Schwartz, of Counsel
1 Helen Keller Way, 5th Floor,
Hempstead, NY 11550
Phone: (516) 292-8100
Fax:    (516) 292-6529
Email: jschwartz@nsls.legal

**CERTIFICATE OF SERVICE**

I hereby certify that on this date I emailed the foregoing to the following pursuant to the Individual Rules of Judge Komitee:

For Defendant Kenneth J. Decota
John D. D'Ercole
Leech Tishman Robinson Brog PLLC appeared:
S.D.N.Y Bar No. LH4371
875 Third Avenue
New York, NY 10022
Direct Telephone: (212) 603-6368
General Telephone: (212) 603-6300
Facsimile: (212) 956-2164
jdercole@leechtishman.com

For Defendants The Law Offices of Geoffry T. Mott, P.C., Geoffrey T. Mott, Samuel Miller, Arthur T. Mott Real Estate, LLC, 700 Merrick LLC
David Pretter

Law Office of Alan J. Sasson, P.C.
2102 Avenue Z, Suite 201
Brooklyn, NY 11235
david@sassonlaw.com


Date:  August 31, 2023
Brooklyn, NY
/s/
Emma Caterine