UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------x

LOVERN ONFROY,

                    Plaintiff,           **MEMORANDUM & ORDER**
                                         22-CV-02314(EK)(LB)

        -against-

THE LAW OFFICES OF GEOFFREY T. MOTT,
P.C., GEOFFREY T. MOTT, KENNETH J.
DECOTA, SAMUEL MILLER, et al.,

                    Defendants.

-------------------------------------x
ERIC KOMITEE, United States District Judge:

        Lovern Onfroy's landlord brought several state court
lawsuits against her, seeking to collect on unpaid rent.  Two of
those lawsuits sought unpaid rent for the same period — October
2020 through March 2021.

        Onfroy is the plaintiff in this action.  She asserts
that subjecting her to two separate suits for the same unpaid
rent constitutes an unlawful debt collection practice under
federal law.  Onfroy invokes two provisions of the Fair Debt
Collection Practices Act: one forbidding "false, deceptive, or
misleading representations or means" in connection with the
collection of debt, and another forbidding "unfair or
unconscionable means."  She also alleges related violations of
New York law.

Defendants are Onfroy's landlord, as well as the attorneys who brought suit on her landlord's behalf.  All defendants move to dismiss, arguing that Onfroy lacks Article III standing.  Additionally, they argue that Onfroy fails to state a claim.  For the following reasons, the motions to dismiss are granted in part and denied in part.

## I.   Background

The following recitation is taken from Onfroy's Amended Complaint, ECF No. 21, and documents of which the Court may take judicial notice.

Onfroy rented an apartment from defendants Arthur T. Mott Real Estate, LLC and 700 Merrick LLC (together, the "Landlord").  Am. Compl. ¶ 11-12, 39.  On March 5, 2020, the Landlord sued Onfroy in the Nassau County District Court, First District seeking $1,875 and Ms. Onfroy's eviction.  That court hears landlord-tenant actions.  This action culminated in a default judgment.  *Id*. ¶ 51.

Prior to the resolution of the first lawsuit, the Landlord initiated a second suit, this time in Nassau County Supreme Court.  *Id.* ¶ 67.  In this action, the Landlord alleged that Onfroy had failed to pay rent from October 1, 2020 through March 31, 2021 — a different period than that covered by the first action.  *Id.* ¶ 69.  Onfroy alleges that she "tried to make partial payments" in response to this action, but "the Landlord

2

refused to accept" them. *Id.* ¶ 272; *see id.* ¶ 122. Represented by the Attorney Defendants,[1] the Landlord sought $12,900 in unpaid rent. *Id.* ¶ 67-69; *see also* Am. Compl. Ex. H, ECF No. 21-8. The defendants also sought $5,000 in attorney's fees. Am. Compl. ¶ 70. When Onfroy did not respond to the Supreme Court action, the defendants sought and obtained a default judgment against her for the unpaid rent plus attorney's fees. *Id.* ¶ 108; *see* Am. Compl. Ex. Q, ECF No. 21-16.

Two months after initiating proceedings in the state Supreme Court — but before obtaining the default judgment there — the defendants sued Onfroy again in Nassau's District Court. Am Compl. ¶ 82; Am. Compl. Ex. M, ECF No. 21-13. In this case, the Landlord sought unpaid rent from the same period as the Supreme Court action, October 2020 through March 2021. Am. Compl. ¶¶ 82, 84. The Landlord also sought one remedy that it had not sought in Supreme Court: a warrant for Onfroy's eviction. Am. Compl. Ex. M at 2.

There were no substantive proceedings in the landlord-tenant action, which was continually adjourned. *See* DeCota Mot. to Dismiss Ex. E, ECF No. 28-6. However, as part of that

---

[1] The Landlord's attorneys — referred to as the Attorney Defendants herein — are the Law Offices of Geoffrey T. Mott, P.C. ("Mott, P.C."); the law firm's principal, Geoffrey T. Mott; a former associate at Mott, P.C., Kenneth J. DeCota; and a current associate, Samuel Miller.

action, Onfroy appeared in court at least twice for calendar calls or other ministerial proceedings.  Am. Compl. ¶¶ 103-04.

Onfroy argues that the latter landlord-tenant action was duplicative of the Supreme Court action.  *Id.* ¶ 83.  As a result, she says, she incurred extra costs from defending herself in multiple fora (such as parking fees and lost wages from missed work) and suffered emotional distress.  *Id.* ¶¶ 244, 278.

Based on these allegations, Onfroy asserts claims here against the Attorney Defendants for violations of Sections 1692e and 1692f of the Fair Debt Collection Practices Act ("FDCPA").  *Id.* ¶¶ 279-90.  She also asserts claims against all defendants for violations of Section 349 of New York's General Business Law, *id.* ¶¶ 291-305, and for common-law negligence and gross negligence.  *Id.* ¶¶ 306-16.

The defendants now move to dismiss the complaint in its entirety, both for lack of jurisdiction and for failure to state a claim.  Defs.' Mot. to Dismiss ("Defs. Mem."), ECF No. 37-1.  Defendant DeCota has also filed a separate motion to dismiss that is specific to him.  Mem. of L. Supp. DeCota's Mot. to Dismiss 1 n.1 ("DeCota Mem."), ECF No. 28-8.

## II.  Standard of Review

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court

lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).[2] The plaintiff bears the burden of establishing subject matter jurisdiction. *Id.* One component of federal jurisdiction is standing to sue. In that regard, the plaintiff is obligated to "demonstrate standing for each claim that they press and for each form of relief that they seek." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021). In assessing the standing question at the motion-to-dismiss stage, the Court takes all uncontroverted facts *in the complaint* as true and draw all reasonable inferences therefrom in favor of the plaintiff. *Fountain v. Karim*, 838 F.3d 129, 134 (2d Cir. 2016). Beyond that, the "court may resolve [any] disputed jurisdictional fact issues by referring to evidence outside of the pleadings, such as affidavits . . . ." *Id.*

To overcome a motion to dismiss under Rule 12(b)(6), a complaint must plead facts sufficient "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *See Lundy v. Cath. Health Sys. of Long Island Inc.*, 711 F.3d 106, 113 (2d

---

[2] Unless otherwise noted, when quoting judicial decisions this order accepts all alterations and omits all citations, footnotes, and internal quotation marks.

Cir. 2013).  The Court may also take judicial notice of documents in the public record, including state court filings. *See Blue Tree Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*, 369 F.3d 212, 217 (2d Cir. 2004).[3]

### III. Discussion

Onfroy asserts her two FDCPA claims in a single count. Am. Compl. ¶¶ 279-290.  Because they are predicated on separate statutory sections with differing elements, I consider them in turn: first, Onfroy's claim for violations of FDCPA Section 1692f (abusive collection practices); and second, her claim under Section 1692e (misleading collection practices).  As to each claim, I consider whether Onfroy has standing to bring it; if she does, I turn to the question of whether she has stated a claim on which relief may be granted.  Her New York state-law claims are addressed alongside the corresponding federal provision.

### A.    Abusive Debt Collection Practices

We consider first whether Onfroy has established standing on, and stated a claim for, the *abusive* debt-collection

---

[3] Defendants also moved under Rule 12(c) for judgment on the pleadings. That rule does not apply at this stage because the pleadings are not closed. *See Ezra v. Bristol-Myers Squibb Co.*, 784 F. App'x 48, 49 (2d Cir. 2019). Nevertheless, defendants' arguments in support of relief under Rule 12(c) are construed as though made in support of the Rule 12(b)(6) motion. *See id.* ("Because of the similarity between the Rule 12(c) and Rule 12(b) standards, courts typically will construe a premature Rule 12(c) motion as if it were brought under Rule 12(b). . .").

claim under Section 1692f.  Onfroy's FDCPA claims are asserted only against the Attorney Defendants.  Am. Compl. ¶ 279.

    1.   <u>Onfroy has standing to bring the 1692f claim</u>

      The defendants argue that Onfroy lacks Article III standing to bring her FDCPA claims.  To establish standing, a plaintiff must allege (i) that she suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief. *TransUnion*, 594 U.S. at 423.

      Where a plaintiff's cause of action is a creature of statute, she cannot "establish Article III standing by relying entirely on a statutory violation." *Maddox v. Bank of New York Mellon Tr. Co., N.A.*, 19 F.4th 58, 64 (2d Cir. 2021).  Instead, the court must "assess whether the alleged [statutory] injury to the plaintiff has a close relationship to a harm traditionally recognized as providing a basis for a lawsuit in American courts." *TransUnion,* 594 U.S. at 424.  Put differently, *TransUnion* requires that the statutory claim is one with "a close historical or common-law analogue for [the plaintiff's] asserted injury." *Id.*

      The defendants argue that Onfroy has alleged *no* concrete injury from the alleged FDCPA violations, let alone an injury bearing a close relationship to one that could be

vindicated at common law.  Defs. Mem. 15–16.  Thus, the
defendants argue, she lacks standing to sue for those statutory
violations under *TransUnion* and *Maddox*.  *Id.*

Onfroy contends otherwise.  She has submitted an
affidavit — which is properly considered on the jurisdictional
question, *see Fountain*, 838 F.3d at 134 — attesting to various
injuries from having to attend proceedings in landlord-tenant
court.  Onfroy Aff., ECF No. 46-1.[4]

First, Onfroy attests that she paid for parking at the
landlord-tenant court "[o]n multiple occasions."  Onfroy Aff.
¶¶ 1–2.  Each visit cost her approximately two to three dollars.
*Id.* ¶ 2.  Free parking was not available.  *Id.* ¶ 3.

Second, she attests that she twice paid "$4.00 to
$6.00" for "copies for the court case" at the landlord-tenant
court.  *Id.* ¶ 4.  She is not aware of any free copying services
at that courthouse.  *Id.* ¶ 5.

Third, Onfroy attests that appearing in landlord-
tenant court caused her to arrive late to work.  *Id.* ¶ 7(b).
She lost wages for the time she missed.  *Id.*

---

[4] Onfroy also plausibly asserts that these injuries are traceable to the
challenged conduct: she says she would not have had to attend these
proceedings but for the defendants' purported abusive debt collection
practice of filing duplicative lawsuits.  *See* Pls.' Suppl. Br. Opp. Mot. to
Dismiss 2 ("Pl. Suppl."), ECF No. 46.

Fourth, Onfroy attests that for other court appearances, she "took personal or sick days," of which she has "a limited number." *Id.* ¶ 7(a).[5]

The Second Circuit recently confirmed that out-of-pocket expenses and lost time satisfy Article III's concrete-injury requirement when they are a "foreseeab[le]" consequence of the defendant's actions. *See Bohnak v. Marsh & McLennan Companies, Inc.*, 79 F.4th 276, 286 (2d Cir. 2023). In *Bohnak*, the defendants had mishandled the lead plaintiff's personally identifying information ("PII"), exposing it to hackers. *See id.* at 281. In response, the lead plaintiff sued the defendants for negligence, breach of implied contract, and breach of confidence. *See id.* The defendants moved to dismiss under *TransUnion*, arguing that even if their conduct was actionable, the lead plaintiff had suffered no concrete harm from the exposure of her PII. *See id.* at 282.

The Second Circuit disagreed. The panel held that the lead plaintiff had alleged "separate and concrete harms foreseeably arising from the exposure of [her] PII to a malign outside actor." *Id.* at 286. These included her "out-of-pocket

---

[5] Onfroy also alleges that she suffered emotional distress. Am. Compl. ¶ 244. We need not determine at this stage whether this would support standing. But it is worth noting that one district court, at least, has expressed doubt that it would. *See Magruder v. Capital One, N.A.,* 540 F. Supp. 3d 1, 8 (D.D.C. 2021) ("[F]ree-standing emotional harm, no matter how deeply felt, cannot suffice for injury-in-fact for standing purposes.").

expenses associated with the prevention, detection, and recovery from identity theft." *Id.*  She also "lost time and other opportunity costs associated with attempting to mitigate the consequences" of the defendants' exposure of her PII.  *Id.*

Onfroy's injuries are similarly concrete, despite the relatively low dollar amounts at issue.  She alleges that the duplicative lawsuit caused her to incur excess costs from defending herself in multiple fora (such as parking fees and lost wages).  Per the Second Circuit, these are concrete injuries, and Onfroy plausibly alleges that they were inflicted foreseeably.

Additionally, common-law history supports standing for the statutory claims at issue because the harms Onfroy alleges are closely related to harms that were "traditionally" actionable in English and American courts.  Abusive debt collection is similar to the harms of malicious prosecution, wrongful use of civil proceedings, and abuse of process.  *See Magruder*, 540 F. Supp. 3d at 8 (citing similar analysis from *Demarais v. Gurstel Chargo, P.A.,* 869 F.3d 685, 691–92 (8th Cir. 2017), and *Trichell v. Midland Credit Mgmt., Inc.*, 964 F.3d 990, 1009 (11th Cir. 2020) (Martin, J., concurring in part and dissenting in part)).

Based on these attestations and allegations, Onfroy has Article III standing to bring her FDCPA abusive debt collection claim.

2.   Onfroy has stated a claim under Section 1692f

Onfroy alleges that the duplicative litigation constituted an "unfair or unconscionable means" of debt collection.  Section 1692f prohibits debt collectors from using any "unfair or unconscionable means to collect or attempt to collect any debt," 15 U.S.C. § 1692f, meaning practices that are "shockingly unjust or unfair, or affronting the sense of justice, decency, or reasonableness." *Arias v. Gutman, Mintz, Baker & Sonnenfeldt LLP,* 875 F.3d 128, 135 (2d Cir. 2017).

Counsel for DeCota contended at oral argument that the defendants needed to file in two courts because they were seeking different remedies: payment of unpaid rent and eviction (i.e., possession).  Hr'g Tr. 18:19–25, ECF No. 45 ("[Y]ou can't get a warrant of eviction in Supreme Court[;] you have to go to housing court . . . .").  At the motion-to-dismiss stage, however, the defendants have not put forth a convincing basis on which to reject Onfroy's contention that one forum would have been enough.  *See* Am. Compl. ¶ 244.  There may be complicating factors in this analysis — factual or legal — and those factors cannot be resolved at this stage.

We thus credit Onfroy's assertion that the defendants forced her to fight a two-front battle when one front would have sufficed, and ask: is that conduct "shockingly unjust or unfair, or affronting the sense of justice, decency, or reasonableness"? *Arias*, 875 F.3d at 135.  And under binding precedent, the answer (at this stage) is yes.  The Second Circuit has held that a debt collector engages in unfair or unconscionable litigation conduct in violation of Section 1692f when "it in bad faith unduly prolongs legal proceedings or requires a consumer to appear at an unnecessary hearing*." Id.* at 138.[6]  In *Arias*, a debt collector violated Section 1692f by forcing "a hearing that [the debt collector] knew was frivolous and that was intended primarily to harass [the debtor]." *Id.*

To be sure, not every litigation decision that wastes a debtor's time rises to the level of "shockingly unjust or unfair, or affronting the sense of justice, decency, or reasonableness." *Id.*  For example, in *Gabriele v. American Home Mortgage Servicing, Inc.*, the plaintiff alleged that the debt collector "prematurely filed two motions for default and a motion for judgment of strict foreclosure, in violation of procedural rules and deadlines set by the court," thereby

---

[6] The Second Circuit has confirmed this is so despite Section 1692f(6)'s reference to the taking of "non-judicial action" to effect dispossession of property, and the absence in 1692f of any reference to judicial or litigative action.  *See id* at 135.

forcing the debtor to "expend unnecessary resources defending against those motions."  503 F. App'x 89, 95 (2d Cir. 2012). The court held that this conduct did not violate Section 1692f, as "the FDCPA does not guarantee consumers an efficient or thrifty resolution of their putative debt, nor would the filing of three untimely motions interfere with a consumer's ability to answer and defend himself."  *Id.  Gabriele* is in accord with cases nationwide holding that "procedural mishaps in state court cannot be the basis for a FDCPA claim."  *Anglin v. Merchants Credit Corp.*, No. 18-CV-507, 2020 WL 4000966, at *5 (W.D. Wash. July 15, 2020) (collecting cases), *aff'd*, No. 20-35820, 2022 WL 964216 (9th Cir. Mar. 30, 2022).

Where courts have held that litigation conduct violated Section 1692f, it has been because a course of action served *no* legitimate debt-collection purpose.  In *Arias*, the debt collectors violated Section 1692f by trying to garnish funds statutorily protected from garnishment and forcing a hearing at which they could prevail only if the pro se debtor failed to appear.  See *Arias*, 875 F.3d at 138–39.  Likewise, in two other cases in this district, the debt collectors violated Section 1692f by forcing debtors to "appear at unnecessary court dates" to contest fraudulently obtained default judgments. *Burks v. Gotham Process, Inc.*, No. 20-CV-1001, 2021 WL 9244380, at *5 (E.D.N.Y. Dec. 14, 2021); *accord Villalba v. Houslanger &*

13

*Assocs., PLLC*, No. 19-CV-4270, 2022 WL 900538, at *6-7 (E.D.N.Y. Mar. 28, 2022).

Here, Onfroy alleges that the second proceeding was not only inefficient, but entirely "frivolous." *Arias*, 875 F.3d at 138. Discovery may show these allegations to be exaggerated or untrue, but at this stage they suffice.

DeCota raises an additional basis for his dismissal: that the plaintiff has failed to adequately allege that he is a "debt collector" under the FDCPA. DeCota Mem. 12. At this stage, the Court disagrees.

Attorneys who "regularly" attempt to collect consumer debts through litigation are debt collectors. *Heintz v. Jenkins*, 514 U.S. 291, 292 (1995). Whether a lawyer regularly collects debts "must be assessed on a case-by-case basis in light of factors bearing on the issue of regularity." *Goldstein v. Hutton, Ingram, Yuzek, Gainen, Carroll & Bertolotti*, 374 F.3d 56, 62 (2d Cir. 2004). One key factor — disputed here — is "the frequency of [debt-collection] communications and/or litigation activity, including whether any patterns of such activity are discernable . . . ." *Id.*[7]

---

[7] The five factors courts consider when analyzing regularity are: "(1) the absolute number of debt collection communications issued, and/or collection-related litigation matters pursued, over the relevant period(s), (2) the frequency of such communications and/or litigation activity, including whether any patterns of such activity are discernable, (3) whether the entity has personnel specifically assigned to work on debt collection

Onfroy plausibly alleges that DeCota regularly collected debts.  She pleads that a review of the New York State Electronic Court Filing System revealed fourteen other consumers against whom Mott, P.C. filed collection lawsuits in both landlord-tenant and Supreme Court.  Am. Compl. ¶ 128.  In six of those fourteen cases, DeCota was the attorney of record who filed motions for default judgment.  *Id.* ¶ 131-32.  These cases occurred within a period of a few months, suggesting a pattern of activity that is sufficient (at this stage) to be considered "regular" under *Goldstein.*  374 F.3d at 62; Am. Compl. ¶¶ 136-243; *cf. Rutty v. Kirmko,* 789 F. App'x 916, 918 (2d Cir. 2020) ("[T]he only factual allegation Rutty raised against the attorney defendants was that they filed false documents in the foreclosure action against Rutty; he did not allege any facts showing that they *regularly* engaged in debt collecting activities.").  At the motion-to-dismiss stage, therefore, DeCota's argument does not succeed.

Thus, the motion to dismiss Onfroy's Section 1692f claims is denied.

3. Onfroy has not stated a claim for negligence or gross negligence

---

activity, (4) whether the entity has systems or contractors in place to facilitate such activity, and (5) whether the activity is undertaken in connection with ongoing client relationships with entities that have retained the lawyer or firm to assist in the collection of outstanding consumer debt obligations."  *Goldstein,* 374 F.3d at 62-63.

Onfroy also asserts that the defendants' conduct constitutes negligence and gross negligence under New York law. She brings these claims against all defendants.  Her allegations, however, are not actionable on a negligence theory.

Under New York law, "intentional conduct . . . cannot form the basis of a claim founded on negligence."  *Morrow v. MetLife Invs. Ins. Co.*, 113 N.Y.S.3d 421, 423 (App. Div. 4th Dep't 2019); *see also Borrerro v. Haks Grp., Inc.*, 87 N.Y.S.3d 618, 622 (App. Div. 2d. Dep't 2018) (affirming dismissal of negligence claim based on "intentional, rather than negligent, conduct"); *United Nat. Ins. Co. v. Tunnel, Inc.*, 988 F.2d 351, 353 (2d Cir. 1993) (recognizing the "mutual exclusivity" of negligent and intentional conduct).  The "New York courts have rejected uniformly such attempts to transmogrify intentional torts into negligence."  *Schmidt v. Bishop*, 779 F. Supp. 321, 324 (S.D.N.Y. 1991).  When a complaint alleges actions that are "intentional and deliberate . . . in their nature, the claims "are outside the ambit of actionable negligence."  *Wahlstrom v. Metro-N. Commuter R. Co.*, 89 F. Supp. 2d 506, 531-32 (S.D.N.Y. 2000).

Onfroy's abuse allegation is predicated on the filing of a second lawsuit, which requires intentional action by definition.  And she levels no specific allegation sounding in negligence.  On the contrary, she uses the words "intent,"

"intentional," or "intentionally" nineteen times in her Amended Complaint.  For example, Onfroy alleges that the defendants' maintenance of both lawsuits . . . evinces an *intent* to collect on the same rental arrears twice."  Am. Compl. ¶ 117 (emphasis added); *see also id.* ¶ 94 ("Defendants delayed the service of the Third Collection Lawsuit intentionally as part of their deceptive attempt to obtain a double recovery.").

Given that they rely on intentional conduct, Onfroy's negligence and gross negligence claims must be dismissed.[8]

## B.   Misleading Debt Collection Practices

### 1.   Onfroy lacks standing for her misleading debt collection practices claim

Onfroy also claims that defendants violated Section 1692e of the FDCPA.  That provision prohibits debt collectors from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt" — including, as relevant here, misrepresenting the "character, amount, or legal status" of a debt, or threatening to "take any action that cannot legally be taken."  15 U.S.C. § 1692e.  This claim, too, is only brought against the Attorney Defendants. Am. Compl. ¶ 279.

---

[8] Plaintiff does plead that her landlord was negligent in connection with the failure to "make [Onfroy's] apartment habitable."  Am. Compl. ¶ 266. That claim, however, lacks a common nucleus of operative fact with the federal claims at issue.  28 U.S.C. § 1367(a); *see Achtman v. Kirby, McInerny & Squire, LLP,* 464 F.3d 328, 335 (2d Cir. 2006).  It is therefore dismissed (without prejudice) for lack of jurisdiction.

A representation or means is deceptive under Section 1692e if it is objectively "open to more than one reasonable interpretation, at least one of which is inaccurate," from the perspective of the "least sophisticated consumer." *Arias*, 875 F.3d at 135. The least sophisticated consumer "lacks the sophistication of the average consumer and may be naive about the law, but is rational and possesses a rudimentary amount of information about the world." *Id.*

Here, Onfroy alleges that the least sophisticated consumer would have been misled to believe that she owed the same debt twice. But Onfroy does not allege that *she* was misled. *See, e.g.*, Am. Compl. ¶ 285 (stating that defendants used "deceptive or misleading representations or means," but not that plaintiff was misled by such means); *see also* Pl.'s Mem. of L. Opp. Mot. to Dismiss 20, ECF No. 35 ("[T]he least sophisticated consumer could be misled . . . into believing that the Second Collection Lawsuit sought different relief than the Third Collection Lawsuit, and thus that she could legally have judgments entered against her in both lawsuits. Whether Ms. Onfroy was actually deceived is irrelevant.")

Onfroy also highlights attorney-defendant DeCota's representation to the New York Supreme Court that "No prior application has been made for the relief requested herein." *Id.* That representation was false and could cause the least

18

sophisticated consumer to believe that he could be forced to pay double the debt, Onfroy argues, because the landlord-tenant action seeking unpaid rent for the same period was already pending. *See id.* But Onfroy does not allege that this statement caused *her* any injury-in-fact.

These allegations, taken together, are insufficient to satisfy Article III for this claimed violation. A potential injury to the least sophisticated consumer is insufficient to give rise to *Onfroy's* standing on her misleading practices claim. *See TransUnion,* 594 U.S. at 427 ("Only those plaintiffs who have been concretely harmed by a defendant's statutory violation may sue that private defendant over that violation in federal court.").

Other courts inside and outside this Circuit have found a lack of standing on Section 1692e claims for similar reasons. The Eleventh Circuit dismissed a Section 1692e claim where brought by plaintiffs who did not allege that they were themselves misled, reasoning that "a statutory violation" that injures "consumers in general, but not . . . the individual plaintiff, cannot fairly be described as causing a particularized injury to the plaintiff." *Trichell v. Midland Credit Mgmt., Inc.*, 964 F.3d 990, 1002 (11th Cir. 2020). Here, Onfroy alleges that she was abused, but not that she personally was misled, by the conduct at issue.

In this district, judges have repeatedly held (post-*TransUnion*) that no standing arises in this situation. *See Lanza v. Client Servs., Inc.*, No. 21-CV-06319, 2022 WL 17787465, at *5 (E.D.N.Y. Sept. 12, 2022) ("Plaintiff's allegation that the Letter was 'reasonably susceptible to an inaccurate reading by the least sophisticated consumer' in violation of FDCPA 1692e, is insufficient to confer Article III standing because there is no particularized harm alleged."); *Cavazzini v. MRS Assocs.,* 574 F. Supp. 3d 134, 141 (E.D.N.Y. 2021) (finding no concrete injury to support Section 1692e claim); *George v. Credit Corp. Sols. Inc.*, No. 22-CIV-5512, 2023 WL 7000964, at *5 (E.D.N.Y. Aug. 24, 2023) (same); *Devitt v. Portfolio Recovery Assocs.*, LLC, No. 21-CV-5657, 2022 WL 1460278, at *1 (E.D.N.Y. May 9, 2022) (same).

Thus, Onfroy lacks standing to bring a claim under the FDCPA Section 1692(e).  The Court therefore need not reach the merits of this claim.

2.   Onfroy lacks standing for her General Business Law § 349 Claims

Onfroy has also sued all defendants under Section 349 of New York's General Business Law.  This claim requires Onfroy to allege that the defendants "engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) [she] suffered injury as a result of the allegedly deceptive act or

practice." *MacNaughton v. Young Living Essential Oils, LC*, 67 F.4th 89, 96 (2d Cir. 2023).

For the same reasons that Onfroy lacks standing for her FDCPA Section 1692e, she necessarily fails to establish standing for her Section 349 claim.  This claim, too, is dismissed for lack of jurisdiction.

## IV.  Conclusion

Plaintiff's FDCPA § 1692f claims will proceed.  The motions to dismiss Onfroy's FDCPA § 1692e, GBL § 349, negligence, and gross-negligence claims are granted.  The negligence and gross negligence claims against the Attorney Defendants are dismissed with prejudice, given that any attempt to amend them would be futile.  All other claims — including the claim that the Landlord was negligent in maintaining the habitability of Onfroy's apartment — are dismissed without prejudice.  Since all claims against the Landlord are dismissed, the Clerk of the Court is directed to dismiss the action as to the Landlord.

The parties that remain are directed to appear at a status conference on October 17, 2024 at 10:15 AM in Courtroom 6G North.


SO ORDERED.

/s/ Eric Komitee
ERIC KOMITEE
United States District Judge


Dated:      September 30, 2024
            Brooklyn, New York