July 1, 2025

<u>VIA ECF</u>
Judge Eric R. Komitee
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

**Re:    Motion to Enforce Settlement on Record**

*Onfroy v. The Law Office of Geoffrey T. Mott, P.C., et al.,* **No. 1:22-cv-02314-EK-LB**

Dear Judge Komitee:

      This firm, along with Nassau Suffolk Law Services Committee, Inc., represents Plaintiff Lovern Onfroy in the above-entitled action against Defendants The Law Offices of Geoffrey T. Mott, P.C., Geoffrey T. Mott, and Samuel Miller ("Defendants") for their violations of the Fair Debt Collection Practices Act.

      This motion requests the enforcement of the settlement agreed to on the record in your courtroom on May 30, 2025, in the above-captioned case. Defendants have refused to return the executed Confession of Judgment in the form agreed to on the record. As the settlement was agreed to on the record in open court, it is binding on all parties pursuant to Second Circuit precedent. Attached are a transcript of the court record containing the settlement terms and emails from Plaintiff's counsel to Defendants attempting to obtain a Confession of Judgment reflecting the terms agreed to on the record.

      Defendants have not returned an executed Confession of Judgment comporting with the terms on the record within the required time, and have ignored repeated inquiries from Plaintiff's counsel as to when they will provide one. Defendants provided an electronic copy containing an incomplete agreement differing from the agreement on record by omitting parts or all of several terms, divided across two PDF files rather than attached as one document. Defendants have also provided a scanned copy which does not reflect the settlement agreement on the record. Defendants' provided Confession of Judgment omits terms including the method of notice of breach, that time is of the essence, that there are no *de minimis* breaches, the discontinuance of Defendant Samuel Miller, and the terms regarding a 1099 and W-9. Plaintiff also requested a simple default paragraph incorporating the settlement read into the record into the Confession of Judgment, and stating that a default on the settlement agreement on record is also a default on the Confession of Judgment, as follows:

      This confession of judgment is for a debt justly due and/or to become due to the Plaintiffs

arising from the following facts:

- A settlement agreement reached and read into the record on May 30, 2025 in the case *Onfroy v. The Law Offices of Geoffrey T. Mott, P.C. et al the* United States District Court for the Eastern District of New York with the case number 1:22-

cv-02314-EK-LB.

This language merely incorporates the settlement read into the record into the Confession of Judgment. Plaintiff submitted this language on multiple occasions—on June 12, June 13, June 16, June 17, June 19, June 23, June 24, and June 27—and Defendants simply refused to even respond, much less state what their concerns were or why they apparently believed this language was not a correct reflection of our agreement. (Exh. A, Email chain). Plaintiff similarly indicated on multiple occasions that Plaintiff would have to file a motion to enforce the settlement if Defendants did not agree to the language, or at least say what their concerns were or why it was not what was agreed to, but Defendants ignored these multiple demands. Consequently, plaintiff moves for this court to enter a judgment against the Mott Defendants for $70,000. Their breach is material, and, in any event, exceeds the agreed *de minimis* standard per item 6, below.

The agreement on record is as follows:

1. Four monthly payments of $15,000 paid on July 1, August 1, September 2, and October 1, followed by a final payment of $10,000 on November 3. (Exh. B, Transcript 23:1-12, 26:19-27:20)
2. Defendants would draft, execute, and provide to Plaintiffs a Confession of Judgment for the full amount minus any payments made, in a form the same as or substantially similar to the one used in index number 033069-2025-Rockland County, scanning and emailing copies on June 6th and delivering the original to Plaintiff's counsel on June 13th. (Exh. B, Transcript 23:13-24)
3. Defendants are entitled to one Notice of Breach by fax, with 15 days to cure following the notice. (Exh. B, Transcript 23:25-24:9)
4. After one uncured breach or a second breach after a cured first breach, Plaintiff may file and execute on the Confession of Judgment in state court in the Defendants' home county of Nassau, New York.[1] (Exh. B, Transcript 24:5-15)
5. Time is of the essence. (Exh. B, Transcript 24:16)
6. There are no *de minimis* breaches of the settlement agreement. (Exh. B, Transcript 24:16-17)
7. None of the parties admit liability. (Exh. B, Transcript 24:19)
8. Defendant Samuel Miller is to be discontinued without prejudice within 30 days of the settlement. (Exh. B, Transcript 25:2-3)
9. If they desire to issue one, Defendants are to issue a 1099 to Plaintiff's counsel, and Plaintiff's counsel will provide a W-9 in response within 30 days. (Exh. B, Transcript 24:17-18)
10. After the final payment, the parties will exchange and execute Blumberg release forms. (Exh. B, Transcript 26:1-6)

---

[1] Defendants have also refused to provide the home address of Mr. Mott much less state whether his home address is in Nassau County, despite repeated requests for the same, consistent with the model confession of judgment per item # 2, above (providing the full address of the judgment debtor) and CPLR 3218(1) (requiring the "stating the county where the defendant resides…"). The affidavit of Defendants states the business address of the firm and indeed falsely states the is where Mr. Mott resides. The Mott PC does not even have a corporate officer sign on behalf of the corporation. Instead, the signature is of Mr. Mott as the purported "sole member."  However, while an LLC has members, a PC does not: it has shareholders and corporate officers.

Last saved: 7/1/2025 10:48 AM

Defendants have proposed language that omits items 5, 6, 8, and 9, as well as terms that are incomplete as to items 3 (not defining the method of notice of breach), 2 (address and county of residence of Mr. Mott personally). (Exh. C, Defendants' proposed agreement).

Under New York law, the effect of contract clauses providing that time is of the essence and there are no *de minimis* breaches is clear. Such clauses are binding and strictly enforceable, and make *timely* and *complete* performance material terms of the contract. *See 1029 Sixth, LLC v. Riniv Corp.*, 9 A.D. 3d 142, 146-7 (vacating tenants forfeited right to cash reimbursements by their failure to leave premises "broom clean" on specified vacate date as contract provisions had specified time of the essence and no *de minimis* breaches). Similar, "hell or high water" clauses have been held enforceable under New York law. *See e.g. Wells Fargo Bank Minnesota Nat. Ass'n v. Nassau Broadcasting Partners, L.P.*, 2002 WL 31050850 at *2 (S.D.N.Y. 2002) (compiling cases). There is even more reason to be certain that Mr. Mott in particular be held to the very strict terms agreed upon. Mr. Mott was disbarred from 2003 to 2012 for having "wrongfully converted to his own use and benefit funds entrusted to him as a fiduciary…" *In re Mott*, 97 A.D.3d 683 (Sup. Ct. App. Div. 2012); *In re Mott*, 309 A.D.2d 162 (Sup. Ct. App. Div. 2003). (Exh. D, disbarment opinion; Exh. E, reinstatement opinion).

### Under New York and Second Circuit law as articulated in *Winston v. Mediafare Entertainment Corp.*, the settlement on the record is binding and enforceable

"A district court has the power to enforce summarily, on motion, a settlement agreement reached in a case pending before it." *Meetings and Exposition, Inc. v. Tandy Corp.*, 490 F.2d 714, 717 (2d. Cir. 1974). Settlements remain enforceable even in cases where the settlement was reached orally but not reduced to a signed writing; indeed, the parties' "mere intention to commit the agreement to writing will not prevent contract formation prior to execution." *Winston v. Mediafare Entertainment Corp.*, 777 F.2d 78, 80 (2d. Cir. 1985). The ultimate question where one party seeks to enforce an oral or unsigned settlement agreement is one of intent: did the parties intend to be bound by the terms of the purported oral or unsigned settlement agreement? The Second Circuit has articulated four factors to be considered in making such determinations: "(1) whether there has been an express reservation of the right not to be bound in the absence of a writing; (2) whether there has been partial performance of the contract; (3) whether all of the terms of the alleged contract have been agreed upon; and (4) whether the agreement at issue is the type of contract that is usually committed to writing." *Ibid.* In cases analyzing whether parties had reached a binding agreement under the *Winston* factors upon the reading of a settlement agreement into the record under New York law, the Second Circuit has concluded that such an agreement made on the record in open court was enforceable despite the lack of a written and signed agreement. *Aguiar v. New York*, 356 Fed.Appx. 523 (2d Cir. 2009); *Powell v. Omnicom*, 497 F.3d 124 (2d Cir. 2007).

### I.     EXPRESS RESERVATION OF THE RIGHT NOT TO BE BOUND

"Although *Winston* is a balancing test, the first prong, the express reservation not to be bound, is perhaps one factor with the power to tip the scales slightly more than the other three.

> The first factor, the parties' objectively-expressed intent, is the most important: The Second Circuit has at various times stated that no single factor is decisive, but each provides significant guidance. But the Second Circuit has also stated, in the context of a binding preliminary commitment, that the first factor is the most important."

*U.S. v. U.S. Currency in the Sum of Six Hundred Sixty Thousand, Two Hundred Dollars*, 423 F.Supp.2d 14, 26 (E.D.N.Y. 2006) (quoting *Hostcentric Tech, Inc. v. Republic Thunderbolt, LLC*, No. 04-Civ-1621, 2005 WL 1377853 at *7 (S.D.N.Y. June 9, 2005) (citing *Krauth v. Executive Telecard, Ltd.*, 890 F.Supp. 269, 293 (S.D.N.Y. 1995)).

"Under New York law, if parties do not intend to be bound by an agreement until it is in writing and signed, then there is no contract until that event occurs. *Scheck v. Francis,* 26 N.Y.2d 466, 311 N.Y.S.2d 841, 843, 260 N.E.2d 493, 494 (1970). This rule holds even if the parties have orally agreed upon all the terms of the proposed contract. *Schwartz v. Greenberg,* 304 N.Y. 250, 107 N.E.2d 65 (1952)." *R.G. Group, Inc. v. Horn and Hardart Co.*, 751 F.2d 69, 74 (2d. Cir. 1984). Here, the parties expressed an intent to *be* bound by the terms of an unsigned settlement agreement: a settlement agreement was read into the record in open court with counsel for the parties present and assenting to the settlement's specific terms.

### II.   PARTIAL PERFORMANCE OF THE CONTRACT

The second *Winston* factor is "whether one party has partially performed, and that performance has been accepted by the party disclaiming the contract. Aside from unilateral contracts, partial performance is an unmistakable signal that one party believes there is a contract; and the party who accepts performance signals, by that act, that it also understands a contract to be in effect." *R.G. Group, Inc.*, 751 F.2d at 74-75. Defendants have not moved to perform the terms of the settlement and have refused to sign the Confession of Judgment incorporating the settlement agreement which was agreed to on the record in open court, despite the settlement on the record providing that time is of the essence and there are no *de minimis* breaches.

### III.   AGREEMENT ON ALL TERMS

The third *Winston* factor is whether there is an agreement on all material terms, or "whether there was literally nothing left to agree to." *R.G. Group, Inc. v. Horn and Hardart Co.*, 751 F.2d at 76. "Generally, where the parties contemplate that a signed writing is required there is no contract until one is delivered. This rule yields, however, when the parties have agreed on all contractual terms and have only to commit them to writing." *Municipal Consultants & Publishers, Inc. v. Town of Ramapo*, 47 N.Y.2d 144, 148 (citations omitted.) As the entirety of the settlement agreement was negotiated at length between counsel for the parties, there was an agreement on all terms. Courts are reluctant to enforce oral (or unsigned) agreements because "[t]he actual drafting of a written instrument will frequently reveal points of disagreement, ambiguity, or omission which must be worked out prior to execution. Details that are unnoticed or passed by in oral discussion will be pinned down when the understanding is reduced to writing." *R.G. Group* at 75. But such disagreement, ambiguity, or omission is not present where, as here, the settlement agreement is read into the record in open court before a judge and counsel for all settling parties; any question as to the terms of the settlement can be answered by referring to the transcript, which also records the parties' assent to all terms. Critically, the settlement agreement on record includes an agreement that "time is of the essence" and "there are no *de minimis* breaches." (Exhibit A, transcript, 24:16-17)

### IV.   AGREEMENT OF THE TYPE USUALLY COMMITTED TO WRITING

This is an agreement of the type usually committed to writing. As a settlement of a legal claim, it *must* be either committed to writing or made on the record in open court. N.Y. C.P.L.R. § 2104.

Not only is this agreement an agreement *of the type* usually committed to writing, it *was* committed to writing—on the record in open court, as the attached transcript demonstrates. The *Winston* court expressed its skepticism of enforcing settlement agreements without a signed writing: "Where, as here, the parties are adversaries and the purpose of the agreement is to forestall litigation, prudence strongly suggests that their agreement be written in order to make it readily enforceable, and to avoid still further litigation." *Winston*, 777 F.2d at 83. However, the facts of *Winston* differ substantially from the facts in this case. In *Winston*, plaintiff sought to enforce a settlement agreement that had been drafted and revised asynchronously, with a signature page from a signed earlier draft surreptitiously substituted in for the blank signature page of the later draft plaintiff sought to enforce as a binding agreement. The *Winston* court declined to enforce the alleged contract because, while there was an alleged writing (the draft agreement with the substituted signature page), it was clear from Defendants' contemporaneous conduct (for example, making counteroffers and revisions) that the agreement was not a final one marked by the mutual assent of the parties to all material terms. And the Second Circuit has blessed the enforcement of settlement agreements reached on the record in open court because such agreements, as they are recorded by the court, are memorialized as a written agreement would be, albeit in a different medium. *Aguiar* at 525; *Powell v. Omnicom, BBDO/PHD*, 497 F.3d 124, 131. In those cases, as in this one, the agreement was reached and read into the record in open court after settlement negotiations between the parties produced an agreement to which all parties consented. Enforcing it does not bind Defendants to anything they did not agree to in open court before a federal judge.

## Conclusion

Under the *Winston* factors, the settlement agreed to in open court before Your Honor is binding on Defendants and should be enforced. Defendants inexplicably refuse to execute a confession of judgment that, in a simple sentence, incorporates by reference the terms of settlement is a breach of the settlement agreed to on the record. Defendants were required to provide a confession of judgment consistent with the settlement terms.  They never did, and have refused to even discuss the matter, much less cure under either the de minimis breach or material breach standards. Consequently, this Court should enter judgment against the Mott Defendants and Mr. Miller jointly and severally for $70,000.