# AHMAD KESHAVARZ
*Attorney at Law*

---

16 COURT STREET, #2600  
BROOKLYN, NY 11241

WWW.NEWYORKCONSUMERATTORNEY.COM  
E-mail: ahmad@NewYorkConsumerAttorney.com

Telephone: (718) 522-7900  
Fax: (877) 496-7809

September 4, 2025

VIA ECF  
Judge Eric R. Komitee  
United States District Court  
Eastern District of New York  
225 Cadman Plaza East  
Brooklyn, New York 11201

Re:   First-Amended Motion to Enter Judgment Based on Settlement

   *Onfroy v. The Law Office of Geoffrey T. Mott, P.C., et al.,* **No. 1:22-cv-02314-EK-LB**

Dear Judge Komitee:

   This firm, along with Nassau Suffolk Law Services Committee, Inc., represents Plaintiff Lovern Onfroy in the above-entitled action against Defendants The Law Offices of Geoffrey T. Mott, P.C., Geoffrey T. Mott, and Samuel Miller ("Mott Defendants" or "Defendants") for their violations of the Fair Debt Collection Practices Act.

## I.   Relief Requested

   This motion requests the enforcement of the settlement agreed to on the record in your courtroom on May 30, 2025. Exhibit A (transcript of May 30 hearing). Defendants have never provided an enforceable, executed Confession of Judgement as they were required to do months ago. Therefore Plaintiff seeks to enter judgment jointly and severally against all Defendants for $40,000, the remaining balance on the $70,000 settlement of May 30.

   In the alternative Plaintiff seeks to set the case for trial. The deadline for completion of depositions have come and gone, and Plaintiff is prepared to go to trial without the deposition of Mr. Miller.

## II.   Facts Related to May 30 Settlement on the Record: Defendants Provide Only Unenforceable Confessions of Judgment and Now Want to Change Payment Terms

   Defendants have refused to return the executed Confession of Judgment in the form agreed to on the record on May 30 (Exhibit A), and have in fact concealed the home address of Defendant Mott, repeatedly sending Plaintiff Confessions of Judgment (Exhibits B and C) which were unenforceable due to not being prepared for filing in the correct home county of Defendant Mott. Defendants have also made their first two scheduled payments late—one day late in the case of the first payment, due to a claimed delay in bank processing, and two weeks late in the case of the second, each time without advance notice or warning. The third scheduled payment was due September 2, and has not been made at all. As the settlement was agreed to on the record in open court, it is binding on all parties pursuant to Second Circuit precedent.

   Defendants have not returned an executed Confession of Judgment comporting with the terms on the record within the required time, and instead have repeatedly provided unenforceable

Confessions of Judgment, one dated June 6 (Exhibit B) and a modified version dated June 10 (Exhibit C). In the interests of amicable resolution of the case, on July 22 Plaintiff withdrew (Dkt. No. 86) her first Motion to Enforce (Dkt. No. 84) after a seemingly productive call between Plaintiff's and Defendants' counsel, in which Defendants' counsel indicated they would send an conforming Confession of Judgment and provide critical information about Defendant Mott's address and Defendant The Law Offices of Geoffrey T. Mott, P.C.'s corporate structure and ownership for the purposes of establishing authority to sign on the corporation's behalf. On July 27 opposing counsel provided the home address of Mr. Mott, is 51 Green Meadow Lane, Huntington, NY 11743. Incredibly, the address provided indicated Mr. Mott in fact resided in Suffolk County, while the Confessions of Judgment the drafted and executed by Defendants (Exhibits B and C) were captioned to be filed in Nassau County. Days later, Defendants did not make their August 1 payment.

      The two executed Confession of Judgments of provide by Defendants are unenforceable. Under New York law, a confession of judgment may only be filed in the home county of the defendant against whom judgment is to be confessed. CPLR 3218. Confessions of judgment must also strictly comply with the requirements of CPLR 3218. New York courts have held that even minor deviations from the requirements of CPLR 3218—for example, incorrectly listing the home county of the defendant, even if partially corrected—is sufficient to void a confession of judgment. In *Fleigel v. Blonder*, 121 Misc. 2d 502, 468 N.Y.S.2d 95 (Sup. Ct. 1983), the court held that a confession of judgment which was subsequently altered after signing and notarization to change a defendant's address, home county, and role in a corporate defendant's corporation was unenforceable. In *Porges v. Kleinmann*, 2024 WL 198418 (Sup. Ct. 2024), a plaintiff succeeded in vacating a confession of judgment against a defendant for failure to comply with the requirements of CPLR 3218—once again for altering the form of the confession of judgment after a party's signature to more accurately reflect the defendant's home county. The various Confessions of Judgment with which Defendants have provided Plaintiff have been void pursuant to CPLR 3218, *Fleigel*, and *Porges*, and Plaintiff only discovered this after the withdrawal of her first Motion to Enforce.

      This would explain why opposing counsel refused to provide the home address despite multiple written requests throughout June (Exhibit D, June email exchanges).

      In a final attempt to avoid motion practice, on Friday, August 29 the undersigned had a lengthy Zoom call with opposing counsel Alan Sasson. Expressly reserving her right to move to enforce the already breached May 30 settlement agreement on the record, the undersigned made demand that they email that day a signed confession of judgment consistent with the May 30 agreement. Instead, opposing counsel indicated his client would not sign a Confession of Judgment unless it stretched out the remaining payment across 10 months. Exhibit E (August 29 Sasson email). The undersigned refused. Defendants did not execute an enforceable Confession of Judgment. Instead Defendants simply stopped making payments again, missing their September 2 payment.

      Consequently, plaintiff moves for this court to enter a judgment against the Mott Defendants for $40,000, the remaining balance of the $70,000 after crediting payments. Their breach is material, and, in any event, exceeds the agreed *de minimis* standard per item 6, below.

      The agreement on record is as follows:

1. Four monthly payments of $15,000 paid on July 1, August 1, September 2, and October 1, followed by a final payment of $10,000 on November 3. (Exh. A, Transcript 23:1-12, 26:19-27:20)

2. Defendants would draft, execute, and provide to Plaintiffs a Confession of Judgment for the full amount minus any payments made, in a form the same as or substantially similar to the one used in index number 033069-2025-Rockland County, scanning and emailing copies on June 6th and delivering the original to Plaintiff's counsel on June 13th. (Exh. A, Transcript 23:13-24)

3. Defendants are entitled to one Notice of Breach by fax, with 15 days to cure following the notice. (Exh. A, Transcript 23:25-24:9)

4. After one uncured breach or a second breach after a cured first breach, Plaintiff may file and execute on the Confession of Judgment in state court in the Defendants' home county of Nassau, New York.[1] (Exh. A, Transcript 24:5-15)

5. Time is of the essence. (Exh. A, Transcript 24:16)

6. There are no *de minimis* breaches of the settlement agreement. (Exh. A, Transcript 24:16-17)

7. None of the parties admit liability. (Exh. A, Transcript 24:19)

8. Defendant Samuel Miller is to be discontinued without prejudice within 30 days of the settlement. (Exh. A, Transcript 25:2-3)

9. If they desire to issue one, Defendants are to issue a 1099 to Plaintiff's counsel, and Plaintiff's counsel will provide a W-9 in response within 30 days. (Exh. A, Transcript 24:17-18)

10. After the final payment, the parties will exchange and execute Blumberg release forms. (Exh. A, Transcript 26:1-6)

Most fundamentally, Defendants failed to comply, timely or otherwise, with item 2, because the executed Confessions of Judgment (Exhibits B, C) were both unenforceable. A previously indicated the Confessions of Judgment previously indicated as to the concealment of the actual home address of Mr. Mott and captioned the confession in a county Mr. Mott did not reside. The "original" of the confession of judgment to be delivered by June 13 was to be the same as the "scanned" copy to be emailed by June 6. Consequently counsel for Plaintiff did not note at the time that Mr. Mott had superimposed additional language on the first page the June 10 Confession to reference the federal court settlement when he filed his original Motion to Enforce (Dkt. No. 84). Nor had opposing counsels disclosed the alteration in response to multiple emails in June by the undersigned (Exhibit D) asking, *inter alia*, for the Confession of Judgment to incorporate the terms of the federal court settlement.

---

[1] Defendants also refused to provide the home address of Mr. Mott. much less state whether his home address is in Nassau County, despite repeated requests for the same, consistent with the model confession of judgment per item # 2, above (providing the full address of the judgment debtor) and CPLR 3218(1) (requiring the "stating the county where the defendant resides…"). The affidavit of Defendants states the business address of the firm and indeed falsely states that address is where Mr. Mott resides. In fact, Mr. Mott resides in Suffolk County, a fact Plaintiff only learned from Defendants' counsel *after* withdrawing her previous Motion to Enforce. The Mott PC additionally does not even have a corporate officer sign on behalf of the corporation. Instead, the signature is of Mr. Mott as the purported "sole member."  However, while an LLC has members, a PC does not: it has shareholders and corporate officers.  Defendants still have not provided any explanation for this misstatement of Mott's relationship to the Mott PC.

Notably, the super-imposing of the additional terms on to an existing document may be an alteration a Confession of Judgment makes the document unenforceable. *See Fleigel* and *Porges*, supra. *See also* Exhibit F (June 13 Sasson email suggesting to swap the text of the first pages of the Confession of Judgment from the page with the notarized signature).

In their June 6 defective Confessions of Judgment, Defendants proposed language that omitted items 5, 6, 8, and 9, as well as terms incomplete as to items 3 (not defining the method of notice of breach), 2 (address and county of residence of Mr. Mott personally). (Exhibits B and C, Confessions of Judgment dated June 6 and June 10, respectively).

In their still defective Confessions of Judgment dated June 10 (Exhibit C), Defendants prepared the document for filing in the wrong county, which would render the confession unenforceable. Defendants also demonstrated that there is a risk of nonpayment, and the importance of the clear enforceability of the Confession of Judgment, by missing their second scheduled payment by two weeks, only belatedly curing well after receipt of a notice of breach sent by Plaintiff's counsel. Defendants have also failed to make their payment of September 2.

Under New York law, the effect of contract clauses providing that time is of the essence and there are no *de minimis* breaches is clear. Such clauses are binding and strictly enforceable, and make *timely* and *complete* performance material terms of the contract. *See 1029 Sixth, LLC v. Riniv Corp.*, 9 A.D. 3d 142, 146-7 (vacating tenants forfeited right to cash reimbursements by their failure to leave premises "broom clean" on specified vacate date as contract provisions had specified time of the essence and no *de minimis* breaches). Similar, "hell or high water" clauses have been held enforceable under New York law. *See e.g. Wells Fargo Bank Minnesota Nat. Ass'n v. Nassau Broadcasting Partners, L.P.*, 2002 WL 31050850 at *2 (S.D.N.Y. 2002) (compiling cases). There is even more reason to be certain that Mr. Mott in particular be held to the very strict terms agreed upon. Mr. Mott was disbarred in 2003 for having "wrongfully converted to his own use and benefit funds entrusted to him as a fiduciary," among other misconduct. *In re Mott*, 309 A.D.2d 162, 165, 765 N.Y.S.2d 383, 385 (2003). Mr. Mott remained disbarred for nine years, ultimately being reinstated in 2012. *In re Mott*, 97 A.D.3d 683, 948 N.Y.S.2d 908 (2012).

### III. The May 30 Settlement Agreement is Binding and May be Enforced by this Court.

Under New York and Second Circuit law as articulated in *Winston v. Mediafare Entertainment Corp.*, 777 F.2d 78, 80 (2d. Cir. 1985). the settlement on the record is binding and enforceable by this court.

"A district court has the power to enforce summarily, on motion, a settlement agreement reached in a case pending before it." *Meetings and Exposition, Inc. v. Tandy Corp.*, 490 F.2d 714, 717 (2d. Cir. 1974). Settlements remain enforceable even in cases where the settlement was reached orally but not reduced to a signed writing; indeed, the parties' "mere intention to commit the agreement to writing will not prevent contract formation prior to execution." *Winston, supra,* 777 F.2d at 80. The ultimate question where one party seeks to enforce an oral or unsigned settlement agreement is one of intent: did the parties intend to be bound by the terms of the purported oral or unsigned settlement agreement? The Second Circuit has articulated four factors to be considered in making such determinations: "(1) whether there has been an express

reservation of the right not to be bound in the absence of a writing; (2) whether there has been partial performance of the contract; (3) whether all of the terms of the alleged contract have been agreed upon; and (4) whether the agreement at issue is the type of contract that is usually committed to writing." *Ibid.* In cases analyzing whether parties had reached a binding agreement under the *Winston* factors upon the reading of a settlement agreement into the record under New York law, the Second Circuit has concluded that such an agreement made on the record in open court was enforceable despite the lack of a written and signed agreement. *Aguiar v. New York*, 356 Fed.Appx. 523 (2d Cir. 2009); *Powell v. Omnicom*, 497 F.3d 124 (2d Cir. 2007).

### A. Express Reservation Of The Right Not To Be Bound

"Although *Winston* is a balancing test, the first prong, the express reservation not to be bound, is perhaps one factor with the power to tip the scales slightly more than the other three.

> The first factor, the parties' objectively-expressed intent, is the most important: The Second Circuit has at various times stated that no single factor is decisive, but each provides significant guidance. But the Second Circuit has also stated, in the context of a binding preliminary commitment, that the first factor is the most important."

*U.S. v. U.S. Currency in the Sum of Six Hundred Sixty Thousand, Two Hundred Dollars*, 423 F.Supp.2d 14, 26 (E.D.N.Y. 2006) (quoting *Hostcentric Tech, Inc. v. Republic Thunderbolt, LLC*, No. 04-Civ-1621, 2005 WL 1377853 at *7 (S.D.N.Y. June 9, 2005) (citing *Krauth v. Executive Telecard, Ltd.*, 890 F.Supp. 269, 293 (S.D.N.Y. 1995)).

"Under New York law, if parties do not intend to be bound by an agreement until it is in writing and signed, then there is no contract until that event occurs. *Scheck v. Francis,* 26 N.Y.2d 466, 311 N.Y.S.2d 841, 843, 260 N.E.2d 493, 494 (1970). This rule holds even if the parties have orally agreed upon all the terms of the proposed contract. *Schwartz v. Greenberg,* 304 N.Y. 250, 107 N.E.2d 65 (1952)." *R.G. Group, Inc. v. Horn and Hardart Co.*, 751 F.2d 69, 74 (2d. Cir. 1984). Here, the parties expressed an intent to *be* bound by the terms of an unsigned settlement agreement: a settlement agreement was read into the record in open court with counsel for the parties present and assenting to the settlement's specific terms.

### B. Partial Performance Of The Contract

The second *Winston* factor is "whether one party has partially performed, and that performance has been accepted by the party disclaiming the contract. Aside from unilateral contracts, partial performance is an unmistakable signal that one party believes there is a contract; and the party who accepts performance signals, by that act, that it also understands a contract to be in effect." *R.G. Group, Inc.*, 751 F.2d at 74-75. While Defendants have made payments late and provided Confessions of Judgment which are void and do not comport with the terms of the settlement on the record, Defendants' defective partial performance is still partial performance.

### C. Agreement On All Terms

The third *Winston* factor is whether there is an agreement on all material terms, or "whether there was literally nothing left to agree to." *R.G. Group, Inc. v. Horn and Hardart Co.*, 751 F.2d at 76. "Generally, where the parties contemplate that a signed writing is required there is no contract until one is delivered. This rule yields, however, when the parties have agreed on all contractual terms and have only to commit them to writing." *Municipal Consultants &*

*Publishers, Inc. v. Town of Ramapo*, 47 N.Y.2d 144, 148 (citations omitted.) As the entirety of the settlement agreement was negotiated at length between counsel for the parties, there was an agreement on all terms. Courts are reluctant to enforce oral (or unsigned) agreements because "[t]he actual drafting of a written instrument will frequently reveal points of disagreement, ambiguity, or omission which must be worked out prior to execution. Details that are unnoticed or passed by in oral discussion will be pinned down when the understanding is reduced to writing." *R.G. Group* at 75. But such disagreement, ambiguity, or omission is not present where, as here, the settlement agreement is read into the record in open court before a judge and counsel for all settling parties; any question as to the terms of the settlement can be answered by referring to the transcript, which also records the parties' assent to all terms. Critically, the settlement agreement on record includes an agreement that "time is of the essence" and "there are no *de minimis* breaches." (Exhibit A, transcript, 24:16-17)

### D.  Agreement Of The Type Usually Committed To Writing

This is an agreement of the type usually committed to writing. As a settlement of a legal claim, it *must* be either committed to writing or made on the record in open court. N.Y. C.P.L.R. § 2104. Not only is this agreement an agreement *of the type* usually committed to writing, it *was* committed to writing—on the record in open court, as the attached transcript demonstrates. The *Winston* court expressed its skepticism of enforcing settlement agreements without a signed writing: "Where, as here, the parties are adversaries and the purpose of the agreement is to forestall litigation, prudence strongly suggests that their agreement be written in order to make it readily enforceable, and to avoid still further litigation." *Winston*, 777 F.2d at 83. However, the facts of *Winston* differ substantially from the facts in this case. In *Winston*, plaintiff sought to enforce a settlement agreement that had been drafted and revised asynchronously, with a signature page from a signed earlier draft surreptitiously substituted in for the blank signature page of the later draft plaintiff sought to enforce as a binding agreement. The *Winston* court declined to enforce the alleged contract because, while there was an alleged writing (the draft agreement with the substituted signature page), it was clear from Defendants' contemporaneous conduct (for example, making counteroffers and revisions) that the agreement was not a final one marked by the mutual assent of the parties to all material terms. And the Second Circuit has blessed the enforcement of settlement agreements reached on the record in open court because such agreements, as they are recorded by the court, are memorialized as a written agreement would be, albeit in a different medium. *Aguiar* at 525; *Powell v. Omnicom, BBDO/PHD*, 497 F.3d 124, 131. In those cases, as in this one, the agreement was reached and read into the record in open court after settlement negotiations between the parties produced an agreement to which all parties consented. Enforcing it does not bind Defendants to anything they did not agree to in open court before a federal judge.

### IV.  Attorney's fees for enforcement and sanctions.

Arguably, Plaintiff may be entitled to attorney's fees for enforcing an FDCPA settlement in federal court. Certainly Defendants have opened themselves up for sanctions for their bad faith conduct in refusing to comply with the most basic settlement obligations in this case. Most obviously, Defendants have failed to draft and execute a confession of judgment that is enforceable, much less in the strict timelines set forward in the May 30 agreement.  And Defendants are certainly continuing on bad faith by refusing to sign a Confession of Judgment that does not have a payment plan that is stretched out from what was agreed to in the record.

Plaintiff reserves her right to seek relief for attorney's fees and sanctions. Quite frankly, however, Plaintiff would just like to get a judgment entered in this action for $40,000 (the remaining unpaid settlement amount) jointly and severally against all Defendants, and just move on. Defendants' conduct has resulted in thousands of dollars in (uncompensated) fees for the undersigned and the wasted time of the Court.

### V.     Conclusion

Under the *Winston* factors, the settlement agreed to in open court before Your Honor is binding on Defendants and should be enforced. Defendants inexplicably refuse to execute a confession of judgment that is true and that is enforceable. And now they expressly refuse to execute any Confession of Judgment unless the payment terms are modified from what was agreed to on the record. This if a fundamental material breach, and certainly more than a *de minims* breach. Consequently, this Court should enter judgment against all Defendants, Mr. Mott, his firm, and Mr. Miller jointly and severally for $40,000, the balance remaining from the $70,000.

In the alternative Plaintiff seeks to set the case for trial. The deadline for completion of depositions have come and gone, and Plaintiff is prepared to go to trial without the deposition of Mr. Miller.

Sincerely,

/s/

Ahmad Keshavarz

cc: all counsel via ECF