1   UNITED STATES DISTRICT COURT
    EASTERN DISTRICT OF NEW YORK
2   ------------------------------x
                                        22-CV-2314(EK)
3   LOVERN ONFROY,
                                        United States Courthouse
4            Plaintiff,                 Brooklyn, New York

5            – versus –                 May 30, 2025

6   THE LAW OFFICES OF
    GEOFFREY T. MOTT, P.C., ET AL.,
7
             Defendants.
8   ------------------------------x

9        TRANSCRIPT OF CIVIL CAUSE FOR STATUS CONFERENCE
              BEFORE THE HONORABLE ERIC R. KOMITEE
10                 UNITED STATES DISTRICT JUDGE

11  APPEARANCES
    Attorney for Plaintiff:   THE LAW OFFICE OF AHMAD KESHAVARZ
12                            16 Court Street #2600
                              Brooklyn, New York 11241
13                            BY:  AHMAD KESHAVARZ, ESQ.

14
    Attorney for The Law Offices of Geoffrey T. Mott, P.C
15                            LAW OFFICE OF ALAN J. SASSON, P.C.
                              2102 Avenue Z, Suite 201
16                            Brooklyn, New York 11235
                              BY:  DAVID J. PRETTER, ESQ.
17                                 ALAN J. SASSON, ESQ.

18

19

20  Transcription Service:    Georgette K. Betts, RPR, FCRR, CCR
                              Phone:  (201)314-3902
21                            Email:  Georgetteb25@gmail.com

22

23
    Proceedings recorded by electronic sound recording.
24  Transcript produced by transcription service.

25

PROCEEDINGS

1          (In open court.)

2          THE COURT:  Okay.  While I'm waiting for that

3    material to come up, I called everybody in here and I wanted

4    everybody in person because this is a case, as I see it, in

5    which -- and I know you disagree with this and you're going

6    to say there's emotional harm and the like, but the quantum

7    of tangible, nonemotional damages here is effectively de

8    minimis, right, we're talking about parking fees and yet

9    this case has been going on for a very long time.

10         I have advised plaintiff's counsel that obviously

11   any request for attorney's fees at the end of the day will

12   take into count the real accomplishments made on behalf of

13   the plaintiff here and it seems, given what I know about

14   this case now, it seems unlikely to me that we will see an

15   award of plaintiff's attorney's fees that will dwarf the

16   relatively de minimis quantum of real damages, and so I have

17   asked the parties to get together and talk about the

18   possibility of settling this case.  Both parties acting

19   reasonably in the process and I want to check in with you on

20   where we are on that front so...

21         MR. KESHAVARZ:  Thank you, your Honor.

22   Mr. Pretter and I had met in my office for over three

23   hours --

24         THE COURT:  When was this?

25         MR. KESHAVARZ:  On April 24th.

PROCEEDINGS

1          THE COURT:  Okay.

2          MR. KESHAVARZ:  I think my letter might have said

3   April 26th, but April 24th, to negotiate settlement.  They

4   wanted a payment.  I said that was fine, but the fundamental

5   first provision of that agreement has to be that we enter a

6   judgment today in federal district court for three times

7   whatever the total amount that we agreed to, if we agree to.

8   And now --

9          THE COURT:  So why would it be three times the

10  amount you agreed to?

11         MR. KESHAVARZ:  Because that's could be their

12  hammer to make sure that they don't miss their payments.

13         THE COURT:  You're talking about a liquidated

14  damages provision that says if you don't pay, the damage

15  award triples.

16         MR. KESHAVARZ:  Similar to that but it would be

17  actually a judgment that's entered today for that amount and

18  I agree not to execute on it for the length of time that

19  they make their timely payments.

20         THE COURT:  I don't see myself entering a judgment

21  like that because it is not a real judgment, right?  It's

22  conditional on things that may or may not happen and so it's

23  sort of a pretend judgment it seems to me.  If you've got

24  authority from the Second Circuit or Supreme Court that

25  suggests that that's appropriate, then of course I'm happy

PROCEEDINGS

1   to rethink things, but why don't you just agree on an amount

2   that they can just pay you?

3           MR. KESHAVARZ:  As a lump sum today?

4           THE COURT:  Yes.

5           MR. KESHAVARZ:  That's fine, but they wouldn't do

6   that so --

7           THE COURT:  I mean, these numbers just like -- so

8   even in my view -- I'm not expressing a final view on the

9   merits here, this is a jury trial that we're proceeding to,

10  right, not a bench trial?

11          MR. KESHAVARZ:  Correct.

12          THE COURT:  So this -- I take it you had

13  permission from the other side to put the actual number in

14  the -- this is styled as the plaintiff's status letter and

15  yet it reports the actual dollar amount.

16          Is the 210,000-dollar number the agreed upon

17  amount or is that 3X the agreed upon amount?

18          MR. KESHAVARZ:  That's 3X that goes to the

19  judgment.  Now --

20          THE COURT:  Okay.

21          MR. KESHAVARZ:  -- Mr. Pretter and I sat down,

22  literally I was typing it up as we were talking about the

23  language --

24          THE COURT:  Okay.

25          MR. KESHAVARZ:  -- and we agreed to the exact

PROCEEDINGS

1    language because I didn't want to --

2              THE COURT:  So what's the sticking point?  It's

3    the --

4              MR. KESHAVARZ:  They don't want to agree to the

5    fundamental first term of our settlement discussion.

6              THE COURT:  Which is the tripling?

7              MR. KESHAVARZ:  Yeah, and most importantly, that

8    we enter a judgment today.

9              THE COURT:  Okay.  Well, if it makes you feel any

10   better, I'm not sure I would agree to any of that either, so

11   how can you settle this case in the kind of in the ordinary

12   manner in which cases are typically settled that doesn't

13   require a condition or theoretical judgment from the Court?

14             MR. KESHAVARZ:  A payment today or, you know, 21

15   days, payment of a lump sum at once, not a payment --

16             THE COURT:  So if they're willing to pay $70,000

17   over some term pursuant to a payment plan, how much would

18   you be willing to accept if they were going to actually just

19   cut you a check on the day of settlement --

20             MR. KESHAVARZ:  If I were --

21             THE COURT:  -- or within seven days.

22             MR. KESHAVARZ:  If they cut a check today for

23   $70,000, then I would accept that.  That is the total amount

24   that they agreed to pay.

25             THE COURT:  No, but you're saying -- I mean,

6

PROCEEDINGS

1    here's the point.  If for whatever reason they default on

2    their obligation to pay you the 70,000, then presumably they

3    are going to default on their obligation to pay you 3X the

4    70,000.  And I understand you can then go, you know, chase

5    assets and try to enforce the judgment and maybe that is

6    worth substantially more than $70,000 to you, I don't know,

7    but I would have guessed that cash in hand is worth more

8    than the $70,000 even with your tripling device, and so

9    therefore if they were just going to cut you check, you'd be

10    willing to accept 50 --

11          MR. KESHAVARZ:  No --

12          THE COURT:  -- or something like that.

13          MR. KESHAVARZ:  -- absolutely not.  The first term

14    that we agreed on, if they want to do a payment plan is a

15    lump sum judgment today and I will not enforce it so long as

16    they agreed to the payment plan.

17          THE COURT:  Lump sum judgment but that doesn't

18    mean you're getting money --

19          MR. KESHAVARZ:  I --

20          THE COURT:  -- whereas, in my -- I just want to

21    make sure you understand what I'm proposing, I'm proposing

22    you actually get the money and therefore it's worth it for

23    you to take something less than 70, is that not the case?

24          MR. KESHAVARZ:  It's not the case.

25          THE COURT:  Okay.

PROCEEDINGS

1    MR. KESHAVARZ:  That was the first term we agreed

2  to.  Everything else flew -- went from that.  Mr. Pretter

3  had his client on the phone for about 20 minutes and came

4  back and he says, yes, we agree to that fundamental --

5    THE COURT:  What's the payment plan?

6    MR. KESHAVARZ:  It is 70,000 equal payments over

7  12 months.

8    THE COURT:  Monthly?

9    MR. KESHAVARZ:  Monthly, and that they didn't even

10  pay the first month.

11    THE COURT:  What do you mean they didn't pay the

12  first month?

13    MR. KESHAVARZ:  The agreement says that they are

14  supposed to pay by May 1st.

15    THE COURT:  So this agreement is inked and --

16    MR. KESHAVARZ:  No, it's -- they haven't signed

17  it.

18    THE COURT:  So why would they make a payment if

19  they haven't signed the agreement?

20    MR. KESHAVARZ:  Because they agreed to all the

21  material terms and now they don't want to agree to the

22  material terms.  The first and --

23    THE COURT:  Are you saying this term was agreed to

24  orally and then --

25    MR. KESHAVARZ:  And in writing.  We typed it up

PROCEEDINGS

1    together.  We literally sat down next to each other,

2    literally, and we were typing this document together.

3        THE COURT:  All right.  Assume that I'm not,

4    absent some presentment of authority from the Second Circuit

5    or the Supreme Court, that I'm not going to enter a judgment

6    that calls for this tripling and certainly not going to

7    enter a judgment that shows $210,000 on the face of it on

8    day one, when that is a conditional number and not a

9    definitive one, where does that leave you?

10       MR. KESHAVARZ:  Well, that -- two things.  First,

11   I have entered that in this Court.

12       THE COURT:  Entered what in this Court?

13       MR. KESHAVARZ:  Multiple judgments entered in

14   today and held in abeyance --

15       THE COURT:  I mean, that's nice that you've done

16   it in this Court, but that's not binding authority.

17       MR. KESHAVARZ:  The second point is that I will

18   not agree to a payment plan --

19       THE COURT:  Fine.

20       MR. KESHAVARZ:  I need a lump sum today.  I don't

21   know what the issue --

22       THE COURT:  And lump sum has to be 70, it cannot

23   be 65?

24       MR. KESHAVARZ:  That's what we agreed to, yes.

25       THE COURT:  All right.  Why can't your clients

PROCEEDINGS

1    come up with a money, like it's a law firm.  I understand it

2    may squeeze them and you have the rest of the year might be

3    a lot less fun, but, yes, the difference between $70,000 now

4    and $70,000 over the course of the year at today's interest

5    rates is just not that large, right, for people who are

6    solidly within the middle class, if not upper middle class,

7    like, just get the case done.

8            MR. PRETTER:  I mean, I understand that, your

9    Honor, but just regarding the discussions we had, I was in

10   the office there, we did discuss --

11           THE COURT:  I don't want to go through who said

12   what to whom.

13           MR. PRETTER:  I understand that.  Also, the

14   agreement that was proposed that we put together also

15   included defendants that are discontinued against the action

16   if they do not sign off.  They are part of the release in

17   the proposed settlement agreement, which they are not

18   defendants any more in the action, so that was also one

19   issue that we had --

20           THE COURT:  Sorry, say that again I'm not

21   following.

22           MR. PRETTER:  The settlement agreement that was

23   written up included defendants that are already discontinued

24   against and for them to sign off on the settlement agreement

25   as well.  So there were several weeks we went back and

PROCEEDINGS                                         10

1    forth.

2            THE COURT:  They want that or you want that?

3            MR. PRETTER:  The plaintiff put that into the

4    settlement agreement, that the discontinued parties should

5    also be signing on the settlement agreement.

6            THE COURT:  Signing and agreeing to do what?

7            MR. PRETTER:  Well, that's --

8            MR. SASSON:  Basically releasing the plaintiff as

9    a tenant from any rental arrears.  So this way -- this way

10   the plaintiff -- the defendants who are the landlords at the

11   time won't come after the plaintiff for any rental

12   agreements.

13           THE COURT:  So you're asking that nonparties,

14   people who are not or are no longer parties to this action

15   become parties to the settlement agreement?

16           MR. KESHAVARZ:  No, the main point is that they'll

17   indemnify us if that happens.  If they go after my client

18   for money that there is a dispute about whether we owe

19   because of the actions the Mott firm, we don't have to get

20   into all allegations -- (inaudible).

21           THE COURT:  To me it sounds like -- can I just

22   tell you what my real world view of this case is and you

23   tell me what I'm missing.  My real world view of this case

24   is that you may have arguments about whether the money was

25   rightly due or wrongly due or whatever the arguments are,

PROCEEDINGS

1   but your client was living in an apartment and not paying

2   rent and the defendants, some or all of them, took action

3   both to recover the unpaid rent and to evict and you didn't

4   like that they took that action in multiple forums and I

5   said in my order on the motion to dismiss that, that's

6   right, like you may have a cause of action for the filing of

7   multiple claims when one would have sufficed.  But none of

8   that changes the fact that your client lived in an apartment

9   and didn't pay rent and so she, if that's true, got some

10  very meaningful benefits from the defendant, and on her side

11  of the ledger she was subjected to the inconvenience and/or

12  abuse of, we'll see what the jury says, having to defend two

13  lawsuits when one would have sufficed, which involves a bit

14  of time and some parking fees.

15          The idea that she's, therefore, entitled to, you

16  know, many tens of thousand of dollars, I could well be

17  missing something but it seems to me to -- it seems to me

18  like a settlement anywhere near the zone of what you're

19  talking about here would be extremely favorable to your

20  client.  I could be wrong, I could be missing something, it

21  could be that she really doesn't owe any money for her rent,

22  but I'm not sure why that would be and I'm not --

23          MR. KESHAVARZ:  That's in our amended complaint

24  why.

25          THE COURT:  Well, tell me why.

PROCEEDINGS

1          MR. KESHAVARZ:  Because they have what's call

2     ERAP, a lump sum of money from the government that went to

3     the landlord, 23,000 something dollars.  All the money

4     before then settled out --

5          THE COURTROOM DEPUTY:  Sir, turn your mic on,

6     please.

7          MR. KESHAVARZ:  Sorry.  All the money prior to a

8     certain date was resolved by a judgment in one court.

9          THE COURT:  The judgment that they succeeded in

10    collecting on or did not succeed?

11         MR. KESHAVARZ:  That they obtained in Supreme

12    Court at the same time they were pursuing it in L&T Court.

13         THE COURT:  Right, but did she pay that judgment?

14         MR. KESHAVARZ:  That's my point.  They got money

15    from the government and they used that impermissibly to

16    obtain -- to pay the judgment to pay the landlord and pay

17    their attorney.  That is not allowed under the ERAP program.

18         THE COURT:  All right, but she lived rent free is

19    the bottom line.

20         I'm just talking about the jury appeal of your

21    case here.  She doesn't seem like the most sympathetic

22    victim of this century.  Again, I could be wrong, jurors

23    have surprised me before and one day they will again, but

24    you all need to work this out.

25         Do we have a trial date in this case?

PROCEEDINGS

1           MR. PRETTER:  No.

2           THE COURT:  All right.  I'm setting a trial date

3     in this case now.  What is there between now, is there a

4     summary judgment motion pending?

5           MR. KESHAVARZ:  I don't have one.  They indicated

6     they might file one and if they do I --

7           THE COURT:  Is discovery complete?

8           MR. PRETTER:  No, your Honor.

9           THE COURT:  What remains of discovery?

10          MR. PRETTER:  Plaintiff's deposition and I think

11    they want to hold more defendants' depositions.

12          THE COURT:  Why haven't you taken plaintiff's

13    deposition yet?

14          MR. PRETTER:  Because when we had the meet and

15    confer on your Honor's order, we had held one of the

16    defendants, they were noticed and scheduled and since we

17    came to the dollar amount of the agreement, we've canceled

18    those depositions.

19          THE COURT:  All right, if this case is not settled

20    before that I want the plaintiff's deposition to occur in

21    the next 28 days.  That's an order.

22          What else remains of discovery?

23          MR. KESHAVARZ:  Two things.  One -- maybe they

24    could -- let me get to --

25          THE COURT:  What else remains of discovery?

PROCEEDINGS

1          MR. KESHAVARZ:  The deposition of one of the

2    remaining defendants.

3          THE COURT:  Which one?

4          MR. KESHAVARZ:  Samuel Miller, a 30(b)(1)

5    deposition of the paralegal and a --

6          THE COURT:  Say that again.  What's the 30(b)(1)

7    deposition of a paralegal?

8          MR. KESHAVARZ:  The 30(b)(1) deposition of a

9    paralegal who apparently runs the office.  At the deposition

10   of Mr. Mott seemed to indicate that -- well, in any event,

11   we had agreed to her deposition on a date certain, and we

12   can get into the fact of that, and then there was an issue

13   of subpoena of the later --

14          THE COURT:  Am I missing something, do you mean

15   30(b)(6)?

16          MR. KESHAVARZ:  31, excuse me.  Did I say

17   30(b)(6)?

18          THE COURT:  No --

19          MR. KESHAVARZ:  I apologize.

20          THE COURT:  -- you said 30(b)(1), I'm asking if

21   you meant 30(b)(6).

22          MR. KESHAVARZ:  No.  We have a 30(b)(6), we've

23   taken that as Mr. Mott in both the 30(b)(1) and 30(b)(6)

24   context.

25          THE COURT:  All right.  So 30(b)(1) requires a

PROCEEDINGS

1    name from you, right?

2         MR. KESHAVARZ:  We now have a name from his

3    deposition testimony.  Actually, I think it was --

4         THE COURT:  What's the name?

5         MR. KESHAVARZ:  -- notice in the name -- I don't

6    recall off the top of my head, but it is in the deposition

7    transcript.  I don't think it's a fact issue about who it

8    was, I think it's only one person.

9         THE COURT:  The paralegal at the defendant law

10   office.

11        MR. KESHAVARZ:  Yeah, Mr. Mott identified who that

12   person was.

13        THE COURT:  All right, so we're talking about

14   three depositions, those should all conclude in the next 28

15   days, all three.

16        What else remains of discovery?

17        MR. KESHAVARZ:  Subpoena of documents from the

18   landlord defendants.  Mr. Mott said in this deposition that

19   he doesn't have any documents.

20        THE COURT:  What documents are you looking for?

21        MR. KESHAVARZ:  The pattern and practice issues

22   about suing all these other people for rent that's not owed.

23        THE COURT:  All right.  That subpoena, if it

24   hasn't been complied with already, should be complied with

25   within the next 28 days.

16

PROCEEDINGS

1          MR. KESHAVARZ:  Well, it needs to be issued.  I

2    held off on it because I thought --

3          THE COURT:  Issue it tomorrow and comply with it

4    in 28 days.

5          MR. PRETTER:  We're talking about landlords who

6    are not part of the action anymore?

7          THE COURT:  Oh, they've been --

8          MR. PRETTER:  Dismissed.

9          THE COURT:  Okay.  All right, so I'm not going to

10   order them to comply by any particular -- you'll tell them

11   to comply and if they want to quash the subpoena, they'll

12   come back to me.

13         MR. KESHAVARZ:  May I?  The bottom line, if I can

14   get $70,000 today I'll dismiss the case.  Just give me

15   $70,000 today or tomorrow, 21 days --

16         THE COURT:  What if you get $60,000 tomorrow and

17   you don't have to deal with jerry-rigged conditional

18   judgments and 12-month payment plans and everything else.

19         What are interests rates right now, 5 percent.  If

20   you can get $60,000 today that might literally be worth the

21   same in net present value as $70,000 -- no, it's not, but 65

22   might be worth 70 in NPV terms.

23         Talk -- I don't know what you all are going to do,

24   it sounds like you're very close, don't be too creative when

25   it comes to spring-loaded judgments or whatever else it is

PROCEEDINGS

1   you're talking about, reach an agreement and file it and

2   then you don't have to go forward with any of this other

3   stuff knowing that you may all be unhappy at the end of the

4   day depending on which way this goes.

5           All right, so the discovery will conclude within

6   28 days.  Summary judgment motions, if any, will be due 28

7   days thereafter.

8           MR. KESHAVARZ:  Can I get an additional 30 days

9   I'm out of the country I'm and I -- I'm out of the country

10  and then I come back I have a jury trial as soon as I come

11  back.

12          THE COURT:  Are you moving for summary judgment --

13          MR. KESHAVARZ:  Unless --

14          THE COURT:  -- or are you just responding to the

15  defense motion for summary judgment?

16          MR. KESHAVARZ:  If they move for summary judgment

17  then I'll likely file a cross motion.  If they don't move

18  for summary judgment, then I'm not going to move for summary

19  judgment.

20          THE COURT:  Okay.  So 28 days from now is...today

21  is the 30th of May.  Discovery to conclude by June 27th.

22  Motions for summary judgment by July 25th.  The response by

23  August 22nd, and if you're going to cross move for summary

24  judgment you can do it on August 22nd, but in the same 25

25  pages in which you're opposing the --

PROCEEDINGS

1          MR. KESHAVARZ:  May I?  I'm leaving the country on

2     June 19th.

3          THE COURT:  For how long?

4          MR. KESHAVARZ:  I'm coming back on July 7th and

5     then I have a jury trial on July 21st.  My question is, can

6     we get an additional 30 days.

7          THE COURT:  For what?

8          MR. KESHAVARZ:  For the --

9          THE COURT:  For all of these deadlines?

10         MR. KESHAVARZ:  Well, definitely for the summary

11    judgment deadlines.

12         THE COURT:  Why, you don't have anything due until

13    12 weeks from now.  Thirty days -- or 28 days for discovery,

14    that's four weeks, another 28 days until their motion is

15    due, and then another 28 days until you have to write

16    something.  Your first deadline here, apart from the

17    discovery stuff, is August 22nd.

18         MR. KESHAVARZ:  Oh, okay, I misunderstood.

19         THE COURT:  So those are the deadlines, and

20    everybody should except that no extensions will be granted

21    on this absent some extraordinary circumstances that none of

22    us are able to foresee at this point.

23         MR. PRETTER:  If he says he's leaving June 19th,

24    that gives us three weeks to complete depositions.

25         THE COURT:  Fine.  Get them done in three weeks or

PROCEEDINGS

1  cancel the vacation if they are not done.  It's three people

2  and you all know the issues in this case backward and

3  forward and this case has been kicking around for three

4  years now, so that's that.

5        Oh, so and then there's a reply which will be due

6  on September 3rd.  And if there is a cross motion I guess

7  we'll see replies from both sides all by September 3rd.

8        The trial in this case will commence on

9  October 6th.

10       MR. PRETTER:  Can I ask after the holiday of

11 Sukkot starts then and it ends the 15th.

12       THE COURT:  What about trial on September 9th,

13 10th and 11th?  I take it this is a one-day trial, right,

14 maybe two?

15       MR. PRETTER:  Probably two.

16       THE COURT:  All right, jury selection

17 September 8th, opening statements the morning of

18 September 9th.

19       THE COURTROOM DEPUTY:  An MJ will be selecting the

20 jury, your Honor?

21       THE COURT:  Does anybody oppose the selection of

22 the jury by the magistrate judge here?

23       MR. KESHAVARZ:  No, your Honor.  I was thinking --

24       THE COURT:  All right.

25       MR. KESHAVARZ:  -- if the jury --

PROCEEDINGS

1          THE COURT:  Hearing no objections the magistrate

2    judge will select the jury.

3          MR. KESHAVARZ:  I thought there would be two days,

4    no more than two days testimony, that's what I had

5    anticipated, but if we're not going to start until the 9th

6    then I'd want --

7          THE COURT:  We'll be done by the 12th I would

8    expect.  If we have to go to the 15th, we will, but --

9          MR. KESHAVARZ:  Okay.

10          THE COURT:  -- I doubt it.

11          MR. PRETTER:  We did request if we could be sent

12    back to the magistrate just to see if we could finalize,

13    memorialize and get a signed settlement agreement.

14          THE COURT:  Who is the magistrate judge again?

15          MR. PRETTER:  Judge Bloom.

16          THE COURT:  Judge Bloom is retired, so we would

17    need a new magistrate judge.

18          THE COURTROOM DEPUTY:  One will be assigned after

19    the conference, Judge.

20          THE COURT:  We'll get one assigned and we will

21    refer you.  Are we sure there hasn't been one assigned

22    already, I think that might have happened already in all her

23    cases.

24          THE COURTROOM DEPUTY:  I don't think so, it hasn't

25    happened yet.

PROCEEDINGS

1          THE COURT:  Okay, we'll facilitate that.

2          Anything else from the plaintiff's side before we

3     adjourn today?

4          MR. KESHAVARZ:  No, I'm just hoping maybe I can

5     get the client on the phone when we walk out the door --

6          THE COURT:  I think you all should resolve this

7     before lunch.  I don't even think you need to see a

8     magistrate judge.  It sounds like you're close enough

9     together that --

10         MR. KESHAVARZ:  If they can get the client on the

11    phone, I can get my client on the phone and we can walk

12    outside and settle this right now if we get the number --

13         THE COURT:  There you have it.

14         MR. KESHAVARZ:  -- that's paid in the lump sum,

15    then we'll be done.

16         THE COURT:  That's right.  And if, by the way, if

17    you settle the case and you want to come back today to put

18    the settlement terms on the record so that everything is

19    locked in, call chambers and we'll see if we can facilitate

20    that.

21         Anything else from the plaintiff's side?

22         MR. KESHAVARZ:  That's it, your Honor.  Thank you.

23         THE COURT:  Anything else from the defense?

24         MR. PRETTER:  No, thank you, your Honor.

25         THE COURT:  All right, thank you all.

PROCEEDINGS

1          (Matter adjourned.)

2          (Second call of the case.)

3          THE COURTROOM DEPUTY:  You want me to make this a

4    second call, your Honor?

5          THE COURT:  Yes, please.

6          THE COURTROOM DEPUTY:  Second call for civil

7    conference -- I'm sorry, your Honor, we're waiting.  Second

8    call for civil status conference, docket number 22-CV-2314,

9    Onfroy versus The Law Offices of Geoffrey T. Mott.

10         Counsel, please state your name for the record.

11         MR. KESHAVARZ:  Ahmad Keshavarz of The Law Office

12   of Ahmad Keshavarz for plaintiff.

13         MR. PRETTER:  David Pretter, The Law Office of

14   Alan J. Sasson for the defendants.

15         MR. SASSON:  Alan J. Sasson for defendants.

16         THE COURT:  Everyone please be seated.  This is a

17   second call because I'm advised that the parties have

18   reached an agreement to settle the case.

19         Who would like to put that agreement on the

20   record?

21         MR. KESHAVARZ:  I can read it into the record and

22   I can be corrected if anything needs to be.

23         THE COURT:  Please.

24         MR. KESHAVARZ:  Okay.  The terms to settle this is

25   as follows:

PROCEEDINGS

1          Defendants, The Law Office of Mr. Mott and he,

2   personally, will pay a total of $70,000 starting with

3   $15,000 at the end of the first --

4          MR. PRETTER:  The first business day of July.

5          MR. KESHAVARZ:  The first business day of July and

6   every first business day thereafter for four months 15,000

7   each and then --

8          THE COURT:  The first business day of each month?

9          MR. KESHAVARZ:  Yes.

10          MR. PRETTER:  Yes, your Honor.

11          THE COURT:  Okay.  $15,000 each for four months

12   and then 10,000 for the fifth month for a total of 70,000.

13          They will issue an ex--- they will draft and

14   execute and give to me a Confession of Judgment for the full

15   amount minus any payments made in the form of the same or

16   substantially similar to the one they used in index number

17   033069, 2025 Rochester County --

18          MR. PRETTER:  Rockland County.

19          MR. KESHAVARZ:  Rockland County.

20          THE COURT:  When is that Confession of Judgment to

21   be furnished?

22          MR. KESHAVARZ:  The original they'll draft it and

23   the original will be delivered to my office by June 13th.

24   They are going to scan and email one the week before.

25          The Notice of Breach is they have a notice, one

PROCEEDINGS

1   time of -- one breach by fax to their fax number, they have

2   15 calendar days to cure, after that we can file and execute

3   on the Confession of Judgment.  There's only one notice.

4              THE COURT:  What does that mean?

5              MR. KESHAVARZ:  So if they miss June -- July's

6   payment we give them notice, they catch up, they miss

7   August's payment we don't have to give them notice anymore.

8   We can file a Confession of Judgment right there and then

9   execute on it.

10             THE COURT:  Okay.  Where would the Confession of

11  Judgment be filed?  State court presumably, correct?

12             MR. PRETTER:  It would be filed in the state where

13  the defendant resides.

14             THE COURT:  Yes.

15             MR. PRETTER:  Which would be Nassau County.

16             MR. KESHAVARZ:  Time is of the essence.  There are

17  no de minimis breaches.  They'll issue a 1099, if at all, to

18  me and I will give them a W-9 within 30 days of the request.

19             None of the parties are admitting liability.

20             The Court retains jurisdiction until the payments

21  are made.  And after that we will discontinue Mr. Miller

22  without prejudice.

23             MR. PRETTER:  Mr. Miller is now.

24             MR. KESHAVARZ:  After the payment.

25             MR. PRETTER:  Mr. Mott and the firm will be

PROCEEDINGS

1  discontinued --

2         MR. KESHAVARZ:  We'll discontinue Mr. Miller

3  without prejudice within 30 days.

4         THE COURT:  Why do I need to retain jurisdiction

5  if nothing is happening here but the exchange of money for

6  lateness?  You're getting a Confession of Judgment, you'll

7  take that to state court, what would there be for me to do?

8         MR. KESHAVARZ:  Well, the main thing actually

9  would run the full-time period so I get the Confession of

10 Judgment with like that date -- I don't want them to breach

11 within like two weeks and then have to file a lawsuit in

12 state court.

13        THE COURT:  All right, so I'll retain jurisdiction

14 for 30 days, if that's acceptable to both parties.  Is that

15 acceptable to the plaintiff?

16        MR. KESHAVARZ:  Yes.

17        THE COURT:  And to the defense?

18        MR. PRETTER:  Yes.

19        MR. SASSON:  Yes.

20        THE COURT:  Okay.  So that will take you beyond

21 the June 13th due date for the Confession of Judgment.

22        MR. KESHAVARZ:  There are no other terms of the

23 agreement other than what we have read into the record.  I

24 believe that's everything.

25        THE COURT:  Well, presumably there is a release.

PROCEEDINGS

1          MR. KESHAVARZ:  The parties will execute a

2     Bloomberg, standard Bloomberg release.

3          MR. PRETTER:  And the payment will be through a

4     wire from defendants to Mr. Keshavarz IO account.

5          MR. KESHAVARZ:  Issued and released after the last

6     payment, the Bloomberg release after the last payment.

7          THE COURT:  Okay, and this agreement is intended

8     to be final now --

9          MR. KESHAVARZ:  Yes.

10          THE COURT:  -- correct?

11          Is there any written writing contemplated?

12          MR. PRETTER:  No, just this.

13          THE COURT:  This record.

14          MR. PRETTER:  Right.

15          MR. SASSON:  Right.

16          THE COURT:  Both parties agree?

17          MR. PRETTER:  Yes, your Honor.

18          MR. KESHAVARZ:  Yes.

19          THE COURT:  Okay.  All right, just so the dates

20     are clear, the first business day in July is July 1st,

21     right, that Tuesday.

22          Let me get this, I'm sorry.

23          (Phone interruption.)

24          I'm having lunch delivered and I came up here

25     forthwith, but I don't want to leave the delivery person

PROCEEDINGS

1   waiting, so I left my phone on.  Let me just advise my law

2   clerks of this.

3        MR. PRETTER:  Thank you, your Honor for obliging.

4        THE COURT:  Okay, all right, back to the timeline.

5   July 1st is the first business day of July, correct?

6        MR. PRETTER:  Yes.

7        THE COURT:  So a 15,000-dollar payment will be due

8   then.

9        The second payment will be due August 1st, which

10  is a Friday, also $15,000.

11       September 1st is Labor Day, so payment number

12  three will be due September 2nd, Tuesday, also of $15,000.

13       And October 1st is a Wednesday, I think it's Yom

14  Kippur, but it is a business day nevertheless and $15,000

15  will be due on or before that date.  That gets you to a

16  total of $60,000 right?

17       And payment number five will be due Monday,

18  November 3rd, that's $10,000, and that is the final payment.

19       Is that correct?

20       MR. KESHAVARZ:  That is correct.

21       MR. PRETTER:  Yes.

22       MR. SASSON:  Correct, your Honor.

23       THE COURT:  Okay.

24       MR. KESHAVARZ:  Not to get hyper technical, the

25  notice should be faxed to the law office, Mr. Sasson,

PROCEEDINGS

1    (347)244-7178 or any subsequent fax number they have.

2                THE COURT:  You agree that that's your fax

3    number --

4                MR. SASSON:  Yes.

5                THE COURT:  -- or your client's fax number?

6                Okay.  And the Confession of Judgment to be

7    provided to plaintiff's counsel by, you said, June 13th?

8                MR. KESHAVARZ:  The original by June 13th.

9                THE COURT:  The executed original.

10               MR. KESHAVARZ:  Correct.

11               THE COURT:  With an executed original to be

12   scanned to plaintiff's counsel you said a week before that?

13               MR. KESHAVARZ:  Correct.

14               THE COURT:  Okay.  Defense agrees.

15               MR. PRETTER:  If we could get June 9th because

16   there is a holiday Monday and Tuesday, the office is closed,

17   so I hope I could --

18               THE COURT:  June 9th for the scan?

19               MR. PRETTER:  Yeah.

20               THE COURT:  Why don't you do the scan -- you can

21   do this in like three days, right, like, just get it before

22   the holiday.

23               MR. PRETTER:  I mean, I could email it to him

24   today prepared, but I'm not available Monday and Tuesday, so

25   if I get in my email by Wednesday, he sends it back again.

PROCEEDINGS

1        THE COURT:  Right, so June 13th is two weeks from

2   today, right?

3        MR. PRETTER:  Uh-huh.

4        THE COURT:  And is there a holiday Monday, Tuesday

5   or Wednesday next week?

6        MR. PRETTER:  Monday and Tuesday.

7        MR. SASSON:  Monday and Tuesday.

8        THE COURT:  So you can get this on Friday,

9   June 6th, right?

10       MR. PRETTER:  Hopefully I'll send it to my client

11  before Sabbath starts this evening but --

12       THE COURT:  Right.

13       MR. PRETTER:  Yes.

14       THE COURT:  We're going to get you home.

15       MR. PRETTER:  Right.  I'll follow up with him on

16  Wednesday.

17       THE COURT:  All right.

18       Yes, I regard the critical date in respect of the

19  Confession of Judgment to be the receipt of the original by

20  June 13th.  I'm not sure it would be a material breach if

21  the scan comes to you a day late, but get the scan in on

22  time and by all means don't miss the deadline for the

23  original.

24       Anything else from the plaintiff's side here?

25       MR. KESHAVARZ:  No, but thank you for your

PROCEEDINGS

1   assistance in this case.

2          THE COURT:  I am happy to do it.

3          Anything else from the defense side?

4          MR. PRETTER:  Nothing.

5          THE COURT:  All right, gentlemen, I think we have

6   an agreement.

7          MR. KESHAVARZ:  Thank you, your Honor.

8          MR. PRETTER:  Thank you, your Honor.

9          THE COURT:  Enjoy the weekend.

10          MR. PRETTER:  Enjoy your lunch.

11          THE COURT:  Thank you.

12          (Matter concluded.)

13                  *    *    *    *    *

14          I certify that the foregoing is an accurate

15   transcript from the official electronic sound recording of

16   the proceedings in the above-entitled matter.

17

18   s/ Georgette K. Betts              June 25, 2025

19   GEORGETTE K. BETTS                 DATE

20

21

22

23

24

25

*GEORGETTE K. BETTS, RPR, FCRR, CCR*